Leanna Costantini (SBN 294028)
costantinil@gtlaw.com
GREENBERG TRAURIG
3161 Michelson Drive, Suite 1000
Irvine, CA 92612
Telephone:  (949) 732-6500
Facsimile:  (949) 732-6501

Ronald J. Pabis (admitted *Pro Hac Vice*)
pabisr@gtlaw.com
Stephen K. Shahida (admitted *Pro Hac Vice*)
shahidas@gtlaw.com
Patrick J. McCarthy (admitted *Pro Hac Vice*)
mccarthyp@gtlaw.com
Myomi T. Coad (admitted *Pro Hac Vice*)
coadm@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
Telephone:  (202) 331-3100
Facsimile:   (202) 331-3101

Attorneys for Plaintiff
EcoServices, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOSERVICES, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>CERTIFIED AVIATION SERVICES, LLC,<br><br>                    Defendant. | Case No.  5:16-cv-01824-RSWL-SPx<br><br>Assigned to Hon. Ronald Sing Wai Lew<br><br>**PLAINTIFF ECOSERVICES, LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>Complaint Filed:  April 22, 2016<br><br>Trial Date:  January 16, 2018 |

Case No. 5:16-cv-01824

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................1

II.  CONSTRUCTION OF THE DISPUTED TERMS.............................2

    A.  LEVEL OF SKILL IN THE ART ...........................................2

    B.  THE DISPUTED CLAIM TERMS DO NOT REQUIRE CONSTRUCTION....3

III.  CONCLUSION ................................................................................25

Case No. 5:16-cv-01824

PLAINTIFF ECOSERVICES, LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Aerospace Techs., Inc. v. U.S.*,
   122 Fed. Cl. 445 (Fed. Cl. 2015) ...................................................................12

*Advanced Med. Optics, Inc. v. Alcon Inc.*,
   361 F. Supp. 2d 370 (D. Del., Mar. 18, 2005).................................................13

*Aventis Pharma S.A. v. Hospira, Inc.*,
   675 F.3d 1324 (Fed. Cir. 2012) ..............................................................17, 18

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
   388 F.3d 858 (Fed Cir. 2004) ......................................................................5

*Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*,
   34 F.3d 1048 (Fed. Cir. 1994) ......................................................................9

*In re Gardner*,
   427 F.2d 786 (C.C.P.A. 1970) ...................................................................13

*GPNE Corp. v. Apple, Inc.*,
   108 F.Supp.3d 839, 873 ...............................................................................6

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
   91 F.3d 1580 (Fed. Cir. 1996) ....................................................................13

*Intel Corp. v. VIA Techs., Inc.*,
   319 F.3d 1357 (Fed. Cir. 2003) .................................................................15

*Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*,
   586 F.3d 1376 (Fed. Cir. 2009) .................................................................18

*LG Elecs., Inc. v. Bizcom Elecs., Inc.*,
   453 F.3d 1364 (Fed. Cir. 2006) .................................................................13

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ..................................................................8, 9

Case No. 5:16-cv-01824

*Meds. Co. v. Mylan, Inc.*,
    No. 2015-1181, 2017 U.S. App. LEXIS 5947 (Fed. Cir. 2017)..........................6

*In re Miller*,
    441 F.2d 689 (C.C.P.A. 1971) ...............................................................13

*Mitsubishi Chem. Corp. v. Barr Labs., Inc.*,
    435 Fed. Appx. 927 (Fed. Cir. 2011)......................................................17

*SmithKline Beecham Corp. v. Apotex Corp.*,
    403 F.3d 1331 (Fed. Cir. 2005) .............................................................21

*Specialty Composites v. Cabot Corp.*,
    845 F.2d 981 (Fed. Cir. 1988) ...............................................................9

*Trebro Mfg. Inc. v. Firefly Equip., LLC*,
    748 F.3d 1159 (Fed. Cir. 2014) .............................................................9

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
    587 F.3d 1339 (Fed. Cir. 2009) ........................................................7, 21

*Unwired Planet v. Apple Inc.*,
    829 F.3d 1353 (Fed. Cir. 2016) ............................................................18

*VIA Techs., Inc. v. Intel Corp.*,
    No. 1:01-CV-00602 (W.D. Tex., Mar. 6, 2003), ECF No. 303 at 56................12

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) (*en banc*) ....................................12, 14

**Statutes**

35 U.S.C. § 112 ................................. 1, 2, 10, 11, 12, 13, 14, 19

**PLAINTIFF ECOSERVICES, LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

# I.  INTRODUCTION

CAS takes one of two misguided approaches in supporting each of its claim construction positions.

For the disputed terms that CAS proposes alternative constructions for, CAS wrongfully imports limitations from the specification and unnatural meaning into the claims. This is improper and violates the core tenet of claim construction—barring two narrow exceptions, plain meaning controls.   The two limited exceptions to this general rule are when: (1) a patentee acts as his own lexicographer; or (2) the patentee disavows claim scope. CAS has not even attempted to show either exception applies here.  Thus, there is no reason for this Court to depart from the ordinary meaning of the disputed claim terms.

CAS is mistakenly asking the Court to import narrowing limitations into the claims to avoid infringement.   For example, for the claim term "information detector," CAS pleads that the definition should require an "information unit" even though there are numerous *dependent* claims that separately require an "information unit."  The well-known claim differentiation doctrine emphasizes that CAS is improperly narrowing the claims.  CAS ignores the claim differentiation presumption.

For the remaining disputed terms, CAS wrongfully argues that they are indefinite. Continuing with its theme of avoiding presumptions in the law, CAS argues that many terms should be construed under § 112 ¶ 6. When the term "means for" does not appear in a claim, however, the legal presumption, is that § 112 ¶ 6 does *not* apply. Of course there are cases where the presumption can be rebutted. This, however, is not one of them.  Indeed, none of the precedent cited by CAS is analogous and the presumption stands.  Nevertheless, CAS seizes § 112 ¶ 6 to argue that the claims are indefinite for failing to disclose sufficient structure.

Not only is there a presumption against applying § 112 ¶ 6, but (even when mistakenly construed as means-plus-function) the specification discloses sufficient structure. For example, CAS argues that "control unit" deserves means-plus-function interpretation.  Putting aside that CAS has not cited a single case that found the same, even CAS admits that the specification itself explains that a control unit can be a program logic control with programming.  The necessary programming is defined in the steps of the claim.  So, there is a presumption that CAS's § 112 ¶ 6 arguments are wrong and, regardless, the specifications do disclose sufficient structure even under CAS's wrong and strained reading.

Where § 112 ¶ 6 is unavailable to CAS it argues indefiniteness under § 112 ¶ 2. CAS does so in the face of claims that are plainly understandable.  Indeed, CAS goes so far as arguing that "small quantities" of liquid is not reasonably understood even though the *claim* itself includes definitive parameters for measuring quantities of liquid.

Because CAS cannot find material prior art that credibly affects the novel and non-obvious claims under the full scope of the claims, it is overly restrictive in its proposed claim constructions.  CAS's narrowing constructions and awkward indefiniteness theories should be rejected.  EcoServices' constructions, which stay true to the specifications and the terms' plain meanings, are the right ones.

## II. CONSTRUCTION OF THE DISPUTED TERMS

### A. Level of Skill in the Art

With respect to the '860 Patent, one of ordinary skill in the art is a person with working knowledge of combustion turbine engines, compressors for turbine engines, compressor fouling, compressor cleaning, and knowledge of original

equipment manufacturer ("OEM") compressor cleaning specifications, in addition to an understanding of fluid dynamics. Ex. B, Kushnick Decl. ¶ 29(a)-(f).[1]

Such knowledge and understanding of the aforementioned would commonly be acquired from an engineering degree program at a four-year college or university. Ex. B, Kushnick Decl. ¶ 29(g). However, one of ordinary skill in the art does not require a formal engineering degree or experience in the field of fluid dynamics to comprehend the disclosed concepts in the '860 Patent. Ex. B, Kushnick Decl. ¶ 29(g).

With respect to the '609 and '262 Patents, one of ordinary skill in the art is a person with working knowledge of control systems and sensors that interface with controls. Ex. B, Kushnick Decl. ¶ 30(a)-(b). Such knowledge and understanding of the aforementioned would commonly be acquired from an engineering degree program at a four-year college or university, or alternatively, an equivalent amount of practical experience in the field. Ex. B, Kushnick Decl. ¶ 30(c).

**B. The Disputed Claim Terms Do Not Require Construction**

EcoServices contends that the disputed claim terms or phrases[2] do not require construction because they consist of ordinary words that are well understood from simply reading them in the full context of the patents and their prosecution histories. To the contrary, CAS proposes that all but one of the disputed terms or phrases are indefinite, even though it provides proposed constructions and arguments for most, in the alternative. CAS's alternative proposed constructions contradict its indefiniteness arguments. Regardless, those constructions and arguments should be rejected because they (1) inappropriately

---

[1] Mr. Steven Kushnick is EcoServices' expert.
[2] On March 30, 2017, counsel for EcoServices informed counsel for CAS that EcoServices is no longer asserting dependent claim 11 of the '262 Patent.

limit the claims without support for doing so; (2) improperly read preferred embodiments into the claims contrary to Federal Circuit precedent; (3) confuse indefiniteness with breadth; or (4) violate fundamental principles of means-plus-function claim construction.

| Claim Term | EcoServices' Construction | CAS's Construction |
|---|---|---|
| "small quantities of finely-divided liquid"<br><br>'860 Patent / Claim 1 | Plain and ordinary meaning<br><br>**Alternatively**:<br><br>"liquid particles, as defined later in the claim, sprayed on and through the object" | Indefinite |

Persons of ordinary skill in the art would understand with reasonable certainty the scope of this claim term. CAS admits that it is not challenging the meaning of "finely-divided liquid," which it understands has an upper and lower bound corresponding to particle size as recited in claim 1.[3]

Essentially, CAS's argument is that a person of skill in the art would not reasonably know what "small quantities" are in terms of *volume*. CAS's argument is deeply flawed because it ignores that the claim itself (as well as the specification) defines the bounds of "small quantities."

Persons of skill in the art would understand that the term "small quantity," as used in the claim, refers to the *rate* that the droplets enter the compressor, not the total *volume* of all of the droplets, as Dr. Micklow (CAS's expert) argues. Ex. B, Kushnick Decl. ¶ 36. The heart of Dr. Micklow's argument relies upon his misinterpretation and misunderstanding that "small quantities" refers to a total volume of all of the droplets.

---

[3] *See also* Ex. B, Kushnick Decl. ¶ 35(a)-(b).

1   This makes no sense for multiple reasons. First, the summary of the

2   invention directly contradicts Dr. Micklow's understanding.  It states: "Finely-

3   divided liquid is sprayed onto and through the object in *quantities* corresponding to

4   0.5-60 l/min . . ." Ex. A to Dkt. No. 74, at 2:5-6.  In other words, the specification

5   (in the summary of the invention)[4] plainly equates "quantities" with the volumetric

6   flow range that is plainly laid out in the claim.  CAS's extrinsic evidence, in the

7   form of an expert's declaration, is insufficient to overcome the plain meaning set

8   forth in the specification.

9   Second, equating quantity with volumetric flow is quite natural in this

10  context. For example, the patentees invented an efficient method for washing

11  turbine compressors.  As part of the invention, the claim requires liquid particles

12  topping out at 250 µm.  The cleaning efficacy under this restraint is related to how

13  many drops flow per unit of time. Ex. B, Kushnick Decl. ¶ 37(a). In other words,

14  the mechanical integrity of the compressor is related to how many droplets flow

15  per unit time, *i.e.,* the rate, not the total volume of droplets, as Dr. Micklow argues.

16  Ex. B, Kushnick Decl. ¶ 37(b).[5] Accordingly, one of ordinary skill in the art would

17  have readily understood that "small quantities" of liquid is defined in the claim as

18  0.5-60 l/min. Ex. B, Kushnick Decl. ¶¶ 36(a)-(b), 38.

19  Third, CAS's, and its expert's, narrow reading of "small quantities" to be

20  wholly constrained to volume (and excluding volumetric rate) also makes no sense

21  in the context of patentability.  If CAS's reading were the right one, even the

---

[4] *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed Cir. 2004) ("Statements that describe the invention as a whole are more likely to be found in certain sections of the specification, such as the Summary of the Invention.").

[5] The '860 Patent suggests less liquid may be required when washing a compressor using the '860 Patent wash method, which is a benefit, but does not claim as such. The claims reflect the rate and not the volume.

admitted prior art hoses could potentially practice this claim element by simply turning on and off a hose quickly.  *See Meds. Co. v. Mylan, Inc.*, No. 2015-1181, 2017 U.S. App. LEXIS 5947, at *20 (Fed. Cir. 2017) (construing patent claims in view of how they are distinguished from the prior art—"Divorcing efficient mixing from the batches would also have the impermissible result of extending Medicines' monopoly beyond the invention disclosed, and potentially to the prior art.") (citations and quotations omitted).  The invention here is distinguished from the prior art in a number of respects including with respect to the finely tuned volumetric flow—small quantities of liquid—that is used during washing.

Interestingly, CAS and its expert seem to have no difficulty in understanding the scope of "finely-divided liquid." *See* Dkt. 75-7, at ¶ 31 ("Unlike 'finely-divided liquid,' which has a corresponding particle size limitation in Claim 1 with a specified upper and lower bound, the '860 Patent does not provide any objective boundaries to the term 'small quantities.'"). This inconsistency is similar to Apple's inconsistency, which was noted by the court, in *GPNE Corp. v. Apple, Inc.*, where Apple "appeared to understand 'randomly' to be an attribute that is either present or not, rather than a term of degree" where it argued for "randomly generated information" to be construed as "identification of the randomly selected timeslot" and at the same time argued that one of skill in the art could not determine what degree of "randomness" is necessary to satisfy the construction. *GPNE Corp. v. Apple, Inc.*, 108 F.Supp.3d 839, 873 n.17 (N.D. Cal. June 9, 2015). The inconsistency of CAS's, and its expert's, argument should also be noted here—it is clear from the claim itself and the specification what *both* "small quantities" and "finely-divided" mean and CAS's random selection of indefinite terms is misguided.

Notably, that the claim encompasses situations involving different degrees of being small goes to the breadth of the claim, not its indefiniteness. *See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1352 (Fed. Cir. 2009) ("Breadth is not indefiniteness.") (quotation and citation omitted). Thus, "small quantities" is not indefinite and CAS's proposal should be rejected.

| Claim Term | EcoServices' Construction | CAS's Construction |
|---|---|---|
| "information detector configured to gather information related to engine type" / "information detector for providing information identifying at least one of washing unit and engine type"<br><br>'262 Patent / Claims 1, 9-10, 14 | Plain and ordinary meaning<br><br>**Alternatively**:<br><br>"device configured to accept and recognize information about the engine to be washed " | "a device designed to detect from an information unit (e.g., an RFID tag or bar code) the presence of information related to [engine type / one of washing unit and engine type] and to emit a signal in response" |

This claim language is understandable on its face and no construction is required. Should the Court require construction of these terms EcoServices' proposed alternative construction is consistent with the plain meaning. CAS's proposed construction should be rejected because it is overly narrow and again seeks to import additional limitations into the claim, which violates basic principles of claim construction.

CAS states that "[c]onstruing 'information detector' without accounting for the *information unit* would improperly extend the claim beyond the scope of the patentee's disclosure." *See* Dkt. No. 75 at 10 (emphasis added).  Although CAS

Case No. 5:16-cv-01824

argues that EcoServices is improperly broadening the claim, it is CAS who is improperly narrowing it.  Indeed, the alleged "information unit" that CAS argues must be "accounted for" in claim 1 is *separately* claimed by itself in *dependent* claim 5. Dependent claim 5 states as follows: "The system of claim 4, further comprising an *information unit* connected to the manifold for providing information relating to said manifold." Ex. C to Dkt No. 74, at claim 5 (emphasis added).   This is clear violation of the claim differentiation principle.   CAS is improperly trying to narrow the independent claim to requirements that are separately accounted for in the dependent claims.  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("As this court has frequently stated, the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim.").

CAS does not provide any basis for overcoming this presumption.  Instead, it argues, without acknowledgement of the clear presumption weighing against its construction, a technical flaw with EcoServices' proposed construction.   CAS ignores the real dispute and is, nevertheless, wrong.

CAS argues that EcoServices attempts to read out language regarding the washing unit.  CAS misses the point.  Only one of the two disputed terms includes the language "identifying at least one of washing unit and engine type." EcoServices' proposed construction, which explicitly states an engine *to be washed*, should be understood to encompass the engine type and washing unit for claim 14 where the language appears. A person of skill in the art would have understood that the information about the engine to be washed would inherently include identifying information about the washing unit.

Setting the presumption aside, CAS's proposed construction also improperly reads the preferred embodiment into the claim. Federal Circuit precedent makes clear that "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim*, 358 F.3d at 913. Moreover, "[a]lthough the specification[] may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments." *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994); *see also Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 986 (Fed. Cir. 1988) ("Where a specification does not *require* a limitation, that limitation should not be read from the specification into the claims.") (emphasis in original).

Nothing in the language of claims 1 and 14 requires, mentions, or implies that "information unit" must be part of or accounted for in the claimed "information detector." And, imposing the use of "information unit" in claims 1 and 14 improperly imports a limitation into the claim from a preferred embodiment. *See Trebro Mfg. Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014) (finding that the district court erred in construing claim 1 to require a "bed frame" when nothing in the language of claim 1 mentions or implies that a "bed frame" must be part of, or otherwise attached to, the claimed "horizontal conveyer" because *inter alia* doing so would "improperly import a limitation into the claim from a preferred embodiment.").

Here, in addition to the language of claims 1 and 14 being silent as to an "information unit," the specification discloses that an identification unit and detection unit are optional: "An optional identification unit and detection unit are

**PLAINTIFF ECOSERVICES, LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

also provided for providing manifold and engine information to the control unit."
Ex. C to Dkt. No. 74, at 4:27-29. Nowhere does the specification disclaim or
otherwise limit "information detector" such that "information unit" should be read
into the term.

In passing, CAS argues that changing "information node" to "information
detector" during prosecution somehow looped in the "information unit." CAS
provides no credible argument supporting such a conclusion. Indeed, the
conclusion does not make sense considering the patentees used "information
detector" and "information unit" distinctly throughout the specification (the two
are even identified as stand-alone elements in the patent figures) and in the claims.

EcoServices' proposed construction is most true to the claims' natural
reading. CAS's construction is wrong and violates the doctrine of claim
differentiation.

| Claim Term | EcoServices' Construction | CAS's Construction |
|---|---|---|
| "a control unit configured to accept the information related to engine type from the information detector and to determine a washing program to be used as a function of the information relating to engine type from a set of preprogrammed washing programs, and further configured to regulate the washing unit according to washing parameters associated with the washing program used" | Not §112 ¶ 6 | Indefinite. Governed by 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** accepting the information related to engine type from the information detector, determining a washing program to be used as a function of the information relating to engine type from a set of preprogrammed washing programs, and regulating the washing unit according to washing parameters associated with the washing program used |

| Claim Term | EcoServices' Construction | CAS's Construction |
|---|---|---|
| '262 Patent / Claim 1 | | **Structure**: Indefinite |
| "a control unit configured to regulate the washing unit according to washing parameters associated to a particular engine based upon preprogrammed control data relating to information provided by the information detector"<br><br>'262 Patent / Claim 14 | Not §112 ¶ 6 | Indefinite. Governed by 35 U.S.C. § 112, ¶ 6.<br><br>**Function**: regulating the washing unit according to washing parameters associated to a particular engine based upon preprogrammed control data relating to information provided by the information detector<br><br>**Structure**: Indefinite |
| "a control unit for regulating the washing procedure based on one or more characteristics of the used washing liquid"<br><br>'609 Patent / Claim 11 | Not §112 ¶ 6 | Indefinite. Governed by 35 U.S.C. § 112, ¶ 6.<br><br>**Function**: regulating the washing procedure based on one or more characteristics of the used washing liquid<br><br>**Structure**: Indefinite |
| "a control unit for regulating the washing unit based on characteristics of the used washing liquid emanating from the engine"<br><br>'609 Patent / Claim 14 | Not §112 ¶ 6 | Indefinite. Governed by 35 U.S.C. § 112, ¶ 6.<br><br>**Function**: regulating the washing unit based on characteristics of the used washing liquid emanating from the engine<br><br>**Structure**: Indefinite |

11                                                             Case No. 5:16-cv-01824

The term "control unit" appears in Claims 1 and 14 of the '262 Patent and Claims 11 and 14 of the '609 Patent.  The only dispute is whether this term should be governed by § 112 ¶ 6 and if so, whether the term is indefinite.  The claims are neither written in "means-plus-function" form nor indefinite.  The prevailing presumption again weighs in EcoServices' favor and CAS has not carried its burden to rebut that presumption.

Because the patentee did not use the term "means" in connection with the "control unit" limitation, it cannot be denied that the claims are presumed to be in non-means-plus-function form and it is CAS's burden to overcome that presumption. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (*en banc*); *see also Advanced Aerospace Techs., Inc. v. U.S.*, 122 Fed. Cl. 445, 478 (Fed. Cl. 2015).  CAS has not, and cannot, overcome this presumption because the term "control unit" has a reasonably well-understood structural meaning in the art.  *See* Ex. B, Kushnick Decl. ¶ 40(a)-(c); *VIA Techs., Inc. v. Intel Corp.*, No. 1:01-CV-00602 (W.D. Tex., Mar. 6, 2003), ECF No. 303 at 56 (defining control unit as "circuitry, and possibly microcode, that issues control signals").  Indeed, numerous dictionary definitions define "control unit" consistently as a component of a central processing unit that accepts program information and emits control signals to carry out those program instructions. *See* Ex. 1, Webster's New World Computer Dictionary, 10th Ed. (2003) (defining control unit as "[a] component of the central processing unit (CPU) that obtains program instructions and emits signals to carry them out."); Ex. 2, The New Penguin Dictionary of Computing, 1st Ed. (2001) (defining control unit as "[t]he section within the CPU of a computer that regulates the fetching and execution of instructions."); Ex. 3, Newton's Telecom Dictionary, the Official Dictionary of Telecommunications Networking and Internet, 16th Ed. (2000) (defining control

unit as "[a]n architectural component of a processor chip which orchestrates processor activity and handles timing to make sure the processor doesn't overlap functions."); *see also Advanced Med. Optics, Inc. v. Alcon Inc.*, 361 F. Supp. 2d 370, 379 (D. Del., Mar. 18, 2005) (construing "a control unit" as "electronics that receive and process electrical input signals and generate electrical output signals"). As with the "detent mechanism" at issue in *Greenberg v. Ethicon Endo-Surgery, Inc.*, "[w]hat is important is not simply that a [the claimed mechanism] is defined in terms of what it does, but that the term, as the name for structure, has a reasonably well understood meaning in the art." *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996).   Control unit has a well-understood meaning and covers various well-known structures that accept information and emit control signals. *See* Ex. B, Kushnick Decl. ¶¶ 42-43.

CAS confuses broad claim drafting with indefiniteness.  But breadth of a claim is not to be equated with indefiniteness. *In re Miller,* 441 F.2d 689, 693 (C.C.P.A. 1971); *In re Gardner,* 427 F.2d 786, 788, (C.C.P.A. 1970) ("Breadth is not indefiniteness.").  A person of ordinary skill in the art would certainly appreciate that many control units could be used. *See* Ex. B, Kushnick Decl. ¶ 44.

Notably, CAS has provided no case where the court found the term "control unit" to be governed by § 112 ¶ 6.  EcoServices, however, has provided this Court with case law in which the Federal Circuit was faced with a similar circumstance and found that the District Court erred in construing the "control unit" terms of the asserted claims as means-plus-function limitations.   *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364, 1372 (Fed. Cir. 2006). The term "control unit" is sufficiently structural because it has a generally understood meaning in the electrical arts and the specification and claims further describe the structure.  This Federal Circuit precedent should end the inquiry.

1     Nevertheless, even if the Court were to accept CAS's argument that "control

2  unit" should be governed by § 112 ¶ 6, there is sufficient structure disclosed in the

3  specification that the claim should not be deemed indefinite. If the claims are

4  deemed to be in means-plus-function format, which is only possible if no structure

5  is recited in the claim, then the second step is to review the specification for

6  structure corresponding to the claimed function. *Williamson*, 792 F.3d at 1351.

7  Here, there is sufficient structure disclosed in the specification.   Indeed, CAS

8  admits that there is structure disclosed in the specification to perform what it

9  asserts is the claimed function.  Specifically, the specification of the '262 Patent

10  states: "The control unit 112 preferably comprises a programmable logic controller

11  (PLC) capable of being programmed to control and monitor the washing process."

12  Ex. C to Dkt. No. 74, at 6:44-49.  Dependent claim 11 of the '262 Patent further

13  states that the claimed control unit can be a programmable logic controller. Indeed,

14  during prosecution of the '609 Patent, the examiner indicated that one of skill in

15  the art would realize that a programmable logic controller is a "control unit."  Ex.

16  H to Dkt. No. 74, at Sept. 15, 2011 Office Action at 5.  He also, however indicated

17  that the claimed "control unit" was not limited to programmable logic controllers.

18  *See id.*, at Mar. 30, 2011 Office Action at 2, 4 (finding that the "control panel" of

19  the Hjerpe reference was a "control unit.").

20     Faced with this clear disclosure, CAS next asserts that the disclosed

21  structure is not enough because the specification does not disclose the PLC's

22  programming.  Also, not true. The claim itself sets forth the steps to be performed

23  by the control unit. For instance, claim 1 of the '262 Patent discloses that the

24  control unit must be programmed to (1) accept information relating to engine type

25  (2) determine a washing program as a function of the information received; and (3)

26  regulate the washing unit according to washing parameters associated with the

PLAINTIFF ECOSERVICES, LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

washing program used.  These claims cannot, as a matter of law, be found to be indefinite in light of these disclosed steps, combined with the disclosed physical structure

In analyzing indefiniteness, both the standard and the burden required must be considered and a finding of invalidity based on indefiniteness requires the accused infringer to prove by clear and convincing evidence that persons skilled in the field of the invention would not be "able to perform the recited function" based on the description in the specification and the knowledge in the art. *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366–67 (Fed. Cir. 2003) (stating that implementation choices of "known algorithms" are "properly left to the knowledge of those skilled in the art, and need not be specified in the patent"). CAS has not, and cannot prove by clear and convincing evidence that the claims are indefinite in light of the case law and the disclosures in the Asserted Patents.

| Claim Term | EcoServices' Construction | CAS's Construction |
|---|---|---|
| "configured to regulate the washing unit according to washing parameters associated with the washing program used" (claim 1) / "configured to regulate the washing unit according to washing parameters associated to a particular engine" (claim 14)<br><br>'262 Patent / Claims 1, 14 | Plain and ordinary meaning<br><br>**Alternatively**:<br><br>"programmed to control the washing unit to apply a wash recipe" | Indefinite<br><br>**Alternatively:**<br>"configured to control and monitor the washing unit according to washing parameters associated with the engine being washed" |
| "wherein the information provided by | Plain and ordinary meaning | Indefinite |

| Claim Term | EcoServices' Construction | CAS's Construction |
|---|---|---|
| the information detector is used by the control unit to regulate washing time"<br><br>'262 Patent / Claim 9 | **Alternatively**:<br><br>"wherein the control unit controls a washing time pursuant to the information provided by the device configured to accept and recognize information about the engine to be washed" | **Alternatively:**<br>"wherein the information provided by the information detector is used by the control unit to control and monitor the washing time of the engine being washed" |
| "wherein the information provided by the information detector is used by the control unit to select a washing liquid type"<br><br>'262 Patent / Claim 10 | Plain and ordinary meaning<br><br>**Alternatively**:<br><br>"wherein the control unit selects a type of washing liquid pursuant to the information provided by the device configured to accept and recognize information about the engine to be washed" | Indefinite |
| "the control unit using the measured temperature for regulating a washing procedure"<br><br>'262Patent / Claim 12 | Plain and ordinary meaning<br><br>**Alternatively**:<br><br>"wherein the control unit is configured to process temperature data from a sensor" | Indefinite<br><br>**Alternatively:**<br>"the control unit using the measured temperature to control and monitor the washing procedure of the engine being washed" |

16

Case No. 5:16-cv-01824

With respect to the claim terms numbered 3-5 and 7 of EcoServices' opening brief, CAS's single interwoven thread through these claim terms is that these "regulating" steps additionally require "monitoring" by the control unit in order to control the washing unit and aspects of the wash process. CAS is again wrong to read limitations from the specification into the claims. As argued in EcoServices' opening brief, these claim phrases require no construction because these phrases can be readily understood by the Court and jury alike. But if the Court should find that construction of these claim terms would be helpful to understand the meaning of these claim terms, EcoServices' proposed alternative constructions are the right constructions because they each remain true to the plain language of the asserted claims and specification.

As explained in EcoServices' opening brief, the Abstract and, equally important, the Summary of the Invention both define the "control unit" without any mention of monitoring.  CAS skirts this issue and clings, instead, to the *only two instances* in the specification where there word "monitoring" is used.  However, in both instances the patentees were clearly discussing "exemplary" or "preferred" embodiments and not defining the invention as a whole.  The Federal Circuit has previously refused to impose limitations when not required by the language of the claims or the specification. *See Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1331-32 (Fed. Cir. 2012) (agreeing with the district court's construction of the term "perfusion" where "[n]either the claims, the specification, nor the prosecution history suggest that the claimed perfusion must satisfy certain safety or efficacy standards."); *see also Mitsubishi Chem. Corp. v. Barr Labs., Inc.*, 435 Fed. Appx. 927, 934-35 (Fed. Cir. 2011) (agreeing with the district court's refusal to limit the claim to those compositions that are "safe, effective, and reliable for use in humans" where "[t]he specification does not require this restrictive construction,

nor is this property necessary for patentability."); *Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 586 F.3d 1376, 1382 (Fed. Cir. 2009) (declining to read an effectiveness requirement into the preamble because "the [] patent claims do not restrict the administration of the claimed amino acid and ketoacid composition to any specific dosage or amount, or even an 'effective amount.'").

Had the patentees intended to include "monitoring" as a requirement of the claims, it could have included such a limitation in the claims, but notably did not. *See Aventis Pharma S.A.*, 675 F.3d at 1330 ("Had the patentee similarly intended to require that the 'perfusion' display a certain duration of stability, it could have included such a limitation in the claim but notably did not."); *see also Unwired Planet v. Apple Inc.*, 829 F.3d 1353, 1359 (Fed. Cir. 2016) ("If the patentee intended to restrict the claims-at-issue to require a voice input to travel over a particular type of channel, it could have included that same limitation."). Thus, the plain language of these claim terms indicate that these claim terms have their ordinary meaning subject to these specific limitations (*i.e.,* "regulate" / "regulating").

Importantly, the file history (which CAS does not even cite) supports EcoServices' construction.   Indeed, as explained in EcoServices' opening brief, the file history explains that "regulating" relates to calibrating the washing recipe, but not to monitoring. *See Aventis Pharma S.A.*, 675 F.3d at 1331 ("Here, the patentee's observation during prosecution that the perfusions in the [prior art] reference demonstrated signs of precipitation after four hours and thirty minutes neither indicates that the claimed perfusion has a special definition nor clearly and unmistakably manifests the patentee's intention to limit claim 5 to perfusions that are stable for at least eight hours.").

CAS is again trying to import the preferred embodiment into the claims. CAS has no credible basis for doing so. EcoServices' construction, on the other hand, stays true to the plain meaning.

| Claim Term | EcoServices' Construction | CAS's Construction |
|---|---|---|
| "a device for analyzing the used washing liquid to determine the characteristics of the used washing liquid including the types of solid(s) included therein, and which is evaluated by the control unit to regulate the washing unit"<br><br>'609 Patent / Claim 14 | Not §112 ¶ 6 | Indefinite. Governed by 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** analyzing the used washing liquid to determine the characteristics of the used washing liquid including the types of solid(s) included therein<br><br>**Structure:** Indefinite |
| "and which is evaluated by the control unit to regulate the washing unit"<br><br>'609 Patent / Claim 14 | Plain and ordinary meaning<br><br>**Alternatively**:<br><br>"control unit being capable of analyzing used washing liquid" | Indefinite |

CAS's § 112 ¶ 6 arguments for the disputed claim term "device" are similar to those for the "control unit" limitations and fail for the same reasons.[6] A "device" is of course a structure and is, pursuant to the claim, a component of the claimed system. The claimed device analyzes the washing liquid (including the

---

[6] CAS's argument that the term "device" is indefinite is belied by the fact that CAS uses this very term (*i.e.,* "device") in its proposed construction of the disputed "information detector" terms.

types of solids) and provides that information to the claimed control unit.  Since the types of solid(s) are known by a person having ordinary skill in the art, one of ordinary skill in the art would understand the types of devices that could be used. Ex. B, Kushnick Decl. ¶ 53(a)-(b). The device merely needs to know whether the concentration of the solids is declining and whether the concentration is below the threshold that is defined as "sufficiently clean".  Ex.  B, Kushnick Decl. ¶ 54(a). While the specification discloses that this device may include sensors (*see* Ex. B to Dkt. No. 74, at 8:8-21), one of ordinary skill in the art would understand that the claim is not so limited and the device might employ, for example, a simple light transmission detector, a light reflectance detector, or a pressure monitor across replaceable filters. Ex. B, Kushnick Decl. ¶ 54(a). One of ordinary skill in the art would understand that the class of claimed devices is broad, but not indefinite.  Ex. B, Kushnick Decl. ¶ 54(b). Thus, the phrase "device" has meaning, and the fact that multiple detection methods exist for determining the characteristics of the liquid and of the solid(s) may make the claims broad, but not indefinite. Ex. B, Kushnick Decl. ¶ 55. A person having ordinary skill in the art knows the contaminants that may be present and has the knowledge to select an adequate detection method. Ex. B, Kushnick Decl. ¶ 53(a)-(b).

| Claim Term | EcoServices' Construction | CAS's Construction |
|---|---|---|
| "wherein the used washing liquid is analyzed to evaluate characteristics including the types of solid(s) included in the used washing liquid"<br><br>'609 Patent / Claim 11 | Plain and ordinary meaning<br><br>**Alternatively**: "analyzing the used washing liquid to determine characteristics, such as types of solids, within the used washing liquid" | Indefinite |
| "analyzing the used | Plain and ordinary meaning | Indefinite |

| Claim Term | EcoServices' Construction | CAS's Construction |
|---|---|---|
| washing liquid to determine the characteristics of the used washing liquid including the types of solid(s) included therein"<br><br>'609 Patent / Claim 14 | **Alternatively**:<br><br>"analyzing the used washing liquid to determine characteristics, such as types of solids, within the used washing liquid" | |

In CAS's view, the disputed phrases in claims 11 and 14 of the '609 Patent, "the types of solid(s) included" and "including the types of solid(s)" are boundless and a skilled artisan "could only guess whether they infringe." However, CAS's view is distorted because, while it attempts to posture that the disputed terms are indefinite, its arguments are actually directed to the breadth of the claims. CAS ignores the basic principle of claim construction that "[b]readth is not indefiniteness." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005) (quotation and citation omitted); *Ultimax*, 587 F.3d at 1352. Compounding this error, Dr. Micklow's supporting arguments in his declaration only highlight CAS's confusion between the breadth of the claims and indefiniteness. In contrast, EcoServices' position is straightforward—the disputed claim terms require no construction and the scope at issue here is clear on its face, as well as when read in light of the intrinsic evidence.

The Federal Circuit has previously explained that "[m]erely claiming broadly" does not "prevent the public from understanding the scope of the patent." *Ultimax*, 587 F.3d at 1352. That "the types of solids" could include minerals, salts, metals, organic matter, inorganic matter, or some combination of these, is irrelevant to whether or not the disputed claim terms are indefinite. "The types of

solids" relates to the breadth of the claim terms, which has no bearing on CAS's argument that the disputed claim terms are indefinite.[7]

Additionally, a person of ordinary skill in the art would have knowledge of OEM information regarding compressor washing, and thus, readily know the types of solids that could be present from compressor washing. Ex. B, Kushnick Decl. ¶ 46. For example, gas turbine literature published in the early 1990s discusses the types of solids that can be found within a compressor, such as sand, mineral dust, oil vapors, smoke, sea salt, acids, and metals. Ex. B, Kushnick Decl. ¶ 46. Accordingly, a person of ordinary skill in the art would know the types of contaminants to be expected fouling a compressor and with this knowledge could determine what testing would reveal the presence and relative quantity of those contaminants. Ex. B, Kushnick Decl. ¶¶ 48-49. Thus, the phrase "the types of solid(s) included" has meaning in the field of the '609 Patent and is not indefinite. Ex. B, Kushnick Decl. ¶ 49.

Moreover, "the type of solids" within the used washing liquid is not determinative of whether or not a person of skill in the art would know with reasonable certainty if they infringe. The minerals, salts, metals, organic matter, inorganic matter, or some combination of these in the used washing liquid are not themselves the infringing culprits. The step of analyzing the used washing liquid to determine the characteristics of the used washing liquid, including the types of solids in the used washing liquid, is one of the steps that if performed outside of

---

[7] CAS's argument in footnote 27 of its opening brief that EcoServices deletes the word "the" from its proposed alternative construction as an alleged attempt to sidestep the issue is moot. CAS confuses the issue here by mistakenly equating its indefiniteness argument with the breadth of the disputed claim terms. No matter, even if EcoServices were to include the word "the" before "types of solids" in its proposed alternative construction, CAS's argument would hold no water as it still would seemingly confuse the issue of indefiniteness with the breadth of the claims.

Case No. 5:16-cv-01824

1    EcoPower could be found as infringing the claim. And, importantly, the

2    specification plainly explains how this is determined: "As known to those in the

3    art, TDS is measured by measuring the conductivity of used washing liquid.  Based

4    on these measurements, the types of solid(s) included in the used liquid may be

5    determined."  Ex. B to Dkt. No. 74, at 8:12-16.

6        Accordingly, the Court should reject CAS's position that these disputed

7    claim terms are indefinite.

8

| Claim Term | EcoServices' Construction | CAS's Construction |
|---|---|---|
| "regulating the washing procedure based on one or more characteristics of the used washing liquid"<br><br>'609 Patent / Claim 11 | Plain and ordinary meaning<br><br>**Alternatively**:<br><br>"adjusting the parameters of the washing procedure depending on the evaluation of the used washing liquid" | Indefinite<br><br>**Alternatively:**<br>"adjusting the parameters of the washing procedure of the engine being washed based on one or more characteristics of the used washing liquid" |
| "regulating the washing unit based on characteristics of the used washing liquid emanating from the engine"<br><br>'609 Patent / Claim 14 | Plain and ordinary meaning<br><br>**Alternatively**:<br><br>"adjusting the parameters of the washing procedure depending on the evaluation of the used washing liquid" | Indefinite<br><br>**Alternatively:**<br>"adjusting the parameters of the washing procedure based on characteristics of the used washing liquid emanating from the engine being washed" |

Case No. 5:16-cv-01824

EcoServices believes that the disputed "regulating" claim terms of the '609 Patent should be given their plain and ordinary meaning based on the claim language itself and the intrinsic evidence. The dispute centers on whether "regulating the washing procedure" requires a real-time adjustment to an engine currently being washed. CAS imports narrowing limitations into the claims to propose that it does. Indeed, CAS latches onto one sentence from the end of the specification where the patent explains that "in a preferred embodiment" the washing parameters can be adjusted to optimize the current washing process. Ex. B to Dkt. No. 74, at 8:7-21. CAS ignores the rest of the specification where regulating the washing parameters is not so limited. *See id.*, at 5:3-7 ("A washing system in accordance with an embodiment of the present invention comprises a washing unit for providing a washing liquid into an engine and a control unit for regulating the washing unit according to desired parameters."); *id.* at 6:6-9 ("Depending on the results of the evaluation of the used washing liquid, the control unit may then adjust the washing unit to alter the parameters of the washing procedure."); *id.* at claim 14 ("a washing unit for providing a washing liquid into an engine; […] a control unit for regulating the washing unit…"). CAS cites nothing from the prosecution history. Simply put, there is no basis for injecting a real-time adjustment requirement into a claim limitation that is not so limited on its face.

To the extent these claim terms are found by the Court to require construction, EcoServices' proposed alternative constructions are the right constructions because they each remain true to the plain language of the asserted claims and specification.

PLAINTIFF ECOSERVICES, LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

**III.    CONCLUSION**

In view of the foregoing, the plain and ordinary meaning of the disputed claim terms should be used in this case, or the Court should adopt EcoServices' alternative proposed constructions, and reject CAS's proposed claim constructions.

Dated: April 13, 2017                    GREENBERG TRAURIG, LLP

                                         By:  */s/ Stephen K. Shahida*_____
                                         Stephen K. Shahida
                                         Ronald J. Pabis
                                         Patrick J. McCarthy
                                         Myomi T. Coad
                                         Leanna Costantini

                                         **Attorneys for Plaintiff EcoServices, LLC**

## **CERTIFICATE OF SERVICE**

I, Stephen K. Shahida, hereby certify that on this 13th day of April, 2017, copies of the foregoing **PLAINTIFF ECOSERVICES, LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** was served upon the following parties via electronic mail:

Dale J. Giali
Mayer Brown LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
dgiali@mayerbrown.com

Stephen E. Baskin
Peter O. Schmidt
Mayer Brown LLP
1999 K. Street, N.W.
Washington, DC 20006
sbaskin@mayerbrown.com
pschmidt@mayerbrown.com

Gregory J. Apgar
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
gapgar@mayerbrown.com

**Attorneys for Defendant/Counter-Plaintiff Certified Aviation Services, LLC**

_/s/ Stephen K. Shahida_
Stephen K. Shahida