REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

MAYER BROWN LLP

Dale J. Giali (SBN 150382)
dgiali@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Stephen E. Baskin (*pro hac vice*)
sbaskin@mayerbrown.com
Peter O. Schmidt (*pro hac vice*)
pschmidt@mayerbrown.com
Canek Acosta (SBN 301901)
cacosta@mayerbrown.com
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Gregory J. Apgar (*pro hac vice*)
gapgar@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

Attorneys for Defendant/Counter-Plaintiff
Certified Aviation Services, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| EcoServices, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>Certified Aviation Services, LLC,<br><br>Defendant. | Case No. 5:16-cv-01824-RSWL-SP<br><br>**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '262 PATENT**<br><br>Trial Date: June 26, 2018 |

REDACTED VERSION OF DOCUMENT  PROPOSED
TO BE FILED UNDER SEAL

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 1, 2018 at 10:00 a.m. before the Honorable Ronald S.W. Lew of the United States District Court for the Central District of California, Courtroom TBD, First Street Courthouse, 350 W. First Street, Suite 4311, Los Angeles, CA 90012, Defendant Certified Aviation Services, LLC, will and hereby does move to for partial summary judgment of non-infringement of the '262 Patent, pursuant to Fed. R. Civ. P. 56.

This motion is made on the grounds that the EcoServices, LLC cannot meet its burden and show that each and every limitation of the claims '262 Patent are present in Cyclean as a matter of law This motion is based on this written notice, the attached Memorandum of Points and Authorities, and all the records, documents, pleadings, and papers on file or to be filed in this action, arguments of counsel, and any other matters that properly may come before the Court for its consideration.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 23, 2018.

Dated: March 30, 2018                    Respectfully submitted,


                                         MAYER BROWN LLP


                                         */s/  Stephen E. Baskin*
                                         By: Stephen E. Baskin


                                         *Attorney for Defendant/Counter-Plaintiff*
                                         Certified Aviation Services, LLC

- ii -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

I.   PRELIMINARY STATEMENT ...................................................................1

II.   BACKGROUND ........................................................................................2

   A.   The '262 Patent........................................................................................2

   B.   The Asserted Claims................................................................................3

   C.   The Accused Cyclean System ................................................................4

III.   LEGAL STANDARD ...............................................................................6

IV.   ARGUMENT.............................................................................................7

   A.   Literal Infringement and "Plain and Ordinary Meaning" ......................8

   B.   Cyclean Does Not Have the Claimed "Information Detector" ...............8

   C.   There is no evidence that Cyclean includes the claimed  control unit. ........12

V.   CONCLUSION.........................................................................................15

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ....................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................7

*Moore U.S.A., Inc. v. Standard Register Co.*,
   229 F.3d 1091 (Fed. Cir. 2000) ..........................................................................7

*Phillips Petroleum Co. v. Huntsman Polymers Corp.*,
   157 F.3d 866 (Fed. Cir. 1998) ..........................................................................12

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*)...................................................3, 8, 9

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
   378 F.3d 1396 (Fed. Cir. 2004) ..........................................................................8

*Scott v. Harris*,
   550 U.S. 372 (2007) ............................................................................................7

*Smith v. Garlock Equip. Co.*,
   658 F. App'x 1017 (Fed. Cir. 2016)...................................................................12

*TechSearch, L.L.C. v. Intel Corp.*,
   286 F.3d 1360 (Fed. Cir. 2002) ..........................................................................8

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001) ........................................................................12

*V-Formation, Inc. v. Benetton Grp. SpA*,
   401 F.3d 1307 (Fed. Cir. 2005) ..........................................................................8

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

**Other Authorities**

Fed. R. Civ. P. 56(a) ................................................................................................. 7

Fed. R. Civ. P. 56(c) ................................................................................................. 7

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

## I.   PRELIMINARY STATEMENT

Plaintiff EcoServices, LLC ("EcoServices") alleges that Defendant Certified Aviation Services, LLC ("CAS") infringes claims 1, 9, and 14 of U.S. Patent No. 9,162,262 ("the '262 Patent"). The '262 Patent claims systems for washing turbine engines. The claimed systems include a set of preprogrammed washing programs, an "information detector" for gathering information relating to the type of engine being washed, and a "control unit" that accepts information from the information detector and uses it to determine a specific washing program to run. The '262 Patent explains that prior art systems required system operators to manually input system settings, and that goal of the patent is to minimize "the influence of the human factor . . . as much as possible." '262 Patent at 3:65-67 (Ex. 1).

The accused product is Cyclean, a system for washing aircraft engines. Cyclean was developed by non-party Lufthansa Technik AG ("LHT"). *See* Statement of Facts[1] ¶ 4.  Since 2010, defendant CAS has been LHT's exclusive provider of Cyclean services in the United States. *Id.* ¶ 5.  As a supplier, CAS played no role in Cyclean's design or development. *Id.* ¶ 7.  EcoServices did not seek any discovery from LHT.  *Id.* ¶ 8.

Cyclean does not contain an "information detector" or a "control unit" that determines which washing program to run. ██████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████. The claims require that Cyclean be able to make that detection and determination. EcoServices's infringement expert provides no actual

---

[1] As used herein, "Statement of Facts" refers to Defendant's Statement of Uncontroverted Facts and Conclusions of Law in Support of its Motion for Summary Judgment on the '262 Patent.

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1    analysis of these two claim requirements and, instead, states in conclusory fashion

2    that Cyclean satisfies them. As a result, there is no evidence from which a

3    reasonable jury could conclude that Cyclean infringes the asserted claims.

4    **II.   BACKGROUND**

5         **A.   The '262 Patent**

6         The '262 Patent is entitled "Automated Detection and Control System and

7    Method for High Pressure Wash Application and Collection Applied to Aero

8    Compressor Washing." Statement of Facts¶ 11. The patent's Background section

9    explains that "a number of cleaning or washing techniques have been developed"

10   and discusses several "systems for cleaning engines [that] provide very versatile

11   and effective cleaning methods that can be arranged on a mobile unit." '262 Patent

12   at 2:23-24, 3:38-41; *see generally id.* at 2:23-3:41; Statement of Facts ¶ 14.

13        The '262 Patent states that a problem with existing washing systems was

14   their reliance on a human operator manually inputting system settings: "These

15   processes, however, are all dependent to some extent upon an operator manually

16   making certain adjustments and/or system settings." '262 Patent at 3:41-43;

17   Statement of Facts ¶ 15.  It states that, in traditional systems, wash operators were

18   provided information about engine type; had to select an appropriate nozzle

19   manifold for the engine being washed; had to manually set washing parameters

20   such as water flow rate, water volume, and water pressure; and had to manually

21   keep track of the washing time. '262 Patent at 3:44-55; Statement of Facts ¶ 16.

22   The patent further states that, because these processes are carried out manually,

23   "there is always a risk that the human factor jeopardizes the result," which can lead

24   to costly engine damage. '262 Patent at 3:56-64; Statement of Facts ¶ 17.

25        The Background section accordingly concludes with the statement: "It would

26   therefore be beneficial for such a closed loop washing process if the influence of

27   the human factor is minimized as much as possible." '262 Patent at 3:65-67;

28   Statement of Facts¶ 18.

- 2 -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

**B.     The Asserted Claims**

EcoServices asserts claims 1, 9, and 14 against CAS. Statement of Facts ¶ 19. Those claims purport to accomplish the patent's goal of reducing the human factor through an "information detector" that detects information about the engine being washed and a "control unit" that receives that information, uses it to determine a washing program, and regulates the washing unit based on determined program. Independent claim 1 is illustrative:

> 1. A system for washing turbine engines comprising:
>
> a washing unit for providing a washing liquid to the turbine engines;
>
> an information detector configured to gather information related to engine type; and
>
> a control unit configured to accept the information related to engine type from the information detector and to determine a washing program to be used as a function of the information relating to engine type from a set of preprogrammed washing programs and further configured to regulate the washing unit according to washing parameters associated with the washing program used.

'262 Patent cl. 1; Statement of Facts ¶¶ 20, 24. The Court's *Markman* order states that "plain and ordinary meaning" applies to the "information detector" and "control unit" limitations. D.I. 80 at 12; Statement of Facts ¶¶ 26-27. Plain and ordinary meaning refers to "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention" who has read the term "in the context of the entire patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*).

The specification describes the claimed "information detector" as a device

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

that reads information about the engine being washed or manifold being used and specifically discloses that it "obtains particular information identifying the engine type" and transmits that information to the control unit. '262 Patent at 5:56-60, 6:35-40; Statement of Facts ¶ 21. The specification discloses several possibilities for the information detector: RFID readers, bar code readers, or other "radio frequency equipment capable of transmitting and receiving information, etc." '262 Patent at 5:38-55. Statement of Facts ¶ 22. During the examination of the '262 Patent at the United States Patent and Trademark Office, the patent examiner referred to a detector as ""a device or instrument designed to detect the presence of something and to emit a signal in response."  Ex. 2, '262 Patent File History, at April 9, 2015 Final Rejection, at 3; Statement of Facts ¶ 23. All of the disclosed possibilities involve the automatic detection of information using radio or optical signals. The specification never discusses a "detector" requiring manual input. Nor does it disclose a human being playing any role in detecting engine type.

The specification discloses only one example of the claimed control unit: "a programmable logic controller (PLC) capable of being programmed to control and monitor the wash process." '262 Patent at 6:44-46; Statement of Facts ¶ 25.

Claim 14 is the other asserted independent claim. That claim recites the same washing unit as claim 1. It also recites an information detector and control unit. Claim 14's information detector must provide "information identifying at least one of washing unit and engine type." '262 Patent cl. 14; Statement of Facts ¶ 20. And, although the control unit limitation is worded differently than in claim 1, claim 14's control unit must still receive information from the information detector, determine a washing program from a set of available washing programs, and regulate the washing unit. *See id.*; Ex. 3, Kushnick Dep. Tr. at 195:12-196:12; Statement of Facts ¶ 24.

C.   **The Accused Cyclean System**

The accused Cyclean engine washing system was developed by non-party

- 4 -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

LHT. Statement of Facts ¶ 4. CAS is LHT's exclusive provider of Cyclean washes in the United States. *See* Ex. 4,[2] Agmt. for Aircraft Engine Wash, § 2.2; Statement of Facts ¶ 5. CAS played no role in the design, development, or manufacture of Cyclean. Ex. 5; Statement of Facts ¶ 4. EcoServices did not seek any discovery from LHT. Statement of Facts ¶ 8.

The Cyclean system is similar to the prior art systems described in the '262 Patent. ███████████████████████████████████████████████

███ *See* Ex. 7, Caban Dep. Tr. at 75:12-22; Statement of Facts ¶ 31. ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ *See* Ex. 7 at 63:1-11; Ex. 3, Kushnick Dep. Tr. at 65:6-9; Statement of Facts ¶¶ 32, 34.

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████. *See* Ex. 3 at 47:15-49:4; *see also* Ex. 8, Micklow Rebuttal Report ¶ 109; Statement of Facts ¶ 38. ███████

█████████████████████████████████████

---

[2] Citations to "Ex." refer to exhibits to the Declaration of Gregory J. Apgar In Support of Defendant's Motion for Partial Summary Judgment of Non-Infringement of the '262 Patent, filed concurrently herewith.

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

Ex. 9, Kushnick Opening Report ¶ 83; *see* Ex. 3 at 47:15-19. As seen in the image,

███████████████████████████████████

EcoServices identifies the ████████████████████████████████

███████████ :

████████████████████████████████████████

Ex. 9 ¶ 88.

EcoServices did not seek any discovery from LHT or Pneumo. No documents have been produced regarding the programming of Cyclean's wash programs, the operation of the keypad, Cyclean's internal computing components, or how the keypad interacts with those components. EcoServices alleges that Cyclean infringes the asserted claims of the '262 Patent merely because: (1) ████

████████████████████████ and (2) ████████████

████████████ . *See* Ex. 9 ¶¶ 83-85, 88. But the '262 Patent describes the reliance on human "user" operators as the prior art. *See* '262 Patent at 3:38-55; Statement of Facts ¶¶ 14-16.

## III.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is

- 6 -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1  no genuine dispute as to any material fact and the movant is entitled to judgment as

2  a matter of law." Fed. R. Civ. P. 56(a). "At the summary judgment stage, facts must

3  be viewed in the light most favorable to the nonmoving party only if there is a

4  'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

5  "Only disputes over facts that might affect the outcome of the suit under the

6  governing law will properly preclude the entry of summary judgment. Factual

7  disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty*

8  *Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

9  Once "the moving party has carried its burden under Rule 56(c), its opponent

10  must do more than simply show that there is some metaphysical doubt as to the

11  material facts . . . . Where the record taken as a whole could not lead a rational trier

12  of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*,

13  550 U.S. at 380 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475

14  U.S. 574, 586-87 (1986)). "A party may not overcome a grant of summary

15  judgment by merely offering conclusory statements." *Moore U.S.A., Inc. v.*

16  *Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000) (internal quotations

17  omitted).

18  **IV.  ARGUMENT**

19  Cyclean does not contain the claimed "information detector" or "control

20  unit." ███████████████████████████████████████████████████

21  ████████ Statement of Facts ¶ 38. ██████████████████████████

22  ██████████████████████████████████████. *See* Ex. 3, Kushnick Dep. Tr. at

23  45:11-46:20; Statement of Facts ¶ 39. Nor is there any evidence ███████████

24  ████████████████████████████████████████████████████████████

25  ████ Statement of Facts ¶ 40.

26  The Court has ruled that the claims' "plain and ordinary meaning" applies.

27  There is simply no credible evidence from which a jury could conclude that

28  Cyclean's keypad and manual selection process satisfies the "information detector"

- 7 -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1  and "control unit" limitations of the asserted claims.

2  ### A. Literal Infringement and "Plain and Ordinary Meaning"

3  EcoServices accuses CAS of literally infringing the asserted claims. "Literal

4  infringement requires that each and every limitation set forth in a claim appear in an

5  accused product." *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312

6  (Fed. Cir. 2005). "[T]he motion of an accused infringer for judgment on the ground

7  of non-infringement of a patent may be granted where the patentee's proof is

8  deficient in meeting an essential part of the legal standard for infringement."

9  *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1373 (Fed. Cir. 2002).

10  There is a two-step process for analyzing a claim of literal infringement:

11  "The first step is a proper construction of the meaning and scope of the claims. . . .

12  The second step requires a comparison of the properly construed claim to the

13  accused device." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406

14  (Fed. Cir. 2004). While claim construction is a matter of law, the step of comparing

15  the product to the construed claim is a question of fact. *Id.*

16  In this case, the Court construed the asserted claims according to their "plain

17  and ordinary meaning." "[T]he ordinary and customary meaning of a claim term is

18  the meaning that the term would have to a person of ordinary skill in the art in

19  question at the time of the invention, i.e., as of the effective filing date of the patent

20  application." *Phillips,* 415 F.3d at 1313. "Importantly, the person of ordinary skill

21  in the art is deemed to read the claim term not only in the context of the particular

22  claim in which the disputed term appears, but in the context of the entire patent,

23  including the specification." *Id.* Thus, "the 'ordinary meaning' of a claim term is its

24  meaning to the ordinary artisan after reading the entire patent." *Id*. at 1321.

25  ### B. Cyclean Does Not Have the Claimed "Information Detector"

26  

27  

28  Ex. 3 at 45:11-46:20;

- 8 -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1   Statement of Facts ¶ 39. ███████████████████████████████████

2   ████████████████████████████. *See* Ex. 3 at 47:15-49:4; *see also* Ex. 8 ¶ 109;

3   Statement of Facts ¶ 38. ███████████████████████████████████

4   ███████ *See id.* ███████████████████████████████████████

5   ███████████████████████████████████████████████████████

6   ███████████████ *See id.* ███████████████████████████████

7   ████████████████████████████ *See* Ex. 3 at 46:16-47:14, 50:12-51:5;

8   Statement of Facts ¶ 40.

9   Claim 1 of the '262 Patent recites "an information detector configured to

10  gather information related to engine type."[3] Statement of Facts ¶ 20. Analyzing

11  whether Cyclean satisfies the plain and ordinary meaning of this term presents two

12  questions: (1) Is Cyclean's ███████ an "information detector"? And, if so, (2) does

13  the ███████ "gather information related to engine type"? The uncontroverted answer

14  to both questions is no.

15  The Court's *Markman* order does not address whether ███████ is an

16  information detector. Instead it applies a plain and ordinary meaning to the term,

17  which is the way that a person skilled in the art would understand it "after reading

18  the entire patent." Statement of Facts ¶¶ 26-27. *See Philips*, 415 F.3d at 1321.

19  EcoServices offers no credible evidence from which a reasonable jury could

20  conclude that Cyclean's ███████ can be the claimed information detector. CAS uses

21  an operator to determine the engine type to be cleaned.

22  First, neither the claims nor the specification of the '262 Patent provides

23  support for EcoServices' position. For example, the claim uses the word "detector."

24  It does not recite any human involvement. The specification exclusively uses

26  [3] Claim 14, the other asserted independent claim, recites "an information detector
27  for providing information identifying at least one of washing unit and engine type."
    For purposes of this motion, CAS's arguments that Cyclean has no information
28  detector apply equally to both claims.

- 9 -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1  "detection" to refer to an automated process without human involvement. Statement

2  of Facts ¶ 21. It discusses the use of RFID readers, bar code readers, or other "radio

3  frequency equipment capable of transmitting and receiving information." '262

4  Patent at 5:38-61, 6:35-43; Statement of Facts ¶ 22. ████████████████████████

5  ████████████████████████████████████ Statement of Facts ¶ 39. Nowhere does the

6  specification disclose an "information detector" requiring manual human input. *See*

7  Ex. 3 at 197:16-21 ("Q. The specification doesn't provide any example of an

8  operator manually inputting engine type; right? A. My understanding is—well, the

9  short answer is the specification doesn't say anything about that, that's correct.")

10  And it does not discuss the operator being involved in the "detection" process at all.

11  Consistent with its disclosures, the title of the patent is "***Automated Detection*** and

12  Control System and Method For High Pressure Water Wash Application and

13  Collection Applied to Aero Compressor Washing" (emphasis added). Statement of

14  Facts ¶ 11.

15      Moreover, the express goal of the patent is to minimize "the influence of the

16  human factor." '262 Patent at 3:65-67; Statement of Facts ¶ 18. It distinguishes

17  prior art systems requiring the operator to manually receive "information regarding

18  the engine type" and manually input system settings. '262 Patent at 3:44-55;

19  Statement of Facts ¶ 16. That is what Cyclean's operators do: ████████████████

20  ████████████████████████████████████████████████████████████████████████████

21  ████████████████████████████████ Statement of Facts ¶¶ 31-32, 34, 38.

22      Accordingly, the '262 Patent provides no support for the conclusion that a

23  person skilled in the art would interpret the claimed "information detector" to

24  include ████████████████████████████████████████████████████████████████████

25  ██████

26      Nor does EcoServices's expert Mr. Kushnick do so. His entire opinion that

27  Cyclean contains the claimed information detector is this statement:

28  ████████████████████████████████████████████████

- 10 -

UNREDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL



Ex. 9 ¶ 84.

Mr. Kushnick's Report provides no analysis or credible evidence supporting that conclusory statement. He says only that

*Id.* ¶ 85 (emphasis in original).

. Statement of Facts ¶ 38. It does not address—at all—whether a keypad is a detector.

Nor does Mr. Kushnick's Report address whether Cyclean's       "gathers information related to engine type.[4]       .
Statement of Facts ¶ 37. And, again,

*See* Ex. 3 at 47:15-49:4; Statement of Facts ¶ 38. Mr. Kushnick does not explain how

"gathering information related to engine type." That is because he cannot.

[5]

Due to the complete lack of analysis contained in Mr. Kushnick's Report and

---

[4] The same is true for claim 14's requirement that the information detector "identify[] at least one of washing unit and engine type." Mr. Kushnick provides no separate analysis of claim 14's information detector limitation. *See* Ex. 9 ¶¶ 102-03.
[5] Again, EcoServices chose not to seek any discovery from LHT (the developer of Cyclean) or                        . The complete lack of information in the record regarding the operation of              and Cyclean's internal computing components is therefore due to EcoServices's own inaction.

- 11 -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1  the absence of any disclosures in the '262 Patent supporting his position, there is no

2  credible evidence in the record that a person skilled in the art would consider

3  ███████████████ to fall within the scope of the claimed "information detector."

4  Mr. Kushnick's conclusory and unsupported statements to the contrary are not

5  sufficient to create a genuine dispute of material fact. Summary judgment of non-

6  infringement of the '262 Patent is therefore appropriate. *See Telemac Cellular*

7  *Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001) ("Broad

8  conclusory statements offered by Telemac's experts are not evidence and are not

9  sufficient to establish a genuine issue of material fact."); *Phillips Petroleum Co. v.*

10 *Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed. Cir. 1998) (affirming summary

11 judgment of non-infringement where the plaintiff's "expert declarations are wholly

12 conclusory, devoid of facts upon which the affiant[s'] conclusions, as experts, were

13 reached" (internal quotations omitted)); *see also Smith v. Garlock Equip. Co.*, 658

14 F. App'x 1017, 1024 (Fed. Cir. 2016) ("Expert testimony that fails to show how the

15 accused device meets a particular limitation cannot constitute substantial evidence

16 supporting a finding of literal infringement.").

17 **C.    There Is No Evidence that Cyclean Includes the Claimed Control Unit.**

18 That ████████████████████████████████████████████████ is

19 further confirmed by the "control unit" limitation. Claim 1 requires the control unit

20 to, among other things, "determine a washing program to be used as a function of

21 the information relating to engine type from a set of preprogrammed washing

22 programs." '262 Patent cl. 1[6]; Statement of Facts ¶ 24.

23 Again, it is ████████████████████████████████

24

25 _____

26 [6] Although the control unit limitation of asserted claim 14 uses different language, it similarly requires the control unit to determine "a washing program from a set of available washing programs. *See* '262 patent cl. 14; Ex. 3 at 195:12-196:12. As with the information detector limitation, Mr. Kushnick provides no independent analysis of claim 14's control unit limitation. *See* Ex. 9 ¶¶ 104-05.

27

28

- 12 -

1     ███████. Statement of Facts ¶ 38. But the asserted claims are system claims

2 requiring the *Cyclean* system to determine the wash program. *See* Ex. 3 at 79:4-15

3 (confirming "there has to be a separate determination that takes place inside the

4 control unit"). ████████████████████████████████████████████

5 ████████████████████████████████ *See* Ex. 10 ¶ 7; Ex. 11 at CAS004391;

6 Statement of Facts ¶ 40.

7     EcoServices points to no separate determination made by Cyclean's alleged

8 control unit. Nor can it. There is simply no evidence of a separate determination

9 made by the alleged control unit. ███████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████

12

13

14

15

16

17

18

19

20

21

22 Those pictures show ████████████████████████████████████████

23 ██████████ They do not show Cyclean itself automatically determining which

24 washing program to use.

25     In Paragraph 90, Mr. Kushnick paraphrases the claim language without

26 further elaboration: "the control unit of Cyclean receives information related to

27 engine type, determines a washing program to be used as a function of the

28 information related to engine type, and is configured to regulate the washing unit

- 13 -

1 according to washing parameters with the washing program used." This paragraph

2 likewise does not address how Cyclean, rather than the operator, determines a

3 washing program. Indeed, because EcoServices did not seek discovery from LHT,

4 there is no evidence (such as source code or schematics) describing the operation of

5 Cyclean's alleged control unit. EcoServices and Mr. Kushnick therefore do not—

6 and cannot—cite any evidence in support of their conclusory assertion that the

7 Cyclean system itself determines which washing program to run.[7]

8      The Federal Circuit has recognized the distinction between the automated

9 environment recited in the claims and a system, like Cyclean, requiring manual user

10 input. In *Eaton Corp. v. Rockwell International Corp.*, 323 F.3d 1332, 1342 (Fed.

11 Cir. 2003), the claim recited an "automatic mechanical vehicle driveline system"

12 having an "information processing unit" that received and processed inputs about

13 gear ratios, had a program for generating outputs for operating the driveline, and

14 means "to actuate said driveline system to effect engagement" of the gear ratios in

15 response to the outputs. The Federal Circuit reversed a judgment of infringement,

16 because the accused system required the driver to "push a button, indicating the

17 desire to shift gears" and then "move the lever to shift gears." *Id.* The Court

18 reasoned that the claim required the recited program—not the driver—to decide

19 when to shift gears and the means of the information processing unit—not the

20 driver—to shift the gears. *Id.* at 1342-43.

21      Similarly, the asserted claims of the '262 Patent require the system's control

22 unit to determine which washing program to run. The evidence shows only that

---

23 [7] While not necessary to CAS's motion given EcoServices' evidentiary
24 shortcomings, CAS's expert Dr. Micklow explains in detail that the technological
25 environment recited in the claims is entirely distinct from Cyclean's manual input
environment. *See* Ex. 8 ¶¶ 120-26. He specifically explains that a person skilled in
26 the art would recognize that those two environments require significantly different
27 programming and that EcoServices's position that Cyclean's manual selection input
satisfies the claims renders superfluous the requirement that the *control unit*
28 "determine a washing program to be used." *See id.*

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1     █████████████████████████████████████████████████████.

2 Cyclean therefore cannot infringe the asserted claims. Mr. Kushnick does not

3 analyze whether Cyclean itself makes the determination and therefore fails to

4 address a requirement of the asserted claims. His conclusory statements that

5 Cyclean has a "control unit" therefore do not create a genuine issue of material fact,

6 and summary judgment is appropriate. *See TechSearch*, 286 F.3d at 1373-74

7 (affirming grant of summary judgment of non-infringement where plaintiff's expert

8 "fails to recognize the native mode claim requirement, a predicate to conducting a

9 proper analysis of infringement"); *Schwing GmbH v. Putzmeister*

10 *Aktiengesellschaft*, 305 F.3d 1318, 1326 (Fed. Cir. 2002) (concluding that patentee

11 failed to present a genuine issue of material fact as to literal infringement where the

12 claim required an "annular extension" to overlap the side of a spring and patentee's

13 expert only considered overlap at the end, and not the side, of the accused spring);

14 *see also The Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1346-47

15 (Fed. Cir. 2008) (reversing denial of JMOL of non-infringement where claim

16 required a condition to be present prior to the product rotating, and patentee's

17 expert testified only about the product as it rotated).

18 **V.  CONCLUSION**

19     For the foregoing reasons, CAS respectfully requests that the Court grant

20 partial summary judgment that CAS does not infringe the asserted claims of the

21 '262 Patent.

22

23

24

25

26

27

28

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1   Dated:  March 30, 2018                    MAYER BROWN LLP

2                                             By: */s/ Stephen E. Baskin*

3                                                 Stephen E. Baskin

4

5                                             Dale J. Giali (SBN 150382)
                                              Elizabeth M. Burnside (SBN 258184)
6                                             Stephen E. Baskin (*pro hac vice*)
                                              Peter O. Schmidt (*pro hac vice*)
7                                             Gregory J. Apgar (*pro hac vice*)
                                              Canek Acosta (SBN 301901)
8
                                              *Attorneys for Defendant/Counter-*
9                                             *Plaintiff*
10                                            *Certified Aviation Services, LLC*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

**Certificate of Service**

I, Stephen E. Baskin, hereby certify that on March 30, 2018, I filed the within and foregoing Defendant's Motion for Partial Summary Judgment of Non-Infringement of the '262 Patent with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record email notification of such filing:

Leanna Costantini
costantinil@gtlaw.com
GREENBERG TRAURIG
3161 Michelson Drive, Suite 1000
Irvine, CA 92612
Telephone:  (949) 732-6804
Facsimile:   (949) 732-6501

Ronald J. Pabis
pabisr@gtlaw.com
Stephen K. Shahida
shahidas@gtlaw.com
Patrick J. McCarthy
mccarthyp@gtlaw.com
Myomi T. Coad
coadm@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
Telephone:  (202) 331-3100
Facsimile:   (202) 331-3101

*Attorneys for Plaintiff EcoServices, LLC*

Dated:  March 30, 2018             MAYER BROWN LLP

By: */s/ Stephen E. Baskin*
Stephen E. Baskin