REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**MAYER BROWN LLP**

Dale J. Giali (SBN 150382)
dgiali@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Stephen E. Baskin (*pro hac vice*)
sbaskin@mayerbrown.com
Peter O. Schmidt (*pro hac vice*)
pschmidt@mayerbrown.com
Canek Acosta (SBN 301901)
cacosta@mayerbrown.com
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Gregory J. Apgar (*pro hac vice*)
gapgar@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

Attorneys for Defendant/Counter-Plaintiff
Certified Aviation Services, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| EcoServices, LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>Certified Aviation Services, LLC,<br><br>        Defendant. | Case No. 5:16-cv-01824-RSWL-SP<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT RICHARD LETTIERE**<br><br>Trial Date: June 26, 2018 |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 1, 2018 at 10:00 a.m. before the Honorable Ronald S.W. Lew of the United States District Court for the Central District of California, Courtroom TBD, First Street Courthouse, 350 W. First Street, Suite 4311, Los Angeles, CA 90012, Defendant Certified Aviation Services, LLC, will and hereby does move to exclude the testimony of Plaintiff EcoServices, LLC's damages expert Richard Lettiere, pursuant to Fed. R. Evid. 702 and *Daubert*.

This motion is made on the grounds that the expert opinions of Richard Lettier on damages set forth in his report in this action are inadmissible because they are unreliable. This motion is based on this written notice, the attached Memorandum of Points and Authorities, and all the records, documents, pleadings, and papers on file or to be filed in this action, arguments of counsel, and any other matters that properly may come before the Court for its consideration.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 23, 2018.

Dated: March 30, 2018                    Respectfully submitted,


                                         MAYER BROWN LLP


                                         */s/  Stephen E. Baskin*
                                         By: Stephen E. Baskin


                                         *Attorney for Defendant/Counter-Plaintiff*
                                         Certified Aviation Services, LLC

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

I.     PRELIMINARY STATEMENT ........................................................................ii
II.    BACKGROUND .............................................................................................. 1
    A.   The '860 Patent.......................................................................................... 1
    B.   The '262 Patent.......................................................................................... 2
    C.   The Accused Cyclean System .................................................................. 2
    D.   Plaintiff's EcoPower System .................................................................... 4
    E.   Mr. Lettiere's Opinion .............................................................................. 4
III.   LEGAL STANDARD ..................................................................................... 5
    A.   The *Daubert* Standard ............................................................................... 5
    B.   Reasonable Royalty Damages ................................................................... 6
IV.    ARGUMENT................................................................................................... 7
    A.   Mr. Lettiere's Reliance on ████████ Renders His Opinion Highly
         Speculative and Unreliable. ...................................................................... 8
        1.   ████████ are Irrelevant to the Hypothetical Negotiation .................... 8
        2.   There is no evidence of ████████ .......................................................... 9
        3.   Mr. Lettiere's proposed ████ royalty ████ .................. 10
    B.   Mr. Lettiere's Opinion Is Unreliable Even Without Regard to His
         Improperly Attributing ████████ ............................ 12
        1.   The Parties Could Not ████████ ........................ 12
        2.   Mr. Lettiere Has Not Adequately Explained How He  Calculated His
             Royalty.......................................................................... 13
V.     CONCLUSION ............................................................................................ 17

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER
SEAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bourjaily v. United States*,
483 U.S. 171 (1987) ......................................................................................... 6

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ...................................................................................... 5, 6

*Dynetix Design Sol'ns, Inc. v. Synopsis, Inc.*,
No. C 11-05973, 2013 WL 4538210 (N.D. Cal. Aug. 22, 2013)....................... 10

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018) ............................................................. 7, 9, 14, 16

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ...................................................................... 16

*Garretson v. Clark*,
111 U.S. 120 (1884) ........................................................................................ 16

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................. 8

*Golden Bridge Tech. v. Apple Inc.*,
No. 5:12-cv-04882, 2014 WL 4057187 (N.D. Cal. June 1, 2014)..................... 16

*Innogenetics, N.V. v. Abbott Lab*,
512 F.3d 1363 (Fed. Cir. 2008) ........................................................................ 6

*Koninklijke Philips Elecs. N.V. v. Zoll Lifecor Corp.*,
Civ. No. 12-1369, 2017 WL 3140798 (W.D. Pa. July 25, 2017)....................... 10

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1998) ......................................................................................... 6

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.,
Harris Press & Shear Div.*,
895 F.2d 1403 (Fed. Cir. 1990) ...................................................................... 11

*Mahurkar v. C.R. Bard, Inc.*,
79 F.3d 1572 (Fed. Cir. 1996) .......................................................................... 8

- ii -

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*MiiCs & Partners, Inc. v. Funai Elec. Co.*,
   Civ. No. 14-804-RGA, 2017 WL 6268072 (D. Del. Dec. 7, 2017) .................... 14

*Monolithic Power Sys., Inc. v. O2 Micro Int'l. Ltd.*,
   476 F. Supp. 2d 1143 (N.D. Cal. 2007).......................................................... 9, 11

*Oracle Am., Inc. v. Google Inc.*,
   798 F. Supp. 2d 1111 (N.D. Cal. 2011)..............................................8, 11, 12, 13

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
   750 F.2d 1552 (Fed. Cir. 1984) .......................................................................... 7

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ..................................................................... 7, 10

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007) ........................................................................ 14

*Virnetx, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014) ..................................................................... 6, 16

*Wang Labs., Inc. v. Toshiba Corp.*,
   993 F.2d 858 (Fed. Cir. 1993) .................................................................7, 8, 10

**Statutes**

35 U.S.C. § 111(b) ............................................................................................... 13

35 U.S.C. § 119(e) ............................................................................................... 13

35 U.S.C. § 284 ...................................................................................................... 6

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................ 5, 6

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Plaintiff EcoServices, LLC ("EcoServices") alleges that defendant Certified Aviation Services, LLC ("CAS") infringes two patents: U.S. Patent Nos. 5,868,860 ("the '860 Patent") and 9,162,262 ("the '262 Patent"). Each patent relates to specific, but different aspects of systems for washing turbine engines. The accused product is Cyclean, an engine washing system non-party ███████████ ██████ developed in 2007. CAS is the exclusive supplier of Cyclean services in North America. Companies other than CAS provide Cyclean services outside of North America. CAS is merely a supplier of the system–at no time was it involved in the system's design or development.

EcoServices's damages expert Richard Lettiere ("Mr. Lettiere") opines that CAS owes a reasonable royalty of ████████████████████  That opinion is unreliable and significantly flawed for at least the following reasons: 1) Mr. Lettiere's proposed ██████████ royalty ███████████████████████ ████████; 2) The ████████████ royalty is not based on ████████████ ████████; 3) Mr. Lettiere improperly relies on and misapplies ████████████ that are not relevant in determining a reasonable royalty in this case; and 4) Mr. Lettiere uses a single, improper time frame ████████████ for damages calculations for both patents–even though the '860 Patent expired in 2016 and the '262 Patent did not issue until 2015. Mr. Lettiere's opinion is further inaccurate by attributing ████████████████████████████████

## II.   BACKGROUND

### A.   The '860 Patent

The '860 Patent issued on February 9, 1999 and expired on May 31, 2016. It is entitled "Method of Washing Objects, Such as Turbine Compressors." According to the patent, the alleged invention "is implemented by spraying small quantities of liquid onto and through the object to be washed." '860 Patent at 1:66-2:1 (Ex. F).

- 1 -

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

The asserted claims recite a method of washing turbine compressors using a liquid having a specified pressure, particle velocity, particle size, and flow rate. *See id.* Cl. 1. The stated goal of the patent was to provide "an effective compressor wash" while "reduc[ing] the use of liquids that present a hazard to health and to the environment." *Id.* at 1:43-50.

## B. The '262 Patent

The '262 Patent issued on October 20, 2015 and expires July 14, 2028. The application for the '262 patent (U.S. App. No. 13/347,017) was filed on January 10, 2012 and claims priority to a November 28, 2006 provisional application (No. 60/861,401). The '262 Patent is not related to the '860 Patent, and the two patents name different inventors.

The '262 Patent is entitled "Automated Detection and Control System and Method For High Pressure Water Wash Application and Collection Applied to Aero Compressor Washing." It states that the prior art includes a number of "systems for cleaning engines [that] provide very versatile and effective cleaning methods." '262 Patent at 2:23-24, 3:38-41 (Ex. L). The patent states that a problem with existing washing systems is that they "are all dependent to some extent upon an operator manually making certain adjustments and/or system settings," such as setting the water pressure and keeping track of the wash time *Id.* at 3:41-55. The patent further explains that "there is always a risk that the human factor jeopardizes the result," and states that it would be beneficial "if the influence of the human factor is minimized as much as possible." *Id.* at 3:65-67. The asserted claims recite a washing system having an "information detector" that provides information about the type of engine to a "control unit" that, among other things, determines a washing program based on the detected engine type. *Id.* Cl. 1.

## C. The Accused Cyclean System

EcoServices accuses the Cyclean engine washing system of infringing both asserted patents. Cyclean was developed by non-party ██████████████.

- 2 -

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   Defendant CAS is LHT's exclusive service provider of Cyclean washes in North

2   America. CAS was not involved in any aspect of the design or development of

3   Cyclean. It leases the equipment from LHT to perform the washes.

4       In April 2010, ███████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████

7   ███████████████████████ and B ███████████ .

8   ████████████████████████████████████████████████████████

9   ██████ *E.g.*, Ex. A § 2.2 and Att. F. ████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████ Ex. A at Att. A; Ex. C (Lee Dep. Tr.) at 85:5-21. ███

14  ████████████████████████████████████████████████████████

15  ████████████████████████████ Ex. B § 3.2 and Annex A § 17.2 ████████████

16  ████████████████████████████████████████████████████████

17  ████████████ *Id.* § 3.1 and Annex A § 17.1.

18      Through the end of 2016, CAS performed ██████ Cyclean washes. Ex. D,

19  (Lettiere Report with Revised Appendices) Rev. App. 7. Of those, ██████████

20  ████████████████████████████████████████████ Ex. E (Bennis

21  Report), App. D. ████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ██████ Ex. C at 94:6-95:22. ██████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ██████ Ex. D., Rev. App. 7.

27

28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**D.     Plaintiff's EcoPower System**

Plaintiff EcoServices offers its own engine washing system called EcoPower. In forming his opinion, Mr. Lettiere relies on ███████████████████████████████ ██████████████████████████████████████████████ ████████████████ *See, e.g.* Ex. D § 10.1.1; Ex. G (████████ – Welch Ex. 169). ███████████████████████████████████████████████ ██████████████████████████████████ *See* Ex. D § 10.1.1; Ex. G §§ 2.1, Ex. H (██████████████████████████████), Annex A at A-6; Ex. I (Welch Depo) at 40:4-41:18. ███████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████ *See*; Ex. G §§ 2.1, 3.5; Ex. H, Annex A at A-6; Ex. J (████████████████████████), Recital E & Schedules 1-2.

Mr. Lettiere opines that █████████████████████████████ ███████ Ex. D § 10.1.1 He does not discuss ██████████████████ ████████████████████████████████████████████, or ███████████████████████████████████████████████ ██████████

**E.     Mr. Lettiere's Opinion**

Mr. Lettiere opines that █████████████████████ is the appropriate form of damages in this case. Specifically, he opines that █████████ ███████████████████████████████████████████████ ████████████ Ex. D § 12, Rev. App. 7. Mr. Lettiere opines that ████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████ Ex. D §§ 9.1-9.2. Mr. Lettiere maintains this opinion, despite the '262 Patent not issuing four years later on October 20, 2015.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    Nor does Mr. Lettiere ████████████████████████████

2    ████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████

4    ██████████████████████████████ Ex. K (Lettiere Depo) at 109:25-110:8. Mr.

5    Lettiere cites ███████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    █████████ Ex. D § 10.1.1. 26. Mr. Lettiere then testified that the ████████

8    ████████████████████████████████████████ Ex. K at

9    16:12-15. Mr. Lettiere has formed no opinion on ██████████████

10   ████████████████████████████ Ex. K at 12:9-16, 15:25-

11   16:9, 111:10-20.

12   To justify ██████████████████████ Mr. Lettiere speculates

13   that ████████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ████████████████████████████████████████ Ex. D §

16   10.3.3, Rev. App. 7. To appropriate ████████████████████ is

17   improper. Mr. Lettiere makes this flawed assumption even though ████████

18   ████████████████████████████████████████████████████

19   ██████████████████ and in fact was never sought in discovery by EcoServices.

20   Ex. D § 10.3.3.

21   **III.    LEGAL STANDARD**

22        **A.    The *Daubert* Standard**

23   Expert testimony is admissible pursuant to Federal Rule of Evidence 702 if it is

24   relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589

25   (1993). Testimony is relevant if it will assist the trier of fact in understanding a fact

26   at issue. *Id.* at 591-92. As to the reliability requirement, the court must act as a

27   "gatekeeper" to exclude "junk science" by making a preliminary determination that

28   the expert's testimony is reliable. *Id.* Expert testimony must be the product of: (1)

- 5 -

1  sufficient facts or data, (2) reliable principles and methods, and (3) the reliable

2  application of those principles and methods to the facts of the case. Fed. R. Evid.

3  702. "The district court's 'gatekeeping obligation' applies to all types of expert

4  testimony." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014).

5      The burden of establishing the admissibility of expert testimony falls on the

6  party seeking its admission. *See Bourjaily v. United States*, 483 U.S. 171, 175-76

7  (1987). The court must determine whether the testimony has "a reliable basis in the

8  knowledge and experience of [the relevant] discipline." *Kumho Tire Co., Ltd. v.*

9  *Carmichael*, 526 U.S. 137, 149 (1998) (quoting *Daubert*, 509 U.S. at 592). An

10  expert must do more than merely list elements and then conclude with a stock

11  phrase on the ultimate issue. *Innogenetics, N.V. v. Abbott Lab*, 512 F.3d 1363, 1373

12  (Fed. Cir. 2008). Unsupported and conclusory testimony based on an expert's say-

13  so do not support a finding of reliability—"nothing in either *Daubert* or the Federal

14  Rules of Evidence requires a district court to admit opinion evidence that is

15  connected to existing data only by the *ipse dixit* of the expert." *Kumho*, 526 U.S. at

16  157.

17      **B.**    **Reasonable Royalty Damages**

18      "Upon finding for the claimant the court shall award the claimant damages

19  adequate to compensate for the infringement, but in no event less than a reasonable

20  royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. A

21  reasonable royalty is the form of damages EcoServices seeks in this case.

22      "The most common method for determining a reasonable royalty is the

23  hypothetical negotiation approach, which attempts to ascertain the royalty upon

24  which the parties would have agreed had they successfully negotiated an agreement

25  just before infringement began." *Virnetx,* 767 F.3d at 1326 (quotations omitted).

26  Here, Mr. Lettiere ████████████████████████████████████

27  ████████████████████████████████████████████████

28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1 ███████████████████████████████████████████████████████

2 ███████████████████████

3 "A reasonable royalty is the amount that 'a person, desiring to manufacture[,

4 use, or] sell a patented article, as a business proposition, would be willing to pay as

5 a royalty and yet be able to make[, use, or] sell the patented article, in the market, at

6 a reasonable profit.'" *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed.

7 Cir. 1993) (alterations in original) (quoting *Trans-World Mfg. Corp. v. Al Nyman &*

8 *Sons, Inc.,* 750 F.2d 1552, 1568 (Fed. Cir. 1984)). Here, Mr. Lettiere

9 ████████████████████████████████████████████████████████

10 ███████████████████████████

11 "To be admissible, expert testimony opining on a reasonable royalty must

12 'sufficiently [tie the expert testimony on damages] to the facts of the case. If the

13 patentee fails to tie the theory to the facts of the case, the testimony must be

14 excluded.'" *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879

15 F.3d 1332, 1349 (Fed. Cir. 2018) (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632

16 F.3d 1292, 1315 (Fed. Cir. 2011). Mr. Lettiere does none of this, as discussed

17 below.

18 **IV. ARGUMENT**

19 Mr. Lettiere's opinions are inadmissible for a number of reasons. First, he

20 improperly speculates as to ███████████████████████████████

21 and uses that speculation to ██████████████████████████████

22 ██████ He does not have any financial records ███████ to support is opinion.

23 Second, Mr. Lettiere's proposed ██████████████ royalty results from an improper

24 conclusion that █████████████████████████████████████████

25 ██████████████████████████████████████████████████████████

26 ████████████████████ And in applying that ███████████ approach, Mr.

27 Lettiere fails to explain ███████████████████████████████

28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**A.    Mr. Lettiere's Reliance on** ██████████ **Renders His Opinion Highly Speculative and Unreliable.**

**1.** ██████████ **are Irrelevant to the Hypothetical Negotiation.**

CAS and ███ are completely separate, unrelated companies. CAS is merely ████████████████████████████████████████████ Most of the accused washes were done pursuant to ████████████████████████████ ████████  ████████████████████████████████████████ ████████████

Mr. Lettiere's reliance on ████ is unsupported. ████ is not a party to the case. Thus, CAS is the party at the hypothetical negotiation, not ████. *See Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1116 (N.D. Cal. 2011) ("A reasonable royalty typically is determined from the "hypothetical results of hypothetical negotiations between the patentee and infringer (both hypothetically willing) at the time infringement began." (quoting *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1579 (Fed. Cir. 1996)). He admits that ████████████████████ ████████████████████████████ *See* Ex. D § 9.2. Instead, ████████████ ████████████████████████████ *Id.* The purpose of the hypothetical negotiation is to find the amount that the patentee (EcoServices) and accused infringer (CAS) would have agreed upon, while still allowing the accused infringer "to make a reasonable profit." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Thus, the relevant profits considered are CAS's—████████. Any accused infringer, like CAS, would consider several factors as they apply to its operations, including expected profits, in determining "the amount that [it], as a business proposition, would be willing to pay as a royalty [to use] the patented article, in the market, at a reasonable profit." *Wang Labs.*, 993 F.2d at 870 (quotations omitted).

- 8 -

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1       Thus, as ███ is not a party and is completely separate company from CAS,

2 Mr. Lettiere's inclusion of estimated LHT financials in reaching his opinion renders

3 it significantly flawed.

4         **2.**      **There is no evidence of LHT's revenues or profits.**

5       Beyond being irrelevant, ████████████████ are unknown. Thus, Mr.

6 Lettiere's reliance on them is speculative and not based on any facts.

7       "[A]n expert report on damages, including a reasonable royalty analysis, may

8 not rely on unreasonable inferences or resort to mere speculation or guess."

9 *Monolithic Power Sys., Inc. v. O2 Micro Int'l. Ltd.*, 476 F. Supp. 2d 1143, 1154-55

10 (N.D. Cal. 2007) (quotation omitted). Here, Mr. Lettiere assumes that ████████

11 ████████████████████████████████████████████ Ex. D. §

12 10.3.3. No evidence supports that assumption. ███ is not a party to this suit.

13 EcoServices at no time sought discovery from ██ in this case. ████████████

14 ████████████████████ even if relevant–are unknown. Nevertheless, in

15 forming his opinions, Mr. Lettiere relies on ██████████████████████████

16 ████████████████████████████████████████████████

17 *See id.*; Ex. K at 69:10-24, 135:7-136:9. Mr. Lettiere cannot form his opinion based

18 on a guess as to ████████████████, especially when they have no

19 relevance to the underlying issues. *See Monolithic Power Sys.*, 476 F. Supp. 2d at

20 1155 ("O2 Micro, as the patent holder, bears the burden of proving its damages. If

21 MPS refused to produce information that Mr. Bratic required to determine the

22 reasonable royalty, then O2 Micro needed to get that information, if necessary

23 through a motion to compel.").

24       As result, no ***facts*** underlie Mr. Lettiere's speculative assumption. It is

25 therefore inadmissible. *See Exmark.*, 879 F.3d at 1349 ("To be admissible, expert

26 testimony opining on a reasonable royalty must "sufficiently [tie the expert

27 testimony on damages] to the facts of the case. If the patentee fails to tie the theory

28

- 9 -

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1 to the facts of the case, the testimony must be excluded." (quoting _Uniloc USA,_ 632

2 F.3d at 1315)))

3     Mr. Lettiere's proposed royalty calculation should therefore be excluded

4 because there is no basis for his unsupported assertions. _See_, _e.g._, _Dynetix Design_

5 _Sol'ns, Inc. v. Synopsis, Inc._, No. C 11-05973, 2013 WL 4538210, at *4 (N.D. Cal.

6 Aug. 22, 2013) (excluding damages expert who assumed that "one reasonable

7 starting place" for the royalty rate would be half of the infringer's gross profits);

8 _Koninklijke Philips Elecs. N.V. v. Zoll Lifecor Corp._, Civ. No. 12-1369, 2017 WL

9 3140798, at *4 (W.D. Pa. July 25, 2017) (excluding expert testimony regarding a

10 fifty-percent apportionment rate where the expert did not "articulate any precise

11 basis for the 50% reduction" and the 50% number "was an entirely subjective

12 percentage that Mr. Jarosz applied based on materials he had reviewed").

13         **3.    Mr. Lettiere's proposed $400 royalty exceeds CAS's profits.**

14 Mr. Lettiere considers ████████████████████ in his ██████

15 ████████ and ████████████ analyses. Ex. D. §§ 10.3.2, 11.1.8. He

16 acknowledges that both of those approaches to determining a reasonable royalty

17 aim to leave the accused infringer with a profit, as required by law. _Id._ §§ 10.3

18 (quoting Slottje, _Economic Damages in Intellectual Property_) & 11.1.15 (quoting

19 _Georgia-Pacific_ Factor 15); _see also Wang Labs._, 993 F.2d at 870 (stating a

20 reasonable royalty is the amount the accused infringer "would be willing to pay as a

21 royalty and yet be able to make[, use, or] sell the patented article, in the market, at a

22 reasonable profit" (quotations omitted)). But Mr. Lettiere's proposed ███ royalty

23 does not do so: ████████████████████████████[1] It would therefore

24 result in CAS losing money on Cyclean.

25

26

---

27 [1] CAS disputes that ███ is the proper measure of ████████████████ But

28 CAS accepts Mr. Lettiere's ██████████ calculations for the purposes of this
   motion.

Mr. Lettiere's Report does not address the fact that his royalty exceeds CAS's total Cyclean profits. Instead, Mr. Lettiere testified at his deposition that █████ ████████████████████████████████████████████████████ ████████████████████████████████████████ Ex. K at 76:17-78:4; *see id.* at 68:4-69:9, 70:21-71:6, 73:6-74:17. That assumption is both legally improper and entirely speculative. *See Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., Harris Press & Shear Div.*, 895 F.2d 1403, 1408 (Fed. Cir. 1990) (affirming award of nominal damages where the "sparse" record rendered plaintiff's expert's "opinion that [defendant] would agree to pay a royalty in excess of what it expected to make in profit…, in light of all the evidence in this case, absurd"). No company would agree to operate its business at a loss. It belies simple common sense.[2]

Mr. Lettiere's ██████ royalty reflects an inflated value based on improperly attributing ████████████████████████ *See Oracle,* 798 F. Supp. 2d at 1117 (excluding damages opinion for improperly "injecting . . . into the bargaining room" a party who was neither the patentee nor the accused infringer at the time of the hypothetical negotiation). Mr. Lettiere's "mere speculation and guess" that ████████████████████████████████████████████████ therefore underlies his entire opinion that ██████████ is the appropriate royalty. *Monolithic Power Sys.*, 476 F. Supp. 2d at 1154-55. Mr. Lettiere's testimony therefore cannot support an award of ██████████ when it is in excess of CAS's profits. The Court should therefore exclude his opinion that ████ is the appropriate ██████ royalty in this case.

---

[2] Prior to ████████████████████████████████████████████████ ████████████████████████████████████████ Ex. C at 60:21-61:9. Thus, there is evidence indicating that CAS was closely monitoring its financials in deciding which engine washing system to use.

**B.    Mr. Lettiere's Opinion Is Unreliable Even Without Regard to His Improperly Attributing** ███████

Mr. Lettiere improperly opines that ███████████ He further fails to █████ ██████████████████████ Nor can he. The incorrect ████████ and ██████████ are further, independent reasons to exclude his report.

**1.    The Parties Could** ███████████

Mr. Lettiere opines that ████████████ ██████ He further opines that ████████████ ███████████████ This is despite the fact that the '860 Patent expired in 2016. And, importantly, the '262 Patent, which is unrelated to the '860 Patent, was not even filed until 2012 and issued three years later in 2015.

"The hypothetical negotiation must be scheduled as of *the time infringement began.*" *Oracle*, 798 F. Supp. 2d at 1116 (emphasis in original). For the '262 Patent, the alleged infringement began when the '262 Patent issued in October 2015. Indeed, Mr. Lettiere concedes that, ████████████ ██████████████████████████ Ex. K at 16:19-25.

Mr. Lettiere offers no basis for his conclusion that ████████████ ██████████████ In fact, the parties could not do so. The '262 Patent and its asserted claims did not exist in any form in 2010. And there is no basis to conclude that it would nonetheless be included █████ ████████████

The '262 Patent is unrelated and not in the same "family" as the '860 Patent. The two patents are directed to entirely different features of an engine-washing system and seek to solve different problems. The '860 Patent seeks to reduce the use of liquid in an engine wash and claims a method of washing turbine

- 12 -

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   compressors using a washing liquid having a specific pressure, particle size, particle

2   velocity, and flow rate. The '262 Patent, meanwhile, is not directed at improving

3   the process of injecting liquid into the compressor but, instead, claims to automate

4   the process through use of an "information detector" and "control unit" to reduce

5   "the human factor" involved in the wash process.

6       The only support Mr. Lettiere provides for his ▮▮▮▮▮▮ approach is that a

7   provisional patent application to which the '262 Patent claims priority was filed in

8   2006. Ex. D § 9.1. But a provisional application cannot mature into an issued

9   patent. Obtaining an issued patent based on a provisional application requires the

10  filing of a separate application within one year. 35 U.S.C. § 111(b); 35 U.S.C. §

11  119(e). And, most interestingly, the provisional application on which Mr. Lettiere

12  relies led to U.S. Patent No. 8,197,609, which the '262 Patent claims priority to,

13  and which EcoServices withdrew from this case for lack of infringement basis.[3]

14      Thus, in 2010, the parties would have had no basis to include the '262 Patent—

15  which did not exist in any form—▮▮▮▮▮▮▮▮▮▮▮ Because the parties

16  could not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the

17  Court should exclude, on these grounds as well, his reasonable-royalty opinion. *See*

18  *Oracle*, 798 F. Supp. 2d at 1116 (excluding testimony of expert who applied the

19  wrong hypothetical negotiation date).[4]

20           **2.    Mr. Lettiere Has Not Adequately Explained How He Calculated His ▮▮▮ Royalty.**

21      Finally, Mr. Lettiere's methodology in applying his ▮▮▮▮▮ approach is

22  also unreliable, because he never identifies ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23

[3] The '609 Patent is directed to the collection and analysis of waste liquid – a different feature than the '262 patent's information detector.

[4] The more appropriate analysis would have been to ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which takes into consideration the date the '262 Patent issued.

- 13 -

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1

2       Significantly, he admitted at his deposition that ███████████████

3       ███████████████████ Ex. K at 15:25-16:9, 111:10-20. Mr. Lettiere's ██████

4       ██ royalty therefore cannot represent the average of the value of the '860 and

5       '262 Patents. That is because Mr. Lettiere has no opinion on ███████████

6       ██████████████████████████████████████████████

7       The ████ cannot represent ████████████████████████████

8       ████████████████████ Thus, Mr. Lettiere has failed to identify,

9       either in his Report or at his deposition, a critical piece of information: ███████

10      ███████████████ Instead, he simply applies it to all accused washes,

11      regardless of whether the washes were performed before the '262 Patent issued, or

12      alternatively, after the '860 Patent expired. Such an analysis is unreliable and

13      should be excluded. *See MiiCs & Partners, Inc. v. Funai Elec. Co.*, Civ. No. 14-

14      804-RGA, 2017 WL 6268072, at *6 (D. Del. Dec. 7, 2017) ("Mr. Hampton's

15      royalty rate assigns to each accused product the same per-unit royalty regardless of

16      how many patents that product is accused of infringing. Thus, his analysis results in

17      a damages calculation that overcompensates Plaintiffs and does not appropriately

18      reflect the inventions' footprints in the marketplace."); *Exmark*, 879 F.3d at 1349

19      (excluding testimony of expert who opined that the parties would agree to a 5%

20      royalty rate without "explain[ing] how she calculated" that rate).[5]

---

[5] Moreover, should the jury return a verdict finding CAS liable for infringement of just one of the two asserted patents, Mr. Lettiere's opinion will be unhelpful to the jury in determining what damages are owed for the infringed patent. *Cf. Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007) ("In a situation—such as this one—where the jury rendered a single verdict on damages, without breaking down the damages attributable to each patent, the normal rule would require a new trial as to damages."). His ███████████████ is fatal, and there are no facts in the record to accomplish ███████████████

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  Not only does Mr. Lettiere fail to explain *what* the ███ represents, he also

2  does not explain *how* he derived it. Although not contained in his report, Mr.

3  Lettiere attempted to defend his ██████████ approach at his deposition by

4  stating that ████████████████████████████████████████

5  ████████████████ Ex. K at 17:8-21; *see also id.* at 18:20-19:7; 112:2-22.

6  But Mr. Lettiere has not performed ██████████████ necessary to invoke such an

7  approach.

8  Under his ██████████████ Mr. Lettiere opines that ████████████

9  ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 However, this is significantly flawed for at least the following reasons. First,

12 ████████████████████ is irrelevant to CAS and cannot be applied to what CAS

13 would have agreed to in a hypothetical negotiations. Indeed, as stated above, CAS

14 ████████████████████████████ because it didn't make financial

15 sense. And, second, ████████████████ was not a patent license; it is a

16 ████████████████████████████████

17 These ██████████ also cover much more than just a license for the '860 and

18 '262 Patents. For example, as explained above, the ██████████████████████

19 ████████████████████████████████████████████████

20 ████████ And ████████████████████████████████████

21 ████████████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████

24 Finally, the '860 and '262 Patents also cover different features of the wash

25 process. The '860 Patent is directed to the properties of the water that is injected

26 into the compressor. And the '262 Patent is directed to detecting engine type and

27 automatically determining a wash program for that engine. Collectively, those two

28 patents do not cover an entire engine wash system. "When the accused technology

- 15 -

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  does not make up the whole of the accused product, apportionment is required. . . .

2  In such cases, the patentee must 'give evidence tending to separate or apportion the

3  [infringer]'s profits and the patentee's damages between the patented feature and

4  the unpatented features, and such evidence must be reliable and tangible, and not

5  conjectural or speculative.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299,

6  1309-10 (Fed. Cir. 2018) (quoting *Garretson v. Clark*, 111 U.S. 120 (1884)).

7  Mr. Lettiere performs no calculations to █████████████████

8  ████████████████████████████████████████████

9  ██████ Instead, he simply notes ████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12 ████████████████████████████████████████████

13 ██████ Ex. D § 10.1.1.

14 Such cursory treatment of the apportionment requirement is improper and

15 fails to meet the standard for admissibility. *See, e.g., Exmark*, 879 F.3d at 1349-50

16 (holding that district court erred by not excluding testimony of damages expert who

17 described the advantages and importance of the asserted patent but did not analyze

18 the degree to which non-patented elements impacted the value of the accused

19 product and impacted her royalty rate); *Virnetx,* 767 F.3d at 1326-27 ("[I]t is not

20 enough to merely show that the [patented feature] is viewed as valuable, important,

21 or even essential to the use of the [overall product]." (quotation omitted)); *Golden*

22 *Bridge Tech. v. Apple Inc.*, No. 5:12-cv-04882, 2014 WL 4057187, at *1-2 (N.D.

23 Cal. June 1, 2014) (excluding expert testimony that "improperly and *sub silencio*

24 allocated the entire value of Apple's portfolio licenses with Ericsson and Nokia to a

25 tiny subset of a subset of a subset of a subset of the patents and standards in those

26 portfolios").

27

28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## V. CONCLUSION

For the foregoing reasons, CAS requests that the Court exclude the opinions of EcoServices's damages expert Richard Lettiere.

Dated: March 30, 2018

MAYER BROWN LLP

By: */s/ Stephen E. Baskin*
       Stephen E. Baskin

Dale J. Giali (SBN 150382)
Elizabeth M. Burnside (SBN 258184)
Stephen E. Baskin (*pro hac vice*)
Peter O. Schmidt (*pro hac vice*)
Gregory J. Apgar (*pro hac vice*)
Canek Acosta (SBN 301901)

*Attorneys for Defendant/Counter-Plaintiff*
*Certified Aviation Services, LLC*

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## Certificate of Service

I, Stephen E. Baskin, hereby certify that, on March 30, 2018, I filed the within and foregoing Defendant's Motion to Exclude the Testimony of Plaintiff's Damages Expert Richard Lettiere with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record email notification of such filing:

Leanna Costantini
costantinil@gtlaw.com
GREENBERG TRAURIG
3161 Michelson Drive, Suite 1000
Irvine, CA 92612
Telephone: (949) 732-6804
Facsimile: (949) 732-6501

Ronald J. Pabis
pabisr@gtlaw.com
Stephen K. Shahida
shahidas@gtlaw.com
Patrick J. McCarthy
mccarthyp@gtlaw.com
Myomi T. Coad
coadm@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100
Facsimile: (202) 331-3101

*Attorneys for Plaintiff EcoServices, LLC*

Dated: March 30, 2018        MAYER BROWN LLP

By: */s/ Stephen E. Baskin*
        Stephen E. Baskin