REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1

MAYER BROWN LLP

2

Dale J. Giali (SBN 150382)
dgiali@mayerbrown.com

3

350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503

4

Telephone: (213) 229-9500
Facsimile: (213) 625-0248

5

6

Stephen E. Baskin (*pro hac vice*)
sbaskin@mayerbrown.com
Peter O. Schmidt (*pro hac vice*)

7

pschmidt@mayerbrown.com
Canek Acosta (SBN 301901)

8

cacosta@mayerbrown.com
1999 K Street, N.W.

9

Washington, DC 20006
Telephone: (202) 263-3000

10

Facsimile: (202) 263-3300

11

Gregory J. Apgar (*pro hac vice*)
gapgar@mayerbrown.com

12

1221 Avenue of the Americas
New York, NY 10020

13

Telephone: (212) 506-2500
Facsimile: (212) 262-1910

14

15

Attorneys for Defendant/Counter-Plaintiff
Certified Aviation Services, LLC

16

**UNITED STATES DISTRICT COURT**

17

**CENTRAL DISTRICT OF CALIFORNIA**

18

**EASTERN DIVISION**

19

EcoServices, LLC,

20

            Plaintiff,

21

    vs.

22

Certified Aviation Services, LLC,

23

            Defendant.

24

25

26

27

28

Case No. 5:16-cv-01824-RSWL-SP

**DEFENDANT'S NOTICE OF
MOTION AND MOTION FOR
PARTIAL SUMMARY
JUDGMENT OF NON-
INFRINGEMENT AND
INVALIDITY OF THE '860
PATENT**

Trial Date: June 26, 2018

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 1, 2018 at 10:00 a.m. before the Honorable Ronald S.W. Lew of the United States District Court for the Central District of California, Courtroom TBD, First Street Courthouse, 350 W. First Street, Suite 4311, Los Angeles, CA 90012, Defendant Certified Aviation Services, LLC, will and hereby does move to for partial summary judgment of non-infringement and invalidity, pursuant to Fed. R. Civ. P. 56.

This motion is made on the grounds that the EcoServices, LLC cannot meet its burden and show that each and every limitation of the claims '860 Patent are present in Cyclean, and that the '860 Patent claims are indefinite, as a matter of law This motion is based on this written notice, the attached Memorandum of Points and Authorities, and all the records, documents, pleadings, and papers on file or to be filed in this action, arguments of counsel, and any other matters that properly may come before the Court for its consideration.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 23, 2018.

Dated: March 30, 2018                    Respectfully submitted,


                                         MAYER BROWN LLP


                                         */s/  Stephen E. Baskin*
                                         By: Stephen E. Baskin


                                         *Attorney for Defendant/Counter-Plaintiff*
                                         Certified Aviation Services, LLC

- ii -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

I.      INTRODUCTION ...................................................................................... 1

II.     BACKGROUND ......................................................................................... 2

III.    NON-INFRINGEMENT OF THE '860 PATENT ................................... 5

   A.   Legal Standard ........................................................................................ 5

   B.   ARGUMENT ............................................................................................ 6

      1.   EcoServices Has Not Satisfied its Burden of Proving  Infringement. ...... 6

      2.   Ecoservices Has Failed to Meet Its Burden of Proof to  Establishing
           Infringement of the '860 Patent. ........................................................... 6

      3.   There is no evidence connecting LHT's Engineering Orders  to any
           accused wash. ...................................................................................... 12

      4.   There is no evidence supporting EcoServices' willful  infringement claim.
           ............................................................................................................. 13

IV.    INVALIDITY .......................................................................................... 15

   A.   Legal Standard ...................................................................................... 15

   B.   Argument ............................................................................................... 16

V.     CONCLUSION ........................................................................................ 20

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................5

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
    922 F.2d 792 (Fed. Cir. 1990) ................................................................5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................5

*Finjan, Inc. v. Cisco Sys. Inc.*,
    No. 17-CV-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7,
    2017) ......................................................................................................14

*Forest Labs., Inc. v. Abbott Labs.*,
    239 F.3d 1305 (Fed. Cir. 2001) ..............................................................7

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016) ..........................................................................13

*Hodosh v. Block Drug Co.*,
    786 F. 2d 1136 (Fed. Cir. 1986) .............................................................5

*Homeland Housewares, LLC, v. Sorensen Research and Development
    Trust*,
    581 F. App'x 869 (Fed. Cir. 2014) ......................................................11

*London v. Carson Pirie Scott & Co.*,
    946 F.2d 1534 (Fed. Cir. 1991) ..............................................................5

*Move, Inc. v. Real Estate Alliance, Ltd.*,
    709 F.3d 1117 (Fed. Cir. 2013) ..............................................................5

*Neonatal Prod. Grp., Inc. v. Shields*,
    No. 13-2601-DDC-KGS, 2018 WL 1083261 (D. Kan. Feb. 28,
    2018) ........................................................................................................7

*Novartis Corp. v. Ben Venue Labs, Inc.*,
    271 F.3d 1043 (Fed. Cir. 2001) ..............................................................5

- iv -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*,
   984 F.2d 1182 (Fed. Cir. 1993) ............................................................................. 5

*Radware, Ltd. v. F5 Networks, Inc.*,
   No. 5:13-CV-02024-RMW, 2016 WL 4427490 (N.D. Cal. Aug. 22,
   2016) ......................................................................................................................... 14

*Tanabe Seiyaku Co. v. ITC*,
   109 F.3d 726 (Fed. Cir. 1997) ............................................................................. 5

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ......................................................................... 14

**Statutes**

35 U.S.C. § 112 ¶ 2 ................................................................................................. 1

35 U.S.C. § 287 ........................................................................................................ 7

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

# I.  INTRODUCTION

Defendant Certified Aviation Services, LLC, ("CAS") respectfully moves for partial summary judgment that the claims of Plaintiff EcoServices, LLC ("EcoServices") U.S. Patent No. 5,868,860 (the "'860 Patent") are non-infringed and invalid.

EcoServices has presented no evidence that Cyclean involves a washing liquid having the pressure, particle size, particle velocity, or volumetric flow claimed in the '860 patent. EcoServices' infringement case is built on: a third-party patent that "allegedly" describes the operation of the Cyclean system, a hearsay statement that Cyclean may use ███████████████████ nozzle, and Engineering Orders from the third-party developer of Cyclean. But there is no evidence tying any of those sources to CAS's use of Cyclean during the washes accused of infringement.,

EcoServices has also failed to present evidence supporting its claim of willful infringement. EcoServices's willfulness claim is based on two pre-suit notice letters it allegedly attempted to send to Defendant CAS. However, the record is undisputed that EcoServices actually sent the letters to a different, unrelated entity, and no CAS employee ever received the letters. Therefore, CAS is similarly entitled to summary judgment that any alleged infringement was not willful.

Finally, the '860 patent is invalid for failing to comply with 35 U.S.C. § 112 ¶ 2 because the term "small quantities" found in each of the claims is indefinite and not capable of defining with certainty the scope of the alleged invention. The term "small quantities," as used in the patent and recently confirmed by the inventor at deposition, clearly refers to a volume, such as liters or gallons. However. the '860 Patent does not provide a person of ordinary skill in the art reasonable certainty as to what an infringing "small" quantity would be. The inventor testimony came after the Court's May 18, 2017 claim construction decision (Dkt. No. 80), thus is new information and evidence not previously before the Court. Moreover, EcoServices

1   expert, Mr. Kushnick, admitted that if "small quantities" refers to a volume, that he
2   would have no other way of knowing what the term means. As a result, the '860
3   Patent is invalid for indefiniteness.

4   **II.   BACKGROUND**

5          EcoServices accuses CAS of infringing claims 1 and 2 of the '860 Patent.
6   Those claims are directed to a method of washing turbine compressors using a
7   spray that meets specific numerical parameters and ranges. Specifically, the claims
8   require washing a turbine compressor using a spray made with (1) an overpressure
9   of 50 to 80 bars at the nozzle, (2) a liquid particle size of 250-120 microns, (3) a
10  flow rate of .5-60 liters per minute (2-60 liters per minute in Claim 2), and (4) a
11  particle velocity of 100-126 meters per second. D.I. 1-8, '860 Patent at 4:5-11.

12         The specification of the '860 Patent states that "the object of the present
13  invention is to … provide conditions for the lean use of resources and for obtaining
14  an effective compressor wash, and to reduce the use of liquids that present a hazard
15  to health and to the environment, and to enable turbine motors to be cleaned
16  effectively with far less quantities of liquid." '860 Patent at 1:43-49

17         The accused product is the Cyclean engine washing system. Cyclean was
18  developed by non-party Lufthansa Technik AG ("LHT"). SOF ¶ 4.[1] Since 2010,
19  CAS has been LHT's exclusive provider of Cyclean services in the United States.
20  SOF ¶ 5. As a supplier, CAS played no role in the design or development of
21  Cyclean. SOF ¶ 7. EcoServices did not seek any discovery from LHT. SOF ¶ 8.

22         Mr. Kushnick relies primarily on two items to support his infringement
23  opinion. ███████████████████████████████████████████████
24  is assigned to non-party LHT. SOF ¶ 57. Mr. Kushnick states in his Report[2] that his

25

26  [1] Defendant's Statement of Uncontroverted Facts and Conclusions of Law in
27  Support of its Motion for Summary Judgment on the '860 Patent.
    [2] As used herein, the "Report" refers to the August 31, 2017 Opening Expert Report
28  of Steven B. Kushnick, P.E. *See* Ex. __.

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

████████████████████████████████████████████████████████

████████████████ Ex. 21,[3] Kushnick Opening Rep. ¶ 57. Mr. Kushnick cites no

basis for that understanding. ██████████████████████████████████

████ Ex. 12, Kushnick Dep. Tr. at 99:5-21. SOF ¶ 62. █████████████

████████████████████████████████████████████████████████

██████████████████ *Id.* at 98:5-18. SOF ¶ 63. No such evidence has been produced

in this case.

      Mr. Kushnick relies on ████████████ for all of the claimed parameters. But

none of the claims of ██████████ recite an overpressure, particle size, particle

velocity, or volumetric flow of a washing liquid. SOF ¶ 59. Mr. Kushnick instead

relies on ████████████████████████████. Ex. 12, Kushnick Dep. Tr. at

100:2-12. However, ████████████ specification discloses spray flow parameters

that do not infringe the claims of the '860 Patent. SOF ¶ 64.

      The other item on which Mr. Kushnick primarily relies is ████████████

████████████████████████████████████████████████████████

████████████████████████████████ Ex. 21, Kushnick Rep. ¶¶ 54-57,

65-66. There is no evidence of what nozzle Cyclean uses. SOF ¶ 67. ██████████

████████████████████████████████████████████████████████

██████ SOF ¶¶ 71-72. Nor were any documents produced indicating the nozzle

type. Instead, Mr. Kushnick relies solely on an unsupported third-party hearsay

statement, ████████████████████████████████████████████████

████████████████████████ SOF ¶¶ 68-69. ████████████████████

████████████████████████████████████████. SOF ¶¶ 73-74.

Each version (designated by a "flow rate code") has a different spray angle and

orifice diameter, which results in different flow rates and particle size distributions.

SOF ¶ 75.

---

[3] Citations to "Ex." herein refer to exhibits to the Declaration of Gregory J. Apgar
filed concurrently herewith.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '860 PATENT,
CASE NO. 5:16-CV-01824-RSWL-SP

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

In any event, ████████████████████████████████████████████████████ SOF ¶ 91. The parties agree that the overpressure range claimed in the '860 Patent refers to the pressure of the liquid at the nozzle. SOF ¶ 49. ██████████████████████████████████████ . SOF ¶ 47. Mr. Kushnick's Report does not address ██████████████████████ . SOF ¶ 48.

Finally, it is undisputed that Cyclean's nozzles rotate during washes. The nozzles are attached to the fan blades of the compressor being cleaned. ██████ ████████████████████████████ SOF ¶ 49. Mr. Kushnick's Report does not account for Cyclean's rotation. Specifically, ████████████████████████████████████ ████████████████████████████ SOF ¶¶ 50-51, 54. And his ████████████████ involved stationary nozzles and did not account for the turbulence present during a Cyclean wash. SOF ¶ 81-82.

- 4 -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

## III. NON-INFRINGEMENT OF THE '860 PATENT

### A. Legal Standard

A patentee must prove that each and every step of the method or process was performed to establish liability for direct infringement of a claimed method or process. *See Move, Inc. v. Real Estate Alliance, Ltd.*, 709 F.3d 1117, 1122 (Fed. Cir. 2013). There can be no infringement as a matter of law if even a single claim limitation is absent. *See Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 798 (Fed. Cir. 1990); *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991).

At trial, EcoServices bears the burden to prove infringement by a preponderance of the evidence, *Tanabe Seiyaku Co. v. ITC*, 109 F.3d 726, 731 (Fed. Cir. 1997). "Summary judgment must be granted against a party who has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case, on which the party will bear the burden of proof at trial." *Novartis Corp. v. Ben Venue Labs, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "'Summary judgment is authorized when it is quite clear what the truth is,' [citations omitted], and the law requires judgment in favor of the movant based upon facts not in genuine dispute." *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1185 (Fed. Cir. 1993) (quoting *Hodosh v. Block Drug Co.,* 786 F. 2d 1136, 1141 (Fed. Cir. 1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

**B.    ARGUMENT**

**1.    EcoServices Has Not Satisfied its Burden of Proving Infringement.**

As discussed in CAS's contemporaneously filed Motion to Exclude EcoService's Expert Steven B. Kushnick, P.E., Mr. Kushnick's reliance ███████ ████████████████████, and his velocity calculations, are unreliable. As a result, CAS is entitled to summary judgment of non-infringement.

Mr. Kushnick's opinion that Cyclean practices the claimed particle velocity depends on his unreliable calculation. EcoServices has therefore failed to present any evidence regarding Cyclean's particle velocity. Summary judgment would independently be warranted on this ground as well. Mr. Kushnick's velocity opinion is also specific to ████████████████. Ex. 21, Kushnick Rep. ¶ 67. Therefore, summary judgment is also warranted because EcoServices has failed to establish that Cyclean uses a ████████████.

Finally, the only other "evidence" for the pressure, particle velocity and flow rate parameters ████████████████. Ex. 21, Kushnick Rep. ¶ 61. As explained above, EcoServices has failed to tie any LHT Engineering Order to any accused wash.

Thus, EcoServices's has failed to present any evidence to meet its burden or raise a genuine dispute of material fact regarding whether CAS's use of Cyclean practices the required parameter limitations of the '860 Patent.

**2.    Ecoservices Has Failed to Meet Its Burden of Proof to Establishing Infringement of the '860 Patent.**

EcoServices has failed as a matter of law to meet its infringement burden of proof. Namely, there is no evidence in the record connecting ████████████ ████████████████████████ to the operation of accused Cyclean washes.

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

a) The ████████ is not evidence that Cyclean meets any claim ████ter.

As explained above, Mr. Kushnick assumes that █████████████████ ████████████████████████████████████████████████████████ of the liquid used during Cyclean washes. To support that assumption, Mr. Kushnick states ████████████████████████████████████████████████ ████████████████████████ Ex. 21, Kushnick Opening Rep. ¶ 52.

There is no evidence whatsoever tying ████████████ to CAS's use of Cyclean. EcoServices sought no discovery from LHT or any of the named inventors. No documents were produced evincing any connection between ██████ ████ and Cyclean. In addition, 35 U.S.C. § 287 requires patent holders to mark products that are patent protected with the applicable patent numbers to put the public on notice of the patent protection. EcoServices has generated no evidence that the Cyclean system or any of its components indicate that it is covered by a patent. Nor has there been any evidence entered that either CAS or LHT has disclosed that Cyclean embodies ████████████. Similarly, in generating his Report, Mr. Kushnick did speak to the inventors or anyone at LHT, and did not review any documents revealing any relationship between ████████████ and Cyclean. SOF ¶ 62-63.

Moreover, the Federal Circuit has made clear comparing the asserted claims to a patent that may or may not describe the accused product is not evidence of infringement. *See, e.g., Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1313 (Fed. Cir. 2001) ("[patentee] needed to present adequate evidence with respect to the accused product, not the content of a patent application that may or may not describe the product."); *see also Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC-KGS, 2018 WL 1083261, at *10 (D. Kan. Feb. 28, 2018) (holding that even "circumstantial evidence of patent marking is insufficient to raise a genuine issue of

- 7 -

fact of infringement when the court already has determined that the accused products do not meet three required limitations of each disputed claim.").

And here, Mr. Kushnick does not even point to  Other than Mr. Kushnick's mere conclusory statement that Cylcean practices ▮▮▮▮▮, EcoServices has presented no evidence that this is really the case. Ex. 12 at 102:22-103:12. Again, EcoServices – despite having the opportunity to do so – failed to take any discovery ▮▮▮▮▮ or its named inventors.

Critically, even if ▮▮▮▮▮ had some relevance, it is directed to completely different functionality than EcoServices's '860 Patent. The ▮▮▮▮▮ are directed to a nozzle assembly being in sync with fan blades while cleaning. *See* ▮▮▮▮▮. None of the claims of ▮▮▮▮▮ are directed to the claimed parameters of the '860 Patent. Ex. 12, Kushnick Dep. Tr. at 100:2-6. As stated above, Mr. Kushnick instead assumes that Cyclean practices some of the ▮▮▮▮▮. Ex. 12 at 98:10-100:12.

Even if it were permissible to simply assume that Cyclean practices the ▮▮▮▮▮, the disclosed parameters are broader than those of the '860 Patent and would not show that Cyclean infringes the '860 Patent. The '▮▮▮▮▮, for example, "the average droplet size is 50 to 500 microns, more preferably 100 to 300 microns, more preferably 150 to 250 microns." Ex. 22, ▮▮▮▮▮ at 5:49-51. Indeed, it would be possible for Cyclean to practice the disclosed particles sizes of ▮▮▮▮▮ with a spray having particle sizes from 50-119 microns, or even 251-500 microns, both of which lie entirely outside the claimed particle size in the '860 Patent. The same deficiency is

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

true of the disclosed pressures[4] and flow rates[5] disclosed in the specification of █████

████████

Finally, the █████████ has no disclosure of the particle velocity used in the disclosed invention. Mr. Kushnick uses the "most preferred" range of pressure in the ██████████ 50 to 70 bar, to calculate particle velocity. It is therefore not evidence of Cyclean's particle velocity for the same reasons it is not evidence of pressure.

In sum, █████████ is not evidence that Cyclean meets the pressure, flow rate, particle size, or particle velocity limitation of the '860 Patent.

> b) There is no evidence of the nozzles used during Cyclean washes.

In opining that Cyclean meets the claimed particle size, Mr. Kushnick relies on his assumption ████████████████████████████████ That is his only purported evidence of particle size besides ████████. Ex. 21, Kushnick Rep. ¶¶ 54-57 & App. A.

EcoServices has presented no credible evidence of what nozzles Cyclean uses. First, as explained above, Mr. Kushnick's entire understanding that Cyclean uses █████████ nozzle is based on inadmissible hearsay. EcoServices has obtained no admissible evidence regarding what nozzle Cyclean uses. The in-person inspection did not indicate the type of nozzle. Nor do any documents produced in this case indicate the nozzle type. Notably, EcoServices identified

---

4 ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████

5 ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

- 9 -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1  Lechler in the Complaint, yet sought no discovery from Lechler or from any other

2  third party. Dkt. No. 1 at ¶ 44.

3        Moreover, the inadmissible hearsay testimony on which Mr. Kushnick relies

4  does not even establish what nozzle Cyclean uses. In that testimony, CAS witness

5  Brad Caban testified ███████████████████████████████████████

6  ███████████

8  ████████████████████████████████████████

9  ██████████████████

10  ███████████████████████████████████████

11  ██████

12  ████████████████████████████████████████████

13  ████

14  ███████████████████████████████████████

15  ██████

16  ████████████████

17  █████████████████████████████████████

18  ████████████████████████████████████████

19  ███████████████████████████████████████

20  ████████████████████

21  Ex. 4, Caban Dep. 150:20-151:14.

22       Those references to ████████████ do not identify a nozzle. ██████████

23  refers to a *series* of nozzles. SOF ¶ 73. There are at least 75 individual nozzles in the

24  ████████████ series. SOF ¶ 74. The 75 different ████████████ nozzles have different

25  properties and produce different particle size distributions. SOF ¶ 75. EcoServices

26  has generated no evidence identifying any of those 75 nozzles as being used in

27  Cyclean.

28       Instead, Mr. Kushnick simply ████████████████████████████████████

- 10 -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1  ████ SOF ¶ 80. There is no evidence that any of those 3 nozzles have ever been

2  used in a Cyclean wash:

3

4

5

6

7

8  Ex. 12 at 125:1-19.

9        And when asked whether these nozzles could even practice the flow rates

10 that Cyclean uses, Mr. Kushnick admitted that only two of the three tested nozzles

11 could do so. *Id.* at 132:3-25. EcoServices has failed to establish any connection

12 between the three tested nozzles and what the Cyclean system actually uses

13 (assuming one of the 75 ████████ nozzle is even used).

14        Additionally, Mr. Kushnick's nozzle testing did not take into consideration

15 Cyclean's operating conditions that affect particle size in an accused Cyclean spray.

16 Ex. 12 at 104:2-18. For instance, Cyclean's nozzles rotate, which impact particle

17 size as the spray is distributed through the nozzle. In contrast, Mr. Kushnick was

18 ████████████████████████████████████ Ex. 21, Appendix A at

19 2-3. The speed from the rotation and turbulence from inside the turbine engine are

20 conditions that would affect particle size.  Where evidence of infringement involves

21 a replication of the performance of an accused product, there must be an

22 explanation of "why the evidence [] made under different conditions nonetheless

23 proved that the accused processes infringed." *Homeland Housewares, LLC, v.*

24 *Sorensen Research and Development Trust*, 581 F. App'x 869, 876 (Fed. Cir.

25 2014). EcoServices has presented no evidence that its testing conditions are at all

26 probative of the particle size in a Cyclean spray, which is generated under

27 significantly different operating conditions.

28

- 11 -

1    Finally, Mr. Kushnick's opinion that Cyclean practices the claimed particle
2  velocity also depends on the ███████. In particular, ████████████████████
3  ████████████████████████████████████. Kushnick Report ¶¶ 64-65. He
4  relies on Cyclean using ███████████████████████. *Id.* ¶ 67 ██████
5  ████████████████████████████████████████████████████████████████████
6  ███████████). Because EcoServices has not obtained any admissible evidence
7  that Cyclean actually uses ████████████████████████████████████████
8  ████████████████████████████████████████████████ could not
9  support a jury verdict of infringement.
10    In sum, EcoServices has presented no credible evidence that Cyclean uses a
11  ███████████, or that Cyclean's nozzles produce a spray having the claimed
12  particle size. As a result, ████████████████ cannot support the conclusion that
13  Cyclean satisfies the claimed particle size or velocity requirements. Since Mr.
14  Kushnick otherwise relies on only ███████████ for those parameters, which
15  EcoServices also has not shown to correspond to Cyclean, CAS is entitled to
16  summary judgment of non-infringement.

**3.    There is no evidence connecting LHT's Engineering Orders
to any accused wash.**

17    Finally, the only remaining evidence on which EcoServices relies are ████
18  ███████████████████████████████████████. Kushnick Report ¶ 61.
19  Mr. Kushnick relies on those documents for the pressure and flow rate limitations.
20  *Id.* There is no evidence connecting ████████████████████ to the accused
21  Cyclean washes. They are LHT documents, not CAS documents. CAS does not use
22  ███████████████ in connection with performing Cyclean washes. *See* Ex. 4,
23  Caban Dep. Tr. at 100:9-101:25; Caban Dep. Ex. 107. Again, Cyclean washes can
24  either be ████████████████" or "AMM washes." There is no evidence
25  showing how many of the accused washes were performed pursuant to the
26  ███████████, and how many were performed pursuant to an AMM. And Mr.



- 12 -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1  Kushnick admitted that ███████████████████. Kushnick Dep. Tr.

2  at 89:7-12. EcoServices simply has not shown any connection between the

3  █████████████ it is attempting to use to prove infringement and the actual

4  washes it accuses of infringement.

5       Finally, to the extent these ██████████████ recite a pressure, they only

6  indicate the pressure set at Cyclean's pressure pump, whereas both parties' experts

7  agree that the claimed "overpressure" refers to the pressure of the washing liquid at

8  the nozzle. The parties' experts also agree that there will be pressure losses as the

9  liquid travels from the pump to the nozzle. Without accounting for pressure losses

10  in the Cyclean system, which Mr. Kushnick admits he does not do, the Engineering

11  Orders may not be relied upon to show an operating pressure of the Cyclean

12  system. Ex. 12, Kushnick Dep. Tr. at 150:24-151:25.

       a)   Without any other evidence, there is no question of
            material fact that EcoServices has failed to meet its
            burden of proof, and summary judgment is appropriate.

15       In sum, EcoServices's infringement case is built on ███████████████

16  ██████████████████████. EcoServices has failed to present any

17  evidence connecting any of those items to the use of Cyclean in the actual accused

18  engine washes. EcoServices therefore has failed to provide any evidence that could

19  establish a genuine dispute of material fact precluding summary judgment of non-

20  infringement of claims 1 and 2 of the '860 patent.

              **4.    There is no evidence supporting EcoServices' willful
                      infringement claim.**

22       EcoServices alleges that CAS willfully infringed the '860 Patent. D.I. 1 ¶¶

23  51-54. Awards of enhanced damages for willful infringement "are generally

24  reserved for egregious cases of culpable behavior" and "are not to be meted out in a

25  typical infringement case." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923,

26  1932 (2016).

27       EcoServices bases its willfulness claim on letters dated September 13, 2013

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1  and December 5, 2013 that allegedly "notified Defendant of certain patents owned

2  by EcoServices, which included the '860 Patent, available for licensing." D.I. 1 ¶¶

3  51-54. Those letters were not sent to CAS, and there is no evidence anyone at CAS

4  ever received them.

5  ███████████████████████████████████

6  ███████████████████████████████████

7  ███████████████████████████████████

8  ███████████████████████████████████

9  ███████████████████████████████████

10  ███████████████████████████████████

11  ███████████████████████████████████

12  ███████████████████████████████████

13  ███████████████████████████████████

14  ███████████████████████████████

15      There is no evidence that the alleged notice letters were ever in the

16  possession of, let alone read by, anyone at Defendant CAS. As such, there is no

17  evidence showing that CAS had knowledge of the '860 Patent prior to the service

18  of the Complaint. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir.

19  2016) (knowledge of a patent is a prerequisite for enhanced damages for willful

20  infringement); *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-CV-02024-RMW,

21  2016 WL 4427490, at *3–5 (N.D. Cal. Aug. 22, 2016) (summary judgment of no

22  willful infringement when there was no evidence that accused infringer had

23  knowledge of the asserted patent). Beyond the lack of knowledge, there is no

24  evidence whatsoever of the further requirement that the accused infringer was

25  egregious in its actions of infringement. *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-

26  00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (granting summary

27  judgment on willfulness, even when they knew about the asserted patent, when

28  there was no evidence of egregious conduct that warrants enhanced damages).

- 14 -

1  Therefore EcoServices has failed to meet its burden of proof and CAS is

2  entitled to judgment as a matter of law that any alleged infringement of the '860

3  Patent was not willful.

4  **IV.   INVALIDITY**

5      **A.   Legal Standard**

6      The Federal Circuit has instructed that "the language of the claims must

7  make it clear what subject matter they encompass." *PPG Indus., Inc. v. Guardian*

8  *Indus. Corp.*, 75 F.3d 1558, 1562 (Fed. Cir. 1996) (internal quotations omitted); *see*

9  *also* 35 U.S.C. § 112 ¶ 2. The party challenging the validity of a patent must prove

10  that the claim language is indefinite by clear and convincing evidence. *Intel Corp.,*

11  *v. VIA Techns., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003). The Supreme Court

12  clarified the definiteness standard, holding that "a patent is invalid for

13  indefiniteness if its claims, read in light of the specification delineating the patent,

14  and the prosecution history, fail to inform, with reasonable certainty, those skilled

15  in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments,*

16  *Inc.*, 134 S. Ct. 2120, 2124 (2014).

17      "[I]t cannot be sufficient that a court can ascribe *some* meaning to a patent's

18  claims; the definiteness inquiry trains on the understanding of a skilled artisan at

19  the time of the patent application, not that of a court viewing matter *post hoc*." *Id.* at

20  2130 (emphasis original). "The fact that [a patentee] can articulate a definition

21  supported by the specification, however, does not end the inquiry. Even if a claim

22  term's definition can be reduced to words, the claim is still indefinite if a person of

23  ordinary skill in the art cannot translate the definition into meaningfully precise

24  claim scope." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251

25  (Fed. Cir. 2008). For terms of degree, such as "small," "it is not enough . . . to

26  identify *some standard* for measuring the scope of the phrase…. The claims, when

27  read in light of the specification and the prosecution history, must provide objective

28  boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766

F.3d 1364, 1370–71 (Fed. Cir. 2014) (emphasis added). The claims of the '860 Patent do not meet this standard.

### B.    Argument

The asserted claims of the '860 Patent, claims 1 and 2, are directed to a method of washing turbine compressors using "small quantities of finely-divided liquid." '860 Patent at 4:2-3. Although the '860 Patent uses the word "quantity" throughout to refer to a volume of liquid, it does not provide any objective boundaries for what defines a "small" quantity. As detailed in CAS's opening claim construction brief:

> The specification uses "quantities" to refer to the total number of liters used in a wash, stating that in the prior art, "*very large* quantities of water are injected (300-400 l per engine)." '860 Patent at 1:26-27. In contrast, "[t]he inventive method is implemented by spraying small quantities of finely-divided liquid onto and through the object to be washed." *Id.* at 1:66-2:1. The volume sprayed is critical, as "[t]he reduction in the quantity of liquid *required* is advantageous … because *large* quantities of water subject the turbine blades … to harmful mechanical loads." *Id.* at 2:33-36.

Dkt. No. 75 at 6 (emphasis added). Dr. Micklow, CAS's technical expert, similarly understands the term "quantities" to refer to a volume in light of the '860 Patent's stated purpose in reducing the volume of water used in a turbine engine wash. Dkt. No. 65, Ex. 2 at par. 29. In its claim construction order, this Court held that "[w]hile 'small quantities,' could be defined in terms of volume only, … a person of ordinary skill in the art could with reasonable certainty define "small quantities" as a flow rate" and held that "Defendant has failed to prove [its claim of indefiniteness] by clear and convincing evidence." Dkt. No. 80 at 10.

Since the Court's claim construction order, however, CAS has taken the deposition of the '860 Patent's inventor and confirmed that the inventor confirmed that "small quantities" refers to a <u>volume</u>, in order to accomplish the overall goal of the '860 Patent to reduce the amount of water used during a wash:

- 16 -



Ex. 8, Asplund Dep. Tr. at 140:10-141:4. This testimony confirms that "small quantities" in fact cannot refer to flow rate and, instead, is directed to a volume of water. And, specifically – and consistent with the specification – the overall goal of reducing water used during the wash.

When consistent with the intrinsic evidence, it is proper for courts to consider inventor testimony regarding the interpretation of the claims in a patent. *Voice Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999) (reversing summary judgment because the district court improperly disregarded inventor testimony contrary to that of expert's definition). Indeed "[a]n inventor is a competent witness to explain the invention and what was intended to be conveyed

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1  by the specification and covered by the claims." *Id.* at 615-16. In particular,

2  inventor testimony is pertinent where an inventor's testimony lends itself to

3  understanding the established meaning of particular terms in the relevant art to a

4  person of skill in the art, such as understanding the meaning of the word

5  "quantities" in the '860 Patent. *Sun Microsystems Inc. v. Network Appliance*, No.

6  C-08-01641 EDL, 2009 WL 1513384, *14 (N.D. Ca. May 29, 2009) (citing

7  *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346-47

8  n.5 (Fed. Cir. 2008)).

9      With the meaning of "quantity" confirmed, the issue of indefiniteness turns

10  on whether the '860 Patent provides objective boundaries for the term "*small*

11  quantities." It does not. As detailed in CAS's opening claim construction brief:

12      The specification discloses just two examples of spraying liquid
13      according to the invention. Unlike in Claim 1, both examples disclose
    a particular flow rate and a given spray time, so that a total quantity
14      can be calculated. Those exemplary quantities are 3 liters and 18
    liters.[6] But the specification does not state whether those two discrete
15      quantities correspond to the boundaries (or if they are even near the
16      boundaries) of the claimed "small quantities" that use "far less" than
    the "very large quantities" of 300-400 liters of liquid.[7] Thus, a skilled
17      artisan performing an engine wash using anywhere between 18 and
18      300 liters would be left to guess whether they infringe.

19  Dkt. No. 75 at 7. As described in detail by Dr. Micklow, this disclosure is not

20  enough to provide a person of ordinary skill in the art with reasonable certainty of

21  an infringing "small quantity." Dkt. No. 75, Ex. 2 at pars. 31-33.

22      In CAS's responsive brief, CAS further provided examples of similar cases

23  where courts have held that terms of degree are indefinite:

24

25

26  [6] *See* '860 Patent at 2:42-52 (0.1 liters/sec times 30 seconds times 6 nozzles = 18 liters); *id.* at
    2:53-61 (0.05 liters/sec times 20 seconds times 3 nozzles = 3 liters).
27  [7] For example, are there "large" or "medium" quantities that do not infringe but are less than the
    disclosed "very large quantities?" Is there a lower boundry to "small" quantities under which are
28      non-infringing "very small" quantities? The specification is devoid of any definitive answers.

- 18 -

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

For example, in *Halliburton* the Federal Circuit concluded that the term "fragile gel" was indefinite because the patentee "did not identify the degree of the fragility of its invention." *Id.* In *Guzik Tech. Enters., Inc. v. W Digital Corp.*, No. 11-CV-03786-PSG, 2013 WL 3934892, at *23 (N.D. Cal. July 9, 2013), the claim related to writing onto a disk as it rotates for a "relatively short period of time." The court found that "relatively short period of time" was indefinite because, even if a skilled artisan would recognize that the period of time must be shorter than one full rotation of the disk, "nothing in the patent elucidates how much shorter than one rotation the period of time must be." *Id.* And in *Storm Prods., Inc. v. Ebonite Int'l., Inc.*, the court found that the term "large quantity of bowlers" was indefinite because the patent failed to specify any method, "such as a numeric threshold or a limited time and space" to calculate "large" and definitively tie the claimed "large number of bowlers" to any particular meaning. 638 F. Supp. 2d 1307, 1312-13 (D. Utah 2009). The court observed:

> [O]ne skilled in the art … might consider ten bowlers to be a "large number of bowlers" in some circumstances or one hundred bowlers as "large" in others. But it is equally plausible that one skilled in the art might consider ten or one hundred bowlers to be a small number of bowlers in other contexts.

*Id.* at 1313.

As in *Storm*, here there is "nothing in the intrinsic evidence . . . or in the extrinsic evidence" that "provides sufficient support for how one skilled in the art would be able to determine what the circumstances are to allow an objective conclusion of what . . . would fall within or outside the boundary of the patent." *Id.*

EcoServices own expert, Mr. Kushnick, agrees – if "small quantities" refers to a volume and not a flow rate, he would "have no other way of knowing what the term [] means":

> **Q So if the court ultimately determines that the total volume metric flow in Claim 1 does not define small quantities, then you have no other way of knowing what the term small quantities means?**
>
> A Yeah. If the court decides that small quantities means volume and disallows that small quantities means flow, small quantities of flow, then that's right. I have nothing else to offer.

- 19 -

Ex. 23, Kushnick 05.03.2017 Dep. Tr. at 65:22-66:5. The above cases illustrate that the definiteness requirement requires patents to give specific notice to the public what does or does not infringe a patent claim. The '860 Patent does not do so. Because the meaning of "quantity" is clearly a volume and not a flow rate, and the '860 Patent does not place any boundaries, as admitted by Mr. Kushnick, let alone any objective boundaries in the specification on the scope of the term "*small* quantities," the term is indefinite.

## V.   CONCLUSION

Based on the foregoing, EcoServices has failed to present evidence sufficient to meet its burden of proving infringement of the '860 Patent by CAS's operation of the Cyclean system. Therefore, CAS is entitled to summary judgment that it does not infringe the '860 Patent.

Further, EcoServices has failed to present evidence sufficient to meet its burden of proving that the alleged infringement of the '860 Patent by CAS was willful. Therfore, CAS is entitled to summary judgment of no willful infringement.

Finally, there is clear and convincing evidence that the claimed "small quantities" refers to an undefined volume of liquid with no objective boundaries. Therefore, CAS is entitled to summary judgment that the claims of the '860 Patent are invalid as indefinite.

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

Dated: March 30, 2018

MAYER BROWN LLP

By: */s/ Stephen E. Baskin*
      Stephen E. Baskin

Dale J. Giali (SBN 150382)
Elizabeth M. Burnside (SBN 258184)
Stephen E. Baskin (*pro hac vice*)
Peter O. Schmidt (*pro hac vice*)
Gregory J. Apgar (*pro hac vice*)
Canek Acosta (SBN 301901)

*Attorneys for Defendant/Counter-Plaintiff*
*Certified Aviation Services, LLC*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '860 PATENT,
CASE NO. 5:16-CV-01824-RSWL-SP

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

## **Certificate of Service**

I, Stephen E. Baskin, hereby certify that on March 30, 2018, I filed the within and foregoing Defendant's Motion for Summary Judgment of Non-Infringement of the '860 Patent with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing:

Leanna Costantini
costantinil@gtlaw.com
GREENBERG TRAURIG
3161 Michelson Drive, Suite 1000
Irvine, CA 92612
Telephone:  (949) 732-6804
Facsimile:   (949) 732-6501

Ronald J. Pabis
pabisr@gtlaw.com
Stephen K. Shahida
shahidas@gtlaw.com
Patrick J. McCarthy
mccarthyp@gtlaw.com
Myomi T. Coad
coadm@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
Telephone:  (202) 331-3100
Facsimile:   (202) 331-3101

*Attorneys for Plaintiff EcoServices, LLC*

Dated:  March 30, 2018                    MAYER BROWN LLP

                                        By: */s/ Stephen E. Baskin*
                                                Stephen E. Baskin