1  MAYER BROWN LLP

2  Dale J. Giali (SBN 150382)
   dgiali@mayerbrown.com
3  350 South Grand Avenue, 25th Floor
   Los Angeles, CA 90071-1503
4  Telephone: (213) 229-9500
   Facsimile: (213) 625-0248
5
6  Stephen E. Baskin (pro hac vice)
   sbaskin@mayerbrown.com
   Peter O. Schmidt (pro hac vice)
7  pschmidt@mayerbrown.com
   Canek Acosta (SBN 301901)
8  cacosta@mayerbrown.com
   1999 K Street, N.W.
9  Washington, DC 20006
   Telephone: (202) 263-3000
10 Facsimile: (202) 263-3300

11 Gregory J. Apgar (pro hac vice)
   gapgar@mayerbrown.com
12 1221 Avenue of the Americas
   New York, NY 10020
13 Telephone: (212) 506-2500
   Facsimile: (212) 262-1910
14
   Attorneys for Defendant/Counter-Plaintiff
15 Certified Aviation Services, LLC

16          **UNITED STATES DISTRICT COURT**
17          **CENTRAL DISTRICT OF CALIFORNIA**
18              **EASTERN DIVISION**

19 EcoServices, LLC,                    Case No. 5:16-cv-01824-RSWL-SP

20          Plaintiff,                  **DEFENDANT'S MOTION FOR**
                                        **PARTIAL SUMMARY JUDGMENT**
21                                      **OF NON-INFRINGEMENT OF THE**
      vs.                               **'262 PATENT**
22
23 Certified Aviation Services, LLC,    Trial Date: June 26, 2018

24          Defendant.

25                                      **REDACTED VERSION OF**
26                                      **DOCUMENT SOUGHT TO BE**
                                        **SEALED**
27

28

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 1, 2018 at 10:00 a.m. before the Honorable Ronald S.W. Lew of the United States District Court for the Central District of California, Courtroom TBD, First Street Courthouse, 350 W. First Street, Suite 4311, Los Angeles, CA 90012, Defendant Certified Aviation Services, LLC, will and hereby does move to for partial summary judgment of non-infringement of the '262 Patent, pursuant to Fed. R. Civ. P. 56.

This motion is made on the grounds that the EcoServices, LLC cannot meet its burden and show that each and every limitation of the claims '262 Patent are present in Cyclean as a matter of law This motion is based on this written notice, the attached Memorandum of Points and Authorities, and all the records, documents, pleadings, and papers on file or to be filed in this action, arguments of counsel, and any other matters that properly may come before the Court for its consideration.

This motion is made following the conference of counsel pursuant to L.R. 7¬3, which took place on March 23, 2018.

Dated: March 30, 2018                    Respectfully submitted,


                                         MAYER BROWN LLP


                                         */s/ Stephen E. Baskin*
                                         By: Stephen E. Baskin


                                         *Attorney for Defendant/Counter-Plaintiff*
                                         Certified Aviation Services,

1

2 TABLE OF CONTENTS

3 **Page**

4 I.    PRELIMINARY STATEMENT ......................................................... 1

5 II.    BACKGROUND ............................................................................... 2

6       A.   The '262 Patent ...................................................................... 2

7       B.   The Asserted Claims .............................................................. 3

      C.   The Accused Cyclean System ................................................ 4

8 III.   LEGAL STANDARD ...................................................................... 6

9 IV.  ARGUMENT ................................................................................... 7

10       A.   Literal Infringement and "Plain and Ordinary Meaning" ........................... 8

11       B.   Cyclean Does Not Have the Claimed "Information Detector" ................... 8

12       C.   There Is No Evidence that Cyclean Includes the Claimed Control Unit .. 12

13 V.   CONCLUSION ............................................................................... 15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...................................7

*Eaton Corp. v. Rockwell International Corp.*,
  323 F.3d 1332 (Fed. Cir. 2003) ...................................................................... 14

*The Johns Hopkins Univ. v. Datascope Corp.*,
  543 F.3d 1342 (Fed. Cir. 2008) ...................................................................... 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ..........................................................................................7

*Moore U.S.A., Inc. v. Standard Register Co.*,
  229 F.3d 1091 (Fed. Cir. 2000) ........................................................................7

*Phillips Petroleum Co. v. Huntsman Polymers Corp.*,
  157 F.3d 866 (Fed. Cir. 1998) ....................................................................... 12

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).................................................3, 8, 9

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
  378 F.3d 1396 (Fed. Cir. 2004) ........................................................................8

*Schwing GmbH v. Putzmeister Aktiengesellschaft*,
  305 F.3d 1318 (Fed. Cir. 2002) ...................................................................... 15

*Scott v. Harris*,
  550 U.S. 372 (2007) ..........................................................................................7

*Smith v. Garlock Equip. Co.*,
  658 F. App'x 1017 (Fed. Cir. 2016) ............................................................... 12

*TechSearch, L.L.C. v. Intel Corp.*,
  286 F.3d 1360 (Fed. Cir. 2002) ....................................................................8, 15

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
  247 F.3d 1316 (Fed. Cir. 2001) ...................................................................... 12

- iii -

*V-Formation, Inc. v. Benetton Grp. SpA*,
    401 F.3d 1307 (Fed. Cir. 2005) ............................................................................ 8

**Other Authorities**

Fed. R. Civ. P. 56(a) ..................................................................................... 7

## I.   PRELIMINARY STATEMENT

Plaintiff EcoServices, LLC ("EcoServices") alleges that Defendant Certified Aviation Services, LLC ("CAS") infringes claims 1, 9, and 14 of U.S. Patent No. 9,162,262 ("the '262 Patent"). The '262 Patent claims systems for washing turbine engines. The claimed systems include a set of preprogrammed washing programs, an "information detector" for gathering information relating to the type of engine being washed, and a "control unit" that accepts information from the information detector and uses it to determine a specific washing program to run. The '262 Patent explains that prior art systems required system operators to manually input system settings, and that goal of the patent is to minimize "the influence of the human factor . . . as much as possible." '262 Patent at 3:65-67 (Ex. 1).

The accused product is Cyclean, a system for washing aircraft engines. Cyclean was developed by non-party Lufthansa Technik AG ("LHT"). *See* Statement of Facts[1] ¶ 4.  Since 2010, defendant CAS has been LHT's exclusive provider of Cyclean services in the United States. *Id.* ¶ 5.  As a supplier, CAS played no role in Cyclean's design or development. *Id.* ¶ 7.  EcoServices did not seek any discovery from LHT.  *Id.* ¶ 8.

Cyclean does not contain an "information detector" or a "control unit" that determines which washing program to run. ███████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ *Id.* ¶ 34. █████████████████ █████████████████████████████████████████. *Id.* ████████████████████████████████████████████████ ███████████ *Id.* ¶ 35. The claims require that Cyclean be able to make that detection and determination. EcoServices's infringement expert provides no actual

---

[1] As used herein, "Statement of Facts" refers to Defendant's Statement of Uncontroverted Facts and Conclusions of Law in Support of its Motion for Summary Judgment on the '262 Patent.

analysis of these two claim requirements and, instead, states in conclusory fashion that Cyclean satisfies them. As a result, there is no evidence from which a reasonable jury could conclude that Cyclean infringes the asserted claims.

## II.   BACKGROUND

### A.   The '262 Patent

The '262 Patent is entitled "Automated Detection and Control System and Method for High Pressure Wash Application and Collection Applied to Aero Compressor Washing." Statement of Facts¶ 11. The patent's Background section explains that "a number of cleaning or washing techniques have been developed" and discusses several "systems for cleaning engines [that] provide very versatile and effective cleaning methods that can be arranged on a mobile unit." '262 Patent at 2:23-24, 3:38-41; *see generally id.* at 2:23-3:41; Statement of Facts ¶ 14.

The '262 Patent states that a problem with existing washing systems was their reliance on a human operator manually inputting system settings: "These processes, however, are all dependent to some extent upon an operator manually making certain adjustments and/or system settings." '262 Patent at 3:41-43; Statement of Facts ¶ 15.  It states that, in traditional systems, wash operators were provided information about engine type; had to select an appropriate nozzle manifold for the engine being washed; had to manually set washing parameters such as water flow rate, water volume, and water pressure; and had to manually keep track of the washing time. '262 Patent at 3:44-55; Statement of Facts ¶ 16. The patent further states that, because these processes are carried out manually, "there is always a risk that the human factor jeopardizes the result," which can lead to costly engine damage. '262 Patent at 3:56-64; Statement of Facts ¶ 17.

The Background section accordingly concludes with the statement: "It would therefore be beneficial for such a closed loop washing process if the influence of the human factor is minimized as much as possible." '262 Patent at 3:65-67; Statement of Facts¶ 18.

**B.     The Asserted Claims**

EcoServices asserts claims 1, 9, and 14 against CAS. Statement of Facts ¶ 19. Those claims purport to accomplish the patent's goal of reducing the human factor through an "information detector" that detects information about the engine being washed and a "control unit" that receives that information, uses it to determine a washing program, and regulates the washing unit based on determined program. Independent claim 1 is illustrative:

> 1. A system for washing turbine engines comprising:
>
> a washing unit for providing a washing liquid to the turbine engines;
>
> an information detector configured to gather information related to engine type; and
>
> a control unit configured to accept the information related to engine type from the information detector and to determine a washing program to be used as a function of the information relating to engine type from a set of preprogrammed washing programs and further configured to regulate the washing unit according to washing parameters associated with the washing program used.

'262 Patent cl. 1; Statement of Facts ¶¶ 20, 24. The Court's *Markman* order states that "plain and ordinary meaning" applies to the "information detector" and "control unit" limitations. D.I. 80 at 12; Statement of Facts ¶¶ 26-27. Plain and ordinary meaning refers to "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention" who has read the term "in the context of the entire patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*).

The specification describes the claimed "information detector" as a device

that reads information about the engine being washed or manifold being used and specifically discloses that it "obtains particular information identifying the engine type" and transmits that information to the control unit. '262 Patent at 5:56-60, 6:35-40; Statement of Facts ¶ 21. The specification discloses several possibilities for the information detector: RFID readers, bar code readers, or other "radio frequency equipment capable of transmitting and receiving information, etc." '262 Patent at 5:38-55. Statement of Facts ¶ 22. During the examination of the '262 Patent at the United States Patent and Trademark Office, the patent examiner referred to a detector as ""a device or instrument designed to detect the presence of something and to emit a signal in response." Ex. 2, '262 Patent File History, at April 9, 2015 Final Rejection, at 3; Statement of Facts ¶ 23. All of the disclosed possibilities involve the automatic detection of information using radio or optical signals. The specification never discusses a "detector" requiring manual input. Nor does it disclose a human being playing any role in detecting engine type.

The specification discloses only one example of the claimed control unit: "a programmable logic controller (PLC) capable of being programmed to control and monitor the wash process." '262 Patent at 6:44-46; Statement of Facts ¶ 25.

Claim 14 is the other asserted independent claim. That claim recites the same washing unit as claim 1. It also recites an information detector and control unit. Claim 14's information detector must provide "information identifying at least one of washing unit and engine type." '262 Patent cl. 14; Statement of Facts ¶ 20. And, although the control unit limitation is worded differently than in claim 1, claim 14's control unit must still receive information from the information detector, determine a washing program from a set of available washing programs, and regulate the washing unit. *See id.*; Ex. 3, Kushnick Dep. Tr. at 195:12-196:12; Statement of Facts ¶ 24.

## C. The Accused Cyclean System

The accused Cyclean engine washing system was developed by non-party

- 4 -

LHT. Statement of Facts ¶ 4. CAS is LHT's exclusive provider of Cyclean washes in the United States. *See* Ex. 4,[2] Agmt. for Aircraft Engine Wash, § 2.2; Statement of Facts ¶ 5. CAS played no role in the design, development, or manufacture of Cyclean. Ex. 5; Statement of Facts ¶ 4. EcoServices did not seek any discovery from LHT. Statement of Facts ¶ 8.

The Cyclean system is similar to the prior art systems described in the '262 Patent. ███████████████████████████████████████████████ ████. *See* Ex. 7, Caban Dep. Tr. at 75:12-22; Statement of Facts ¶ 31. ███ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████. *See* Ex. 7 at 63:1-11; Ex. 3, Kushnick Dep. Tr. at 65:6-9; Statement of Facts ¶¶ 32, 34.

EcoServices' infringement allegations focus on the use of a keypad to select a wash program. ███████████████████████████████████████ ████████████████████████████████████████. *See* Ex. 3 at 47:15-49:4; *see also* Ex. 8, Micklow Rebuttal Report ¶ 109; Statement of Facts ¶ 38. And it is this keypad that EcoServices alleges is Cyclean's "information detector":



---

[2] Citations to "Ex." refer to exhibits to the Declaration of Gregory J. Apgar In Support of Defendant's Motion for Partial Summary Judgment of Non-Infringement of the '262 Patent, filed concurrently herewith.

1

2　Ex. 9, Kushnick Opening Report ¶ 83; *see* Ex. 3 at 47:15-19. As seen in the image,

3　the keypad component includes the branding of a company called ██████ .

4　　　　EcoServices identifies the entire Cyclean interface and back end as the

5　claimed control unit:



17　Ex. 9 ¶ 88.

18　　　　EcoServices did not seek any discovery from LHT or ████ . No

19　documents have been produced regarding the programming of Cyclean's wash

20　programs, the operation of the keypad, Cyclean's internal computing components,

21　or how the keypad interacts with those components. EcoServices alleges that

22　Cyclean infringes the asserted claims of the '262 Patent merely because: ██████

23　████████████████████████████████████████████

24　████████████████ . *See* Ex. 9 ¶¶ 83-85, 88. But the '262 Patent describes

25　the reliance on human "user" operators as the prior art. *See* '262 Patent at 3:38-55;

26　Statement of Facts ¶¶ 14-16.

27　**III.　LEGAL STANDARD**

28　　　　"The court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)). "A party may not overcome a grant of summary judgment by merely offering conclusory statements." *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000) (internal quotations omitted).

## IV.   ARGUMENT

Cyclean does not contain the claimed "information detector" or "control unit." It is undisputed that Cyclean's operators must manually select a washing program. Statement of Facts ¶ 38. It is also undisputed that Cyclean has no RFID, barcode, or other automated detection technology. *See* Ex. 3, Kushnick Dep. Tr. at 45:11-46:20; Statement of Facts ¶ 39. Nor is there any evidence that the Cyclean equipment itself, and not the operator, ever determines which washing program to run. Statement of Facts ¶ 40.

The Court has ruled that the claims' "plain and ordinary meaning" applies. There is simply no credible evidence from which a jury could conclude that Cyclean's keypad and manual selection process satisfies the "information detector"

and "control unit" limitations of the asserted claims.

### A. Literal Infringement and "Plain and Ordinary Meaning"

EcoServices accuses CAS of literally infringing the asserted claims. "Literal infringement requires that each and every limitation set forth in a claim appear in an accused product." *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005). "[T]he motion of an accused infringer for judgment on the ground of non-infringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1373 (Fed. Cir. 2002).

There is a two-step process for analyzing a claim of literal infringement: "The first step is a proper construction of the meaning and scope of the claims. . . . The second step requires a comparison of the properly construed claim to the accused device." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004). While claim construction is a matter of law, the step of comparing the product to the construed claim is a question of fact. *Id.*

In this case, the Court construed the asserted claims according to their "plain and ordinary meaning." "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips,* 415 F.3d at 1313. "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Thus, "the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id*. at 1321.

### B. Cyclean Does Not Have the Claimed "Information Detector"

EcoServices alleges that Cyclean's keypad is the claimed "information detector." It is undisputed that the Cyclean system includes no RFID, barcode, or "automatic detection system" as set forth in the '262 Patent. Ex. 3 at 45:11-46:20;

- 8 -



Statement of Facts ¶ 39. ██████████████████████████████████

███████████████████████████. *See* Ex. 3 at 47:15-49:4; *see also* Ex. 8 ¶ 109;

Statement of Facts ¶ 38. ██████████████████████████████████████

████ *See id.* █████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████ *See id.* Cyclean cannot detect what engine is being washed; it

merely implements the selected wash. *See* Ex. 3 at 46:16-47:14, 50:12-51:5;

Statement of Facts ¶ 40.

Claim 1 of the '262 Patent recites "an information detector configured to gather information related to engine type."[3] Statement of Facts ¶ 20. Analyzing whether Cyclean satisfies the plain and ordinary meaning of this term presents two questions: (1) Is Cyclean's keypad an "information detector"? And, if so, (2) does the keypad "gather information related to engine type"? The uncontroverted answer to both questions is no.

The Court's *Markman* order does not address whether a keypad is an information detector. Instead it applies a plain and ordinary meaning to the term, which is the way that a person skilled in the art would understand it "after reading the entire patent." Statement of Facts ¶¶ 26-27. *See Philips*, 415 F.3d at 1321. EcoServices offers no credible evidence from which a reasonable jury could conclude that Cyclean's keypad can be the claimed information detector. CAS uses an operator to determine the engine type to be cleaned.

First, neither the claims nor the specification of the '262 Patent provides support for EcoServices' position. For example, the claim uses the word "detector." It does not recite any human involvement. The specification exclusively uses

---

[3] Claim 14, the other asserted independent claim, recites "an information detector for providing information identifying at least one of washing unit and engine type." For purposes of this motion, CAS's arguments that Cyclean has no information detector apply equally to both claims.

1  "detection" to refer to an automated process without human involvement. Statement

2  of Facts ¶ 21. It discusses the use of RFID readers, bar code readers, or other "radio

3  frequency equipment capable of transmitting and receiving information." '262

4  Patent at 5:38-61, 6:35-43; Statement of Facts ¶ 22. It is uncontroverted that

5  Cyclean includes no such technology. Statement of Facts ¶ 39. Nowhere does the

6  specification disclose an "information detector" requiring manual human input. *See*

7  Ex. 3 at 197:16-21 ("Q. The specification doesn't provide any example of an

8  operator manually inputting engine type; right? A. My understanding is—well, the

9  short answer is the specification doesn't say anything about that, that's correct.")

10  And it does not discuss the operator being involved in the "detection" process at all.

11  Consistent with its disclosures, the title of the patent is "***Automated Detection*** and

12  Control System and Method For High Pressure Water Wash Application and

13  Collection Applied to Aero Compressor Washing" (emphasis added). Statement of

14  Facts ¶ 11.

15       Moreover, the express goal of the patent is to minimize "the influence of the

16  human factor." '262 Patent at 3:65-67; Statement of Facts ¶ 18. It distinguishes

17  prior art systems requiring the operator to manually receive "information regarding

18  the engine type" and manually input system settings. '262 Patent at 3:44-55;

19  Statement of Facts ¶ 16. That is what Cyclean's operators do: ████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████. Statement of Facts ¶¶ 31-32, 34, 38.

22       Accordingly, the '262 Patent provides no support for the conclusion that a

23  person skilled in the art would interpret the claimed "information detector" to

24  include a keypad which CAS uses ████████████████████████████

25  ████.

26       Nor does EcoServices's expert Mr. Kushnick do so. His entire opinion that

27  Cyclean contains the claimed information detector is this statement:

28       [M]y understanding is that in view of this Court's

- 10 -

1   *Markman* order, which applies the plain and ordinary

2   meaning to the claims at issue, there is no reason for

3   CAS to interpret an 'information detector' to exclude a

4   keypad detecting input information.

5   Ex. 9 ¶ 84.

6   Mr. Kushnick's Report provides no analysis or credible evidence supporting

7   that conclusory statement. He says only that Cyclean operating manuals ████

8   ███████████████████████████████████████████████████████████

9   *Id.* ¶ 85 (emphasis in original). But that excerpt simply reflects the uncontroverted

10  fact that ████████████████████████. Statement of Facts ¶ 38. It

11  does not address—at all—whether a keypad is a detector.

12  Nor does Mr. Kushnick's Report address whether Cyclean's keypad "gathers

13  information related to engine type.[4] ████████████████████████████.

14  Statement of Facts ¶ 37. And, again, the Cyclean ███████████████████

15  ███████████████████████████████████████████████████████████

16  ████████████████. *See* Ex. 3 at 47:15-49:4; Statement of Facts ¶ 38. Mr.

17  Kushnick does not explain how the ████████████████ amounts to the

18  keypad "gathering information related to engine type." That is because he cannot.

19  ███████████████████████████████████████████████████████████.

20  There is simply no evidence supporting the conclusion that a user pressing

21  directional keys somehow amounts to the keypad "gathering" engine information.[5]

22  Due to the complete lack of analysis contained in Mr. Kushnick's Report and

23

24  [4] The same is true for claim 14's requirement that the information detector

25  "identify[] at least one of washing unit and engine type." Mr. Kushnick provides no
separate analysis of claim 14's information detector limitation. *See* Ex. 9 ¶¶ 102-03.

26  [5] Again, EcoServices chose not to seek any discovery from LHT (the developer of

27  Cyclean) or ████████ whose branding appears on the keypad. The complete lack of
information in the record regarding the operation of the keypad and Cyclean's

28  internal computing components is therefore due to EcoServices's own inaction.

- 11 -

the absence of any disclosures in the '262 Patent supporting his position, there is no credible evidence in the record that a person skilled in the art would consider Cyclean's keypad to fall within the scope of the claimed "information detector." Mr. Kushnick's conclusory and unsupported statements to the contrary are not sufficient to create a genuine dispute of material fact. Summary judgment of non-infringement of the '262 Patent is therefore appropriate. *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001) ("Broad conclusory statements offered by Telemac's experts are not evidence and are not sufficient to establish a genuine issue of material fact."); *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed. Cir. 1998) (affirming summary judgment of non-infringement where the plaintiff's "expert declarations are wholly conclusory, devoid of facts upon which the affiant[s'] conclusions, as experts, were reached" (internal quotations omitted)); *see also Smith v. Garlock Equip. Co.*, 658 F. App'x 1017, 1024 (Fed. Cir. 2016) ("Expert testimony that fails to show how the accused device meets a particular limitation cannot constitute substantial evidence supporting a finding of literal infringement.").

## C. There Is No Evidence that Cyclean Includes the Claimed Control Unit.

That Cyclean's keypad also cannot be the claimed "information detector" is further confirmed by the "control unit" limitation. Claim 1 requires the control unit to, among other things, "determine a washing program to be used as a function of the information relating to engine type from a set of preprogrammed washing programs." '262 Patent cl. 1[6]; Statement of Facts ¶ 24.

Again, it is undisputed that ███████████████████

---

[6] Although the control unit limitation of asserted claim 14 uses different language, it similarly requires the control unit to determine "a washing program from a set of available washing programs. *See* '262 patent cl. 14; Ex. 3 at 195:12-196:12. As with the information detector limitation, Mr. Kushnick provides no independent analysis of claim 14's control unit limitation. *See* Ex. 9 ¶¶ 104-05.

██████. Statement of Facts ¶ 38. But the asserted claims are system claims requiring the **Cyclean** system to determine the wash program. *See* Ex. 3 at 79:4-15 (confirming "there has to be a separate determination that takes place inside the control unit"). ████████████████████████████████████████ ███████████████████████████████████. *See* Ex. 10 ¶ 7; Ex. 11 at CAS004391; Statement of Facts ¶ 40.

EcoServices points to no separate determination made by Cyclean's alleged control unit. Nor can it. There is simply no evidence of a separate determination made by the alleged control unit. Paragraph 88 of Mr. Kushnick's Report shows ████████████████████████████████████████████████████████ ███████████████████████████████████

Those pictures show █████████████████████████████████████████ ████████. They do not show Cyclean itself automatically determining which washing program to use.

In Paragraph 90, Mr. Kushnick paraphrases the claim language without further elaboration: "the control unit of Cyclean receives information related to engine type, determines a washing program to be used as a function of the information related to engine type, and is configured to regulate the washing unit

- 13 -

1  according to washing parameters with the washing program used." This paragraph

2  likewise does not address how Cyclean, rather than ████████, determines a

3  washing program. Indeed, because EcoServices did not seek discovery from LHT,

4  there is no evidence (such as source code or schematics) describing the operation of

5  Cyclean's alleged control unit. EcoServices and Mr. Kushnick therefore do not—

6  and cannot—cite any evidence in support of their conclusory assertion that the

7  Cyclean system itself determines which washing program to run.[7]

8      The Federal Circuit has recognized the distinction between the automated

9  environment recited in the claims and a system, like Cyclean, requiring manual user

10  input. In *Eaton Corp. v. Rockwell International Corp.*, 323 F.3d 1332, 1342 (Fed.

11  Cir. 2003), the claim recited an "automatic mechanical vehicle driveline system"

12  having an "information processing unit" that received and processed inputs about

13  gear ratios, had a program for generating outputs for operating the driveline, and

14  means "to actuate said driveline system to effect engagement" of the gear ratios in

15  response to the outputs. The Federal Circuit reversed a judgment of infringement,

16  because the accused system required the driver to "push a button, indicating the

17  desire to shift gears" and then "move the lever to shift gears." *Id.* The Court

18  reasoned that the claim required the recited program—not the driver—to decide

19  when to shift gears and the means of the information processing unit—not the

20  driver—to shift the gears. *Id.* at 1342-43.

21      Similarly, the asserted claims of the '262 Patent require the system's control

22  unit to determine which washing program to run. The evidence shows only that

23  ───────────────

24  [7] While not necessary to CAS's motion given EcoServices' evidentiary
shortcomings, CAS's expert Dr. Micklow explains in detail that the technological

25  environment recited in the claims is entirely distinct from Cyclean's manual input
environment. *See* Ex. 8 ¶¶ 120-26. He specifically explains that a person skilled in

26  the art would recognize that those two environments require significantly different

27  programming and that EcoServices's position that Cyclean's manual selection input
satisfies the claims renders superfluous the requirement that the *control unit*

28  "determine a washing program to be used." *See id.*

1  **[redacted]**.

2  Cyclean therefore cannot infringe the asserted claims. Mr. Kushnick does not

3  analyze whether Cyclean itself makes the determination and therefore fails to

4  address a requirement of the asserted claims. His conclusory statements that

5  Cyclean has a "control unit" therefore do not create a genuine issue of material fact,

6  and summary judgment is appropriate. *See TechSearch*, 286 F.3d at 1373-74

7  (affirming grant of summary judgment of non-infringement where plaintiff's expert

8  "fails to recognize the native mode claim requirement, a predicate to conducting a

9  proper analysis of infringement"); *Schwing GmbH v. Putzmeister*

10  *Aktiengesellschaft*, 305 F.3d 1318, 1326 (Fed. Cir. 2002) (concluding that patentee

11  failed to present a genuine issue of material fact as to literal infringement where the

12  claim required an "annular extension" to overlap the side of a spring and patentee's

13  expert only considered overlap at the end, and not the side, of the accused spring);

14  *see also The Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1346-47

15  (Fed. Cir. 2008) (reversing denial of JMOL of non-infringement where claim

16  required a condition to be present prior to the product rotating, and patentee's

17  expert testified only about the product as it rotated).

18  **V.   CONCLUSION**

19  For the foregoing reasons, CAS respectfully requests that the Court grant

20  partial summary judgment that CAS does not infringe the asserted claims of the

21  '262 Patent.

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE '262 PATENT,
CASE NO. 5:16-CV-01824-RSWL-SP

Dated:        March 30, 2018                    MAYER BROWN LLP

                                                By: */s/ Stephen E. Baskin*
                                                     Stephen E. Baskin


                                                Dale J. Giali (SBN 150382)
                                                Elizabeth M. Burnside (SBN 258184)
                                                Stephen E. Baskin (*pro hac vice*)
                                                Peter O. Schmidt (*pro hac vice*)
                                                Gregory J. Apgar (*pro hac vice*)
                                                Canek Acosta (SBN 301901)

                                                *Attorneys for Defendant/Counter-Plaintiff*
                                                *Certified Aviation Services, LLC*

1

## <u>Certificate of Service</u>

2  I, Stephen E. Baskin, hereby certify that on March 30, 2018, I filed the within

3 and foregoing Defendant's Motion for Partial Summary Judgment of Non-

4 Infringement of the '262 Patent with the Clerk of Court using the CM/ECF system,

5 which automatically sent counsel of record email notification of such filing:

6

7 Leanna Costantini
costantinil@gtlaw.com

8 GREENBERG TRAURIG

9 3161 Michelson Drive, Suite 1000
Irvine, CA 92612

10 Telephone: (949) 732-6804
Facsimile: (949) 732-6501

11

12 Ronald J. Pabis
pabisr@gtlaw.com

13 Stephen K. Shahida
shahidas@gtlaw.com

14 Patrick J. McCarthy

15 mccarthyp@gtlaw.com
Myomi T. Coad

16 coadm@gtlaw.com

17 GREENBERG TRAURIG LLP

18 2101 L Street NW, Suite 1000
Washington, DC 20037

19 Telephone: (202) 331-3100
Facsimile: (202) 331-3101

20

21 *Attorneys for Plaintiff EcoServices, LLC*

22

23 Dated: March 30, 2018   MAYER BROWN LLP

24          By: */s/ Stephen E. Baskin*

25           Stephen E. Baskin

26

27

28