MAYER BROWN LLP

Dale J. Giali (SBN 150382)
dgiali@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Stephen E. Baskin (*pro hac vice*)
sbaskin@mayerbrown.com
Peter O. Schmidt (*pro hac vice*)
pschmidt@mayerbrown.com
Canek Acosta (SBN 301901)
cacosta@mayerbrown.com
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Gregory J. Apgar (*pro hac vice*)
gapgar@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

Attorneys for Defendant/Counter-Plaintiff
Certified Aviation Services, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| EcoServices, LLC,<br><br>      Plaintiff,<br><br>vs.<br><br>Certified Aviation Services, LLC,<br><br>      Defendant. | Case No. 5:16-cv-01824-RSWL-SP<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '860 PATENT**<br><br>Trial Date: June 26, 2018<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 1, 2018 at 10:00 a.m. before the Honorable Ronald S.W. Lew of the United States District Court for the Central District of California, Courtroom TBD, First Street Courthouse, 350 W. First Street, Suite 4311, Los Angeles, CA 90012, Defendant Certified Aviation Services, LLC, will and hereby does move to for partial summary judgment of non-infringement and invalidity, pursuant to Fed. R. Civ. P. 56.

This motion is made on the grounds that the EcoServices, LLC cannot meet its burden and show that each and every limitation of the claims '860 Patent are present in Cyclean, and that the '860 Patent claims are indefinite, as a matter of law This motion is based on this written notice, the attached Memorandum of Points and Authorities, and all the records, documents, pleadings, and papers on file or to be filed in this action, arguments of counsel, and any other matters that properly may come before the Court for its consideration.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 23, 2018.

Dated: March 30, 2018                  Respectfully submitted,


                                       MAYER BROWN LLP


                                       */s/  Stephen E. Baskin*
                                       By: Stephen E. Baskin


                                       *Attorney for Defendant/Counter-Plaintiff*
                                       Certified Aviation Services, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.     INTRODUCTION ..............................................................................................iii
II.    BACKGROUND ................................................................................................2
III.   NON-INFRINGEMENT OF THE '860 PATENT ........................................5
  A.   Legal Standard ....................................................................................................5

  B.   ARGUMENT ......................................................................................................6

       1.   EcoServices Has Not Satisfied its Burden of Proving  Infringement. .......6
       2.   Ecoservices Has Failed to Meet Its Burden of Proof to  Establishing
            Infringement of the '860 Patent. ..........................................................................6
       3.   There is no evidence connecting LHT's Engineering Orders  to any
            accused wash. ........................................................................................................12
       4.   There is no evidence supporting EcoServices' willful  infringement claim.
            ………………………………………………………………………..13

IV.    INVALIDITY ...................................................................................................15
  A.   Legal Standard ..................................................................................................15

  B.   Argument ...........................................................................................................16

V.     CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................5

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
  922 F.2d 792 (Fed. Cir. 1990) ...................................................................5

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................5

*Finjan, Inc. v. Cisco Sys. Inc.*,
  No. 17-CV-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7,
  2017) ........................................................................................................14

*Forest Labs., Inc. v. Abbott Labs.*,
  239 F.3d 1305 (Fed. Cir. 2001) .................................................................7

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016) .............................................................................13

*Hodosh v. Block Drug Co.*,
  786 F. 2d 1136 (Fed. Cir. 1986) ................................................................5

*Homeland Housewares, LLC, v. Sorensen Research and Development
  Trust*,
  581 F. App'x 869 (Fed. Cir. 2014) ..........................................................11

*London v. Carson Pirie Scott & Co.*,
  946 F.2d 1534 (Fed. Cir. 1991) .................................................................5

*Move, Inc. v. Real Estate Alliance, Ltd.*,
  709 F.3d 1117 (Fed. Cir. 2013) .................................................................5

*Neonatal Prod. Grp., Inc. v. Shields*,
  No. 13-2601-DDC-KGS, 2018 WL 1083261 (D. Kan. Feb. 28,
  2018) ..........................................................................................................7

*Novartis Corp. v. Ben Venue Labs, Inc.*,
  271 F.3d 1043 (Fed. Cir. 2001) .................................................................5

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*,
  984 F.2d 1182 (Fed. Cir. 1993) ..................................................................... 5

*Radware, Ltd. v. F5 Networks, Inc.*,
  No. 5:13-CV-02024-RMW, 2016 WL 4427490 (N.D. Cal. Aug. 22,
  2016) ............................................................................................................. 14

*Tanabe Seiyaku Co. v. ITC*,
  109 F.3d 726 (Fed. Cir. 1997) ...................................................................... 5

*WBIP, LLC v. Kohler Co.*,
  829 F.3d 1317 (Fed. Cir. 2016) .................................................................. 14

**Statutes**

35 U.S.C. § 112 ¶ 2 ............................................................................................. 1

35 U.S.C. § 287 .................................................................................................. 7

## I.   INTRODUCTION

Defendant Certified Aviation Services, LLC, ("CAS") respectfully moves for partial summary judgment that the claims of Plaintiff EcoServices, LLC ("EcoServices") U.S. Patent No. 5,868,860 (the "'860 Patent") are non-infringed and invalid.

EcoServices has presented no evidence that Cyclean involves a washing liquid having the pressure, particle size, particle velocity, or volumetric flow claimed in the '860 patent. EcoServices' infringement case is built on: a third-party patent that "allegedly" describes the operation of the Cyclean system, a hearsay statement that Cyclean may use one of the seventy-five versions of a ███████ nozzle, and Engineering Orders from the third-party developer of Cyclean. But there is no evidence tying any of those sources to CAS's use of Cyclean during the washes accused of infringement.,

EcoServices has also failed to present evidence supporting its claim of willful infringement. EcoServices's willfulness claim is based on two pre-suit notice letters it allegedly attempted to send to Defendant CAS. However, the record is undisputed that EcoServices actually sent the letters to a different, unrelated entity, and no CAS employee ever received the letters. Therefore, CAS is similarly entitled to summary judgment that any alleged infringement was not willful.

Finally, the '860 patent is invalid for failing to comply with 35 U.S.C. § 112 ¶ 2 because the term "small quantities" found in each of the claims is indefinite and not capable of defining with certainty the scope of the alleged invention. The term "small quantities," as used in the patent and recently confirmed by the inventor at deposition, clearly refers to a volume, such as liters or gallons. However. the '860 Patent does not provide a person of ordinary skill in the art reasonable certainty as to what an infringing "small" quantity would be. The inventor testimony came after the Court's May 18, 2017 claim construction decision (Dkt. No. 80), thus is new information and evidence not previously before the Court. Moreover, EcoServices

expert, Mr. Kushnick, admitted that if "small quantities" refers to a volume, that he would have no other way of knowing what the term means. As a result, the '860 Patent is invalid for indefiniteness.

## II.   BACKGROUND

EcoServices accuses CAS of infringing claims 1 and 2 of the '860 Patent. Those claims are directed to a method of washing turbine compressors using a spray that meets specific numerical parameters and ranges. Specifically, the claims require washing a turbine compressor using a spray made with (1) an overpressure of 50 to 80 bars at the nozzle, (2) a liquid particle size of 250-120 microns, (3) a flow rate of .5-60 liters per minute (2-60 liters per minute in Claim 2), and (4) a particle velocity of 100-126 meters per second. D.I. 1-8, '860 Patent at 4:5-11.

The specification of the '860 Patent states that "the object of the present invention is to … provide conditions for the lean use of resources and for obtaining an effective compressor wash, and to reduce the use of liquids that present a hazard to health and to the environment, and to enable turbine motors to be cleaned effectively with far less quantities of liquid." '860 Patent at 1:43-49

The accused product is the Cyclean engine washing system. Cyclean was developed by non-party Lufthansa Technik AG ("LHT"). SOF ¶ 4.[1] Since 2010, CAS has been LHT's exclusive provider of Cyclean services in the United States. SOF ¶ 5. As a supplier, CAS played no role in the design or development of Cyclean. SOF ¶ 7. EcoServices did not seek any discovery from LHT. SOF ¶ 8.

Mr. Kushnick relies primarily on two items to support his infringement opinion. The first is U.S. Patent No. 8,216,392 ("the '392 Patent"). The '392 Patent is assigned to non-party LHT. SOF ¶ 57. Mr. Kushnick states in his Report[2] that his

---

[1] Defendant's Statement of Uncontroverted Facts and Conclusions of Law in Support of its Motion for Summary Judgment on the '860 Patent.

[2] As used herein, the "Report" refers to the August 31, 2017 Opening Expert Report of Steven B. Kushnick, P.E. *See* Ex. __.

"understanding" is that the '392 patent "allegedly teaches the operation of the Cyclean system." Ex. 21,[3] Kushnick Opening Rep. ¶ 57. Mr. Kushnick cites no basis for that understanding. He did not speak to the named inventors or anyone at LHT. Ex. 12, Kushnick Dep. Tr. at 99:5-21. SOF ¶ 62. Nor did he review any documents or deposition testimony describing the relationship between the '392 Patent and Cyclean. *Id.* at 98:5-18. SOF ¶ 63. No such evidence has been produced in this case.

Mr. Kushnick relies on the '392 patent for all of the claimed parameters. But none of the claims of the '392 Patent recite an overpressure, particle size, particle velocity, or volumetric flow of a washing liquid. SOF ¶ 59. Mr. Kushnick instead relies on disclosures of the '392 Patent's specification. Ex. 12, Kushnick Dep. Tr. at 100:2-12. However, the '392 Patent's specification discloses spray flow parameters that do not infringe the claims of the '860 Patent. SOF ¶ 64.

The other item on which Mr. Kushnick primarily relies is a ███████████ ██ nozzle. Mr. Kushnick relies on that nozzle series for his opinion that Cyclean practices the claimed particle size and velocity. Ex. 21, Kushnick Rep. ¶¶ 54-57, 65-66. There is no evidence of what nozzle Cyclean uses. SOF ¶ 67. Mr. Kushnick could not identify the nozzle during the Cyclean system inspection he performed in this case. SOF ¶¶ 71-72. Nor were any documents produced indicating the nozzle type. Instead, Mr. Kushnick relies solely on an unsupported third-party hearsay statement, in which a CAS employee allegedly heard from an LHT employee that Cyclean uses a ██████████ nozzle. SOF ¶¶ 68-69. In any event, ██████████" is not a type of nozzle: it is a series of 75 different nozzle versions. SOF ¶¶ 73-74. Each version (designated by a "flow rate code") has a different spray angle and orifice diameter, which results in different flow rates and particle size distributions. SOF ¶ 75.

---

[3] Citations to "Ex." herein refer to exhibits to the Declaration of Gregory J. Apgar filed concurrently herewith.

1    Mr. Kushnick also relies on several LHT "Engineering Orders" as evidence

2  of the pressure and volumetric flow of Cyclean's washing water. ██████████

3  ████████████████████████████████████████████████ SOF ¶ 88.

4  ████████████████████████████████. SOF ¶ 41. Moreover, ██████

5  ████████████████████████████████████ SOF ¶ 87. ██████████

6  █████████████████████████████████████████████████████████

7  ██████████████████ SOF ¶¶ 84-85. There is no evidence of how many of CAS's

8  accused washes were ██████████████ and how many were Engineering Order

9  washes. Nor is there any evidence of how many (if any) accused washes were

10 performed pursuant to the specific Engineering Orders on which Mr. Kushnick

11 relies. Mr. Kushnick "was not asked to opine on the AMM washes." Ex. 12,

12 Kushnick Dep. Tr. at 88:19-89:12.

13    In any event, the Engineering Orders recite ████████████████████

14 ██████████████████████. SOF ¶ 91. The parties agree that the overpressure

15 range claimed in the '860 Patent refers to the pressure of the liquid at the nozzle.

16 SOF ¶ 49. Both experts also agree that the washing water will decrease in pressure

17 as it travels from the pump to the nozzle. SOF ¶ 47. Mr. Kushnick's Report does

18 not address the pressure of the water at Cyclean's nozzle. SOF ¶ 48.

19    Finally, it is undisputed that Cyclean's nozzles rotate during washes. The

20 nozzles are attached to the fan blades of the compressor being cleaned. During the

21 wash, the aircraft's starter motor rotates the compressor, and the nozzles rotate with

22 the compressor. SOF ¶ 49. Mr. Kushnick's Report does not account for Cyclean's

23 rotation. Specifically, Mr. Kushnick agrees that the rotation of the nozzles creates a

24 velocity component for which he did not account in his calculation of Cyclean's

25 alleged particle velocity. SOF ¶¶ 50-51, 54. And his testing of ██████ nozzles

26 involved stationary nozzles and did not account for the turbulence present during a

27 Cyclean wash. SOF ¶ 81-82.

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '860 PATENT,
CASE NO. 5:16-CV-01824-RSWL-SP

## III.   NON-INFRINGEMENT OF THE '860 PATENT

### A.   Legal Standard

A patentee must prove that each and every step of the method or process was performed to establish liability for direct infringement of a claimed method or process. *See Move, Inc. v. Real Estate Alliance, Ltd.*, 709 F.3d 1117, 1122 (Fed. Cir. 2013). There can be no infringement as a matter of law if even a single claim limitation is absent. *See Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 798 (Fed. Cir. 1990); *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991).

At trial, EcoServices bears the burden to prove infringement by a preponderance of the evidence, *Tanabe Seiyaku Co. v. ITC*, 109 F.3d 726, 731 (Fed. Cir. 1997). "Summary judgment must be granted against a party who has failed to introduce evidence sufficient to establish the existence of an essential element of that party's case, on which the party will bear the burden of proof at trial." *Novartis Corp. v. Ben Venue Labs, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "'Summary judgment is authorized when it is quite clear what the truth is,' [citations omitted], and the law requires judgment in favor of the movant based upon facts not in genuine dispute." *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1185 (Fed. Cir. 1993) (quoting *Hodosh v. Block Drug Co.*, 786 F. 2d 1136, 1141 (Fed. Cir. 1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

B. **ARGUMENT**

1. **EcoServices Has Not Satisfied its Burden of Proving Infringement.**

As discussed in CAS's contemporaneously filed Motion to Exclude EcoService's Expert Steven B. Kushnick, P.E., Mr. Kushnick's reliance on the '392 Patent and ████████ nozzles, and his velocity calculations, are unreliable. As a result,  CAS is entitled to summary judgment of non-infringement.

Mr. Kushnick's opinion that Cyclean practices the claimed particle velocity depends on his unreliable calculation. EcoServices has therefore failed to  present any evidence regarding Cyclean's particle velocity. Summary judgment would independently be warranted on this ground as well. Mr. Kushnick's velocity opinion is also specific to the ████████ Series nozzle. Ex. 21, Kushnick Rep. ¶ 67. Therefore, summary judgment is also warranted because EcoServices has failed to establish that Cyclean uses a ████████ nozzle.

Finally, the  only other "evidence" for the pressure, particle velocity and flow rate parameters are the LHT Engineering Orders. Ex. 21, Kushnick Rep. ¶ 61. As explained above, EcoServices has failed to tie any LHT Engineering Order to any accused wash.

Thus, EcoServices's has failed to present any evidence to meet its burden or raise a genuine dispute of material fact regarding whether CAS's use of Cyclean practices the required parameter limitations of the '860 Patent.

2. **Ecoservices Has Failed to Meet Its Burden of Proof to Establishing Infringement of the '860 Patent.**

EcoServices has failed as a matter of law to  meet its infringement burden of proof. Namely, there is no evidence in the record connecting either the '392 Patent, ████████ nozzles, or LHT Engineering Orders to the operation of accused Cyclean washes.

a)   The '392 Patent is not evidence that Cyclean meets any claimed parameter.

As explained above, Mr. Kushnick assumes that the '392 patent is evidence of the particle size, flow rate, and pressure (from which he also calculates velocity) of the liquid used during Cyclean washes. To support that assumption, Mr. Kushnick states only that his "understanding" is that the 392 patent "allegedly teaches the operation of the Cyclean system." Ex. 21, Kushnick Opening Rep. ¶ 52.

There is no evidence whatsoever tying LHT's '392 patent to CAS's use of Cyclean. EcoServices sought no discovery from LHT or any of the named inventors. No documents were produced evincing any connection between the '392 Patent and Cyclean. In addition, 35 U.S.C. § 287 requires patent holders to mark products that are patent protected with the applicable patent numbers to put the public on notice of the patent protection. EcoServices has generated no evidence that the Cyclean system or any of its components indicate that it is covered by a patent. Nor has there been any evidence entered that either CAS or LHT has disclosed that Cyclean embodies the '392 Patent. Similarly, in generating his Report, Mr. Kushnick did speak to the inventors or anyone at LHT, and did not review any documents revealing any relationship between the '392 Patent and Cyclean. SOF ¶ 62-63.

Moreover, the Federal Circuit has made clear comparing the asserted claims to a patent that may or may not describe the accused product is not evidence of infringement. *See, e.g., Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1313 (Fed. Cir. 2001) ("[patentee] needed to present adequate evidence with respect to the accused product, not the content of a patent application that may or may not describe the product."); *see also Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC-KGS, 2018 WL 1083261, at *10 (D. Kan. Feb. 28, 2018) (holding that even "circumstantial evidence of patent marking is insufficient to raise a genuine issue of

- 7 -

1  fact of infringement when the court already has determined that the accused
2  products do not meet three required limitations of each disputed claim.").

3         And here, Mr. Kushnick does not even point to the claims of the '392 Patent.
4  He instead hand picks a few parts of the specification that reference certain spray
5  ranges and parameters. Other than Mr. Kushnick's mere conclusory statement that
6  Cylcean practices the '392 Patent,  EcoServices has presented no evidence that this
7  is really the case. Ex. 12 at 102:22-103:12. Again, EcoServices – despite having the
8  opportunity to do so – failed to take any discovery on the '392 Patent, its assignee
9  LHT, or its named inventors.

10        Critically, even if the '392 Patent had some relevance, it is directed to
11  completely different functionality than EcoServices's '860 Patent. The '392 Patent
12  claims are directed to a nozzle assembly being in sync with fan blades while
13  cleaning. *See* '392 Patent Cl. 1. None of the claims of the '392 Patent are directed
14  to the claimed parameters of the '860 Patent. Ex. 12, Kushnick Dep. Tr. at 100:2-6.
15  As stated above, Mr. Kushnick instead assumes that Cyclean practices some of the
16  suggested parameters stated in the specification of the '392 Patent. Ex. 12 at 98:10-
17  100:12.

18        Even if it were permissible to simply assume that Cyclean practices the
19  parameters in the specification of the '392 Patent, the disclosed parameters are
20  broader than those of the '860 Patent and would not show that Cyclean infringes the
21  '860 Patent. The '392 Patent states, for example, "the average droplet size is 50 to
22  500 microns, more preferably 100 to 300 microns, more preferably 150 to 250
23  microns." Ex. 22, '392 Patent at 5:49-51. Indeed, it would be possible for Cyclean
24  to practice the disclosed particles sizes of the '392 Patent with a spray having
25  particle sizes from 50-119 microns, or even 251-500 microns, both of which lie
26  entirely outside the claimed particle size in the '860 Patent. The same deficiency is

27
28

- 8 -

true of the disclosed pressures[4] and flow rates[5] disclosed in the specification of the '392 Patent.

Finally, the '392 Patent has no disclosure of the particle velocity used in the disclosed invention. Mr. Kushnick uses the "most preferred" range of pressure in the '392 Patent, 50 to 70 bar, to calculate particle velocity. It is therefore not evidence of Cyclean's particle velocity for the same reasons it is not evidence of pressure.

In sum, the '392 Patent is not evidence that Cyclean meets the pressure, flow rate, particle size, or particle velocity limitation of the '860 Patent.

        b)    There is no evidence of the nozzles used during Cyclean washes.

In opining that Cyclean meets the claimed particle size, Mr. Kushnick relies on his assumption that Cyclean uses a ▮▮▮▮▮▮ nozzle, and his testing of three nozzles within the ▮▮▮▮▮▮ series. That is his only purported evidence of particle size besides the 392 patent. Ex. 21, Kushnick Rep. ¶¶ 54-57 & App. A.

EcoServices has presented no credible evidence of what nozzles Cyclean uses. First, as explained above, Mr. Kushnick's entire understanding that Cyclean uses a ▮▮▮▮▮ Series nozzle is based on inadmissible hearsay. EcoServices has obtained no admissible evidence regarding what nozzle Cyclean uses. The in-person inspection ▮▮▮▮▮▮▮▮▮▮▮▮. Nor do any documents produced in this case indicate the nozzle type. Notably, EcoServices identified

---

[4] The '392 Patent discloses that "[t]he pressure under which the cleaning medium is discharged at the nozzle opening preferably lies within the range of 20 to 100 bar, more preferably 30 to 80 bar, more preferably 50 to 70 bar." '392 Patent at 5:44-47. That is broader than the '860 Patent's claimed range of 50-80 bar.

[5] The '392 Patent discloses that "throughput of liquid cleaning medium preferably lies between 10 and 200 l/min, more preferably 20 to 150 l/min, more preferably 20 to 100 l/min, especially preferably between 20 and 60 l/min." '392 Patent at 5:52-55. That is broader than the '860's claimed range of 0.5-60 l/min.

- 9 -

1   ██████ in the Complaint, yet sought no discovery from ██████ or from any other

2   third party. Dkt. No. 1 at ¶ 44.

3       Moreover, the inadmissible hearsay testimony on which Mr. Kushnick relies

4   does not even establish what nozzle Cyclean uses. In that testimony, CAS witness

5   Brad Caban testified that ████████████████████████████████████████

6   ████████████████

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   Ex. 4, Caban Dep. 150:20-151:14.

22       Those references to "███████████" do not identify a nozzle. ██████████

23   refers to a *series* of nozzles. SOF ¶ 73.There are at least 75 individual nozzles in the

24   ████████ series. SOF ¶ 74. The 75 different ██████████ nozzles have different

25   properties and produce different particle size distributions. SOF ¶ 75. EcoServices

26   has generated no evidence identifying any of those 75 nozzles as being used in

27   Cyclean.

28       Instead, Mr. Kushnick simply chose *3* out of the *75* ██████████ nozzles to

test. SOF ¶ 80. There is no evidence that any of those 3 nozzles have ever been
used in a Cyclean wash:

> **Q. And you don't know for certain whether any Cyclean washes
> ever used any of the three ▮▮▮▮▮▮ nozzles that you tested and
> list in paragraph 2 of Exhibit A; right?**

> A. That's correct. What -- what you're referring to is after the ▮▮ model
> number, then there's a flow rate code. And that refers back to the catalog with
> the -- however many there are, perhaps 75 of them. And that's correct. I don't
> know if the flow rate code corresponds to the one that's in the Cyclean.

Ex. 12 at 125:1-19.

And when asked whether these nozzles could even practice the flow rates
that Cyclean uses, Mr. Kushnick admitted that only two of the three tested nozzles
could do so. *Id.* at 132:3-25. EcoServices has failed to establish any connection
between the three tested nozzles and what the Cyclean system actually uses
(assuming one of the 75 ▮▮▮▮▮▮ nozzle is even used).

Additionally, Mr. Kushnick's nozzle testing did not take into consideration
Cyclean's operating conditions that affect particle size in an accused Cyclean spray.
Ex. 12 at 104:2-18. For instance, Cyclean's nozzles rotate, which impact particle
size as the spray is distributed through the nozzle. In contrast, Mr. Kushnick was
testing nozzles in a fixed position and sprayed into still air. Ex. 21, Appendix A at
2-3. The speed from the rotation and turbulence from inside the turbine engine are
conditions that would affect particle size.  Where evidence of infringement involves
a replication of the performance of an accused product, there must be an
explanation of "why the evidence [] made under different conditions nonetheless
proved that the accused processes infringed." *Homeland Housewares, LLC, v.
Sorensen Research and Development Trust*, 581 F. App'x 869, 876 (Fed. Cir.
2014). EcoServices has presented no evidence that its testing conditions are at all
probative of the particle size in a Cyclean spray, which is generated under
significantly different operating conditions.

Finally, Mr. Kushnick's opinion that Cyclean practices the claimed particle velocity also depends on the ███████. In particular, his calculation includes the selection of a coefficient of velocity for the nozzle. Kushnick Report ¶¶ 64-65. He relies on Cyclean using a ███████████ in making that calculation. *Id.* ¶ 67 ("Based on my calculation, Cyclean's use of a █████████████ nozzle would meet this claim element."). Because EcoServices has not obtained any admissible evidence that Cyclean actually uses a ██████████████ nozzle, Mr. Kushnick's opinion that a █████████ nozzle would satisfy the claimed velocity requirement could not support a jury verdict of infringement.

In sum, EcoServices has presented no credible evidence that Cyclean uses a █████████ nozzle, or that Cyclean's nozzles produce a spray having the claimed particle size. As a result, ██████████ nozzles cannot support the conclusion that Cyclean satisfies the claimed particle size or velocity requirements. Since Mr. Kushnick otherwise relies on only the '392 Patent for those parameters, which EcoServices also has not shown to correspond to Cyclean, CAS is entitled to summary judgment of non-infringement.

### 3. There is no evidence connecting LHT's Engineering Orders to any accused wash.

Finally, the only remaining evidence on which EcoServices relies are the ten LHT Engineering Orders cited in Mr. Kushnick's Report. Kushnick Report ¶ 61. Mr. Kushnick relies on those documents for the pressure and flow rate limitations. *Id.* There is no evidence connecting those ten Engineering Orders to the accused Cyclean washes. They are LHT documents, not CAS documents. ██████████████ ████████████████████████████████████████████████████. *See* Ex. 4, Caban Dep. Tr. at 100:9-101:25; Caban Dep. Ex. 107. Again, ████████████ ██████████████████████████████████ There is no evidence showing how many of the accused washes were performed pursuant to the Engineering Orders, and █████████████████████████████. And Mr.

Kushnick admitted that he has no opinion on ▮▮▮▮▮. Kushnick Dep. Tr. at 89:7-12. EcoServices simply has not shown any connection between the Engineering Orders it is attempting to use to prove infringement and the actual washes it accuses of infringement.

Finally, to the extent these Engineering Orders recite a pressure, they only indicate ▮▮▮▮▮▮▮▮▮▮▮▮, whereas both parties' experts agree that the claimed "overpressure" refers to the pressure of the washing liquid at the nozzle. The parties' experts also agree that there will be pressure losses as the liquid travels from the pump to the nozzle. Without accounting for pressure losses in the Cyclean system, which Mr. Kushnick admits he does not do, the Engineering Orders may not be relied upon to show an operating pressure of the Cyclean system. Ex. 12, Kushnick Dep. Tr. at 150:24-151:25.

a)   Without any other evidence, there is no question of material fact that EcoServices has failed to meet its burden of proof, and summary judgment is appropriate.

In sum, EcoServices's infringement case is built on the '392 Patent, ▮▮▮▮ ▮ nozzles, and LHT Engineering Orders. EcoServices has failed to present any evidence connecting any of those items to the use of Cyclean in the actual accused engine washes. EcoServices therefore has failed to provide any evidence that could establish a genuine dispute of material fact precluding summary judgment of non-infringement of claims 1 and 2 of the '860 patent.

### 4.   There is no evidence supporting EcoServices' willful infringement claim.

EcoServices alleges that CAS willfully infringed the '860 Patent. D.I. 1 ¶¶ 51-54. Awards of enhanced damages for willful infringement "are generally reserved for egregious cases of culpable behavior" and "are not to be meted out in a typical infringement case." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

EcoServices bases its willfulness claim on letters dated September 13, 2013

- 13 -

and December 5, 2013 that allegedly "notified Defendant of certain patents owned by EcoServices, which included the '860 Patent, available for licensing." D.I. 1 ¶¶ 51-54. Those letters were not sent to CAS, and there is no evidence anyone at CAS ever received them.

The letters were instead addressed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮.. SOF ¶ 29. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. and Defendant Certified Aviation Services, *LLC* are separate, unrelated entities. Specifically, ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SOF ¶ 31. ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ remained in existence as a shell company with no employees for the sole purpose of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ *Id.* ¶ 32. The address to which the letters were ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is ▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 33. ▮▮▮ ▮▮▮▮▮ had no involvement with Defendant CAS after 2011. *Id.* ¶ 34.

There is no evidence that the alleged notice letters were ever in the possession of, let alone read by, anyone at Defendant CAS. As such, there is no evidence showing that CAS had knowledge of the '860 Patent prior to the service of the Complaint. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (knowledge of a patent is a prerequisite for enhanced damages for willful infringement); *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-CV-02024-RMW, 2016 WL 4427490, at *3–5 (N.D. Cal. Aug. 22, 2016) (summary judgment of no willful infringement when there was no evidence that accused infringer had knowledge of the asserted patent). Beyond the lack of knowledge, there is no evidence whatsoever of the further requirement that the accused infringer was egregious in its actions of infringement. *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (granting summary judgment on willfulness, even when they knew about the asserted patent, when there was no evidence of egregious conduct that warrants enhanced damages).

- 14 -

1    Therefore EcoServices has failed to meet its burden of proof and CAS is
2    entitled to judgment as a matter of law that any alleged infringement of the '860
3    Patent was not willful.

### IV.   INVALIDITY

####    A.   Legal Standard

6    The Federal Circuit has instructed that "the language of the claims must
7    make it clear what subject matter they encompass." *PPG Indus., Inc. v. Guardian*
8    *Indus. Corp.*, 75 F.3d 1558, 1562 (Fed. Cir. 1996) (internal quotations omitted); *see*
9    *also* 35 U.S.C. § 112 ¶ 2. The party challenging the validity of a patent must prove
10   that the claim language is indefinite by clear and convincing evidence. *Intel Corp.,*
11   *v. VIA Techns., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003). The Supreme Court
12   clarified the definiteness standard, holding that "a patent is invalid for
13   indefiniteness if its claims, read in light of the specification delineating the patent,
14   and the prosecution history, fail to inform, with reasonable certainty, those skilled
15   in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments,*
16   *Inc.*, 134 S. Ct. 2120, 2124 (2014).

17   "[I]t cannot be sufficient that a court can ascribe *some* meaning to a patent's
18   claims; the definiteness inquiry trains on the understanding of a skilled artisan at
19   the time of the patent application, not that of a court viewing matter *post hoc*." *Id.* at
20   2130 (emphasis original). "The fact that [a patentee] can articulate a definition
21   supported by the specification, however, does not end the inquiry. Even if a claim
22   term's definition can be reduced to words, the claim is still indefinite if a person of
23   ordinary skill in the art cannot translate the definition into meaningfully precise
24   claim scope." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251
25   (Fed. Cir. 2008). For terms of degree, such as "small," "it is not enough . . . to
26   identify *some standard* for measuring the scope of the phrase…. The claims, when
27   read in light of the specification and the prosecution history, must provide objective
28   boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766

- 15 -

F.3d 1364, 1370–71 (Fed. Cir. 2014) (emphasis added). The claims of the '860 Patent do not meet this standard.

### B.    Argument

The asserted claims of the '860 Patent, claims 1 and 2, are directed to a method of washing turbine compressors using "small quantities of finely-divided liquid." '860 Patent at 4:2-3. Although the '860 Patent uses the word "quantity" throughout to refer to a volume of liquid, it does not provide any objective boundaries for what defines a "small" quantity. As detailed in CAS's opening claim construction brief:

> The specification uses "quantities" to refer to the total number of liters used in a wash, stating that in the prior art, "*very large* quantities of water are injected (300-400 l per engine)." '860 Patent at 1:26-27. In contrast, "[t]he inventive method is implemented by spraying small quantities of finely-divided liquid onto and through the object to be washed." *Id.* at 1:66-2:1. The volume sprayed is critical, as "[t]he reduction in the quantity of liquid *required* is advantageous … because *large* quantities of water subject the turbine blades … to harmful mechanical loads." *Id.* at 2:33-36.

Dkt. No. 75 at 6 (emphasis added). Dr. Micklow, CAS's technical expert, similarly understands the term "quantities" to refer to a volume in light of the '860 Patent's stated purpose in reducing the volume of water used in a turbine engine wash. Dkt. No. 65, Ex. 2 at par. 29. In its claim construction order, this Court held that "[w]hile 'small quantities,' could be defined in terms of volume only, … a person of ordinary skill in the art could with reasonable certainty define "small quantities" as a flow rate" and held that "Defendant has failed to prove [its claim of indefiniteness] by clear and convincing evidence." Dkt. No. 80 at 10.

Since the Court's claim construction order, however, CAS has taken the deposition of the '860 Patent's inventor and confirmed that the inventor confirmed that "small quantities" refers to a <u>volume</u>, in order to accomplish the overall goal of the '860 Patent to reduce the amount of water used during a wash:

- 16 -

1

**Q. Do you see starting on line 2**

2

**of column 4 there is a clause that says**

3

**"Wherein, small quantities of finely**

**divided liquid are sprayed onto and**

4

**through the turbine compressors?"**

5

A. Yes.

6

7

**Q. Is that "small quantities of**

**finely divided liquid", does refer to**

8

**your goal of reducing the volume of**

**liquid used in the wash?**

9

10

MR. McCARTHY: Object to form.

Calls for a legal conclusion.

11

12

A. Yes.

13

**Q. So the phrase "small**

14

**quantities of finely divided liquid" is**

**not referring to the claimed total**

15

**volumetric flow of .5 to 60 liters per**

16

**minute. Is that right?**

17

A. That's right.

18

Ex. 8, Asplund Dep. Tr. at 140:10-141:4. This testimony confirms that "small

19

quantities" in fact cannot refer to flow rate and, instead, is directed to a volume of

20

water. And, specifically – and consistent with the specification – the overall goal of

21

reducing water used during the wash.

22

When consistent with the intrinsic evidence, it is proper for courts to consider

23

inventor testimony regarding the interpretation of the claims in a patent. *Voice*

24

*Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999) (reversing

25

summary judgment because the district court improperly disregarded inventor

26

testimony contrary to that of expert's definition). Indeed "[a]n inventor is a

27

competent witness to explain the invention and what was intended to be conveyed

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '860 PATENT,
CASE NO. 5:16-CV-01824-RSWL-SP

by the specification and covered by the claims." *Id.* at 615-16. In particular, inventor testimony is pertinent where an inventor's testimony lends itself to understanding the established meaning of particular terms in the relevant art to a person of skill in the art, such as understanding the meaning of the word "quantities" in the '860 Patent. *Sun Microsystems Inc. v. Network Appliance*, No. C-08-01641 EDL, 2009 WL 1513384, *14 (N.D. Ca. May 29, 2009) (citing *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346-47 n.5 (Fed. Cir. 2008)).

With the meaning of "quantity" confirmed, the issue of indefiniteness turns on whether the '860 Patent provides objective boundaries for the term "*small quantities*." It does not. As detailed in CAS's opening claim construction brief:

> The specification discloses just two examples of spraying liquid according to the invention. Unlike in Claim 1, both examples disclose a particular flow rate and a given spray time, so that a total quantity can be calculated. Those exemplary quantities are 3 liters and 18 liters.[6] But the specification does not state whether those two discrete quantities correspond to the boundaries (or if they are even near the boundaries) of the claimed "small quantities" that use "far less" than the "very large quantities" of 300-400 liters of liquid.[7] Thus, a skilled artisan performing an engine wash using anywhere between 18 and 300 liters would be left to guess whether they infringe.

Dkt. No. 75 at 7. As described in detail by Dr. Micklow, this disclosure is not enough to provide a person of ordinary skill in the art with reasonable certainty of an infringing "small quantity." Dkt. No. 75, Ex. 2 at pars. 31-33.

In CAS's responsive brief, CAS further provided examples of similar cases where courts have held that terms of degree are indefinite:

---

[6] *See* '860 Patent at 2:42-52 (0.1 liters/sec times 30 seconds times 6 nozzles = 18 liters); *id.* at 2:53-61 (0.05 liters/sec times 20 seconds times 3 nozzles = 3 liters).

[7] For example, are there "large" or "medium" quantities that do not infringe but are less than the disclosed "very large quantities?" Is there a lower boundry to "small" quantities under which are non-infringing "very small quantities?" The specification is devoid of any definitive answers.

For example, in *Halliburton* the Federal Circuit concluded that the term "fragile gel" was indefinite because the patentee "did not identify the degree of the fragility of its invention." *Id.* In *Guzik Tech. Enters., Inc. v. W Digital Corp.*, No. 11-CV-03786-PSG, 2013 WL 3934892, at *23 (N.D. Cal. July 9, 2013), the claim related to writing onto a disk as it rotates for a "relatively short period of time." The court found that "relatively short period of time" was indefinite because, even if a skilled artisan would recognize that the period of time must be shorter than one full rotation of the disk, "nothing in the patent elucidates how much shorter than one rotation the period of time must be." *Id.* And in *Storm Prods., Inc. v. Ebonite Int'l., Inc.*, the court found that the term "large quantity of bowlers" was indefinite because the patent failed to specify any method, "such as a numeric threshold or a limited time and space" to calculate "large" and definitively tie the claimed "large number of bowlers" to any particular meaning. 638 F. Supp. 2d 1307, 1312-13 (D. Utah 2009). The court observed:

> [O]ne skilled in the art … might consider ten bowlers to be a "large number of bowlers" in some circumstances or one hundred bowlers as "large" in others. But it is equally plausible that one skilled in the art might consider ten or one hundred bowlers to be a small number of bowlers in other contexts.

*Id.* at 1313.

As in *Storm*, here there is "nothing in the intrinsic evidence . . . or in the extrinsic evidence" that "provides sufficient support for how one skilled in the art would be able to determine what the circumstances are to allow an objective conclusion of what . . . would fall within or outside the boundary of the patent." *Id.*

EcoServices own expert, Mr. Kushnick, agrees – if "small quantities" refers to a volume and not a flow rate, he would "have no other way of knowing what the term [] means":

> **Q So if the court ultimately determines that the total volume metric flow in Claim 1 does not define small quantities, then you have no other way of knowing what the term small quantities means?**
>
> A Yeah. If the court decides that small quantities means volume and disallows that small quantities means flow, small quantities of flow, then that's right. I have nothing else to offer.

- 19 -

Ex. 23, Kushnick 05.03.2017 Dep. Tr. at 65:22-66:5. The above cases illustrate that the definiteness requirement requires patents to give specific notice to the public what does or does not infringe a patent claim. The '860 Patent does not do so. Because the meaning of "quantity" is clearly a volume and not a flow rate, and the '860 Patent does not place any boundaries, as admitted by Mr. Kushnick, let alone any objective boundaries in the specification on the scope of the term "*small* quantities," the term is indefinite.

## V.      CONCLUSION

Based on the foregoing, EcoServices has failed to present evidence sufficient to meet its burden of proving infringement of the '860 Patent by CAS's operation of the Cyclean system. Therefore, CAS is entitled to summary judgment that it does not infringe the '860 Patent.

Further, EcoServices has failed to present evidence sufficient to meet its burden of proving that the alleged infringement of the '860 Patent by CAS was willful. Therfore, CAS is entitled to summary judgment of no willful infringement.

Finally, there is clear and convincing evidence that the claimed "small quantities" refers to an undefined volume of liquid with no objective boundaries. Therefore, CAS is entitled to summary judgment that the claims of the '860 Patent are invalid as indefinite.

1    Dated:  March 30, 2018                    MAYER BROWN LLP

2                                              By: */s/ Stephen E. Baskin*
3                                                     Stephen E. Baskin

4

5                                              Dale J. Giali (SBN 150382)
                                               Elizabeth M. Burnside (SBN 258184)
6                                              Stephen E. Baskin (*pro hac vice*)
                                               Peter O. Schmidt (*pro hac vice*)
7                                              Gregory J. Apgar (*pro hac vice*)
                                               Canek Acosta (SBN 301901)
8
                                               *Attorneys for Defendant/Counter-*
9                                              *Plaintiff*
10                                             *Certified Aviation Services, LLC*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '860 PATENT, CASE NO. 5:16-CV-01824-RSWL-SP

## <u>Certificate of Service</u>

I, Stephen E. Baskin, hereby certify that on March 30, 2018, I filed the within and foregoing Defendant's Motion for Summary Judgment of Non-Infringement of the '860 Patent with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing:

Leanna Costantini
costantinil@gtlaw.com
GREENBERG TRAURIG
3161 Michelson Drive, Suite 1000
Irvine, CA 92612
Telephone:   (949) 732-6804
Facsimile:    (949) 732-6501

Ronald J. Pabis
pabisr@gtlaw.com
Stephen K. Shahida
shahidas@gtlaw.com
Patrick J. McCarthy
mccarthyp@gtlaw.com
Myomi T. Coad
coadm@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
Telephone:   (202) 331-3100
Facsimile:    (202) 331-3101

*Attorneys for Plaintiff EcoServices, LLC*

Dated:  March 30, 2018                    MAYER BROWN LLP

By: */s/ Stephen E. Baskin*
_____
        Stephen E. Baskin