## REDACTED VERSION OF DOCUMENT
## PROPOSED TO BE FILED UNDER SEAL

1

Leanna Costantini (SBN 294028)
costantinil@gtlaw.com

2

GREENBERG TRAURIG LLP
3161 Michelson Drive Suite 1000

3

Irvine, CA  92612
Telephone:  (949) 732-6804

4

Facsimile:  (949) 732-6501

5

6

Ronald J. Pabis (admitted *Pro Hac Vice*)
pabisr@gtlaw.com

7

Stephen K. Shahida (admitted *Pro Hac Vice*)
shahidas@gtlaw.com

8

Patrick J. McCarthy (admitted *Pro Hac Vice*)
mccarthyp@gtlaw.com

9

Myomi T. Coad (admitted *Pro Hac Vice*)
coadm@gtlaw.com

10

GREENBERG TRAURIG LLP
2101 L Street NW, Suite 1000

11

Washington, DC 20037
Telephone:  (202) 331-3100

12

Facsimile:   (202) 331-3101

13

Attorneys for Plaintiff
EcoServices, LLC

14

### UNITED STATES DISTRICT COURT

15

### CENTRAL DISTRICT OF CALIFORNIA

16

ECOSERVICES, LLC,

17

Plaintiff,

18

v.

19

CERTIFIED AVIATION SERVICES, LLC,

20

Defendant.

21

22

23

24

25

26

Case No.  5:16-cv-01824-RSWL-SPx

Assigned to Hon. Ronald Sing Wai Lew

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT RICHARD LETTIERE**

Complaint Filed:  April 22, 2016

Trial Date:  June 26, 2018

Case No. 5:16-cv-01824

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................... 1

II. CAS'S COMPLAINTS ARE APPROPRIATE SUBJECTS FOR CROSS EXAMINATION, RATHER THAN A *DAUBERT* MOTION. .................... 3

    A. Mr. Lettiere's Reliance On The Relevant Agreements Is Proper. ....... 4

        1. Mr. Lettiere's reliance on the ███████████████ is proper because it is indicative of the amount CAS would be willing to pay for access to EcoPower. ....................................... 4

        2. Mr. Lettiere's reliance on the ██████████████ is proper because it is indicative of the amount CAS would be willing to pay for access to EcoPower. ....................................... 6

    B. CAS's Concern That Mr. Lettiere Does Not Apportion The Value Of The Asserted Patents From The Value Of The Agreements Is Appropriate For Cross-Examination, Not Grounds For Exclusion. .... 9

        (a) Mr. Lettiere explains two important variables concerning the relevant agreements to support his proposed $400 royalty. .......................................................................... 11

        (b) There is no basis to exclude Mr. Lettiere's testimony regarding his method of apportionment. ....................... 12

    C. Mr. Lettiere's Opinion Does Not Rely on ████ Financials. ........... 14

        (a) Mr. Lettiere's opinion is based on a real-world data ████████████████████████████████ ██████████████████████████ .................... 15

        (b) Mr. Lettiere's assumption that ██████████████ ████████████████████ is reasonable. ................ 16

    D. CAS's Profits Are Not A Cap In Formulating A Reasonable Royalty. .................................................................................. 17

i

Case No. 5:16-cv-01824

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT RICHARD LETTIERE**

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

E.      The basis for Mr. Lettiere's April 2010 hypothetical negotiation date
        is based on reasonable inferences and does not merit exclusion. ...... 20

III.    CONCLUSION............................................................................................ 23

## REDACTED VERSION OF DOCUMENT
## PROPOSED TO BE FILED UNDER SEAL

### TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbot Biotech. Ltd. v. Centocor Ortho Biotech, Inc.*,
  No. 09-40089-FDS, 2014 WL 7330777 (D. Mass. Dec. 19, 2014)....................14

*ADA v. Khorrami*,
  No. CV-02-3853-RSWL, 2006 U.S. Dist. LEXIS 97113 (C.D. Cal.
  June 9, 2006)................................................................................................19

*Aqua Shield v. Inter Pool Cover Team*,
  774 F.3d 766 (Fed. Cir. 2014) ....................................................................18, 19

*CardioNet, LLC v. ScottCare Corp.*,
  No. 12-2516, 2017 WL 4742476 (E.D. Pa. Oct. 19, 2017)...............................14

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)..........................................................................1, 3, 19, 20

*Gen-Probe Inc. v. Becton Dickinson & Co.*,
  No. 09-CV-2319, 2012 U.S. Dist. LEXIS 189388 (N.D. Cal. Nov.
  26, 2012) ...........................................................................................................4, 9

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. May 28, 1907)...................................................1, 5

*GPNE Corp. v. Apple, Inc.*,
  No. 12-cv-02885-LHK, 2014 U.S. Dist. LEXIS 53234 (N.D. Cal.
  Apr. 16, 2014) .......................................................................................................8

*Greatbatch Ltd. v. AVX Corp.*,
  No. 13-723-LPS, 2015 WL 9171042 (D. Del. Dec. 11, 2015)...........................10

*Hose v. Chicago Northwestern Transp. Co.*,
  70 F.3d 968 (8th Cir. 1995) .................................................................................3

*Imago Sci. Instrument Corp. v. Chism*,
  No. 07-cv-00459-XR, 2007 U.S. Dist. LEXIS 57663 (W.D. Tex.
  Aug. 8, 2007) ......................................................................................................21

iii

Case No. 5:16-cv-01824

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

*Integra LifeSciences Corp., et al. v. HyperBranch Med. Tech., Inc.*,
  No. 15-819-LPS-CJB (D. Del. Mar. 20, 2018).............................................10, 14

*Kannankeril v. Terminix Int'l, Inc.*,
  128 F.3d 802 (3d Cir. 1997) .................................................................................3

*LaserDynamics, Inc v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) .............................................................................14

*U.S. ex rel. Macias v. Pac. Health Corp.*,
  No. CV-12-00960-RSWL-AJWx, 2018 U.S. Dist. LEXIS 27891
  (C.D. Cal. Feb. 20, 2018)......................................................................................1

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
  No. C-08-04990-JW, 2012 U.S. Dist. LEXIS 88567 (N.D. Cal.
  June 7, 2012) .........................................................................................................7

*Micro Chem., Inc. v. Lextron, Inc.*,
  317 F.3d 1387 (Fed. Cir. 2004) ............................................................................5

*MiiCS & Partners, Inc. v. Funai Elec. Co.*,
  No. 1:14-cv-00804, 2017 U.S. Dist. LEXIS 201511 (D. Del. Dec.
  7, 2017) ...............................................................................................................20

*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*,
  267 F. Supp. 726 (S.D. Cal. June 7, 1966) .........................................................21

*Oracle Am., Inc. v. Google Inc.*,
  No. C-10-03561-WHA, 2012 WL 850705 (N.D. Cal. Mar. 13,
  2012) .....................................................................................................................9

*Portney v. CIBA Vision Corp.*,
  593 F. Supp. 2d 1120 (C.D. Cal. June 17, 2008).................................................20

*Powell v. Home Depot U.S.A., Inc.*,
  663 F.3d 1221 (Fed. Cir. 2011) ..........................................................................19

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) ................................................................................9

*Q.G. Prods., Inc. v. Shorty, Inc.*,
  992 F.2d 1211 (Fed. Cir. 1993), *cert. denied*, 510 U.S. 868 (1993) ...............21

iv                                                          Case No. 5:16-cv-01824

## REDACTED VERSION OF DOCUMENT
## PROPOSED TO BE FILED UNDER SEAL

*Rockwell Int'l Corp. v. U.S.*,
   31 Fed. Cl. 70 (1994) ..........................................................................21

*Saffran v. Johnson & Johnson*,
   No. 2:07-cv-451, 2011 U.S. Dist. LEXIS 34858 (E.D. Tex. Mar.
   31, 2011) ..........................................................................................22

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) .......................................................3, 15

*Stragent, LLC v. Intel Corp.*,
   No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 106167 (E.D. Tex. Mar.
   6, 2014) ..............................................................................................5

*Western Holdings, LLC v. Metabolic Research, Inc.*,
   No. 3:13-cv-00440-RCJ-WGC, 2015 U.S. Dist. LEXIS 37866 (D.
   Nev. Feb. 19, 2015) ..........................................................................21

*Zila, Inc. v. Tinnell*,
   502 F.3d 1014 (9th Cir. 2007) .........................................................20

**Other Authorities**

Federal Rule of Evidence 702.................................................................19

Case No. 5:16-cv-01824

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

## I.   INTRODUCTION

Defendant Certified Aviation Services, LLC ("CAS") seeks to exclude Plaintiff EcoServices, LLC's ("EcoServices") damages expert, Richard Lettiere, under the authority of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and its progeny.   CAS's motion should be denied because Mr. Lettiere's methodology is proper and in-line with well-accepted damages analysis in the field of reasonable royalty and the factors laid out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. May 28, 1907).   At bottom, CAS's criticisms are with Mr. Lettiere's conclusions and some of the evidence he relies on to support his conclusions rather than an attack on his qualifications or the actual methodology, which is not the proper focus of a *Daubert* inquiry.   *Daubert*, 509 U.S. at 595.   CAS's assertions, at most, go to the weight that the jury should give his testimony, not to its admissibility.   *See U.S. ex rel. Macias v. Pac. Health Corp.*, No. CV-12-00960-RSWL-AJWx, 2018 U.S. Dist. LEXIS 27891, at *13-14 (C.D. Cal. Feb. 20, 2018) (denying in part defendant's motion to exclude because a motion to exclude testimony is not the "proper avenue" where defendant attacks the assumptions upon which the plaintiff's expert based his opinions).

Mr. Lettiere has more than twenty years of experience providing expert witness analysis and testimony relating to reasonable patent royalties and more than fifty expert reports in the intellectual property field.   He has considerable experience in financial and accounting matters through his work as a Certified Public Accountant and has provided advice to clients engaged in both licensing-in and licensing-out of technology, as well as strategic use of intellectual property. Mr. Lettiere has extensive experience in preparing valuations, researching comparable licenses, and recommending licensing structures.   There is no question here of Mr. Lettiere's qualifications.

## REDACTED VERSION OF DOCUMENT
## PROPOSED TO BE FILED UNDER SEAL

There is also no question that Mr. Lettiere's opinions are relevant to the disputed issues in this case and probative on those issues.  He provides damages analyses and opinions outlining the parameters of a hypothetical negotiation between EcoServices and CAS to determine a reasonable royalty rate should CAS be found to infringe U.S. Patent Nos. 5,868,860 ("the '860 Patent") and 9,162,262 ("the '262 Patent") (collectively, "the Asserted Patents").  Mr. Lettiere's approach is what damages experts do in almost every patent litigation case, and it is similar to what CAS's own damages expert, Ms. Melissa Bennis, does here as well.

Each of CAS's arguments is unsound and contradicts the opinions and methodology used by Ms. Bennis.  CAS's arguments also undervalue the relevance of the agreements between CAS and the developer of Cyclean, Lufthansa Technik ("LHT") and the negotiation history of those entities, which supports Mr. Lettiere's opinion that the appropriate amount of compensation for the Asserted Patents is a royalty of $400 for each Cyclean wash performed by CAS.  CAS's motion also undervalues the relevance of the ████████████████████ (Sealed ECF No. 122-31) and ████████████████ (Sealed ECF No. 122-26)[1], which support Mr. Lettiere's apportionment of the value of the Asserted Patents to arrive at a royalty of $400 for each Cyclean wash performed by CAS.  Last, CAS distorts Mr. Lettiere's application of a single hypothetical negotiation in 2010 because, as Mr. Lettiere opines, during the hypothetical negotiation, it is reasonable, and commonly practiced in reality, that EcoServices and CAS would consider that *both* Asserted Patents would be required for freedom to operate.  The Parties' respective experts, not surprisingly, place different values on these facts in arriving at their

---

[1] Citations herein to "Sealed ECF No." cross-reference CAS's re-filed April 20, 2018 documents subject to this Court's approval to file under seal.

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

reasonable royalty conclusions, but the weight that should be given to these facts is a question for the fact-finder and not a question as to admissibility.

For at least those reasons the Court should deny in its entirety CAS's motion to exclude the testimony of Mr. Lettiere.

## II.   CAS'S COMPLAINTS ARE APPROPRIATE SUBJECTS FOR CROSS EXAMINATION, RATHER THAN A *DAUBERT* MOTION.

To the extent that CAS's motion is based on objections to the factual foundation of Mr. Lettiere's opinions, including CAS's argument that Mr. Lettiere's reliance on certain agreements is flawed, nothing in *Daubert* or its progeny changed the fundamental rule that the factual basis of an expert opinion "goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995); *accord Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir. 1997) ("Technical unreliability goes to the weight accorded a survey, not its admissibility.") (citations omitted); *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 807-09 (3d Cir. 1997) (reversing exclusion of expert based on "insufficient factual foundation" and cautioning that the "trial judge must be careful not to mistake credibility questions for admissibility questions.").

*Daubert* is about the admissibility of an expert's testimony, not the weight that testimony should carry with the trier of fact.  CAS dresses up its upcoming cross examination of Mr. Lettiere as a *Daubert* motion in an attempt to have the Court exclude testimony that would otherwise be helpful to the jury in its analysis of the relevant indicators in this case in arriving at a reasonable royalty rate.  The principles, methods, and in some instances, real-world negotiations applied by Mr. Lettiere are the ones cited by CAS in its motion and Ms. Bennis, and, under the

3

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

law should be admitted.  In sum, CAS's concerns do not justify CAS's efforts to avoid cross examination by twisting its arguments into a *Daubert* motion in attempt to deny the jury the benefit of Mr. Lettiere's expert testimony.

      A.     **MR. LETTIERE'S RELIANCE ON THE RELEVANT AGREEMENTS IS PROPER.**

In arriving at a royalty of $400 for each Cyclean wash performed by CAS, Mr. Lettiere relies, in part, on the ███████████████████████ and ██████ ████████████  Both agreements, although not bare patent licenses, provide an indication of the amount CAS would be willing to pay for access to EcoPower.  That CAS argues the ████████████████████ "is irrelevant to CAS" and the ██████████████████████████ is contrary to the facts and record evidence produced during this litigation and contradicts the opinions of Ms. Bennis, whom relies upon the same ████████████ in formulating her opinions in her report.  And, CAS's argument goes to the weight that the Court should give Mr. Lettiere's testimony, not its admissibility.  *See Gen-Probe Inc. v. Becton Dickinson & Co.*, No. 09-CV-2319, 2012 U.S. Dist. LEXIS 189388, at *7-8 (N.D. Cal. Nov. 26, 2012) (denying plaintiff's *Daubert* motion to exclude defendant's expert testimony reliant on two marginally comparable licenses because such "concerns are appropriate fodder for cross-examination.").

      1.     **Mr. Lettiere's reliance on the ████████ ████████ is proper because it is indicative of the amount CAS would be willing to pay for access to EcoPower.**

As explained by Mr. Lettiere in his report, the ████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████ (Sealed ECF No. 122-28, at § 10.1.1).  The ████████████████

4

Case No. 5:16-cv-01824

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1  ████████ is the only evidence produced in this litigation that includes ████████

2  ████████████████ which makes the ██████████████████ a

3  substantially comparable license to a bare patent license in determining a

4  reasonable royalty. *See Georgia-Pacific,* 318 F. Supp. at 1120 (declaring the first

5  factor relevant to damages calculations to be "[t]he royalties received by the

6  patentee for the licensing of the patent in suit, proving or tending to prove an

7  established royalty".); *see also Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014

8  U.S. Dist. LEXIS 106167, at *11 (E.D. Tex. Mar. 6, 2014) (denying exclusion of

9  plaintiff's expert testimony as to settlement licenses where "these licenses are the

10  *only* licenses in the record and cover the patents-in-suit" and noting that defendant

11  "may present arguments and evidence at trial that the agreements are not probative

12  of a reasonable royalty rate.") (emphasis in original).  But Mr. Lettiere's analysis

13  does not stop there because he explains (and accounts for) in his report and during

14  his deposition key differences between the ██████████████████ and a

15  ██████████████

16      CAS argues that Mr. Lettiere's reliance on the ██████████████

17  ████████ is improper because it is irrelevant to what CAS would have agreed to

18  in a hypothetical negotiation.  This is wrong for at least two reasons.  First, the

19  hypothetical negotiation analysis looks not only at what the willing licensee would

20  pay for rights to the technology but also what the willing licensor would accept.

21  The ██████████████████ is relevant to both sides of that negotiation.

22  *See, e.g.*, *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392-93 (Fed. Cir.

23  2004) (a damages calculation is not inadmissible "simply because it was based on

24  [one party's] version of the contested facts.").  Second, the only support for ████

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████████ (Sealed ECF No.

5

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT RICHARD LETTIERE**

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

122-24, at 11, n.2.) ███████████████████████ has little to do with the value of the intellectual property rights at issue. CAS's support lacks any connection to the terms of the ███████████████ or to a hypothetical negotiation over patent rights. Put simply, CAS has failed to explain how ███████████████████ are seemingly connected to the ███████████████ or to the value a willing licensor and willing licensee would have placed on the right to practice the Asserted Patents. ██████████████████████████████

███████████████████████████████████

Accordingly, because Mr. Lettiere has explained the applicability and value of the ███████████████████ as an indicator of a per-wash royalty of $450 and CAS has failed to articulate how the ██████████████ is irrelevant, Mr. Lettiere's reliance on the ███████████████ is proper.

**2.    Mr. Lettiere's reliance on the LHT-CAS Lease Agreement is proper because it is indicative of the amount CAS would be willing to pay for access to EcoPower.**

CAS criticizes Mr. Lettiere's reliance upon the ██████████████ because the ████████████████████████████████████████████████████████████████████████████████████ CAS's criticisms are not only baseless but also contradict the opinions of its own expert, Ms. Bennis, who also relied upon the same ████████████████ in reaching her reasonable royalty opinions.

Mr. Lettiere relies upon the ██████████████ which was executed in tandem with the ██████████████ (Sealed ECF No. 122-25), in determining a reasonable royalty. As Mr. Lettiere explains in his

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1  report, under the ███████████████████ ███████████████████

2  ███████████████████ ████ ███████████████████

3  ████████████ (Sealed ECF No. 122-28 at § 10.1.2.)  Pursuant to that

4  agreement, ██████████████████████████████

5  ███████████████████████████ *Id.*; (Sealed ECF No. 122-26

6  at CAS000184.)  Accordingly, Mr. Lettiere opined that the ██████████████

7  ██████████████ is indicative of a royalty paid for access to technology

8  enabling the exclusive use of an engine washing system between parties who are

9  not competitors.  (Sealed ECF No. 122-28 at § 10.1.2.)

10      Mr. Lettiere and Ms. Bennis agree that the ██████████████████

11  ██████████████  This fact, however, did not prevent Ms. Bennis from

12  relying upon the same ██████████████ in her damages report. (Sealed

13  ECF No. 122-29 at 15, 30-31.)  The fact that Ms. Bennis uses the same agreement

14  in computing her royalty undermines CAS's argument as to the relevancy of the

15  agreement in establishing a reasonable royalty. Indeed, Ms. Bennis testified that

16  ████████████████████████████████ that

17  she considered in formulating her royalty opinion and represents what CAS, ████

18  ███████████████████████████

19  (Ex. 1, Bennis Dep. Tr. 55:15-56:3).

20      Indeed, Ms. Bennis's reliance upon the ████████████████ in

21  reaching her royalty determination undercuts CAS's argument that Mr. Lettiere's

22  reliance on the same agreement is flawed.  *See Mformation Techs., Inc. v.*

23  *Research in Motion Ltd.*, No. C-08-04990-JW, 2012 U.S. Dist. LEXIS 88567, at

24  *14-15 (N.D. Cal. June 7, 2012) (denying plaintiff's motion in *limine* to exclude

25  ———————————————

26  [2] ██████████████████████████████ Sealed
    ECF No. 122-28, at § 10.1.2); (Sealed ECF No. 122-26, at CAS000184).

7                                          Case No. 5:16-cv-01824

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1   the opinion of defendants' damages expert that relies upon "non-comparable"
2   licensing agreements for patented technology upon a finding that the licensing
3   agreements are relevant in calculating the royalty rate that would have been
4   reached by a hypothetical negotiation, and noting that "Plaintiffs damages expert
5   relied on many of these same licensing agreements in reaching his damages
6   calculation.").

7   CAS next argues that the ███████████████ should not be
8   considered in determining a reasonable royalty because it includes ████████
9   ████████ in comparison to the Asserted Patents. Again, CAS's argument
10  contradicts the opinions of Ms. Bennis. Ms. Bennis relies upon the ████████
11  ███████████████████████████ in determining a
12  royalty for the '860 Patent. (Sealed ECF No. 122-29, at 30-32.) Nowhere,
13  however, does Ms. Bennis factor from the ██████████████████
14  that CAS argues in its motion. CAS is arguing out of both sides of its mouth
15  because Ms. Bennis utilizes the ███████████████████
16  ██████████████ to determine a royalty figure. The Cyclean
17  equipment that is ████████████████████████████
18  ██████████████████████████████████
19  (Sealed ECF No. 122-26, at CAS000183.) CAS has not argued and produced
20  evidence to the contrary.

21  Accordingly, Mr. Lettiere's reliance on the ██████████████ is
22  proper and for CAS to argue to the contrary undermines the factual underpinnings
23  of Ms. Bennis's testimony. At trial, if it would like to do so, CAS can attack what
24  it believes to be the dissimilarities between the ████████████████
25  ████████████████████ but it is not entitled to the
26  exclusion of Mr. Lettiere's testimony. *See GPNE Corp. v. Apple, Inc.*, No. 12-cv-

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S**
**DAMAGES EXPERT RICHARD LETTIERE**

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

02885-LHK, 2014 U.S. Dist. LEXIS 53234, at *41-42 (N.D. Cal. Apr. 16, 2014) (denying plaintiff's motion to exclude defendant's damages expert's testimony because plaintiff's criticisms "all go to weight and not admissibility" and further noting that "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.") (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)).

> **B.     CAS'S CONCERN THAT MR. LETTIERE DOES NOT APPORTION THE VALUE OF THE ASSERTED PATENTS FROM THE VALUE OF THE AGREEMENTS IS APPROPRIATE FOR CROSS-EXAMINATION, NOT GROUNDS FOR EXCLUSION.**

CAS also argues that Mr. Lettiere's testimony should be excluded because he fails to apportion the value of the Asserted Patents from the value of the technology in the ███████████████████ and ███████████ ███████ Even if CAS's argument were valid, CAS's concerns are appropriate for cross-examination, not as a basis for exclusion. *See Gen-Probe*, 2012 U.S. Dist. LEXIS 189388, at *7-8 (denying plaintiff's *Daubert* motion to exclude defendant's expert's testimony on marginally comparable licenses because such "concerns are appropriate fodder for cross-examination" and plaintiff "may highlight the technological and economic distinctions at trial" where plaintiff argued that defendant's expert "fail[ed] to provide a qualitative comparison between the value of the licensed technology and that of the asserted patents"). Ultimately, to the extent that CAS squabbles with certain factual assumptions made by Mr. Lettiere in allegedly failing to apportion damages on a patent-by-patent basis, those disputes go to the weight that his testimony should be given. *See Oracle Am., Inc. v. Google Inc.*, No. C-10-03561-WHA, 2012 WL 850705, at *7 (N.D. Cal. Mar. 13, 2012) (rejecting defendant's argument that plaintiff's

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1   damages expert is required to apportion damages on a claim-by-claim basis); *see*

2   *also Integra LifeSciences Corp., et al. v. HyperBranch Med. Tech., Inc.*, No. 15-

3   819-LPS-CJB, at 9 (D. Del. Mar. 20, 2018) (denying defendant's *Daubert* motion

4   to exclude testimony offered by plaintiff's damages expert where plaintiff's expert

5   did not apportion damages on a claim-by-claim basis); *see also Greatbatch Ltd. v.*

6   *AVX Corp.*, No. 13-723-LPS, 2015 WL 9171042, at *6-7 (D. Del. Dec. 11, 2015)

7   (denying motion to exclude damages expert's reasonable royalty opinions even

8   though he did not apportion damages on a patent-by-patent basis).

9       Moreover, CAS is incorrect to argue that Mr. Lettiere has "no opinion on the

10  *value* of the '262 Patent." (Sealed ECF No. 122-24 at 14:2-6) (emphasis added).

11  Indeed, Mr. Lettiere does have an opinion as to the *value* of the '262 Patent based

12  on the record evidence and discussions with Mr. Welch and EcoServices' technical

13  expert, Mr. Steven Kushnick. It is true that Mr. Lettiere does not have a separate

14  opinion as to a *royalty rate* if it were found that CAS is only found to infringe the

15  '262 Patent.[3] Mr. Lettiere explains in his report and during deposition why this is

16  so. For example, Mr. Lettiere explains that the $400 royalty is a blended rate that

17  reflects the fact that the '860 Patent expired in May 2016 and the '262 Patent did

18  not issue until October 2015:

19      **Q.** Do you have an opinion as to what damages CAS would owe if it

20      were found to only infringe the '262 Patent?

21      **A.** No.

22      **Q.** Why not?

23

24  ─────────────────

25  [3] That Mr. Lettiere does not have a separate royalty opinion for the '262 Patent
    does not render his opinion fatal, as CAS suggests. CAS's concern is premature

26  and presupposes that the jury will find infringement for only one of two Asserted
    Patents.

                                10                        Case No. 5:16-cv-01824

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

**A.** Well, for a number of reasons. ███████████████

████████████████████████████████████

██████  And the negotiation for the '262 would occur years after the 2010 negotiation. The 2010 negotiation date is an important date.

**Q.** So you agree the '262 Patent hypothetical negotiation date would have been in 2015 when the '262 issued; correct?

**A.** If it's solely a negotiation for the '262, then it would be when the patent issued.

Ex. 2, Lettiere Dep. Tr. at 16:6-25.

Additionally, after considering the impact of EcoServices licensing CAS, its competitor, and apportioning the value of the license to only the Asserted Patents, which accounts for the majority of the value of the license, Mr. Lettiere determined that a reasonable royalty is equivalent to $400 per each wash performed by CAS.[4] (Sealed ECF No. 122-28 at § 12.)   CAS is welcome to probe Mr. Lettiere's conclusions on cross-examination.

> **(a)   Mr. Lettiere explains two important variables concerning the relevant agreements to support his proposed $400 royalty.**

The ███████████████████  and ████████████████ ████████████████  provide insight on the per-wash amount a licensee wanting to obtain access to technology for an engine washing system would be willing to pay.  (Sealed ECF No. 122-28, at § 10.1.3.)  The ████████ ████████████  indicates a per-wash royalty of $450, while the ████████

---

[4] Under this methodology, Mr. Lettiere is able to offer an opinion as to a royalty that would exist if EcoServices and CAS had considered only the '860 Patent in 2010—$500 per wash for the washes from 2010 to expiration of the '860 Patent in May 2016. (Ex. 2, Lettiere Dep. Tr. 14:7-15:8.)

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1  ███████████████ indicates a royalty of $550.  (*Id.*)  Accordingly, as explained by

2  Mr. Lettiere, the Market Approach indicates a royalty of between $450 and $550

3  per engine wash.  (*Id.* at § 12.)

4        Mr. Lettiere explains in his report two important variables concerning the

5  ██████████████████████ and ███████████████████ (1) neither

6  agreement was between competitors; and (2) both agreements effectively provided

7  exclusive rights to the technology and systems.  (Sealed ECF No. 122-28, at §

8  10.1.3.)  As explained by Mr. Lettiere, the Parties would recognize that although

9  EcoServices was willing to license the Asserted Patents to CAS, it would require a

10  return which provided adequate compensation for the risks faced with the license

11  while providing CAS (and LHT) with an adequate financial return.  (*Id.* at § 12.)

12  Similarly, Mr. Lettiere testified that a difference between a ████████████████

13  █████████████████████████ is that EcoServices was paying a royalty to a

14  partner, not a competitor.  (Ex. 2, Lettiere Dep. Tr. 130:12-131:6.)  Accordingly,

15  Mr. Lettiere's testimony should not be excluded as it adequately accounts for the

16  difference between a bare license and the EcoServices License Agreement.

17        **(b)**    **There is no basis to exclude Mr. Lettiere's testimony**

18                 **regarding his method of apportionment.**

19        Mr. Lettiere makes clear his method of apportionment in determining a

20  royalty of $400 per each wash.  For example, Mr. Lettiere states that the

21  ████████████████████████████████████████████████████████

22  ██████████████████████████████████ (Sealed ECF

23  No. 122-28, at § 10.1.1.)  Based on the ████████████████, Mr.

24  Lettiere opines that a *significant portion* of the effective per-wash royalty of $450

25  indicated by the EcoServices' License Agreement is attributable to the Asserted

26  Patents.  *Id.*  Support for Mr. Lettiere's opinion is provided from the deposition

Case No. 5:16-cv-01824

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

testimony of Mr. Welch, ████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████

        ████████████████████████████████████████

        ████████████████████

        ████████████████████████████████████████

        ████████████████████████████████████████

        ████████████████████████████████████████

        ██████████████████████████

(Ex. 3, Welch Dep. Tr. 16:20-17:7) (emphasis added).  Additional support for Mr. Lettiere's opinion is discussions Mr. Lettiere had with Mr. Welch, who stated ███

████████████████████████████████████████████████████████████████

████████████████████████████████████ (Sealed ECF No. 122-28, at § 10.1.1.)  Moreover, as further support for Mr. Lettiere's opinion that a significant portion of the effective per-wash royalty of $450 is attributable to the Asserted Patents, Mr. Lettiere also spoke with Mr. Kushnick, who described the '860 Patent as a "game changer."  (Sealed ECF No. 122-28, at § 10.1.1.)  In sum, Mr. Lettiere understood that the Asserted Patents have the most value of those in the ████████████████████████████—this makes sense because patents with the most value are typically the patents that get litigated, as the Asserted Patents were here.

        Thus, the $400 reasonable royalty was derived as follows:  After Mr. Lettiere considered the indications from the Market Approach of a royalty between $450 and $550, the impact of EcoServices licensing its competitor, CAS, and apportioning the value of the ████████████████████████ to only the Asserted Patents, Mr. Lettiere opined that a reasonable royalty in this matter is equivalent to

13

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

$400 per each engine wash performed by CAS.  Mr. Lettiere used real-world data points tied to the facts of this case to counter-balance the value of the Asserted Patents with the value of the non-asserted intellectual property included in the ████████████████████████ .

CAS fails to articulate a reason to exclude Mr. Lettiere's opinion on this basis.  Indeed, "[t]here does not appear to be anything unsound in opining that a grant of rights to a subset of patents would generally be worth less than a grant of rights to the whole set of patents."  *Integra*, No. 15-819-LPS-CJB, at 13.  CAS may believe that Mr. Lettiere did not conduct any apportionment or he should have performed his apportionment differently.  But CAS can appropriately explore those objections on cross-examination.  *See, e.g.*, *CardioNet, LLC v. ScottCare Corp.*, No. 12-2516, 2017 WL 4742476, at *5 (E.D. Pa. Oct. 19, 2017) (rejecting defendant's argument that plaintiff's expert assigned arbitrary rates to the asserted patents, where the expert provided a supportive, fact-based explanation for her choices); *Abbot Biotech. Ltd. v. Centocor Ortho Biotech, Inc.*, No. 09-40089-FDS, 2014 WL 7330777, at * 12 (D. Mass. Dec. 19, 2014) (explaining that while experts cannot rely on estimates that have been "plucked out of thin air based on vague qualitative notions[,] [a]n estimate based on reasonable inferences from limited data…is not the same as a number 'plucked out of thin air.'") (quoting *LaserDynamics, Inc v. Quanta Comput., Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012)).  CAS is free to cross-examine Mr. Lettiere on the basis for his proposed royalty rate, and the jury is entitled to assess the testimony.

**C.    MR. LETTIERE'S OPINION DOES NOT RELY ON ████ FINANCIALS.**

CAS argues that Mr. Lettiere improperly ██████████████████████████ ████████████████████████ in determining his reasonable royalty rate. (Sealed ECF No. 122-24, 5:16-17; 8:9.)  CAS's argument is misplaced.  Mr. Lettiere's

14

## REDACTED VERSION OF DOCUMENT
## PROPOSED TO BE FILED UNDER SEAL

opinion is based on the real-world ability of ███████████████████████

███████████████████████████████████████████████████, at the same time, adequately compensate EcoServices for licensing its intellectual property to a competitor.[5]   At most, this issue goes to the weight that the jury should give Mr. Lettiere's testimony, not its admissibility.   *See Southland Sod Farms*, 108 F.3d at 1143 (stating that in response to criticisms about questionable assumptions regarding an economist's damages model, the Ninth Circuit stated "These asserted defects, however, go to the weight, and not the admissibility, of Wagner's testimony.").

          **(a)**    **Mr. Lettiere's opinion is based on a real-world data**

███████████████████████████████████████

███████████████████████████████████████

███████████████████████

     Mr. Lettiere explains that the ████████████████████ reflected the economics of CAS entering the engine wash business using Cyclean *without* compensating EcoServices for the use of its intellectual property. (Sealed ECF No. 122-28, at §§ 10.1, 10.1.3.); *see also* Ex. 2, Lettiere Dep. Tr. 74:13-17 ("The world in which CAS earned their contribution margin is a world in which they are using the Eco patents without permission and so, therefore, are not paying for them.").   It is reasonable for Mr. Lettiere to assume that concurrent with CAS's hypothetical negotiation with EcoServices as to a royalty, ███████████████████████

---

[5] ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████ x. 4, Lee Dep. Tr. 95:2-23).
███████████████████████████████████████████████████████████
██████

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S
DAMAGES EXPERT RICHARD LETTIERE

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1      ███████████████████████████████. For example,

2      ███████████████████████████████████████

3      ███████████████████████████████████████

4      ███████████████████████████████████████

5      ████████████████████████████ (Ex. 4, Lee

6      Dep. Tr. 95:2-23.)   Indeed, Ms. Bennis testified that ██████████████

7      ███████████████████████████████████████

8      ███████████████████████████████████████

9      ███████████████████████████████████ (Ex. 1,

10      Bennis Dep. Tr. 39:23-41:3); *see also id.* at 62:14-19.

11      Thus, Mr. Lettiere's opinion is based on the real-world ████████████

12      ███████████████████████████████████████

13      ████████████████████ Within this construct, it is reasonable to assume ██████

14      ███████████████████████████████████████

15      ███████████ during CAS's hypothetical negotiation with EcoServices. That CAS

16      quarrels with Mr. Lettiere's application of the established history of renegotiations

17      between LHT and CAS is an issue to be explored during cross-examination at trial.

18      **(b)**     **Mr. Lettiere's assumption that** ████████████

19      ██████████████████████████ **is reasonable.**

20      Mr. Lettiere's assumptions are not speculative, but based on the record

21      evidence.   As a primary indicator supporting Mr. Lettiere's reasonable assumption

22      that ██████████████████████████████████████

23      ███████████████████████████████████████

24      ███████████████████████████████████████

25      ██████████████████████ (Sealed ECF No. 122-28, at § 5.1.2

26      "Southwest".)   Having to lower its per-wash price to ████████████████

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1 ███████████ provides a strong indicator that the ████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████ Mr. Lettiere's assumption that ████████████████

6 ████████████████

7    Mr. Lettiere's testimony during deposition is consistent with his report and

8 makes clear that his opinion is not based on speculation, but rather on knowing

9 what EcoServices charged for EcoPower washes ███████████████

10 █████████ how much CAS realized ███████ and that EcoServices had to

11 reduce its contract price to maintain its customer base.  (Ex. 2, Lettiere Dep. Tr.

12 136:10-137:3); *see also id.* at 137:4-138:7 ("A. …We know how much Eco has

13 charged and we know how much CAS has realized and we know that Eco,

14 according to the testimony, had to lower its prices to competitors, which means

15 that its prices are probably a bit higher than competitors….").  Mr. Lettiere's

16 testimony is far from baseless or without foundation as to merit exclusion.

17    **D.    CAS'S PROFITS ARE NOT A CAP IN FORMULATING A REASONABLE**

18        **ROYALTY.**

19    CAS argues that Mr. Lettiere's opinion cannot support an award of $400 per

20 wash when it is in excess of CAS's per-wash profits of ████.[6]  Again, CAS's

21 argument goes to the weight that the jury should give Mr. Lettiere's testimony, not

22

23 [6]  CAS had produced along with Ms. Bennis' rebuttal report two additional

24 documents that counsel for EcoServices and Mr. Lettiere did not have during fact

25 discovery.   These two additional documents showed more Cyclean washes performed by CAS than Mr. Lettiere had relied upon in his report.  With more

26 washes to consider, ████████████████████████████████████

███████

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT RICHARD LETTIERE**

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1   its admissibility.  Even so, CAS's argument overlooks Mr. Lettiere's deposition

2   testimony that $400 per wash is a proposed royalty "that exist[s] in a world in

3   which [CAS] *did not obtain permission*, did not actually have a negotiation [with

4   EcoServices] to use the patent."  (Ex. 2, Lettiere Dep. Tr. 76:10-16) (emphasis

5   added).  Mr. Lettiere's opinion is also supported by Federal Circuit precedent,

6   which permits a proposed royalty above the defendant's profit.  The proposed $400

7   royalty is ▮▮▮▮ more than CAS's contribution margin per wash of ▮▮▮▮  In this

8   situation, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10          The Federal Circuit found that a district court erred in treating the profits

11   that the defendant actually earned during the period of infringing activity as a

12   royalty cap.  *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir.

13   2014).  In *Aqua Shield*, the Federal Circuit found that although the district court

14   did not err in considering IPC's profits on past infringing sales as the foundation

15   for a royalty calculation, "it did err in treating the profits of IPC actually earned

16   during the period of infringement as a royalty cap."  774 F.3d at 772.  The Federal

17   Circuit noted two points of error by the district court in its treatment of IPC's

18   profits: (1) incorrectly "replac[ing] the hypothetical inquiry into what the parties

19   would have anticipated, looking forward when negotiating, with a backward-

20   looking inquiry into what turned out to have happened" and (2) "replac[ing] the

21   inquiry into the parties' anticipation of what profits would be earned *if a royalty (of*

22   *amounts being negotiated) were to be paid* with an inquiry into what profits were

23   earned *when IPC was charging prices without accounting for any royalty.*"  *Id.* at

24   772.

25          Here, CAS is similarly mistreating CAS's contribution profit of ▮▮▮▮ per

26   wash to argue that "[n]o company would agree to operate its business at a loss."

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1  (Sealed ECF No. 122-24, at 11:11-12.)   However, "it is settled law that an

2  infringer's net profit margin is not the ceiling by which a reasonably royalty is

3  capped."   *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238 (Fed. Cir.

4  2011).  CAS employs a backward-looking inquiry by incorrectly focusing on what

5  profits (*i.e.,* ███ 6 per wash) were earned when CAS was performing washes for

6  LHT without accounting for any royalty.  CAS assumes that any royalty paid by

7  CAS would have directly reduced its profits, dollar for dollar.  But this assumption

8  is wrong because ███████████████████████████████████████████

9  █████████ to raise its remittance to account for a royalty payment to EcoServices.

10  The evidence in this case does not indicate ███████████████████████████

11  █████████████████████████████████████████  Similar

12  to the Federal Circuit's findings in *Aqua Shield*, here "[w]e have not been shown

13  proof that this case is different from the typical one in which pricing might be

14  adjusted to account for a royalty based on sales price."  774 F.3d at 772; *see also*

15  Ex. 2, Lettiere Dep. Tr. 77:10-78:4 (testifying that ██████████████████

16  ████████████████████████████████████████████████████

17  ████████

18      CAS's challenge to Mr. Lettiere's assumptions alone is not a basis to

19  preclude his testimony under either *Daubert* or Federal Rule of Evidence 702. *See*

20  *ADA v. Khorrami*, No. CV-02-3853-RSWL, 2006 U.S. Dist. LEXIS 97113, at *7-8

21  (C.D. Cal. June 9, 2006) (denying plaintiff's third motion in limine "[b]ecause

22  Plaintiff does not challenge the methodology, its challenge to the conclusions alone

23  is not a basis to preclude expert testimony under either *Daubert* or Federal Rule of

24  Evidence 702.").

25

26

19                                                    Case No. 5:16-cv-01824

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

**E.    The basis for Mr. Lettiere's April 2010 hypothetical negotiation date is based on reasonable inferences and does not merit exclusion.**

Finally, CAS argues that Mr. Lettiere's hypothetical negotiation date of April 2010 is wrong because the Parties would not negotiate a license for the '262 Patent, which issued in October 2015.  As a threshold matter, CAS's objection to Mr. Lettiere's use of only one hypothetical negotiation date in his damages analysis goes to the weight of Mr. Lettiere's damages testimony, not to its admissibility.  *See MiiCS & Partners, Inc. v. Funai Elec. Co.*, No. 1:14-cv-00804, 2017 U.S. Dist. LEXIS 201511, at *17 (D. Del. Dec. 7, 2017) (finding that defendant's objection to plaintiff's damages expert using only one hypothetical negotiation date in his damages analysis goes to the weight of the expert's damages testimony, not to its admissibility).  CAS has not shown that Mr. Lettiere's methodology with respect to using one hypothetical negotiation date is arbitrary or unreliable so as to warrant exclusion under *Daubert*.

More so, CAS's argument is flawed for several reasons.  First, the proposed royalty rate derived from the negotiation date of April 2010 takes into account the expiration and issue dates for the '860 and '262 Patents, respectively.  Mr. Lettiere's proposed $400 royalty represents a blended rate that reflects the '860 Patent expiring in May 2016 and the '262 Patent issuing in October 2015.  *See Portney v. CIBA Vision Corp.*, 593 F. Supp. 2d 1120, 1124 (C.D. Cal. June 17, 2008) ( "[A] contract that provides for royalties either when a patent expires or when it fails to issue cannot be upheld *unless it provides a discount from the alternative, patent-protected rate*.") (emphasis added) (quoting *Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1021 (9th Cir. 2007)).

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S
DAMAGES EXPERT RICHARD LETTIERE**

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

Second, CAS's arguments overlook the reasonable possibility that at the time of the hypothetical negotiation in April 2010, CAS and EcoServices would consider which patents and pending patent applications are needed for freedom to operate. *See Rockwell Int'l Corp. v. U.S.*, 31 Fed. Cl. 70, 79 (1994) ("It is not uncommon to acquire a license in any invention described in a pending patent application because, until a patent issues, the claims are not irrevocably fixed.") (citing *Q.G. Prods., Inc. v. Shorty, Inc.*, 992 F.2d 1211, 1212-13 (Fed. Cir. 1993), *cert. denied*, 510 U.S. 868 (1993));

Indeed, it is common practice in negotiating royalty rates and license agreements to cover existing patents and pending patent applications, including provisional patent applications, relevant to the technology at issue. *See Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 267 F. Supp. 726, 781 (S.D. Cal. June 7, 1966) (describing negotiation where parties sought to enter into a license agreement to practice the patent which the parties anticipated would issue and be assigned to plaintiff); *Western Holdings, LLC v. Metabolic Research, Inc.*, No. 3:13-cv-00440-RCJ-WGC, 2015 U.S. Dist. LEXIS 37866, at *6 (D. Nev. Feb. 19, 2015) (describing the license agreement to have "included any and all prodigy applications and resulting patents stemming from the provisional applications (the 'Licensed Applications') listed in Exhibit A to the License Agreement"); *Imago Sci. Instrument Corp. v. Chism*, No. 07-cv-00459-XR, 2007 U.S. Dist. LEXIS 57663, at *5 (W.D. Tex. Aug. 8, 2007) (describing in factual background that defendant entered into a licensing agreement with plaintiff for defendant's provisional patent applications).

Additionally, that CAS argues the '262 and '860 Patent are not in the same "family" does nothing to undermine Mr. Lettiere's reasonable conclusion that the application the '262 Patent claims priority would have been considered by CAS

21                                                          Case No. 5:16-cv-01824

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1   and LHT during the 2010 hypothetical negotiation.  As discussed above, it is not

2   uncommon to acquire a license in any invention described in a pending patent

3   application, including a provisional patent application.  CAS cites to no authority

4   contrary to this proposition.

5   CAS also argues that the Asserted Patents are "directed to entirely different

6   features of an engine washing system."  This is not correct.  Indeed, as CAS

7   admits, the Asserted Patents are directed to an "engine-washing system" and tacitly

8   links the technologies of the two patents:  "The '262 Patent, meanwhile, is not

9   directed at improving *the process* of injecting liquid into the compressor but,

10  instead, claims to automate *the process*...."  (Sealed ECF No. 122-24, at 13:2-4)

11  (emphasis added).  Under CAS's understanding of the Asserted Patents, it appears

12  that CAS believes the '262 Patent describes an automated mechanism of injecting

13  liquid into the compressor.[7]  *See Saffran v. Johnson & Johnson*, No. 2:07-cv-451,

14  2011 U.S. Dist. LEXIS 34858, at *34 (E.D. Tex. Mar. 31, 2011) ("Because the

15  '760 Patent teaches the delivery mechanism [of the drug sirolumis, for the

16  infringing product] and the Cordis-Wyeth license concerns [siulumis], Saffran and

17  Defendants would have surely considered the Cordis-Wyeth license for sirolimus

18  in their hypothetical negotiation.").  Accordingly, CAS's objections to Mr.

19  Lettiere's testimony are unsupported and at bottom, go to the weight that the jury

20  should give his testimony, not to its admissibility.

21

22

---

23  [7] CAS attempts to interject the withdrawal of the '609 Patent from this case as

24  purported proof that the provisional application the '262 Patent claims priority is
    technologically unrelated to the asserted claims of the '262 Patent.  CAS's

25  argument is flawed because the '609 Patent claims "a washing unit" and "a control

26  unit."  The Asserted Claims of the '262 Patent also claim "a washing unit" and "a
    control unit."

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT RICHARD LETTIERE**

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

1

**III.    CONCLUSION**

2

        For the foregoing reasons, EcoServices respectfully requests that the Court

3

deny CAS's motion to exclude the testimony of Mr. Lettiere in its entirety.

4

5

Dated:  April 24, 2018            GREENBERG TRAURIG, LLP

6

7

                                  By:  /s/ Stephen K. Shahida
                                  Ronald J. Pabis

8

                                  Stephen K. Shahida
                                  Patrick J. McCarthy

9

                                  Myomi T. Coad

10

                                  Leanna Costantini
                                  **Attorneys for Plaintiff EcoServices, LLC**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S
DAMAGES EXPERT RICHARD LETTIERE**

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

## CERTIFICATE OF SERVICE

I, Stephen K. Shahida, hereby certify that on this 24th day of April, 2018, copies of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT RICHARD LETTIERE** were served upon the following parties via CM/ECF:

Dale J. Giali
Mayer Brown LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
dgiali@mayerbrown.com

Stephen E. Baskin
Peter O. Schmidt
Mayer Brown LLP
1999 K. Street, N.W.
Washington, DC 20006
sbaskin@mayerbrown.com
pschmidt@mayerbrown.com

Gregory J. Apgar
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
gapgar@mayerbrown.com

**Attorneys for Defendant/Counter-Plaintiff Certified Aviation Services, LLC**

*/s/ Stephen K. Shahida*
Stephen K. Shahida

24                                          Case No. 5:16-cv-01824