| | |
|---|---|
| 1 | Leanna Costantini (SBN 294028) |
| 2 | costantinil@gtlaw.com<br>GREENBERG TRAURIG LLP |
| 3 | 3161 Michelson Drive Suite 1000<br>Irvine, CA  92612 |
| 4 | Telephone:  (949) 732-6804<br>Facsimile:  (949) 732-6501 |
| 5 | |
| 6 | Ronald J. Pabis (admitted *Pro Hac Vice*)<br>pabisr@gtlaw.com |
| 7 | Stephen K. Shahida (admitted *Pro Hac Vice*)<br>shahidas@gtlaw.com |
| 8 | Patrick J. McCarthy (admitted *Pro Hac Vice*)<br>mccarthyp@gtlaw.com |
| 9 | Myomi T. Coad (admitted *Pro Hac Vice*)<br>coadm@gtlaw.com |
| 10 | GREENBERG TRAURIG LLP<br>2101 L Street NW, Suite 1000 |
| 11 | Washington, DC 20037<br>Telephone:   (202) 331-3100 |
| 12 | Facsimile:    (202) 331-3101 |
| 13 | Attorneys for Plaintiff<br>EcoServices, LLC |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| 16 | ECOSERVICES, LLC, | Case No.  5:16-cv-01824-RSWL-SPx |
| 17 | Plaintiff, | Assigned to Hon. Ronald Sing Wai Lew |
| 18 | v. | |
| 19 | CERTIFIED AVIATION SERVICES, LLC, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.** |
| 20 | Defendant. | |
| 21 | | Complaint Filed:  April 22, 2016 |
| 22 | | Trial Date:  June 26, 2018 |

Case No. 5:16-cv-01824

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

I. LEGAL STANDARD ....................................................................................... 1

II. MR. KUSHNICK'S OPINIONS SHOULD BE ADMITTED ........................ 2

    A. Mr. Kushnick's Reliance on the Lufthansa '392 Patent Is Reasonable 3

    B. Mr. Kushnick's Opinions Regarding the ▇▇▇▇▇ Nozzle Are Admissible ........................................................................................... 7

    C. Mr. Kushnick's Banding of the test data is standard engineering practice ............................................................................................... 10

III. CONCLUSION ............................................................................................... 16

i      Case No. 5:16-cv-01824

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993).................................................................................1, 2, 16

*Forest Labs., Inc. v. Abbott Labs.*,
  239 F.3d 1305 (Fed. Cir. 2001) ..............................................................................5

*Hoptowit v. Ray*,
  682 F.2d 1237 (9th Cir. 1982) ................................................................................9

*Icon Enters. Int'l v. Am. Prods. Co.*,
  No. CV-04-1240-SVW, 2004 U.S. Dist. LEXIS 31080 (C.D. Cal.
  Oct. 7, 2004) ..........................................................................................................8

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ...............................................................................................1

*Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*,
  No. 08-cv-1595 BEN (BGS), 2011 U.S. Dist. LEXIS 53766 (S.D.
  Cal. May 18, 2011) .................................................................................................9

*Messick v. Novartis Pharms. Corp.*,
  747 F.3d 1193 (9th Cir. 2014) ................................................................................2

*New Show Studios LLC v. Needle*,
  No. 2:14-cv-01250-CAS, 2016 U.S. Dist. LEXIS 136105 (C.D.
  Cal. Sep. 29, 2016)............................................................................................8, 9

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) ..................................................................................2

*Universal Electronics, Inc. v. Universal Remote Control, Inc.*,
  No. SACV 12-00329 AG (JPRx), 2014 WL 12586737 (C.D. Cal.
  April 21, 2014) ........................................................................................................9

*XpertUniverse, Inc. v. Cisco Systems, Inc.*,
  No. 09-157-RGA, 2013 WL 1702159 (D. Del. Feb. 25, 2013)..........................10

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.**

Plaintiff EcoServices, LLC ("EcoServices") respectfully submits this opposition to Defendant Certified Aviation Services, LLC's ("CAS") *Daubert* Motion to Exclude Expert Opinion Testimony of Steven B. Kushnick on Infringement of the '860 Patent.

## INTRODUCTION

Mr. Kushnick is being offered to provide opinions on infringement and validity of the Asserted Patents and his opinions should be admitted in their entirety. CAS's Motion concedes Mr. Kushnick's qualifications, but attacks his infringement opinion regarding one of the two Asserted Patents only. Within that limited context, CAS isolates a few individual pieces of evidence relied upon by Mr. Kushnick to conclude his opinions are not reliable. Not only does CAS ignore the full scope of the record evidence that forms the basis of Mr. Kushnick's opinions, each of CAS's isolated attacks suffer from an incorrect premise and faulty legal analysis. At best, CAS's arguments go to the weight of the targeted opinions, not their admissibility. CAS has presented no justifiable basis to exclude any portion of Mr. Kushnick's opinion. Respectfully, CAS's Motion should be denied in its entirety.

## ARGUMENT

### I. LEGAL STANDARD

The Court has broad discretion to allow or exclude expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The admissibility of expert testimony is a question of law governed by Rule 702 of the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other

> specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). In accordance with these standards, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010). Finally, as the Ninth Circuit has explained, "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014).

## II. MR. KUSHNICK'S OPINIONS SHOULD BE ADMITTED

Mr. Kushnick is a mechanical engineer, specializing in the field of turbomachinery, including turbine engines and compressors. Ex. 1, Mr. Kushnick's *curriculum vitae*. Since obtaining his B.S. in Mechanical Engineering from Boston University, *Cum Laude*, in 1980, he has extensively worked on turbine engines, focusing on hardware design, hardware analysis, internal flow analysis, failure analysis, thermodynamic performance analysis, optimization studies, overhaul and troubleshooting. *Id*. His experience includes design and analysis of turbine engine hardware and systems for military flight engines. *Id*.

Mr. Kushnick has opined that the Asserted Patents are both valid and infringed, in view of the entirety of the record evidence he considered, as well as his vast and practical experience in the field. CAS does not challenge Mr. Kushnick's "knowledge, skill, experience, training or education" to render expert opinions (Fed. R. Evid. 702). Instead, CAS attacks only certain bases of Mr. Kushnick's infringement opinions as to the '860 Patent. Specifically, to craft its attack, CAS isolates three pieces of evidence that Mr. Kushnick relied upon from among the entirety of the record evidence, and ignores his years of extensive hands-on experience.

Contrary to CAS's argument, Mr. Kushnick's testimony is premised upon proper bases, including scientifically sound and reliable grounds that can help the jury. His opinions are also based on his own rigorous and scientifically-based analyses, informed by his experience and knowledge that CAS has conceded.

### A. MR. KUSHNICK'S RELIANCE ON THE LUFTHANSA '392 PATENT IS REASONABLE

Ignoring the entirety of Mr. Kushnick's report and all the evidence he relies upon in reaching his conclusions, CAS first isolates Mr. Kushnick's reliance on U.S. Patent No. 8,216,392 (ECF No. 125-5, Ex. D, the '392 Patent) as corroborating evidence of infringement. According to CAS, "Mr. Kushnick's opinions based on the third party Lufthansa Technik '392 Patent are inadmissible as they are irrelevant and unreliable." Sealed ECF No. 122-2 at 4.[1] The isolated attack is unwarranted and void of context, as the '392 is one, but not the only, piece of corroborating evidence that Mr. Kushnick relied upon to reach his conclusion that CAS is infringing the '860 Patent.

---

[1] Citations herein to "Sealed ECF No." cross-reference CAS's re-filed April 20, 2018 documents subject to this Court's approval to file under seal.

CAS is the exclusive North America provider of Lufthansa Technik's ("LHT") accused Cyclean engine wash program. Ex. 2, screen shot of http://www.certifiedaviation.com/aboutus/partners/. Ex. 3, CAS006256; Ex. 4, CAS007070. LHT, in turn, holds Cyclean out as a "patented technology for washing engines quickly and easily." Ex. 5, screen shot of https://www.lufthansa-technik.com/cyclean. A simple side-by-side comparison of the Cyclean system and figures from the '392 Patent illustrates that the '392 Patent, entitled "Device and Method for Cleaning the Core Engine of a Jet Power Plant" covers many aspects of the system.

Figures 1 and 2 from '392 Patent and Ex. 6, CAS001865 at 00:43:




PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.



Yet CAS struggles to drive a wedge between the Cyclean system and the '392 Patent. First, CAS takes issue that the Cyclean system is not marked with the '392 Patent. Sealed ECF No. 122-2 at 5. This argument is at best a red herring. Whether LHT and/or its sole North America service provider, CAS, fail to mark the Cyclean system with any patent numbers is of no consequence here. As the Court is well aware, marking only relates to a potential limit on damages when and if the unmarked patent is asserted in an infringement action. Because the '392 Patent is not asserted here, its marking on the accused Cyclean system remains irrelevant.

Second, CAS exaggerates the import of the *Forest Labs*[2] case, ascribing a sweeping legal principle to that case. But that case stands on its own facts. Importantly, that case was an appeal of a motion for judgment as a matter of law, and, as such, the evidence at issue was already admitted and part of the trial record. The Federal Circuit's decision turned on the weight but *not* admissibility of the evidence.

More importantly, unlike this case, there was no additional evidence in *Forest Labs* further supporting the argument that the specific claim limitation was

---

[2] *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305 (Fed. Cir. 2001).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S
EXPERT STEVEN B. KUSHNICK, P.E.

met other than by a patent covering the allegedly infringing limitation. Mr. Kushnick's reliance on the '392 Patent is not in isolation. He does start the relevant portion of his analysis with the fact that the '392 Patent discloses "[t]he pressure under which the cleaning medium is discharged at the nozzle opening preferably lies within the range of 20 to 100 bar, more preferably 30 to 80 bar, more preferably 50 to 70 bar." Sealed ECF No. 122-3, Kushnick Infringement Report at 20. But as he testified during his deposition, Mr. Kushnick additionally relied upon ███████ produced by CAS, a site inspection where he personally observed the operation of Cyclean, as well as additional testing and calculations. Ex. 7, Kushnick Dep. Tr. (Mar. 6, 2018) at 86:20-87:4. Mr. Kushnick further analyzed the data, and using standard mathematical equations, he plotted the results of his calculations that further support his conclusions. Sealed ECF No. 122-3, Kushnick Infringement Report at 23-27. The '392 Patent corroborates Mr. Kushnick's opinions.

Third, and finally, CAS takes issue with Mr. Kushnick's reliance on the disclosure in the '392 Patent's *specification*, as opposed to its *claims*. This criticism is the most peculiar. What Lufthansa chose to claim about its patented Cyclean is a matter of what its lawyers believed, and what the PTO agreed, is patentable. There is no question, however, that when it comes to the water pressure and droplet size claimed in the '860 Patent, the Cyclean patent provides those same exact ranges in its specification.[3] Mr. Kushnick verified his analysis based on the Cyclean patent's disclosed parameters by conducting further calculations using parameters provided in actual wash engineering orders produced

---

[3] Tellingly, on its face, the '392 patent references the Asserted '860 Patent. It is reasonable to assume that when prosecuting the '392 Patent, the applicants chose not to claim the pressure and droplet size in view of cited prior art, *i.e.* the '860 Patent.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.**

by CAS. That CAS downplays the import of engineering reports it produced about actual washes belies its argument.

In the end, the '392 Patent is but one piece of corroborating evidence, and not the only support Mr. Kushnick's offers for his conclusion. CAS's attack on the evidence relied upon by Mr. Kushnick as "irrelevant and unreliable" is unwarranted, and in any event better saved for cross examination.

    **B.**     **MR. KUSHNICK'S OPINIONS REGARDING THE ▬▬▬ NOZZLE ARE ADMISSIBLE**

In addition to relying on the '392 Patent, Mr. Kushnick tested various ▬▬▬ nozzles in determining whether the accused Cyclean system meets the particle size and particle velocity limitations of the '860 Patent. CAS takes issue with Mr. Kushnick's selection of the nozzle model as an "assumption" based upon hearsay. Sealed ECF No. 122-2 at 7:17-21. Specifically, CAS argues that Mr. Kushnick's "understanding depends solely on hearsay testimony" of CAS employee, Mr. Brad Caban, and the assumption that Cyclean uses a ▬▬▬ nozzle.

EcoServices readily admits that Mr. Kushnick's selection and testing of the ▬▬▬ nozzle is based on sworn testimony of Mr. Caban. Importantly, however, Mr. Caban is not just an employee, as CAS's motion dismissively implies. Not only was Mr. Caban CAS's president from 2012 until mid-2017, he was CAS's designated corporate witness on the technical issues relating to the Cyclean system in this case. CAS had also identified Mr. Caban in its Initial Disclosures as having knowledge of "*operational*, sales, and marketing information related to Cyclean."[4] Ex. 9, Initial Disclosures (emphasis added).

---

[4] CAS repeated that representation in interrogatory responses as well.

7      Case No. 5:16-cv-01824

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.**

As CAS's corporate witness, Mr. Caban was obligated to provide operational information about Cyclean, including about the type of nozzle used in the system. And Mr. Caban identified the nozzle based on a conversation he had with ▬▬▬▬▬. Indeed, Mr. Caban was unequivocal:



Ex. 8, Caban Dep. Tr. at 134:6-17.

Mr. Kushnick properly relied upon this testimony to conclude that the Cyclean system uses a ▬▬▬ nozzle. Mr. Caban's testimony regarding Cyclean's use of a Lechler ▬▬▬ is a non-hearsay party admission. "A corporation's 30(b)(6) deponent speaks on behalf of the corporation and therefore the deponent's statements are generally admissible against a corporate party as statements by a party-opponent." *New Show Studios LLC v. Needle,* No. 2:14-cv-01250-CAS (MRWx), 2016 U.S. Dist. LEXIS 136105, at *13-14 (C.D. Cal. Sep. 29, 2016) (citing *Icon Enters. Int'l v. Am. Prods. Co.*, No. CV-04-1240-SVW (PLAx), 2004 U.S. Dist. LEXIS 31080, at *17 (C.D. Cal. Oct. 7, 2004) ("The designee, in essence, represents the corporation just as an individual represents him or herself at a deposition. The designee's statements are thus admissible as an

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.**

1  admission.") (citations omitted). *See also Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*, No. 08-cv-1595 BEN (BGS), 2011 U.S. Dist. LEXIS 53766, at *16-17 (S.D. Cal. May 18, 2011) (holding that statements by defendant's president and CEO "are admissions by a party opponent and not hearsay under Federal Rule of Evidence 801(d)(2)").

[REDACTED] Ex. 8, Caban Dep. Tr. at 50:14-51:5. Mr. Winter's statement to Mr. Caban regarding Cyclean's use of a [REDACTED] nozzle itself is also a non-hearsay party admission because it was made when Mr. Winter was an agent of CAS and relates to a matter within the scope of his agency. "Statements that satisfy the requirements of Rule 801(d)(2)(D) are not hearsay." *New Show Studios*, 2016 U.S. Dist. LEXIS 136105, at *13-14. Federal Rule of Evidence 801(d)(2)(D) "treats as party admissions statements by the party's agents or employees if they were made during the agency or employment and they relate to a matter within the scope of the agency or employment." WEINSTEIN'S FED. EVID. 2nd ed., 801.33[1]. To be admissible, the statements need not be within the scope of the declarant's agency, but "need only . . . be related to a matter within the scope of the agency." *Hoptowit v. Ray*, 682 F.2d 1237, 1262 (9th Cir. 1982). "The tradition has been to test the admissibility of statements by agents, as admissions, by applying the usual test of agency." Advisory Committee Notes to 801(d)(2)(D). Regardless, as CAS's corporate witness, Mr. Caban was obligated to educate himself about the Cyclean system, including what type of nozzle is used, and his testimony binds CAS.

The cases CAS relies on are distinguishable. The expert opinion at issue in *Universal Electronics, Inc. v. Universal Remote Control, Inc.*, No. SACV 12-

9     Case No. 5:16-cv-01824

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.**

00329 AG (JPRx), 2014 WL 12586737 (C.D. Cal. April 21, 2014), relied on facts reported in anonymous online product reviews, which the parties did not dispute were hearsay and would otherwise be inadmissible. Here, Mr. Kushnick's opinion at issue is based on party admissions, not inadmissible hearsay.

Also distinguishable is *XpertUniverse, Inc. v. Cisco Systems, Inc.*, No. 09-157-RGA, 2013 WL 1702159 (D. Del. Feb. 25, 2013). In that case, the court held that an expert could not opine that the code he analyzed was implemented in the accused product because his opinion was based on an inference that lacked any reliable basis. In contrast, Mr. Kushnick's assumption that Cyclean uses a ▆▆▆▆ nozzle is based on a statement by someone with knowledge and responsibility ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ex. 8, Caban Dep. Tr. at 50:14-51:5. Mr. Kushnick's reliance on sworn testimony of CAS's corporate representative on the operation of the system is baseless.

### C.   MR. KUSHNICK'S BANDING OF THE TEST DATA IS STANDARD ENGINEERING PRACTICE

Based on Mr. Caban's sworn testimony that Cyclean uses a ▆▆▆ nozzle, Mr. Kushnick set out to test whether the Cyclean system meets the volumetric flow rate claimed in the '860 Patent. It is true that within the ▆▆ series there are multiple offerings that differ slightly in the geometry of the nozzle opening. Because CAS failed to identify the exact model number used in Cyclean, Mr. Kushnick devised a test to measure the volumetric flow rate using "banding" which is a standard engineering method. Specifically, Mr. Kushnick tested a range to show that more than one geometry (of the nozzle opening) would produce the claimed particle size range under the '860 Patent's claimed overpressure range. Mr. Kushnick's banding entails obtaining results for nozzles

10                                          Case No. 5:16-cv-01824

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S
EXPERT STEVEN B. KUSHNICK, P.E.**

of more flow than what Cyclean might be using, and nozzles of less flow than what Cyclean might be using. Thus, if the upper band (more flow) and the lower band (less flow) produced particles in the range claimed by the '860 Patent for the conditions of the '860 Patent, then the conclusion is that the actual nozzle (somewhere in between) likewise produces particles in the range claimed by the '860 Patent for the conditions of the '860 Patent. Mr. Kushnick explained his methodology at his deposition:

> Q. Let's go back to the data sheet, the ▓▓▓ data sheet --
> A. Okay.
> Q. -- which is part of Exhibit 198.
> So you said you picked ones that would be within the -- the operative range; right?
> A. Well, I tried to --
> MR. SHAHIDA: Objection.
> THE WITNESS: Sorry. I wasn't looking necessarily for the operating range. What I was looking for was encompassing --
> Q. (By Mr. Apgar) Okay.
> A. -- to band the solution.
> Q. And what you're talking about is the range of flow rate?
> A. Flow versus pressure.

Ex. 7, Kushnick Dep. Tr. (Mar. 6, 2018) at 127:8-24.

Mr. Kushnick went on to further explain his methodology:

> Q. But you selected nozzles to give you a -- an appropriate flow rate based on the -- the flows listed in this data sheet; right?

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.**

A. I -- I selected nozzles to -- to band flows, yes, to -- to have different flow rates.

Ex. 7, Kushnick Dep. Tr. (Mar. 6, 2018) at 131:4-8.

When accounting for the flows listed in the ▓▓▓ catalog table, the three nozzles that Mr. Kushnick selected for testing ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓ Relying further on the ▓▓▓▓▓▓▓▓▓▓▓▓ produced by CAS, Mr. Kushnick knew that for washing a certain family of engines Cyclean ▓▓▓▓ ▓▓▓▓▓▓▓ which lies within the minimum and maximum 'bands' of flow that he selected. This is clearly illustrated in Mr. Kushnick's report, including in the following graph:

[REDACTED GRAPH]

Sealed ECF No. 122-3, Kushnick Infringement Report at 24.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.

Had Mr. Caban, CAS's corporate witness on this topic properly educated himself and provided the exact series information about the ▓▓▓▓ nozzle used in Cyclean, Mr. Kushnick would have tested the same. But CAS withheld that detail. Therefore, Mr. Kushnick used banding to show that whichever nozzle Cyclean actually uses will fall within the bands that he selected; and thus infringes the '860 Patent for the claimed range of particle sizes at the claimed range of pressure.

Faced with fact that Mr. Kushnick's testing proves Cyclean meets the claimed flow rate, CAS argues that the operating conditions of the test and the accused system were different. That difference is immaterial, however.

In the case of washing a turbine engine compressor, the '860 Patent refers to a spray manifold that is stationary relative to the engine fan. In the case of washing a turbine engine compressor, the Cyclean system utilizes a spray manifold that is attached to the rotating fan. To determine the linear speed that results from being attached to the fan, one needs the RPM of the fan and the radius at which the spray nozzle is attached. CAS's expert, Dr. Micklow agrees that the radius is approximately 0.4 meters from the center of the engine. Using the correct RPM number results in insignificant changes to the velocity of the spray, and therefore, the fact that Mr. Kushnick tested nozzles in a fixed position as opposed to while rotating is of no consequence to his conclusion. Mr. Kushnick aptly explained this at his deposition.

> Q. Okay. Did you -- you didn't account ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in your velocity calculation; right?
>
> A. That's correct.
>
> Q. Okay. And we discussed before that the rotation of the nozzle will introduce different velocities into the spray; right?

13     Case No. 5:16-cv-01824

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.**

    A.    That's correct.

    Q.    Okay. So why didn't you account for those velocities -- those rotational velocities in your calculation?

    A.    Because those are small compared to the velocity of the particles coming out of the nozzle.

Ex. 7, Kushnick Dep. Tr. (Mar. 6, 2018) at 178:15-179:2. He went on to further explain the mathematical basis of his opinion are not challengeable:

    Q.    Okay. Did you review Dr. Micklow's calculations on the effects of rotation on the veloc- -- part of the velocity?

    A.    I did.

    Q.    Do you agree with his calculations?

    A.    I agree with the *equation* that he used, but I disagree with the numbers that he plugged into the equation.

Ex. 7, Kushnick Dep. Tr. (Mar. 6, 2018) at 179:3-10 (emphasis added). He continued that he did calculate the number after seeing's Dr. Micklow's report, and that calculation confirmed his opinion that he had formed based on his years of experience:

    Q.    Okay. So you would agree that for a more accurate measure of particle velocity, you should factor in the ███████████ ███████████ right?

    MR. SHAHIDA: Objection.

    THE WITNESS: I think you -- you can. And let me explain that. You don't need to. If -- if the dis- -- if the difference is small -- if the difference doesn't affect -- okay. My case, what I'm doing is I'm trying to establish infringement. And as part of that, I made the plot of the pressure and the flows, and made an envelope, and said we

1  need -- shouldn't be inside this envelope. If you account for ▮
2  ▮▮▮▮▮▮▮▮▮ and it does not move you outside of the envelope,
3  then you need not account for it for those particular points.
4  Q. (By Mr. Apgar) But you didn't -- your -- your report doesn't
5  include it to explain whether it does or does not move you out of the
6  envelope; right?
7  MR. SHAHIDA: Objection.
8  THE WITNESS: Based on my experience, I know that it doesn't. And
9  if I go back -- well, based on my experience, I know that it doesn't. I
10 know that it still keeps you within that envelope.
11 Q. (By Mr. Apgar) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 A. Right. It won't -- it won't change the number significantly. And
15 after receiving his report, I ran the numbers, and it confirmed that it
16 does not change the number significantly.

Ex. 7, Kushnick Dep. Tr. (Mar. 6, 2018) at 179:11-180:22.

As Mr. Kushnick testified, his experience includes being the Design Project Engineer, Supervisor at Pratt & Whitney in the Advanced Engines Group, where he had design and project responsibility for all the fans and compressors for those engines. Based on the available data, record evidence and his years of experience, Mr. Kushnick confirmed that testing the nozzles while rotating would not result in a consequential difference. As he testified, after seeing Mr. Micklow's computation, and observing that result appeared to be incorrect, he ran the numbers

15     Case No. 5:16-cv-01824

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.**

and confirmed that the speed change is insignificant. Ex. 7, Kushnick Dep. Tr. (Mar. 6, 2018) at 178:15-180:22.

There is no justifiable reason to exclude Mr. Kushnick from testifying about his testing and conclusions he made therefrom.

### III. CONCLUSION

For all the foregoing reasons, CAS's *Daubert* motion to exclude expert opinion testimony of Steven B. Kushnick should be denied in its entirety.

Dated: April 24, 2018

GREENBERG TRAURIG, LLP

By: */s/ Stephen K. Shahida*
Ronald J. Pabis
Stephen K. Shahida
Patrick J. McCarthy
Myomi T. Coad
Leanna Costantini
**Attorneys for Plaintiff EcoServices, LLC**

16   Case No. 5:16-cv-01824

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.**

# CERTIFICATE OF SERVICE

I, Stephen K. Shahida, hereby certify that on this 24th day of April, 2018, copies of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.** were served upon the following parties via CM/ECF:

Dale J. Giali
Mayer Brown LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
dgiali@mayerbrown.com

Stephen E. Baskin
Peter O. Schmidt
Mayer Brown LLP
1999 K. Street, N.W.
Washington, DC 20006
sbaskin@mayerbrown.com
pschmidt@mayerbrown.com

Gregory J. Apgar
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
gapgar@mayerbrown.com

**Attorneys for Defendant/Counter-Plaintiff Certified Aviation Services, LLC**

                                    */s/ Stephen K. Shahida*
                                    Stephen K. Shahida

17      Case No. 5:16-cv-01824

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT STEVEN B. KUSHNICK, P.E.**