Leanna Costantini (SBN 294028)
costantinil@gtlaw.com
GREENBERG TRAURIG LLP
3161 Michelson Drive Suite 1000
Irvine, CA 92612
Telephone: (949) 732-6804
Facsimile: (949) 732-6501

Ronald J. Pabis (admitted *Pro Hac Vice*)
pabisr@gtlaw.com
Stephen K. Shahida (admitted *Pro Hac Vice*)
shahidas@gtlaw.com
Patrick J. McCarthy (admitted *Pro Hac Vice*)
mccarthyp@gtlaw.com
Myomi T. Coad (admitted *Pro Hac Vice*)
coadm@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100
Facsimile: (202) 331-3101

Attorneys for Plaintiff
EcoServices, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOSERVICES, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>CERTIFIED AVIATION SERVICES, LLC,<br><br>                    Defendant. | Case No. 5:16-cv-01824-RSWL-SPx<br><br>Assigned to Hon. Ronald Sing Wai Lew<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**<br><br>Complaint Filed: April 22, 2016<br><br>Trial Date: June 26, 2018 |

Case No. 5:16-cv-01824

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND FACTS .................................................................. 2

    A.   The Asserted '262 Patent ...................................................... 2

    B.   Claim Construction for "Information Detector" and "Control Unit" .. 5

    C.   Relevant Infringement Allegations ....................................... 6

III.  LEGAL STANDARD ....................................................................... 6

IV.  ARGUMENT.................................................................................. 8

    A.   The Competing Evidence on Information Detector and Control Unit Actually Tips in Favor of EcoServices, But, Nevertheless, There Is At Least a Material Dispute Between the Parties...................................... 8

    B.   CAS's Motion Includes an Improper Attempt to Relitigate Its Flawed Claim Construction Positions and the Parties Should Proceed to Trial to Determine Whether the Accused Products Infringe Under the Court's Constructions................................................................. 14

    C.   The Purported Legal Support in CAS's Motion is Inapposite........... 16

V.   CONCLUSION............................................................................... 17

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Agric. Research & Tech. Grp., Inc.*,
   916 F.2d 528 (9th Cir. 1990) ...................................................................7

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
   68 F. Supp. 3d 1170 (C.D. Cal. Dec. 12, 2014)......................................8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..................................................................................7

*Eaton Corp. v. Rockwell Intn'l Corp.*,
   323 F.3d 1332 (Fed. Cir. 2003) .............................................................16

*Giles v. Gen. Motors Acceptance Corp.*,
   494 F.3d 865 (9th Cir. 2007) ....................................................................7

*Legal Aid Servs. of Or. v. Legal Servs. Corp.*,
   608 F.3d 1084 (9th Cir. 2010) ..................................................................7

*Medtronic Minimed Inc. v. Animas Corp.*,
   21 F. Supp. 3d 1060 (C.D. Cal. May 8, 2014)......................................7, 8

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000)...................................................................................8

*Van Asdale v. Int'l Game Tech.*,
   577 F.3d 989 (9th Cir. 2009) ....................................................................8

*Wood v. Beauclair*,
   692 F.3d 1041 (9th Cir. 2012) ..................................................................7

**Other Authorities**

Fed. R. Civ. P. 56(c)....................................................................................6, 7

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

# I.    INTRODUCTION

CAS's motion sets out its non-infringement case on the '262 patent and asks the Judge to sit in for the jury.  CAS has two non-infringement arguments. Unfortunately for CAS, those two non-infringement points are contradicted by the record evidence and, at the very least, include genuine disputes of material facts.

First, CAS argues that the claimed information detector is not satisfied by the accused Cyclean's keypad.  But, it is.  In the preferred embodiment, the information detector is the mechanism for obtaining information on engine type for an engine to be washed.  The Court construed information detector to take on its plain meaning and to be separate and distinct from an information unit.  SDF ¶ 27. Information unit is described in the preferred embodiment as an RFID reader or bar code scanner.  *Id.*  EcoServices' expert follows the Court's guidance, applies the plain meaning, and concludes that the Cyclean system keypad is the claimed information detector.  CAS's expert, however, ignores the Court's ruling.  Dr. Micklow testified at deposition that his non-infringement opinion was based on the narrow reading of information detector that limits it to an RFID reader or the like—a proposal already rejected by the Court.  (Ex. A, Micklow Dep. (Mar. 9, 2018) at 136:2-25); SDF ¶ 28.  Further calling into question CAS's proposed conclusion that its keypad is not an information detector, both '262 inventors testified that their early prototypes included an information detector that was a human machine interface (*i.e.*, a keypad).  Although EcoServices believes the evidence leads to a conclusion of infringement, at the very least, there is a genuine dispute as to whether or not Cyclean includes the claimed information detector.

CAS's second (and only other) non-infringement argument is that the accused Cyclean system does not include the claimed ███████████ ██████ "configured to regulate the washing unit according to washing

1

parameters associated to a particular engine based upon preprogrammed control data."  CAS is wrong.  In Cyclean, the operator ███████████████████ █████████████████████████" (Ex. B, Kushnick Dep. (Mar. 6, 2018) at 48:5-11); SDF ¶ 29.  CAS's own expert admitted that "[███████████████████ ████████████ exactly as claimed.  (Ex. A, Micklow Dep. (Mar. 9, 2018) at 137:1-4); SDF ¶ 30.  CAS attempts to blend its ██████████████ by arguing that there is no "determination left for Cyclean."  CAS again tries to improperly read the claims to preclude any manual inputs.  Nevertheless CAS's simplification of its own system underplays the role of Cyclean's ████████, which must collect the data entered on the information detector, determine what wash program and parameters correspond with that data, and then regulate the wash.  Likewise, CAS's conclusion is inconsistent with the inventors' prototypes "where we had <u>a recipe within our [control unit]</u> with an HMI connected to it and, yeah, we had entered specific manifolds within that database within the system that contained specific manifold data, engine aircraft data, and <u>the operator selected which aircraft and engine they were washing, and from there it was an automatic process</u>." (Ex. C, Nordlund Dep. at 77:8-18) (emphasis added); SDF ¶ 31.  Again, although EcoServices believes the evidence tips in favor of infringement on this issue, there is at least a genuine dispute for the jury.

## II.   BACKGROUND FACTS

### A.   THE ASSERTED '262 PATENT

The '262 patent relates to a system and method for washing gas turbine engines.  SDF ¶ 10.  The '262 patent claims a washing unit to provide a washing liquid to a turbine engine (Ex. D, '262 patent, at claim 1), an information detector to obtain information related to the engine to be washed (Ex. D, '262 patent, at claim 1) and a control unit to regulate the washing parameters (Ex. D, '262 patent,

at claim 1).  SDF ¶ 11. The '262 patent teaches a washing process using equipment that optimizes engine washing and promotes less costly air travel and less exhaust emissions.  (Ex. D, '262 patent at 2:46-49); SDF ¶ 12.

As CAS points out, the '262 patent teaches advancements over the prior art that include minimizing the risk of human error in the critical engine washing process.  (Sealed ECF No. 122-6, at 2.)[1]; SDF ¶ 13.  CAS admits that prior art systems were different because they had no automation and required operators to "select an appropriate nozzle manifold for the engine being washed; had to manually set washing parameters such as water flow rate, water volume, and water pressure; and had to manually keep track of the washing time." (*Id.*)  The '262 patent's objectives include minimizing at least some human intervention to enhance efficiency and effectiveness in the washing process.  (Ex. D, at '262 patent at 3:10-15); SDF ¶ 14.

Further, the '262 patent teaches an end-to-end system that increases efficiency and effectiveness.  (Ex. D, '262 patent at Abstract); SDF ¶ 15.  Two components involved in the system are an "information detector" and a "control unit."  (Ex. D, '262 patent at claim 1); SDF ¶ 16.  In the preferred embodiment, the "information detector obtains particular information identifying the engine."  (Ex. D, '262 patent at 6:37-38); SDF ¶¶ 17-18  The patent explains that the information detector receives information from an information unit, which as a specific example "may comprise an RFID reader" (*i.e.*, a scanner that an operator would use to scan an RFID chip).  (Ex. D, '262 patent at 6:40-41); SDF ¶ 19.  The preferred embodiment describes the "control unit" as a "programmable logic

---

[1] Citations herein to "Sealed ECF No." cross-reference CAS's re-filed April 20, 2018 documents subject to this Court's approval to file under seal.

controller (PLC) capable of being programmed to control and monitor the washing process."  (Ex. D, '262 patent at 6:40-41); SDF ¶ 20.

The named inventors were questioned at deposition and will testify at trial about their development of the system that is described in the '262 patent.  Of particular note, Mr. Nordlund was questioned about his early development work on an information detector:

> **Q.** Did you perform work at GTE that related to a ████████████████████████████████████ ████████████████████████████ ███████████████████████ and we did have, you know, broad discussions and also, I guess, as part of this invention that it would be very, you know, very interesting to have that out in the market – or something that nobody has ever invented in the past and nobody had out there on the market.  A product that wouldn't be able to – ████████████████████████████████ ████████████████████████████████████ ████
>
> **…**
>
> **Q.** What is a HMI?
>
> **A.** Human Machine Interface.
>
> **Q.** And what is a PLC?
>
> **A.** A Programme Logical Controller – Programmable Logic Controller, yes.

(Ex. C, Nordlund Dep. at 49:14-50:16); SDF ¶ 21.  Mr. Nordlund further explained that the ████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████ (*Id*. at 78:24-79:8); SDF ¶ 22.  Mr.

Alvestig similarly described the HMI as ████████████████████████████

█████████████████████

███████████ (Ex. E, Alvestig Dep. at 25:10-18); SDF ¶ 23.

Both Mr. Nordlund and Mr. Alvestig explained that they contemplated and implemented two embodiments of their invention one using an ████████████

████████████ and one using ███████████████████ SDF ¶ 24. ██████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████ (Ex. C, Nordlund

Dep. at 81:13-23); SDF ¶ 25.  Mr. Alvestig likewise confirmed that at ███████████

█████████████████████████████████████████████

██████████████████████████████████████ (Ex. E, Alvestig Dep. at

28:12-19); SDF ¶ 26.

**B.    CLAIM CONSTRUCTION FOR "INFORMATION DETECTOR" AND "CONTROL UNIT"**

The parties disputed constructions for "information detector" and "control unit" in briefings and at the hearing before the Court.  SDF ¶ 32.  EcoServices proposed that both should be interpreted consistent with their plain meanings.  SDF ¶ 33. CAS, on the other hand, advocated for more narrow interpretations.

Specifically, with respect to "information detector configured to gather information related to engine type," CAS argued that the phrase should be construed as "a device designed to detect from an information unit (*e.g.*, an RFID

tag or bar code) the presence of information related to engine type." ( ECF No. 75, at 8-9); SDF ¶ 34.  The Court agreed with EcoServices, however, that the claims are not limited to RFID (or an "information unit") and "the Court decline[d] to import a limitation into the claims from a preferred embodiment." (ECF No. 80 at 12); SDF ¶ 35.

The parties also disputed "control unit" terms, which CAS argued should be interpreted as means-plus-function limitation.  The Court rejected that argument because the term "control unit does not merely recite generic computing components." (ECF No. 80 at 20); SDF ¶ 36.  Thus, the Court adopted the plain meaning of control unit.  (*Id.*)

## C.   RELEVANT INFRINGEMENT ALLEGATIONS

In the accused Cyclean system, a wash technician uses a ███ to select a ████████████████ (Sealed ECF No. 122-6 at ¶ 85); SDF ¶ 37.  The ████ detects the user's input ████████████ and is therefore an "information detector configured to gather information related to engine type." (*Id.* at ¶ 84); SDF ¶ 38.  Once the ████ accepts the user's input, it is passed to the Cyclean ████████ which ████████████████████████ ████████████████████████████ (*Id.* at ¶ 92); SDF ¶ 39.  Notably, CAS's own documents refer to Cyclean as including a ████████ (Ex. F, CAS000001 (*e.g.*, CAS000005); Ex. G, CAS006256 (*e.g.*, CAS006258.)); SDF ¶ 40.

## III.   LEGAL STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The

moving party bears the heavy burden of demonstrating the absence of even one genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) ("A grant of summary judgment is appropriate only where the moving party has demonstrated that there is no genuine issue of material fact."); *Medtronic Minimed Inc. v. Animas Corp.*, 21 F. Supp. 3d 1060, 1073-74 (C.D. Cal. May 8, 2014) (denying defendant's motion for partial summary judgment on indefiniteness in its entirety where defendant failed to meet its burden to show by clear and convincing evidence that the challenged limitations are indefinite).

The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied. *Wood v. Beauclair*, 692 F.3d 1041, 1045 (9th Cir. 2012) ("Summary judgment is to be granted only if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, show that there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law.") (quoting *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d 1084, 1093 (9th Cir. 2010)). The Court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d 528, 534 (9th Cir. 1990) (stating that all reasonable inferences from the evidence are drawn in favor of the non-moving party) (citing *Celotex*, 477 U.S. at 255). In addition, all reasonable doubts about the facts must be resolved in favor of the non-movant. Fed. R. Civ. P. 56(c).

Additionally, if reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied. Thus, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1005 (9th Cir. 2009) (reversing district court's summary judgment in favor of defendant where Ninth Circuit concluded that plaintiff raised a genuine issue of material fact regarding the cause of their terminations and that summary judgment should not have been granted); *Medtronic*, 21 F. Supp. 3d at 1070 (denying defendant's motion for partial summary judgment on indefiniteness in its entirety where the Court found that genuine issues of material fact existed, and noting that "[s]uch is not enough to grant summary judgment."); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 68 F. Supp. 3d 1170, 1177 (C.D. Cal. Dec. 12, 2014) (denying defendants' motion for summary judgment because dispute regarding a material fact as to the degree of design differences in copyright infringement claim precluded summary judgment).

Applying these governing legal standards to the facts of this case confirms CAS's motion should be denied.

## IV.   ARGUMENT

### A.   THE COMPETING EVIDENCE ON INFORMATION DETECTOR AND CONTROL UNIT ACTUALLY TIPS IN FAVOR OF ECOSERVICES, BUT, NEVERTHELESS, THERE IS AT LEAST A MATERIAL DISPUTE BETWEEN THE PARTIES.

The pending motion is an outline of CAS's non-infringement theory.  That theory is premised on two genuine issues of material fact: (1) is the Cyclean ▮▮▮▮▮ that obtains ▮▮▮▮▮▮▮▮▮▮▮ an "information detector" under its plain meaning (Sealed ECF No. 122-6, at 8-12) and (2) is the ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a "control unit" under the plain meaning (*Id.* at 12-

8

Case No. 5:16-cv-01824

15).   Highlighting that there are genuine issues of material facts, the pre-trial evidence tips both these issues in favor of EcoServices.

*Cyclean's* ▮▮▮▮ *is the claimed "information detector."*  Asserted claim 1 requires "an information detector configured <u>to gather</u> information related to engine type." SDF ¶ 41.  The other asserted independent claim, claim 14, requires "an information detector <u>for providing</u> information identifying at least one of washing unit and engine type."  SDF ¶ 42.  CAS argues that these claim elements are representative of each other (*Id.* at 4) indicating that it agrees there is no distinction between gathering and providing information under the plain meaning.

EcoServices' expert, Mr. Kushnick thoroughly reviewed documents explaining the Cyclean system and he also inspected the Cyclean system in operation.  (Sealed ECF No. 122-6, at ¶¶ 83-86); SDF ¶ 43.  Mr. Kushnick concluded that the accused system includes an information detector for gathering/providing information on engine type because the system includes an automated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at ¶ 85); SDF ¶ 44.  As Mr. Kushnick further explained ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮   (Ex. B, Kushnick Dep. (Mar. 6, 2018) at 48:8-11); SDF ¶ 45.  In this way, the keypad <u>gathers</u> information related to engine type from the user and <u>provides</u> information on engine type to the controller.

Notably, CAS's motion only cites Mr. Kushnick's deposition testimony for a few points.  (Sealed ECF No. 122-6, at 7-14.)  Those deposition cites (and corresponding points), however, simply confirm noncontroversial and unpersuasive points such as that the Cyclean system does not use an ▮▮▮▮▮▮ (Sealed ECF No. 122-6, at 7) and the patent specification does not expressly

9                                  Case No. 5:16-cv-01824

disclose a ███████ as an information detector (Sealed ECF No. 122-6, at 10.).  CAS cites no other testimony from Mr. Kushnick himself that calls into question the veracity of his opinion that CAS's ███████ falls squarely within the plain meaning of an information detector.  (Ex. B, Kushnick Dep. at 200:19-20) ("And at the time, then and now, a ███████ is an information detector."); SDF ¶ 46.

That the keypad falls within the plain meaning of "information detector" is consistent with the preferred embodiment.  The preferred embodiment describes the "information detector" as "obtain[ing] particular information identifying the engine." (Ex. D, '262 patent at 6:37-38 (emphasis added)); SDF ¶ 47.  The ███████ ████████████████████████████████████████████████.

Likewise undeviating is the inventor testimony on early prototypes embodying the teachings of the '262 patent.  Particularly, both Mr. Nordlund and Mr. Alvestig were questioned on how they implemented information detectors in their work and they both confirmed that one embodiment used a human user interface.  As Mr. Nordlund explained "[i]t could, for instance, detect an operator pressing on the screen, selecting engines, and that data would then go to the PLC which ran the wash unit."  (Ex. C, Nordlund Dep. at 79:4-8); SDF ¶ 48.  Mr. Alvestig, for his part, described the same: "the system detected, for instance, through the operator entering on the HMI which kind of engine was being washed, that is to detect which kind of engine is being washed.  So the system, as such, was capable of identifying which engine was being washed."  (Ex. E, Alvestig Dep. at 38:7-14); SDF ¶ 49.

Notably missing from CAS's motion is reliance on its own expert, who is cited in little more than footnote 7.  This is not surprising because Dr. Micklow admitted at deposition that his non-infringement opinion was advanced under

CAS's rejected claim construction theory—that an information detector is limited to RFID readers:

> **Q.**   What's the purpose of including the dictionary definitions in your—in your report?
>
> **A.** So that we have an idea about what a detector is.
>
> **Q.**   Okay.   You understand that information detector – that information detector terms was part of the [Markman] proceedings in this case, right?
>
> **A.** Yes, I do.
>
> **Q.**   And are you here attempting to provide a construction of the term "detector"?
>
> **A.** Yes, I am.
>
> **Q.**  And is it your conclusion, based on these definitions as set forth in paragraph 116, that the detector corresponds to the technologies involved in RFID and bar code – bar code?
>
> **A.** Yes.
>
> **Q.**  And that's the construction that you applied when you analyzed this limitation – the information detector limitation of claim 1 of the '262 patent, right?
>
> Objection.
>
> **A.**    That is part of it yes but I was thinking about okay, how are they going to do this, radio frequency detector, bar code detectors, et cetera, other sensors possibly.

(Ex. A, Micklow Dep. (Mar. 9, 2018) at 136:2-25) (emphasis added); SDF ¶ 50.

1    On the one side, EcoServices' expert is consistent with the patent's

2    specification, the inventors' testimony, CAS's own documents, and the *Markman*

3    ruling.  On the other, CAS's expert contradicts all four.

4    Although EcoServices firmly believes its evidence on information detector is

5    more credible and is more than sufficient to carry its burden at trial, at the very

6    least there is a genuine dispute as to a material fact which will be more properly

7    resolved by a reasonable jury once this evidence is fully developed at trial.

8    *Cyclean's* ███████████████████ *is the claimed "control unit."*

9    Separate from the "information detector," independent claim 1 requires a "control

10   unit configured to accept the information related to engine type from the

11   information detector and to determine a washing program."  SDF ¶ 51.  Claim 14

12   similarly requires a "control unit configured to regulate the washing unit according

13   to washing parameters associated to a particular engine . . . relating to information

14   provided by the information detector."  SDF ¶ 52. CAS again draws no distinction

15   between these two limitations, admitting that the plain meaning of both is

16   effectively the same.  (Sealed ECF No. 122-6, at 4.)

17   In the accused Cyclean system, after the ████ gathers information related

18   to ███████████████████████████████████████████

19   ████████████████████ (Sealed ECF No. 122-6, at ¶¶

20   87-93); SDF ¶ 53.  As Mr. Kushnick explained at deposition ████████████

21   ██████████████████████████████████████████

22   ██████████████████████████████████████████

23   ██████████████████████████████████████████

24   ████████ (Ex. B, Kushnick Dep. (Mar. 6, 2018) at 52:14-19); SDF ¶ 55.  In

25   other words, Cyclean includes a ████████ portion that is "configured to

26

12                              Case No. 5:16-cv-01824

regulate the washing unit according to washing parameters associated to a particular engine" just as claimed.

CAS argues that it does not because, under CAS's interpretation, the operator uses ███████████████████████████ (Sealed ECF No. 122-6, at 13.) CAS reasons that Cyclean itself does not ████████████ ████████████████████████ (*Id.*) CAS also states that ████████████ ███████████████████████████████████████ ████████████ (*Id.*) Even though "automatic determination" is not an asserted claim element, it does not matter for these purposes because Cyclean ████████ ████████████████. Indeed, CAS's summary improperly discredits that ████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████.

Mr. Kushnick specifically testified that the █████████████████████ ███████████████████████████████████████ ████████████████████ The fact that I observed it doing the proper wash cycle indicates to me that ████████████████████ ████████ (Ex. B, Kushnick Dep. (Mar. 6, 2018) at 78:8-14.) Mr. Kushnick even confirmed that ██████████████████████████, just as in the preferred embodiment of the '262 patent. (*Id.* at 53:19-21); SDF ¶ 56. Mr. Kushnick did not waiver that once the information related ███████████████████████████ ███████████████████████████████████████ █████████████████████ In other words, it does actually "automatically determine" a washing program, even though those words are not even present in the claims.

Moreover, Dr. Micklow acknowledged this behavior at deposition and specifically agreed that the Cyclean system includes ████████████████ ██████████████████████████—nearly verbatim from claim 14:

> **Q.** But you don't dispute in your report that the ████████ ████████████████████████ ████ ████████████████ ████████████████████ ████████████████████
>
> **A.** <u>That sounds reasonable, yes</u>.

(Ex. A, Micklow Dep. (Mar. 9, 2018) at 137:1-8) (emphasis added); SDF ¶ 57.

CAS concentrates on Cyclean's ████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ████████████████ At the very least, there is a genuine issue of material fact as to whether or not Cyclean's ████████ is the "control unit" of the claim.

**B.  CAS's Motion Includes an Improper Attempt to Relitigate Its Flawed Claim Construction Positions and the Parties Should Proceed to Trial to Determine Whether the Accused Products Infringe Under the Court's Constructions**

Much of CAS's motion is an untimely request for the Court to reconsider its informed claim construction, which specifically rejected the arguments that CAS now tries to revive.  For example, CAS again conflates the patent specification's

1    information unit and information detector—a mistake the court rejected at the

2    *Markman* stage.  In its continued effort to read ▬▬▬ out of the plain meaning

3    for "information detector" CAS states that "the specification discloses several

4    possibilities for the information detector: RFID readers, bar code readers, or other

5    'radio frequency equipment capable of transmitting and receiving information,

6    etc.'" (Sealed ECF No. 122-6, at 4.)  This listing of examples, however, is for the

7    disclosed "information unit," not the information detector.  (Ex. D, '262 patent

8    5:49-55.)  In the face of the same argument and CAS's proposed construction that

9    narrowed the information <u>detector</u> to the separate and distinct information <u>unit</u>, the

10   Court explained that "[n]othing in the claim language, specification, or prosecution

11   history show that 'information detector' must be given a narrow definition as

12   Defendant has proposed." (ECF No. 80 at 12.)

13        Likewise, CAS repeatedly mentions the patent's goal of minimizing the risk

14   of human error.  (Sealed ECF No. 122-6, at 2-3.)  CAS implies that the claim

15   prohibits "any human involvement." (Sealed ECF No. 122-6, at 9.)  But, this

16   belated claim construction argument cannot be correct because, even under CAS's

17   overly narrow bar code reader interpretation, a human operator would still be

18   responsible for executing the bar code scan.  If anything, CAS's emphasis on the

19   patent's goal of minimizing human error highlights its own infringement because

20   CAS has used ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

21   ▬▬▬▬ that were manually controlled in the prior art.

22        Any attempts by CAS to relitigate claim construction should be rejected.

23   Under the Court's controlling claim construction there are genuine issues of

24   material fact that confirm that CAS's motion should be denied.

25

26

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

**C.    THE PURPORTED LEGAL SUPPORT IN CAS'S MOTION IS INAPPOSITE.**

CAS cites a limited number of cases to support its arguments. Each of those cases, however, are unhelpful for the issues here. For example, CAS cites *Telemac Cellular*, *Phillips Petroleum Co.*, and *Garlock Equip.* for the uncontroversial point that expert testimony should not be "conclusory, devoid of facts upon which the affiants' conclusions, as experts, were reached." (Sealed ECF No. 122-6, at 12.) EcoServices does not disagree with this general proposition, however, it is not applicable here. As already explained above, Mr. Kushnick provided a detailed analysis of his infringement theories and those theories held up during deposition. Additionally, there is inventor testimony that is consistent with Mr. Kushnick's analysis. Further, there is testimony from CAS's own experts which lends itself to the conclusion that Mr. Kushnick's analyses and final opinions are the right ones that should be adopted by the jury. This case does not resemble the cases cited by CAS where conclusory and unsupported expert testimony was at stake.

CAS also relies on *Eaton Corp.* for the proposition that the control unit must include automation. (Sealed ECF No. 122-6, at 14.) Notably, a significant portion of CAS's citations relate to *Eaton's* claim construction analysis. *See Eaton Corp. v. Rockwell Intn'l Corp.*, 323 F.3d 1332, 1342 (Fed. Cir. 2003). But the Federal Circuit's analysis there is irrelevant to the facts here because ███████████ ███████ As explained above, █████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████" (Ex. B, Kushnick Dep. (Mar. 6, 2018) at 48:8-11) (emphasis added.) In *Eaton*, as CAS admits, there was a button push, but <u>then</u> the user would shift gears when the claim required automatic gear shift. (Sealed ECF No. 122-6, at 14.) In the accused system, ███████████████████████

1

## V.    CONCLUSION

2        For the foregoing reasons, CAS's motion should be denied.

3   Dated:  April 24, 2018            GREENBERG TRAURIG, LLP

4
                                      By: */s/ Stephen K. Shahida*_____
5                                     Ronald J. Pabis
                                      Stephen K. Shahida
6                                     Patrick J. McCarthy
                                      Myomi T. Coad
7                                     Leanna Costantini
                                      **Attorneys for Plaintiff EcoServices, LLC**
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

## CERTIFICATE OF SERVICE

I, Stephen K. Shahida, hereby certify that on this 24th day of April, 2018, copies of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT** were served upon the following parties via CM/ECF:

Dale J. Giali
Mayer Brown LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
dgiali@mayerbrown.com

Stephen E. Baskin
Peter O. Schmidt
Mayer Brown LLP
1999 K. Street, N.W.
Washington, DC 20006
sbaskin@mayerbrown.com
pschmidt@mayerbrown.com

Gregory J. Apgar
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
gapgar@mayerbrown.com

**Attorneys for Defendant/Counter-Plaintiff Certified Aviation Services, LLC**

_/s/ Stephen K. Shahida_
Stephen K. Shahida

18                              Case No. 5:16-cv-01824

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT