Leanna Costantini (SBN 294028)
costantinil@gtlaw.com
GREENBERG TRAURIG LLP
3161 Michelson Drive Suite 1000
Irvine, CA 92612
Telephone: (949) 732-6804
Facsimile: (949) 732-6501

Ronald J. Pabis (admitted *Pro Hac Vice*)
pabisr@gtlaw.com
Stephen K. Shahida (admitted *Pro Hac Vice*)
shahidas@gtlaw.com
Patrick J. McCarthy (admitted *Pro Hac Vice*)
mccarthyp@gtlaw.com
Myomi T. Coad (admitted *Pro Hac Vice*)
coadm@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street NW, Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100
Facsimile: (202) 331-3101

Attorneys for Plaintiff
EcoServices, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOSERVICES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>CERTIFIED AVIATION SERVICES, LLC,<br><br>    Defendant. | Case No. 5:16-cv-01824-RSWL-SPx<br><br>Assigned to Hon. Ronald Sing Wai Lew<br><br>**PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**<br><br>Complaint Filed: April 22, 2016<br><br>Trial Date: June 26, 2018 |

Case No. 5:16-cv-01824

Pursuant to Local Rule 56-2, Plaintiff EcoServices, LLC hereby submits its Statement of Genuine Disputes of Material Fact in Opposition to Defendant's Motion for Summary Judgment of Non-Infringement and Invalidity of the '262 Patent.

## The Parties

1. Plaintiff EcoServices is a Delaware limited liability company that provides engine wash services worldwide. SUF ¶ 2.

2. EcoServices provides an on-wing aircraft engine washing system under the brand and registered trademark EcoPower® Engine Wash System ("EcoPower"). SUF ¶ 3.

3. EcoServices is the owner of all rights to U.S. Pat. Nos. 9,162,262 (the "'262 Patent") which issued on October 20, 2015. ECF No. 1 at ¶¶ 14-16.

4. Defendant CAS is a Delaware limited liability company. SUF ¶ 3.

5. In April 2010, CAS entered into an agreement with Lufthansa to be the exclusive provider of Cyclean engine washes in the United States. Sealed ECF Nos. 128-4, 128-5.

6. Since ▓▓▓, CAS has been providing engine wash services in the United States using Lufthansa's Cyclean® Engine Wash system ("Cyclean"). Ex. H, Lee Dep. at 58:19-23.

7. CAS ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the Accused Cyclean system. SUF ¶ 7.

8. Cyclean was designed and developed by Lufthansa. SUF ¶ 4.

9. CAS ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. SUF ¶ 6.

## The '262 Patent

10. The '262 patent relates to a system and method for washing gas turbine engines. (Ex. D, '262 patent at 1).

1     Case No. 5:16-cv-01824

**PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

11. The '262 patent claims a washing unit to provide a washing liquid to a turbine engine (Ex. D, '262 patent, at claim 1), an information detector to obtain information related to the engine to be washed (Ex. D, '262 patent, at claim 1) and a control unit to regulate the washing parameters (Ex. D, '262 patent, at claim 1).

12. The '262 patent teaches a washing process using equipment that optimizes engine washing and promotes less costly air travel and less exhaust emissions. (Ex. D, '262 patent at 2:46-49.)

13. The '262 patent teaches advancements over the prior art that include minimizing the risk of human error in the critical engine washing process. Sealed ECF No. 122-6, at 2.)

14. The '262 patent's objectives include minimizing at least some human intervention to enhance efficiency and effectiveness in the washing process. (Ex. D, at '262 patent at 3:10-15.)

15. The '262 patent teaches an end-to-end system that increases efficiency and effectiveness (Ex. D, '262 patent at Abstract.)

16. Two components involved in the system are an "information detector" and a "control unit." (Ex. D, '262 patent at claim 1.)

17. In the preferred embodiment of the '262 Patent, the "information detector obtains particular information identifying the engine." (Ex. D, '262 patent at 6:37-38.)

18. In the preferred embodiment, the information detector is the mechanism for obtaining information on engine type for an engine to be washed. *Id.*

19. The '262 Patent explains that the information detector receives information from an information unit, which as a specific example "may comprise

**PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

an RFID reader" (*i.e.,* a scanner that an operator would use to scan an RFID chip). (Ex. D, '262 patent at 6:40-41.)

20. The preferred embodiment describes the "control unit" as a "programmable logic controller (PLC) capable of being programmed to control and monitor the washing process." (Ex. D, '262 patent at 6:40-41.)

21. Mr. Nordlund, a named inventor of the '262 Patent, testified as follows:

> **Q.** Did you perform work at GTE that related to a detection unit that could provide information about manifolds and any engines to the washing system?
>
> **A.** Well, we looked at PLCs and HMIs and we did have, you know, broad discussions and also, I guess, as part of this invention that it would be very, you know, very interesting to have that out in the market – or something that nobody has ever invented in the past and nobody had out there on the market. A product that wouldn't be able to – you could input the manifold and engine information into the control unit and that's something that we have, yes.
>
> …
>
> **Q.** What is a HMI?
>
> **A.** Human Machine Interface.
>
> **Q.** And what is a PLC?
>
> **A.** A Programme Logical Controller – Programmable Logic Controller, yes.

(Ex. C, Nordlund Dep. at 49:14-16.)

3                           Case No. 5:16-cv-01824

**PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

22. Mr. Nordlund explained that the human machine interface the inventors envisioned "could, for instance, detect an operator pressing on the screen, selecting engines, and that data would then go the PLC which ran the wash unit." (*Id*. at 78:24-79:8.)

23. Mr. Alvestig, another named inventor on the '262 described the HMI as "where the operator meets the machine, so that is the point of contact between the operator and the machine and where it is controlled." (Ex. E, Alvestig Dep. at 25:10-18.)

24. Both Mr. Nordlund and Mr. Alvestig explained that they contemplated and implemented two embodiments of their invention one using an HMI (to detect an operator press) and one using RFID (to detect a bar code). (Ex. C, Nordlund Dep. at 81:13-23; Ex. E, Alvestig Dep. at 28:12-19).

25. Mr. Nordlund testified "the capability is, you know, of selecting an engine through a HMI is very easily made into – you can very easily take the step into using some kind of RFID or some other – Radio Frequency Identification. It is a matter of having data sent to the PLC from HMI or from some other type of, you know, detection to tell you which manifold an aircraft and engine you are washing." (Ex. C, Nordlund Dep. at 81:13-23.)

26. Mr. Alvestig testified that "we had two ways. One way was – the first one was that the operator entered it on the HMI, and the second one was to develop the RFID track." (Ex. E, Alvestig Dep. at 28:12-19.)

27. The Court construed information detector to take on its plain meaning and to be separate and distinct from an information unit. Information unit is described in the preferred embodiment as an RFID reader or bar code scanner. (ECF No. 80, *Markman* Order, at 10-12.)

4   Case No. 5:16-cv-01824

**PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

28. Dr. Micklow testified at deposition that his non-infringement opinion was based on the narrow reading of information detector that limits it to an RFID reader or the like. (Ex. A, Micklow Dep. (Mar. 9, 2018) at 136:2-25.)

29. In Cyclean, the operator ▮▮▮▮▮ (Ex. B, Kushnick Dep. (Mar. 6, 2018) at 48:5-11.)

30. Mr. Micklow admitted that ▮▮▮▮▮ exactly as claimed. (Ex. A, Micklow Dep. (Mar. 9, 2018) at 137:1-4.)

31. The inventors' prototypes of the '262 System "had <u>a recipe within our [control unit]</u> with an HMI connected to it and, yeah, we had entered specific manifolds within that database within the system that contained specific manifold data, engine aircraft data, and <u>the operator selected which aircraft and engine they were washing, and from there it was an automatic process.</u>" (Ex. C, Nordlund Dep. at 77:8-18) (emphasis added).)

32. The parties disputed constructions for "information detector" and "control unit" in briefings and at the hearing before the Court. (ECF No. 80, Markman Order.)

33. EcoServices proposed that "information detector" and "control unit" be interpreted consistent with their plain meanings. (*Id.* at 10-11, 14.)

34. During the *Markman* proceedings, CAS argued that "<u>information detector</u> configured to gather information related to engine type" should be construed as "a device designed to detect from an <u>information unit (*e.g.*, an RFID tag or bar code)</u> the presence of information related to engine type." ( ECF No. 75, at 8-9.)

35. The Court found that the claims of the '262 Patent are not limited to RFID (or an "information unit") and "the Court decline[d] to import a limitation into the claims from a preferred embodiment." (ECF No. 80 at 12.)

**PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

36. With regard to the term "control unit" the Court found that the term "control unit does not merely recite generic computing components." (ECF No. 80 at 20) and adopted the plain meaning of control unit. (*Id.*)

37. In the accused Cyclean system, a wash technician uses a ▇▇▇ to select a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Sealed ECF No. 122-6 at ¶ 85.)

38. The ▇▇▇ detects the user's input related to an ▇▇▇ and is therefore an "information detector configured to gather information related to engine type." (*Id.* at ¶ 84.)

39. Once the ▇▇▇ accepts the user's input, it is passed to the Cyclean ▇▇▇▇▇▇ which ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* at ¶ 92.)

40. CAS's documents refer to Cyclean as including a ▇▇▇▇▇▇ (Ex. F, CAS000001 (*e.g.*, CAS000005); Ex. G, CAS006256 (*e.g.*, CAS006258.))

41. Asserted claim 1 requires "an information detector configured <u>to gather</u> information related to engine type."

42. Asserted claim 14, requires "an information detector <u>for providing</u> information identifying at least one of washing unit and engine type."

43. EcoServices' expert, Mr. Kushnick reviewed documents explaining the Cyclean system and he also inspected the Cyclean system in operation. (Sealed ECF No. 122-6, at ¶¶ 83-86.)

44. Mr. Kushnick concluded that the accused system includes an information detector for gathering/providing information on engine type because the system includes an ▇▇▇▇▇▇▇▇ wherein a user selects information corresponding to ▇▇▇▇▇▇. (*Id.* at ¶ 85.)

45. Mr. Kushnick explained ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

**PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. B,

2 Kushnick Dep. (Mar. 6, 2018) at 48:8-11.)

3     46.   Mr. Kushnick testified" "And at the time, then and now, ▮▮▮▮▮ is

4 an information detector." (Ex. B, Kushnick Dep. at 200:19-20)

5     47.   The preferred embodiment describes the "information detector" as

6 "<u>obtain[ing]</u> particular information identifying the engine." (Ex. D, '262 patent at

7 6:37-38 (emphasis added).)

8     48.   Mr. Nordlund, one of the named inventors testified as follows with

9 regard to the information detector used in the inventors' prototypes: "[i]t could, for

10 instance, detect an operator pressing on the screen, selecting engines, and that data

11 would then go to the PLC which ran the wash unit." (Ex. C, Nordlund Dep. at

12 79:4-8.)

13     49.   Mr. Alvestig, another named inventor testified as follows: "the

14 system detected, for instance, through the operator entering on the HMI which kind

15 of engine was being washed, that is to detect which kind of engine is being

16 washed. So the system, as such, was capable of identifying which engine was

17 being washed." (Ex. E, Alvestig Dep. at 38:7-14.)

18     50.   Dr. Micklow admitted at deposition that his non-infringement opinion

19 was advanced a theory that an information detector is limited to RFID readers:

20     **Q.**  What's the purpose of including the dictionary

21     definitions in your—in your report?

22     **A.** So that we have an idea about what a detector is.

23     **Q.** Okay. You understand that information detector –

24     that information detector terms was part of the

25     [Markman] proceedings in this case, right?

26     **A.** Yes, I do.

**PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

|   |   |
|---|---|
| 1 | **Q.** And are you here attempting to provide a |
| 2 | construction of the term "detector"? |
| 3 | **A.** Yes, I am. |
| 4 | **Q.** <u>And is it your conclusion, based on these definitions</u> |
| 5 | <u>as set forth in paragraph 116, that the detector</u> |
| 6 | <u>corresponds to the technologies involved in RFID and</u> |
| 7 | <u>bar code – bar code?</u> |
| 8 | **A.** <u>Yes.</u> |
| 9 | **Q.** <u>And that's the construction that you applied when</u> |
| 10 | <u>you analyzed this limitation – the information detector</u> |
| 11 | <u>limitation of claim 1 of the '262 patent, right?</u> |
| 12 | Objection. |
| 13 | **A.** <u>That is part of it yes but I was thinking about</u> |
| 14 | <u>okay, how are they going to do this, radio frequency</u> |
| 15 | <u>detector, bar code detectors, et cetera, other sensors</u> |
| 16 | <u>possibly.</u> |

(Ex. A, Micklow Dep. (Mar. 9, 2018) at 136:2-25) (emphasis added).)

    51. Asserted claim 1 requires a "control unit configured to accept the information related to engine type from the information detector and to determine a washing program." (Ex. D, '262 patent, at claim 1.)

    52. Asserted Claim 14 requires a "control unit configured to regulate the washing unit according to washing parameters associated to a particular engine . . . relating to information provided by the information detector." (Ex. D, '262 patent, at claim 1.)

    53. In the accused Cyclean system, after the ▮▮▮▮ gathers information related to ▮▮▮▮

8   Case No. 5:16-cv-01824

**PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

1  ███████████████████████████████████████████████ (Sealed ECF No. 122-
2  6, at ¶¶ 87-93.)

3     54.    Mr. Kushnick testified ████████████████████████████
4  ████████████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████████
6  ███████████████████████████████████████████████ (Ex. B, Kushnick
7  Dep. (Mar. 6, 2018) at 52:14-19.)

8     55.    Mr. Kushnick testified that the ███████████████████
9  ████████████████████████████████████████████████████████████████████
10 █████████████████████████████ The fact that I observed it doing the
11 proper wash cycle indicates to me that ███████████████████████████████
12 (Ex. B, Kushnick Dep. (Mar. 6, 2018) at 78:8-14.)

13     56.    Mr. Kushnick confirmed that █████████ in Cyclean ███████, just
14 as in the preferred embodiment of the '262 patent. (*Id.* at 53:19-21.)

15     57.    Dr. Micklow agreed that the Cyclean system includes ████████
16 █████████████████████████████████████████████":

17     **Q.**  But you don't dispute in your report that the █████
18 ████████████████████████████████████████████████
19 █████
20 ████████████████████████████████
21 ████████████████████████████████████
22 ████████████████████████████████████████

23     **A.**  <u>That sounds reasonable, yes</u>.

24 (Ex. A, Micklow Dep. (Mar. 9, 2018) at 137:1-8) (emphasis added.)

9      Case No. 5:16-cv-01824

**PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

| | | |
|---|---|---|
| 1 | Dated: April 24, 2018 | GREENBERG TRAURIG, LLP |
| 2 | | |
| 3 | | By: /s/ *Stephen K. Shahida*_____ |
| | | Ronald J. Pabis |
| 4 | | Stephen K. Shahida |
| | | Patrick J. McCarthy |
| 5 | | Myomi T. Coad |
| 6 | | Leanna Costantini |
| | | **Attorneys for Plaintiff EcoServices, LLC** |

10     Case No. 5:16-cv-01824

**PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**

# CERTIFICATE OF SERVICE

I, Stephen K. Shahida, hereby certify that on this 24th day of April, 2018, copies of the foregoing **PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT** were served upon the following parties via CM/ECF:

Dale J. Giali
Mayer Brown LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
dgiali@mayerbrown.com

Stephen E. Baskin
Peter O. Schmidt
Mayer Brown LLP
1999 K. Street, N.W.
Washington, DC 20006
sbaskin@mayerbrown.com
pschmidt@mayerbrown.com

Gregory J. Apgar
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
gapgar@mayerbrown.com

**Attorneys for Defendant/Counter-Plaintiff Certified Aviation Services, LLC**

> */s/ Stephen K. Shahida*
> Stephen K. Shahida

11                                    Case No. 5:16-cv-01824

**PLAINTIFF'S L.R. 56.2 STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '262 PATENT**