1  Leanna Costantini (SBN 294028)
   costantinil@gtlaw.com
2  GREENBERG TRAURIG LLP
   3161 Michelson Drive Suite 1000
3  Irvine, CA  92612
   Telephone:  (949) 732-6804
4  Facsimile:  (949) 732-6501

5

6  Ronald J. Pabis (admitted *Pro Hac Vice*)
   pabisr@gtlaw.com
7  Stephen K. Shahida (admitted *Pro Hac Vice*)
   shahidas@gtlaw.com
   Patrick J. McCarthy (admitted *Pro Hac Vice*)
8  mccarthyp@gtlaw.com
   Myomi T. Coad (admitted *Pro Hac Vice*)
9  coadm@gtlaw.com
   GREENBERG TRAURIG LLP
10 2101 L Street NW, Suite 1000
   Washington, DC 20037
11 Telephone:  (202) 331-3100
   Facsimile:   (202) 331-3101

12
   Attorneys for Plaintiff
13 EcoServices, LLC

14

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| 16  ECOSERVICES, LLC, | Case No.  5:16-cv-01824-RSWL-SPx |
| 17              Plaintiff, | Assigned to Hon. Ronald Sing Wai Lew |
| 18  v. | |
| 19  CERTIFIED AVIATION SERVICES, LLC, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '860 PATENT** |
| 20              Defendant. | |
| 21 | |
| 22 | Complaint Filed:  April 22, 2016 |
| 23 | Trial Date:  June 26, 2018 |
| 24 | |

25

26

Case No. 5:16-cv-01824

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '860 PATENT

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................... 1

II.   BRIEF STATEMENT OF FACTS .................................. 2

III.  ARGUMENT AND AUTHORITIES ............................. 6

    A.    Legal Standard................................................... 6

    B.    It is Proper for Mr. Kushnick to Rely on Lufthansa Engineering Orders in His Analysis ............................................. 8

    C.    It is Proper for Mr. Kushnick to Rely on His Testing of the Lechler 652 Series Nozzles in His Analysis .................................. 10

    D.    It Is Proper for Mr. Kushnick to Support His Opinions with Lufthansa's '392 patent. ....................................... 14

    E.    There is Sufficient Evidence for the Jury to Find CAS's Continued Infringement of EcoServices' Patents Was Willful ........................... 20

    F.    The Court Has Already Rejected CAS's Argument that "Small Quantities" is Indefinite ....................................... 23

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*In re Agric. Research & Tech. Grp., Inc.*,
5     916 F.2d 528 (9th Cir. 1990) ..........................................................................7

6 *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
7     68 F. Supp. 3d 1170 (C.D. Cal. Dec. 12, 2014)...................................................7

8 *Anderson*,
9     477 U.S. 242, 255 (1986)...................................................................................8

10 *Baldwin v. Trailer Inns, Inc.*,
    266 F.3d 1104 (9th Cir. 2001) ..........................................................................8
11

12 *Bell & Howell Document Mgmt. Prod. Co. v. Altek Sys.*,
    132 F.3d 701 (Fed. Cir. 1997) ..........................................................................24
13

14 *Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).......................................................................................6, 7
15

16 *Forest Labs., Inc. v. Abbott Labs.*,
    239 F.3d 1305 (Fed. Cir. 2001) ........................................................................19

17 *Georgetown Rail Equip. Co. v. Holland, L.P.*,
18     867 F.3d 1229 (Fed. Cir. 2017) ........................................................................22

19 *Giles v. Gen. Motors Acceptance Corp.*,
    494 F.3d 865 (9th Cir. 2007) ............................................................................6
20

21 *Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016).....................................................................................22
22

23 *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
    540 F.3d 1337 (Fed. Cir. 2008) ........................................................................24

24 *Intel Corp. v. VIA Techs., Inc.*,
25     319 F.3d 1357 (Fed. Cir. 2003) ........................................................................24

26

ii           Case No. 5:16-cv-01824

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-
INFRINGEMENT AND INVALIDITY OF THE '860 PATENT**

*Legal Aid Servs. of Or. v. Legal Servs. Corp.*,
608 F.3d 1084 (9th Cir. 2010) ...................................................................7

*Markman*,
52 F.3d at 983, 34 USPQ2d at 1332–33 .............................................23, 24

*Maxwell v. Angel-Etts of Cal., Inc.*,
53 Fed. App'x 561 (Fed. Cir. 2002) .........................................................22

*Medtronic Minimed Inc. v. Animas Corp.*,
21 F. Supp. 3d 1060 (C.D. Cal. May 8, 2014).....................................6, 7

*Oakley, Inc. v. Sunglass Hut Int'l*,
316 F.3d 1331 (Fed. Cir. 2003) ...............................................................25

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000)....................................................................................7

*Roton Barrier, Inc. v. Stanley Works*,
79 F.3d 1112 (Fed. Cir. 1996) .................................................................24

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007) ....................................................................................22

*Van Asdale v. Int'l Game Tech.*,
577 F.3d 989 (9th Cir. 2009) .....................................................................7

*Wood v. Beauclair*,
692 F.3d 1041 (9th Cir. 2012) ...................................................................6

**Other Authorities**

Fed. R. Civ. P. 30(b)(6).................................................................................11

Fed. R. Civ. P. 33(d) ....................................................................................10

Fed. R. Civ. P. 56(c).......................................................................................6

## I. INTRODUCTION

Plaintiff EcoServices, LLC. ("EcoServices") hereby responds to Defendant Certified Aviation Services, LLC's ("CAS") Motion for Partial Summary Judgment of Non-Infringement and Invalidity of the '860 Patent (Sealed ECF No. 110)[1] (hereinafter the "'860 Motion"). The '860 Motion should be denied because it is based on disputed issues of fact and arguments directed to the weight that should be accorded to certain evidence. It is also improperly based on certain mischaracterizations of the record evidence including CAS's attempts to distance itself from its own interrogatory responses and the sworn deposition testimony of its corporate representatives.

For example, CAS's claim that "EcoServices has presented **no evidence** that Cyclean involves a washing liquid having the pressure, particle size, particle velocity or volumetric flow claimed in the '860 patent" ('860 Motion at 1, emphasis added) is simply not true. EcoServices has disclosed and will present sufficient evidence at trial on each of these issues including (1) the expert testimony of Mr. Steven Kushnick, (2) CAS's documentary evidence, (3) photographs and videos of an inspection of the operation of the accused system, (4) documentary evidence from Lufthansa Technik (the developer of the accused system), and (5) testing data of several nozzles in a series of nozzles that CAS's corporate representative testified are used in the accused system. These materials are more than sufficient evidence for a jury to find that CAS infringes the '860 patent.

Likewise, CAS's statement that there "is **no evidence** connecting ████████ ████████████████████████ to the accused Cyclean washes" ('860 Motion at

---

[1] Citations herein to "Sealed ECF No." cross-reference CAS's re-filed April 20, 2018 documents subject to this Court's approval to file under seal.

12, emphasis added) is also inaccurate.  Indeed, CAS produced the ████████
████ relied on by Mr. Kushnick and those documents were specifically identified
by CAS in its sworn interrogatory responses as describing the Accused Cyclean
system.   Similarly, CAS's statement that there is "*no evidence* of the nozzles used
during the Cyclean washes" ('860 Motion at 9, emphasis added) is belied by the
sworn deposition testimony of its own corporate representative designated to
testify on the equipment used in the Accused Cyclean systems.

CAS's motion is not, therefore, based on undisputed facts, but on the weight
of the evidence and CAS's assertion that certain evidence is somehow not reliable.
But those factual disputes and decisions about the weight that should be accorded
certain evidence are issues for CAS to raise in cross-examination and for the jury
to decide.  It is up to the fact-finder to weigh that evidence, assess the credibility of
the witnesses presenting it and make a determination on those disputed facts.  Such
complaints are not an issue for summary judgment, and this case should proceed to
trial.

## II.    BRIEF STATEMENT OF FACTS

Plaintiff EcoServices is a Delaware limited liability company that provides
engine wash services worldwide.  SUF ¶ 2[2].  EcoServices provides an on-wing
aircraft engine washing system under the brand and registered trademark
EcoPower® Engine Wash System ("EcoPower").  *Id*.  EcoServices is the owner of
all rights to U.S. Pat. Nos. 5,868,860 (the "'860 Patent") which issued on February
9, 1999.  SUF ¶ 12.

---

[2] Citations herein to "SUF" cross-reference CAS's Statement of Uncontroverted
Facts and Conclusions of Law in Support of its Motion for Summary Judgment on
the '860 Patent, re-filed April 20, 2018, as Sealed ECF No. 128-1, subject to this
Court's approval to file under seal.

Defendant CAS is a Delaware limited liability company.  SUF ¶ 3.  In 2010, more than a decade after the '860 Patent issued, CAS entered the jet engine washing business.  Prior to that time, ███████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████  After determining that the approximately ████████ ███████████████████████ (SDF ¶¶ 4-5; Ex. A, Lee Dep. 64:25-65:8), CAS entered into discussions with Lufthansa Technik, AG ("Lufthansa"), a German company that provides engine wash services that compete directly with EcoServices.  *Id.* at 66:1-14.  █████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████  SDF ¶ 7; Sealed ECF No. 128-4; Sealed ECF No. 128-5.  Since that time, CAS has been providing engine wash services in the United States using Lufthansa's Cyclean® Engine Wash system ("Cyclean"). SUF ¶¶ 3 and 5.

CAS did not independently develop the Accused Cyclean system.  Rather, Cyclean was designed and developed by Lufthansa.  SUF ¶ 4.███████████████ ██████████████████████████████.  SUF ¶ 6.

Lufthansa and CAS hold Cyclean out in their joint marketing materials ██ ███████████████████████████ as shown below.



SDF ¶ 17.

Lufthansa also describes Cyclean as its "patented technology for washing engines quickly and easily," https://www.lufthansa-technik.com/cyclean. SDF ¶ 18.

Lufthansa is the assignee of U.S. Patent No. 8,216,392, which describes Lufthansa's "Device and Method for Cleaning the Core of a Jet Power Plant" (the "'392 Patent"). SDF ¶ 22; ECF No. 128-25. At the time Lufthansa filed for the '392 Patent, it knew of EcoServices' '860 Patent. SDF ¶ 23. In fact, the '392 Patent cites to the '860 Patent and describes a system that uses the very same wash parameters set forth in Claim 1 of the '860 Patent. For example, the chart below is a comparison of those parameters:

| The '860 Patent, Claim 1 | The '392 Patent |
|---|---|
| A method of washing turbine compressors | "Device and Method for Cleaning the Core Engine of a Jet Power Plant" |
| running the turbine compressor and spraying the finely divided liquid quantities through at least one nozzle | "According to the invention, it is therefore provided that these nozzles. . . during a slow rotation of the power plant can co-rotate with the fan. . ." (Col. 2:13-19) |
| at an over pressure within the range of 50-80 bars | "The pressure under which the cleaning medium is discharged at the nozzle opening preferably lies within the range of 20 to 100 bar. . . more preferably 50 to 70 bar." (Col. 5:44-47) |
| at a liquid particle size of in the range of 250-120 μm | "The liquid cleaning medium at the nozzle opening is preferably broken down into droplets, of which the average size is 50-500 μm." (Col. 5:48-51) |
| and with a total volumetric flow through the nozzle or nozzles within the range of 0.5-60 l/min. | "The throughput of the liquid cleaning medium preferably lies between 10 and 200 l/min. . . especially preferably between 20 and 60 l/min." (Col. 5:52-55) |

On ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

SDF ¶ 35; Sealed ECF No. 128-10.  ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████  and

providing additional detail on the '860 Patent.  (*Id.*)  Daniel Scanlon was one of the co-founders of CAS along with his son, Michael Scanlon (SDF ¶ 38; Ex. F, Scanlon Dep.  11:24-12:4) who is the current vice-president of operations at CAS,

1  LLC.  *Id.* at 32:14-16.  ████████████████████████████████  (*id.*

2  at 98:7-23) and  ██████████████████████████.  SDF ¶¶ 40-41.

3      EcoServices heard nothing from CAS, and CAS continued to operate

4  Lufthansa's infringing Cyclean system as the exclusive provider of that system in

5  the United States without authorization from EcoServices.  Thus, on April 22,

6  2016, EcoServices filed its complaint to seek compensation for CAS's

7  infringement of the '860 Patent.

8  **III.   ARGUMENT AND AUTHORITIES**

9      **A.   LEGAL STANDARD**

10      Summary judgment is appropriate only if "the pleadings, depositions,

11  answers to interrogatories and admissions on file, together with the affidavits, if

12  any, show that there is no genuine issue as to any material fact and that the moving

13  party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The

14  moving party bears the heavy burden of demonstrating the absence of even one

15  genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

16  (1986); *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007)

17  ("A grant of summary judgment is appropriate only where the moving party has

18  demonstrated that there is no genuine issue of material fact."); *Medtronic Minimed*

19  *Inc. v. Animas Corp.*, 21 F. Supp. 3d 1060, 1073-74 (C.D. Cal. May 8, 2014)

20  (denying defendant's motion for partial summary judgment on indefiniteness in its

21  entirety where defendant failed to meet its burden to show by clear and convincing

22  evidence that the challenged limitations are indefinite).  The moving party must

23  demonstrate that the facts underlying all the relevant legal questions raised by the

24  pleadings or otherwise are not in dispute, or else summary judgment will be

25  denied.  *Wood v. Beauclair*, 692 F.3d 1041, 1045 (9th Cir. 2012) ("Summary

26  judgment is to be granted only if the pleadings and supporting documents, viewed

in the light most favorable to the non-moving party, show that there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law.") (quoting *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d 1084, 1093 (9th Cir. 2010)).  The Court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion.  *In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d 528, 534 (9th Cir. 1990) (stating that all reasonable inferences from the evidence are drawn in favor of the non-moving party) (citing *Celotex*, 477 U.S. at 255).  In addition, all reasonable doubts about the facts must be resolved in favor of the non-movant.

Moreover, if reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1005 (9th Cir. 2009) (reversing district court's summary judgment in favor of defendant where Ninth Circuit concluded that plaintiff raised a genuine issue of material fact regarding the cause of their terminations and that summary judgment should not have been granted); *Medtronic*, 21 F. Supp. 3d at 1070 (denying defendant's motion for partial summary judgment on indefiniteness in its entirety where the Court found that genuine issues of material fact existed, and noting that "[s]uch is not enough to grant summary judgment."); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 68 F. Supp. 3d 1170, 1177 (C.D. Cal. Dec. 12, 2014) (denying defendants' motion for summary judgment because dispute regarding a material fact as to the degree of design differences in copyright infringement claim precluded summary judgment).

7                                Case No. 5:16-cv-01824

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-
INFRINGEMENT AND INVALIDITY OF THE '860 PATENT

Finally, the Court has the discretion to deny even a well-supported motion for summary judgment, if it believes the case would benefit from a full hearing." *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1118 (9th Cir. 2001) (reversing district court's grant of summary judgment for defendant on breach of contract claim because "a close question is presented here" and concluding it "necessary for the district court to permit a hearing and to make factual determinations resolving the contract breach issue"); *see also Anderson*, 477 U.S. 242, 255 (1986) (recognizing that a trial court has discretion to "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial").

Applying these governing legal standards to the facts of this case compels the denial of CAS's Motion.

## B. IT IS PROPER FOR MR. KUSHNICK TO RELY ON LUFTHANSA ENGINEERING ORDERS IN HIS ANALYSIS

CAS's '860 Motion is based, in part, on the fact that Mr. Kushnick's infringement positions rely on certain ███████████ created by Lufthansa. SDF ¶44. The ███████████s that are the subject of the '860 Motion are identified in Paragraph 61 of Mr. Kushnick's report. *Id.* Specifically, Mr. Kushnick relies on the following documents that were produced by CAS in this litigation: CAS002436, CAS002449, CAS002516, CAS002646, CAS002660, CAS002686, CAS002691, CAS002708, CAS002747, CAS002691, CAS002708, CAS002747, and CAS00002820. SDF ¶ 45. CAS's '860 Motion incorrectly alleges that summary judgment is appropriate because there "is no evidence connecting those ten ███████████ to the accused Cyclean washes." '860 Motion at 12. CAS brazenly asserts that these documents ███████████ ███████████ ('860 Motion at 12) and "███████████

█████████████████████████████████████████.” *Id.* Lufthansa of course,

is the designer and developer of the accused Cyclean system and, therefore, ████

█████████████████████████████████████████████████████████████████

████       Moreover, this argument is directly contrary to CAS's sworn

interrogatory responses. Specifically, EcoServices served an interrogatory on CAS

asking CAS to:

> Describe or show in detail the Accused System and/or
> Accused Method, including but not limited to a detailed
> description of each step of the Accused System and/or
> Accused Method, including without limitation a detailed
> identification and description of the equipment used in
> each step of the Accused System and/or Accused
> Method.

SDF ¶ 46.

On July 28, 2017, CAS responded to that interrogatory as follows:

> Subject to and without waiving the foregoing General
> and specific objections, Defendant responds as follows:
> Pursuant to Federal Rule of Civil Procedure 33(d),
> Defendant directs EcoServices to the following
> documents: CAS000001-CAS000030; CAS000100-
> CAS000116; CAS001866-CAS001899; CAS001937-
> CAS002419; CAS002421-CAS002840; CAS003084-
> CAS003114; CAS003235-CAS003265; CAS003296-
> CAS003326; CAS003393-CAS003423; CAS004359-
> CAS004400; CAS004410-CAS004442; CAS004778-
> CAS004789; CAS004885-CAS004900; CAS005588-

CAS005618; CAS006323-CAS006331; CAS006335-CAS006340; CAS006374-CAS006441; CAS006502-CAS006520; CAS006787-CAS006789; CAS006824-CAS006857; CAS006866 – CAS006869; CAS006916-CAS006918; CAS007094-CAS007096; CAS007099-CAS007104; CAS007754-CAS007801; CAS008122-CAS008149; CAS008483; CAS008492-CAS008497; CAS008525; CAS008638-CAS008711; CAS008718-CAS008719; and CAS008744-8777.

SDF ¶ 47; Ex. B, CAS's July 28, 2017 Objections and Responses to Plaintiff's Third Set of Interrogatories. Thus, rather than answer EcoServices' interrogatory, CAS opted to rely on Rule 33(d), Fed. R. Civ. P. to identify records that would provide the answer to the requested interrogatory. As shown in highlighting above, each of the ███████████ relied on by Mr. Kushnick are included in the documents that *CAS indicated* describe the Accused System or Accused Method. Having relied on those documents and cited to them in sworn interrogatory responses as describing the Accused System, CAS cannot now claim that "there is no evidence connecting" those documents to the Accused Washes. Mr. Kushnick properly relied on them to support his infringement opinions. Because CAS's summary judgment on this point is based on a false premise – that there is no evidence linking the ███████████ to the Accused System – the motion should be denied.

**C.   IT IS PROPER FOR MR. KUSHNICK TO RELY ON HIS TESTING OF THE LECHLER 652 SERIES NOZZLES IN HIS ANALYSIS**

CAS's Motion also attacks Mr. Kushnick's reliance on his testing of a series of nozzles within the ███████████ on the assertion

that "there is no credible evidence of what nozzles Cyclean uses." '860 Motion at 9. That is also not correct. Mr. Kushnick's opinions and his testing of the ███ █ nozzles was based on the sworn testimony of Mr. Brad Caban, the corporate representative of CAS designated by CAS to testify on the equipment used in the Accused System.

Specifically, on March 10, 2017, EcoServices served a deposition notice, pursuant to Rule 30(b)(6), Fed. R. Civ. P. on CAS seeking a witness to testify regarding, among other things, "Equipment used in each step of the Accused System and/or Accused Method." SDF ¶ 48, Ex. C. In response to this notice, CAS designated Mr. Caban to testify on that topic. SDF ¶ 49, Ex. D. Of course, under the Federal Rules, CAS was obligated to present a witness knowledgeable about that subject and Mr. Caban testified that he was "fully prepared" to testify as to that topic. SDF ¶ 50, Ex. E, Caban Dep. at 10:11-21; 11:2-4. Mr. Caban testified that ███████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████ SDF ¶ 51; Ex. E, Caban Dep. 133:15-134:17. The person that provided that information to Mr. Caban was ███████ (SDF ¶ 53) who ███ ███████████████████████████████████████████ (SDF ¶ 53; Ex. E, Caban Dep. 51:6-9) ██████████████████████████. *Id.* at 50:14-51:9. ██████████████████████████████████████ . SDF ¶ 54; Ex. F, Scanlon Dep. 62:3-15. It was this sworn testimony from CAS's corporate representative (providing information from a person with knowledge) that led Mr. Kushnick to test the ███████ nozzles and to base some of his opinions on that

testing.  Mr. Kushnick is entitled to, and expected to, rely on the testimony of CAS's corporate representatives, and CAS cannot now distance itself from its corporate witnesses' testimony by claiming that his information is derived from "hearsay."

CAS also criticizes Mr. Kushnick for testing three of the nozzles within the ██████████████. CAS, ████████████████████████ (SDF ¶ 55; Ex. G, CAS007070) clearly has access to knowledge regarding the equipment used in the Cyclean wash ████████████████████████████████████████████ ████████████████████████████████████. CAS cannot hide behind its failure to provide more detailed information about the Accused System when that information was readily available to it.  Nevertheless, because the ████████████████████████████████████, Mr. Kushnick tested several nozzles within that series and opined as follows:

> 17.   For the entire matrix of pressure and nozzle testing, none of the ████████████████ was devoid of particles in the 120 to 250 micron range.  In fact, the entire gamut of eighty-four pressure and nozzle and location tests, only one location of the eighty-four trials produced no particles in the 120 to 250 micron range.  (That trial was NZ7_80_5_20.)  However, that nozzle did produce droplets within the claimed range in the remaining six sample locations at 80 bar overpressure, and therefore that nozzle would still produce particle sizes within the particle size range recited in claim 1 of the '860 Patent.

SDF ¶ 56; Sealed ECF No. 128-24, Kushnick Infringement Report at ¶ 17 (Appendix A).  Mr. Kushnick also used a banding methodology to show that the testing he performed was reliable for the nozzles within the ███████ series. SDF ¶ 57.

Moreover, in addition to Mr. Caban's testimony, Mr. Kushnick compared a publically available CAD drawing of the ███████ nozzles with a photograph of the nozzle used on the Cyclean system and will testify that the photograph of the Accused System is consistent with the ███████ nozzle testified to by Mr. Caban.  That comparison is set forth below (SDF ¶ 57; Sealed ECF No. 128-, Kushnick Infringement Report at ¶ 56):

 

Mr. Kushnick's droplet size opinions are thus based on more than Mr. Caban's testimony, and based on all this analysis, Mr. Kushnick concluded as follows:

> Based on Mr. Caban's testimony, test data taken of ███████ nozzles and my analysis of that test data which I explain in Appendix A of this report, the other materials I have considered in preparing this report, and my professional experience and technical knowledge, Cyclean's use of a ███████ nozzle does

produce droplet sizes in the range of 120-250 μm and literally infringes the '860 Patent.

*Id.* Thus, there is sufficient evidence for Mr. Kushnick to conclude that the Accused Cyclean system uses the identified █████████ nozzles and, based on the testing of those nozzles, for Mr. Kushnick to conclude there is infringement of the '860 Patent.[3]

### D. IT IS PROPER FOR MR. KUSHNICK TO SUPPORT HIS OPINIONS WITH LUFTHANSA'S '392 PATENT.

Both Lufthansa and CAS heavily market the Accused Cyclean system and tout the fact that its "highly efficient engine cleaning system" is patented. SDF ¶ 19. In fact, in addition to the materials mentioned above (pp. 3-4) Lufthansa's marketing materials from 2012 describe the system as follows:

**The solution – Cyclean® by Lufthansa Technik**

Washing a jet or turboprop engine on a customized cycle leads to a cleaner and therefore more efficient compressor. To achieve the minimum downtime necessary to perform the washing process as an integral

---

[3] CAS also criticizes Mr. Kushnick's testing because the allegedly did not take into consideration "rotation and turbulence." '860 Motion at 11. Apart from the fact that this, like CAS's other criticisms, are cross-examination and not summary judgment issues, Mr. Kushnick testified that in his experience (which includes being the Design Project Engineer, Supervisor at Pratt & Whitney in the Advanced Engines Group, where he had design and project responsibility for all the fans and compressors for those engines) testing the nozzles while rotating would not result in a consequential difference. He further testified that after seeing Mr. Micklow's computation on rotation, and observing that result appeared to be incorrect, he ran the numbers and confirmed that the speed change is insignificant. Ex. H, Kushnick Dep. Tr. (Mar. 6, 2018) at 178:15-180:22.

part of aircraft operations, **_Lufthansa Technik developed completely new equipment (patented technology)_** which makes engine washing a quick and easy process.

A dual nozzle arrangement sprays water heated to 70 ˚C (160˚ F) **_with up to 100 bar (1,450 psi) directly into the core engine_**. Contrary to conventional washing methods, a fine and evenly distributed water mist follows the gas path. The amount of water injected is optimized for each engine type.

SDF ¶ 20; Ex. I, CAS006294 (emphasis added).

Other Lufthansa documents likewise describe Cyclean as including these "patented technical features" as follows:

**Saving time and costs**

The patented technical features of Cyclean® system enable a highly efficient engine cleaning. By injecting thinly vaporized water directly into the core engine, it is no longer necessary to disconnect sense lines prior to the wash. This obviates the need to reconnect the sense lines and to perform a post-wash run-up. In this way, Cyclean® brings substantial time and cost savings, with both operating and maintenance costs reduced. Complementing Lufthansa Technik's portfolio of engine services, the Cyclean® system provides operators with an efficient way of making the optimum use of the life cycle of their engines.

SDF ¶ 21; Ex. J, ECO_00000229 (highlighted). CAS's corporate representatives also testified at deposition that ███████████████████████████████████ █████████████████████████████. SDF ¶ 24; Ex. E, Caban Dep. 131:5-133:10.

Mr. Kushnick has opined and will testify that the '392 Patent is the patent that describes that Cyclean system. A comparison of the Cyclean system and the '392 Patent is set forth below and supports that conclusion. For instance, Figures 1 and 2 from '392 Patent and CAS001865 at 00:43 (ECF No. 131) show the similarities between the '392 Patent and Cyclean:

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '860 PATENT

1
2
3
4
5
6
7
8
9
10



Fig. 1



Fig. 2

11
12
13
14
15
16
17
18
19



20

21 SDF ¶¶ 26-27.

22    Likewise, a comparison of the features of the Accused Cyclean system and

23 the '392 Patent support the fact that the '392 Patent is the Lufthansa patent directed

24 to the Cyclean system.  For instance:

25

26

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-
INFRINGEMENT AND INVALIDITY OF THE '860 PATENT

| Accused Cyclean System | The '392 Patent |
|---|---|
| "Lufthansa Technik's revolutionary engine wash technology, Cyclean®, is quick and simple, proven by more than 5,000 successful washes without failure." Ex. I, CAS006294. | "Device and Method for Cleaning the Core Engine of a Jet Power Plant" |
| Ex. K, Micklow Dep. 3/9/18 at 49:23-50:2 | "According to the invention, it is therefore provided that these nozzles. . . during a slow rotation of the power plant can co-rotate with the fan. . ." (Col. 2:13-19) |
| "Contrary to conventional washing methods, a fine and evenly-distributed mist follows the gas path." "A dual nozzle arrangement sprays water heated to 70° C (160° F) with up to 100 bar (1.450 psi) directly into the core engine." Ex. I, CAS006294. | "The pressure under which the cleaning medium is discharged at the nozzle opening preferably lies within the range of 20 to 100 bar. . . more preferably 50 to 70 bar." (Col. 5:44-47) |

Thus, both CAS and Lufthansa claim that the Cyclean system is patented, and the '392 Patent is the only Lufthansa or CAS patent available at the time these statements were made that describes such a system. EcoServices has searched for Lufthansa patents available prior to Lufthansa's 2012 marketing materials describing a Lufthansa engine cleaning system and has found no others that

17                                                          Case No. 5:16-cv-01824

describe the system Lufthansa asserts in its materials. CAS has likewise identified no other patent that relates to Cyclean even though CAS markets Cyclean as a patented system. Thus, it is reasonable for Mr. Kushnick to conclude (and it will be likewise reasonable for the jury to conclude) that the '392 Patent describes the Accused Cyclean system. CAS has pointed to no other patent that the marketing materials could have been referring to despite the fact that CAS and Lufthansa have discussed the patent that covers the Cyclean system.

Moreover, the '392 Patent does not stand alone but is corroborating evidence to other measurements Mr. Kushnick performed and other documentary evidence supplied by CAS and its witnesses. For instance, Mr. Kushnick also calculated the velocity of the liquid delivered in the Cyclean system by reference to CAS's produced documentary evidence as described below:

> I superimposed points showing actual Cyclean wash coordinates for various engines, calculated from CAS002436, CAS002449, CAS002516, CAS002646, CAS002660, CAS002686, CAS002691, CAS002708, CAS002747, CAS2820. As an example, CAS002691 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is within the range of flow claimed in the '860 patent, and ▮▮▮▮▮▮ is within the range of pressure claimed in the '860 patent.

SDF ¶ 59; Sealed ECF No. 128-24, Kushnick Infringement Report at ¶ 61.

In light of the above, *Forest Labs., Inc. v. Abbott Labs*., 239 F.3d 1305 (Fed. Cir. 2001) does not support summary judgment here.  *Forest Labs* was an appeal of a motion for judgment as a matter of law, and, as such, the evidence at issue was already admitted and part of the trial record.  The Federal Circuit's decision turned on the weight but *not* admissibility of the evidence.

More importantly, unlike this case, there was no additional evidence in *Forest Labs* further supporting the argument that the specific claim limitation was met other than by a patent covering the allegedly infringing limitation.  Mr. Kushnick's reliance on the '392 Patent is not in isolation.  He does start the relevant portion of his analysis with the fact that the '392 Patent discloses "[t]he pressure under which the cleaning medium is discharged at the nozzle opening preferably lies within the range of 20 to 100 bar, more preferably 30 to 80 bar, more preferably 50 to 70 bar."  Sealed ECF No. 128-24, Kushnick Infringement Report at 20.  But as he testified during his deposition, Mr. Kushnick additionally relied upon ███████ produced by CAS, a site inspection where he personally observed the operation of Cyclean, as well as additional testing and calculations.  SDF ¶ 60; Ex. H, Kushnick Dep. Tr. (Mar. 6, 2018) at 86:20-87:4.  Mr. Kushnick further analyzed the data, and using standard mathematical equations, he plotted the results of his calculations that further support his conclusions.  SDF ¶ 61; Sealed ECF No. 128-24, Kushnick Infringement Report at 23-27.  The '392 Patent corroborates Mr. Kushnick's opinions.[4]

---

[4] The Court should also reject CAS's argument that it is the claims of the '392 patent and not the disclosures that are relevant.  Lufthansa could not have claimed the water pressure and droplet size claimed in the '860 Patent because the '860 patent was known prior art to Lufthansa.  Rather, the '392 Patent describes a system (Cyclean) that uses the same exact ranges as the '860 and then claims a

**E.    THERE IS SUFFICIENT EVIDENCE FOR THE JURY TO FIND CAS'S CONTINUED INFRINGEMENT OF ECOSERVICES' PATENTS WAS WILLFUL**

The '860 Patent issued on February 9, 1999 and EcoServices began performing its EcoPower Washes in ███████████. SDF ¶¶ 62-63. At that time, ████████████████████████████████████████████████████████ ██████████████████ On March 12, 2008, Lufthansa filed an application for a patent on its own engine cleaning system, the disclosure of which mirrors the Accused Cyclean System and discloses many of the same parameters claimed in the '860 Patent. SDF ¶ 64. Thus, it is undisputed that at the time it filed for its own patent, Lufthansa knew of EcoServices' '860 Patent and the disclosures contained in that patent. *See* SDF ¶ 65; ECF No. 128-25, '392 Patent.

In ████, CAS entered the jet engine washing business. SDF ¶ 66. Prior to that time, ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████ SDF ¶ 5. After determining that the approximately ████████████████████████████████████ (SDF ¶ 6; Ex. A, Lee Dep. 64:25-65:8), ████████████████. *Id.* at 66:1-14. Then, in ███████████ ████████████████████████████████████████████████████████ ██████████████ SDF ¶ 7; Sealed ECF No. 128-4; Sealed ECF No. 128-5.

███████████████████████████████████████
████████████████████████████████████████████████████████

device for delivering the finely-divided liquid using a rotating joint between the nozzle and the line rather than a stationary nozzle. But the addition of the rotating feature does not support a finding of non-infringement where the limitations of the '860 are still present.



SDF ¶ 35;  Sealed ECF No. 128-10 ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮  SDF ¶ 36. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. SDF ¶ 37; Sealed ECF
No. 128-10.  Daniel Scanlon was one of the co-founders of CAS along with his
son, Michael Scanlon (Ex. F, Scanlon Dep. at 11:24-12:4) who is the current vice-
president of operations at CAS, LLC.  SDF ¶ 39; *id.* at 32:14-16. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮  SDF ¶ 41.

Thus, contrary to CAS's '860 Motion, it is undisputed that ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  It
is also undisputed that the designer and developer of the Accused Cyclean system
had notice of the '860 Patent and copied some of the parameters of the '860
Asserted Claims into its patent application.  Thus, CAS had actual knowledge of
the '860 Patent by virtue of the ▮▮▮▮▮  and also had knowledge of the '860
Patent by virtue of its agency relationship with Lufthansa as the exclusive U.S.
provider of Cyclean washes in the United States.

CAS, of course, denies knowledge of the '860 Patent prior to EcoServices'
filing of this lawsuit, and bases that argument on the assertion ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  '860 Motion at 14.
That argument fails. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. SDF ¶ 38.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮  SUF ¶¶ 31-32.  Michael

1  Scanlon, one of the co-founders of CAS, Inc., remains as the current Vice-

2  President of Operations at CAS, LLC. ██████████████████████████████

3  ████████████████████████████████████ SDF ¶ 12; Ex. F, Michael Scanlon

4  Dep. 25:14-25; 26:19-27:3.

5      Thus, there is a substantial relationship between ████████████████████

6  ██████████████████████████████████ and CAS should not be allowed

7  here to disclaim knowledge of the '860 Patent because ██████████████████

8  ██████████████████████████████████████████████████████████████████.

9  There is a sufficient relationship between ██████████████████ for the jury to

10  find that CAS, LLC had notice of the '860 Patent.

11      Willfulness is a question of fact for the jury to decide (*Georgetown Rail*

12  *Equip. Co. v. Holland, L.P.* 867 F.3d 1229, 1244 (Fed. Cir. 2017)) and is present if

13  the infringer "acts '*knowing* or *having reason to know* of facts which would lead a

14  reasonable man to realize' his actions are unreasonably risky." *Halo Elecs., Inc. v.*

15  *Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016) (quoting *Safeco Ins. Co. of Am. v.*

16  *Burr*, 551 U.S. 47, 69 (2007) (emphasis in original)). The jury can reasonable find

17  that here, where Defendant simply buries its head in the sand and does nothing to

18  determine whether or not its activities are infringing, and instead merely continues

19  its infringement in the face of knowledge of the patent, its infringement was

20  willful. *See, e.g.*, *Maxwell v. Angel-Etts of Cal., Inc.*, 53 Fed. App'x 561, 565-66

21  (Fed. Cir. 2002) (jury's finding that defendant continued to sell infringing shoes

22  after receiving notice is legally sufficient to support the jury's determination of

23  willfulness.")

24      Moreover, CAS's willful infringement continues. CAS does not dispute that

25  it has had knowledge of the '860 Patent since at least the filing of the complaint,

26  and it has continued to willfully infringe the '860 Patent since that time. SDF ¶ 67.

CAS's '860 Motion is not limited to the time period before the filing of the complaint and has set forth no basis for summary judgment in its favor for the period following service of the complaint. CAS has produced no evidence that it changed its method of operating in view of EcoServices' infringement contentions here or that it with a good faith belief that it was not infringing. SDF ¶ 68.CAS's motion should be denied for that additional reason.

## F. THE COURT HAS ALREADY REJECTED CAS'S ARGUMENT THAT "SMALL QUANTITIES" IS INDEFINITE

CAS's invalidity argument is basically a request for rehearing on one of the claim construction positions it lost earlier in these proceedings. Specifically, Section IV of the Motion is a rehash of the "small quantities" indefiniteness argument it made during *Markman* that was rejected by the Court. In fact, the Court found that:

> In the description of the invention, the patentee defines 'small quantities' as 'finely-divided liquid' that 'is sprayed onto and through the object in quantities corresponding to 0.5-60 l/min.

SDF ¶ 69; ECF No. 80 at 9, citing '860 Patent, Col. 2, lines 5-6.

The only difference between the record then and today is some limited testimony of the named inventor outside of the context of the specification. Indeed, Mr. Asplund testified that it had been "a long time" since he actually studied the '860 Patent (SDF ¶ 71(Ex. L, Asplund Dep. 129:17-130:13)) and even if he thought he could remember its disclosure, opining about the disclosure without a review cannot render an opinion about the disclosure reliable. This testimony is insufficient for summary judgment here for at least two reasons. The first reason is procedural. This Court set a deadline for the completion of claim

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

construction discovery of March 10, 2017.  SDF ¶ 72.  CAS did not request the depositions of the named inventors before that time, likely because such testimony is afforded little to no weight in claim construction. SDF ¶ 73.  If CAS wanted to rely on inventor testimony to support its claim construction arguments in this case it had an obligation to depose the inventor and submit that testimony according to the Court's schedule.  It did not do so and its attempts to do it now in the context of summary judgment are improper.

Second, it is well-established that "[t]he testimony of an inventor . . . concerning claim construction is [] entitled to little or no consideration."  *Bell & Howell Document Mgmt. Prod. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995); *see also*, *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1126 (Fed. Cir. 1996) ("an inventor's after-the-fact testimony is of little weight compared to the clear import of the patent disclosure itself").  In *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008)*, for example, the Court rejected inventor testimony relating to the lead inventor's after-the-fact statement on how a term should be construed in light of his subjective intent, even though in that instance, the inventor was attempting to narrow, not broaden the claims.  *Id.* at 1346.  That is particularly true when the inventor has not studied the patent's disclosure.

A party asserting that a claim is indefinite must prove indefiniteness by clear and convincing evidence. *Intel Corp. v. VIA Techs., Inc.,* 319 F.3d 1357, 1366 (Fed. Cir. 2003).  CAS did not meet that burden during claim construction and this additional "evidence" is not clear and convincing evidence to the contrary and cannot change this Court's prior ruling.

Here, as EcoServices argued during claim construction and the Court agreed, the claim itself defines "small quantities of finely-divided liquid" as "an overpressure within the range of 50-80 bars and at a liquid particle size in the range of 250-120 μm, and with a total volumetric flow through the nozzle or nozzles within the range of 0.5-60 l/min., and with a liquid particle velocity of 100-126 m/sec." SDF ¶ 74. This case is, therefore, like the case of *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1341 (Fed. Cir. 2003) in which the Federal Circuit held that Oakley was reasonably likely to withstand Sunglass Hut's indefiniteness challenge because the claim defined the structural attributes, such as the thickness of a dielectric layer that produces the "differential effect." Like in *Oakley*, the claim here itself recites ranges of the liquid particle size, total volumetric flow, velocity, and overpressure, which together defines the "small quantities of finely-divided liquid." The specification further provides that "[b]ecause the liquid particles are given a size and velocity which together overcome the centrifugal effect, all accessible surfaces of the object will be cleaned effectively and efficiently." SDF ¶ 70. By merely reading the claim itself, a person of ordinary skill would understand the scope of this claim and would know with reasonable certainty when the limitations of this claim are met. The claims are met when the accused particles fall within the claimed pressure, velocity, and size ranges and are, therefore, "small quantities of finely-divided liquid." Thus, this term is not indefinite, and CAS's proposal should be rejected.[5]

---

[5] The cited testimony of Mr. Kushnick ('860 Motion, at 19) cannot support CAS's Motion because it presupposes the incorrect conclusion that the court has already rejected that term refers to the total amount of water used during a wash.

Dated:  April 24, 2018

GREENBERG TRAURIG, LLP

By:  */s/ Stephen K. Shahida*
Ronald J. Pabis
Stephen K. Shahida
Patrick J. McCarthy
Myomi T. Coad
Leanna Costantini
**Attorneys for Plaintiff EcoServices, LLC**

## CERTIFICATE OF SERVICE

I, Stephen K. Shahida, hereby certify that on this 24th day of April, 2018, copies of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '860 PATENT** were served upon the following parties via CM/ECF:

Dale J. Giali
Mayer Brown LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
dgiali@mayerbrown.com

Stephen E. Baskin
Peter O. Schmidt
Mayer Brown LLP
1999 K. Street, N.W.
Washington, DC 20006
sbaskin@mayerbrown.com
pschmidt@mayerbrown.com

Gregory J. Apgar
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
gapgar@mayerbrown.com

**Attorneys for Defendant/Counter-Plaintiff Certified Aviation Services, LLC**

_/s/ Stephen K. Shahida_
Stephen K. Shahida