O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ECOSERVICES, LLC,<br><br>          Plaintiff,<br><br>    v.<br><br>CERTIFIED AVIATION<br>SERVICES, LLC,<br><br>          Defendant. | CV 16-01824-RSWL-SPx<br><br>**ORDER re: Defendant's<br>Motion to Exclude Expert<br>Opinion of Steven<br>Kushnick** [125]**;<br>Defendant's Motion for<br>Partial Summary Judgment<br>as to '262 Patent** [126]**;<br>Defendant's Motion for<br>Partial Summary Judgment<br>as to '860 Patent** [128] |

Currently before the Court are Defendant Certified
Aviation Services, LLC's ("Defendant") Motion for
Partial Summary Judgment as to Non-Infringement and
Invalidity of the '860 Patent ("'860 Motion") [128];
Motion for Partial Summary Judgment as to Non-
Infringement of the '262 Patent ("'262 Motion") [126];
and Motion to Exclude Expert Opinion of Steven Kushnick
on Infringement of the '860 Patent ("Kushnick Motion")
[125]. Having reviewed all papers submitted pertaining

1

to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS**: the Court **GRANTS in part and DENIES in part** the Kushnick Motion, **GRANTS in part and DENIES in part** the '860 Motion and **DENIES** the '262 Motion.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiff EcoServices, LLC ("Plaintiff") is a Delaware limited liability company that provides engine wash services worldwide. Def.'s Statement of Uncontroverted Facts in Supp. of Mot. for Partial Summ. J. as to '860 Patent ("'860 SUF") ¶ 2, ECF No. 128-1. Plaintiff provides on-wing aircraft engine washing using its EcoPower Engine Wash System ("EcoPower"). Id. Plaintiff asserts two patents in connection with EcoPower.[2] The first is U.S. Patent No. 5,868,860 (the "'860 Patent"), entitled "Method of Washing Objects, Such as Turbine Compressors," which the United States Patent and Trademark Office ("PTO") issued on February

---

[1] The Court makes the following factual findings. See C.D. Cal. R. 56-3 ("[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist."). But see Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986) ("There is no requirement that the trial judge make findings of fact [when granting summary judgment because] the threshold inquiry [is whether] there are any genuine factual issues."); Taybron v. City & Cty. of S.F., 341 F.3d 957, 959 n.2 (9th Cir. 2003).

[2] In its Complaint, Plaintiff asserted a third patent, U.S. Patent No. 8,197,609, which focused on collection of water used in the engine wash process. Plaintiff no longer alleges infringement of this patent. Def.'s Statement of Uncontroverted Facts in Supp. of Mot. for Partial Summ. J. as to '262 Patent ("'262 SUF") ¶ 29, ECF No. 126-1.

9, 1999.  Id. ¶¶ 11-12.  The '860 Patent lists Peter

Asplund as its inventor.  Id. ¶ 13.

The '860 Patent includes two claims, both of which

Plaintiff claims Defendant infringed.  Claim 1 is

directed to a method of washing turbine compressors

> wherein small quantities of finely-divided liquid are sprayed onto and through the turbine compressors, characterized by running the turbine compressors and spraying the finely-divided liquid quantities through at least one nozzle towards and through the turbine compressor at an overpressure within the range of 50-80 bars and at a liquid particle size in the range of 250-120 microns, and with a total volumetric flow through the nozzle or nozzles within the range of 0.5-60 l/min., and with a liquid particle velocity of 100-126 m/sec.

Id. ¶ 16.  Claim 2 is a dependent claim, which recites

the "method according to claim 1, characterized by

using a total volumetric liquid flow within the range

of 2-60 l/min."  Id. ¶ 17.  The '860 Patent expired on

May 31, 2016.  Def.'s Reply in Supp. of Mot. for

Partial Summ. J. as to '860 Patent ("'860 Reply") 23:5,

ECF No. 165.

The second patent at issue is U.S. Patent No.

9,162,262 (the "'262 Patent"), entitled "Automated

Detection and Control System and Method for High

Pressure Water Wash Application and Collection Applied

to Aero Compressor Washing," which the PTO issued on

October 20, 2015.  '262 SUF ¶¶ 11-12.  The '262 Patent

lists Per G. Alvestig and Sebastian Nordlund as its

inventors.  Id. ¶ 13.  Plaintiff asserts that Defendant

infringed Claims 1, 9, and 14 of the '262 Patent.

3

Claim 1 states,

> A system for washing turbine engines comprising: a washing unit for providing a washing liquid to the turbine engines; an information detector configured to gather information related to engine type; and a control unit configured to accept the information related to engine type from the information detector and to determine a washing program to be used as a function of the information relating to engine type from a set of preprogrammed washing programs, and further configured to regulate the washing unit according to washing parameters associated with the washing program used.

Decl. of Gregory Apgar in Supp. of Def.'s Mot. for Partial Summ. J. as to '262 Patent ("Apgar '262 Decl."), Ex. 1 ("'262 Patent") at 8:36-47, ECF No. 126-3. Claim 9 states, "The system of claim 1 wherein the information provided by the information detector is used by the control unit to regulate a washing time." Id. at 9:11-13. Claim 14 states,

> A system for washing turbine engines comprising: a washing unit for providing a washing liquid to the turbine engines; an information detector for providing information identifying at least one of washing unit and engine type; and a control unit configured to regulate the washing unit according to washing parameters associated to a particular engine based upon preprogrammed control data relating to information provided by the information detector, wherein the preprogrammed control data comprises a washing program from a set of available washing programs.

Id. at 10:14-26.

Defendant is a Delaware limited liability company that provides engine wash services in the United States. '860 SUF ¶ 3. Prior to 2010, representatives for Defendant met with Pratt and Whitney, one of Plaintiff's parent companies, regarding the possible

4

purchase of EcoPower equipment.  Pl.'s Statement of
Facts in Supp. of Opp'n to Mot. for Partial Summ. J. as
to '860 Patent ¶ 5, ECF No. 134-1.  The parties did not
reach an agreement regarding purchase of the EcoPower
system.  Id. ¶ 6.  Defendant then entered into
discussions with non-party Lufthansa Technik AG
("Lufthansa") for use of the Cyclean Engine Wash
("Cyclean").  Id.  Lufthansa designed and manufactured
Cyclean.  '860 SUF ¶ 4.  Defendant provides on-wing
aircraft engine washing using Cyclean.  Id. ¶ 3.
Defendant is the exclusive North American service
provider for Lufthansa's engine washing services using
Cyclean.  Id. ¶ 5. ███████████████████████
██████████████.[3]  Id. ¶ 6.
        ████████████████████████████████
████████████████████████████████████
████████████████████████████████.  Id.
¶ 41.  ██████████████████████████████
██████████████████████████████████████
██████████████.  Id. ¶ 42.  █████████████
████████████████████████████████████
████████████████████████████████.  '262
SUF ¶ 37.  ████████████████████████████
████████████████████████████████████
████████████████████████████████████

    [3] In accordance with the Court's Orders regarding the
parties' requests to seal certain confidential information, the
Court has redacted all references to such sealed information in
this Order.

[REDACTED]. <u>Id.</u> ¶ 38. [REDACTED]

[REDACTED]. Pl.'s Response to Def.'s '262 SUF ¶ 38, ECF No. 133.

[REDACTED]. '262 SUF ¶ 34. During a Cyclean wash, the spray nozzles rotate with the outer fans of the turbine engine. '860 SUF ¶ 51.

On September 18, 2013 and December 5, 2013, Plaintiff sent letters to [REDACTED],[4] who stopped being involved with Defendant after 2011. <u>Id.</u> ¶¶ 29, 34. The letters discussed potential licensing of a number of Plaintiff's patents, including the '860 Patent.[5] Decl. of Gregory Apgar in Supp. of Def.'s Mot. for Partial Summ. J. as to '860 Patent ("Apgar '860 Decl."), Ex. 7, ECF No. 128-10. The parties dispute whether any of Defendant's employees received or saw these letters

---

[4] Certified Aviation Services, Inc. sold all of its assets to Defendant in March 2005. <u>Id.</u> ¶ 31. After the asset transition, Certified Aviation Services, Inc. remained in existence as a shell company with no employees for the sole purpose of receiving money for the assets and paying its debt. <u>Id.</u> ¶ 32.

[5] The '262 Patent had not yet issued at the time Plaintiff sent these letters.

prior to the filing of this Action.

**B.  Procedural Background**

Plaintiff filed its Complaint [1] against Defendant on April 22, 2016 in the Southern District of Florida alleging infringement of the '262 and '860 Patents (the "Asserted Patents").  Defendant filed its Answer and Counterclaim on June 20, 2016 seeking a declaration of non-infringement of the Asserted Patents as well as a declaration of invalidity of the Asserted Patents.

Defendant filed a Motion to Transfer Venue [25] to this Court on July 22, 2016, which was granted on August 22, 2016 [29].

This Court held a <u>Markman</u> hearing on May 9, 2017 and issued its Order re Claim Construction of Disputed Terms [80] on May 18, 2017.

Defendant filed the Kushnick Motion on March 30, 2018 and its other two Motions on March 31, 2018. Plaintiff timely opposed, and Defendant timely replied.

## II. DISCUSSION

**A.  Legal Standard**

Federal Rule of Civil Procedure 56(a) states that a "court shall grant summary judgment" when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine" issue exists if the evidence is such that a reasonable fact-finder could return a

1  verdict for the nonmovant.  _Anderson_, 477 U.S. at 248.

2  The evidence, and any inferences based on underlying

3  facts, must be viewed in the light most favorable to

4  the nonmovant.  _Twentieth Century-Fox Film Corp. v._

5  _MCA, Inc._, 715 F.2d 1327, 1328-29 (9th Cir. 1983).  In

6  ruling on a motion for summary judgment, the court's

7  function is not to weigh the evidence, but only to

8  determine if a genuine issue of material fact exists.

9  _Anderson_, 477 U.S. at 255.

10  Where the nonmovant bears the burden of proof at

11  trial, the movant need only prove that there is no

12  evidence to support the nonmovant's case.  _In re Oracle_

13  _Corp. Secs. Litig._, 627 F.3d 376, 387 (9th Cir. 2010).

14  If the movant satisfies this burden, the burden then

15  shifts to the nonmovant to produce admissible evidence

16  showing a triable issue of fact.  _Id._; _Nissan Fire &_

17  _Marine Ins. Co. v. Fritz Cos._, 210 F.3d 1099, 1102-03

18  (9th Cir. 2000); _see also_ _Cleveland v. Policy Mgmt._

19  _Sys. Corp._, 526 U.S. 795, 805-06 (1999) (quoting

20  _Celotex Corp. v. Catrett_, 477 U.S. 317, 322 (1986)).

21  **B.  Discussion**

22  1.  _Non-Infringement of the '262 Patent_

23  Courts employ a two-step analysis to determine

24  whether an accused product literally infringes a

25  patent's claims.  _Telemac Cellular Corp. v. Topp_

26  _Telecom, Inc._, 247 F.3d 1316, 1330 (Fed. Cir. 2001).

27  First, the patent's claims must be "construed to

28  determine their scope."  _Id._  "The second step requires

a comparison of the properly construed claim to the accused device." Power Mosfet Techs., L.L.C. v. Siemens AG, 378 F.3d 1396, 1406 (Fed. Cir. 2004). "Literal infringement exists when every limitation recited in the claim is found in the accused device." Akzo Nobel Coatings, Inc. v. Dow Chem. Co., 811 F.3d 1334, 1341 (Fed. Cir. 2016). "To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." TechSearch L.L.C. v. Intel Corp., 286 F.3d 1360, 1371 (Fed. Cir. 2002) (citation omitted). "Thus, the party opposing the motion for summary judgment of noninfringment [sic] must point to an evidentiary conflict created on the record, at least by a counter-statement of a fact set forth in detail in an affidavit by a knowledgeable affiant." Id. at 1372.

Defendant's '262 Motion boils down to two issues: (1) whether the keypad contained in the Cyclean system qualifies as the claimed "information detector" in the '262 Patent; and (2) whether the Cyclean system contains a "control unit" capable of determining a wash program.

     a.   *Information Detector*

As noted, the '262 Patent claims a system for washing turbine engines that includes an "information detector" that is configured to "gather information

related to engine type" in Claim 1 and "provid[e]
information identifying at least one of washing unit
and engine type" in Claim 14.  '262 Patent 8:39-40,
10:17-18.  In this Court's Claim Construction Order,
the Court construed the above terms according to their
plain and ordinary meaning.  "[T]he ordinary and
customary meaning of a claim term is the meaning that
the term would have to a person of ordinary skill in
the art in question at the time of the invention, i.e.,
as of the effective filing date of the patent
application."  Phillips v. AWH Corp., 415 F.3d 1303,
1313 (Fed. Cir. 2005).  Defendant, after applying the
plain and ordinary meaning of the claimed "information
detector," argues that there is "no credible evidence
from which a reasonable jury could conclude that
Cyclean's keypad can be the claimed information
detector."  Def.'s Mot. for Partial Summ. J. as to '262
Patent 9:19-20, ECF No. 126.

While Defendant dismisses the opinion of
Plaintiff's expert, Steven Kushnick, as conclusory and
inconsistent with the other evidence, Mr. Kushnick's
opinion and deposition testimony, when considered with
the other evidence, raise a genuine issue of material
fact as to whether the Cyclean keypad can be considered
an information detector.  As Mr. Kushnick testified,
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████.  See Apgar '262 Decl., Ex. 3

("Kushnick Dep.") at 47:1-4, ECF No. 126-5.
Essentially, as Plaintiff argues, ███████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

███████████████████████. According to Mr.
Kushnick, the keypad would therefore "gather
information related to engine type" and "provid[e]
information identifying at least one of washing unit
and engine type," as the claims of the '262 Patent
require.

Defendant focuses on the ████████████████████

███████████████████████████████████████████

███████████. While Defendant did not specifically argue
during claim construction that the information detector
can only be an RFID reader or bar code reader, it
essentially makes that argument now. Defendant relies
on the specification's reference to an RFID reader and
bar code reader, but the Court previously held that it
would not "import a limitation into the claims from a
preferred embodiment." Order re: Claim Construction
12:11-12, ECF No. 80. Accordingly, it will not do so
now.

While the report of Defendant's expert, Dr. Gerald
Micklow, is detailed in its explanation of how the
Cyclean's keypad cannot qualify as an information

detector, it does not override Mr. Kushnick's expert
opinion.  Instead, these differing opinions create a
genuine issue of material fact as to whether the
Cyclean's keypad can be considered an information
detector.  In re Gabapentin Patent Litig., 503 F.3d
1254, 1259 (Fed. Cir. 2007) (reversing summary judgment
and finding that competing expert reports raised issue
of fact regarding whether claim limitations were met).

     b.  *Control Unit*

Defendant argues that the Cyclean system does not
infringe the '262 Patent because it does not contain a
control unit that *determines* a washing program.
Defendant's argument centers on the fact that, as
Defendant and its expert understand, █████████████
███████████████████████████, not the Cyclean
system itself.  Mr. Kushnick, in analyzing the
potential infringement of this claim, concludes that it
is the Cyclean system that ultimately determines which
preprogrammed wash to run.  See Apgar '262 Decl., Ex. 9
("Kushnick Report") ¶ 90, ECF No. 126-11.  Mr.
Kushnick's conclusion, in conjunction with the other
evidence, creates a genuine issue of material fact.

As seen in the photograph on page forty-five of Mr.
Kushnick's Report, █████████████████████████████
█████████████████████.  Id. at 45.  ███████████
█████████████████████████████████████████
█████████████████████.  █████████████
█████████████████████████████████

1  ██████████████████████████████.  As

2  Defendant argues it, it would appear that ████████

3  ████████████████████████████████████

4  ████████████████████████████████████,

5  thus creating a two-step process ████████████

6  ████████████████████████████████████

7  ██████████████.  Such a process may very likely

8  support an argument that the Cyclean system does not

9  accept information related to engine type and then

10 *independently determine* the wash program *based* on that

11 engine type as the '262 Patent claims.  However, as Mr.

12 Kushnick opines, the determination of the wash program

13 is a one-step process: ██████████████████████

14 ████████████████████████████████████.

15 This is supported by Mr. Kushnick's deposition

16 testimony:

17     Q.   Okay. ████████████████████████

18     A.   ██████████████████████████████

19          ██████████████████████████████

20          ██████████████████████████████

21          ████████████████████████

22 Kushnick Dep. 48:5-11.  Therefore, according to Mr.

23 Kushnick, the ██████████████████████████

24 ██████████████████████████████; that

25 determination is made ahead of time with the

26 preprogramming of the Cyclean system.

27      After construing all reasonable inferences in favor

28 of Plaintiff, the nonmovant, as the Court must on

summary judgment, see Anderson, 477 U.S. at 255, a reasonable jury could find that ███████████ ██ the Cyclean system is configured to accept information related to the engine type—███████ ████████████████████████████████████ ██████████████—and determine a wash program to be used based on that engine type ██████████ ██████████████████████.[6] Because a reasonable jury could conclude as such, a genuine issue of material fact exists as to whether the Cyclean system infringes the claims of the '262 Patent. Summary judgment is inappropriate on non-infringement, and the Court **DENIES** Defendant's '262 Motion.

    2.  Kushnick Motion

    Defendant moves to exclude Mr. Kushnick's opinions relating to infringement of the '860 Patent based on three arguments: (1) Mr. Kushnick improperly assumes that U.S. Patent No. 8,216,392 (the "'392 Patent") describes the Cyclean system, (2) Mr. Kushnick improperly assumes that the Cyclean system uses a ████████████ nozzle, and (3) Mr. Kushnick's testing of the ████████████ nozzles is not representative of the Cyclean system's operation. The Court will discuss each in turn.

///

---

[6] The claimed invention must also be "configured to regulate the washing unit according to washing parameters." '262 Patent 8:45-47. However, Defendant is not disputing that the Cyclean system performs such function. '262 Reply 14:1-5.

14

### a. *Comparison to the '392 Patent*

The '860 Patent provides parameters for four separate disclosures in its two claims: pressure, particle size, volumetric flow, and particle velocity. '860 Patent 4:7-18. In discussing each of these four parameters, Mr. Kushnick cites to, and relies on, the '392 Patent. Decl. of Gregory Apgar in Supp. of Def.'s Mot. to Exclude Steven Kushnick's Expert Opinions ("Apgar Decl. for Kushnick Mot."), Ex. A ("Kushnick Report") ¶¶ 52-53, 55, 59, 61, 64, 72, ECF No. 125-2. Despite Plaintiff's argument that the '392 Patent is just corroborating evidence, Mr. Kushnick cites most frequently to the '392 Patent, id., and includes a chart comparing the numbers included in the claims of the '860 Patent to the corresponding numbers in the '392 Patent, id. ¶ 61. Neither Mr. Kushnick nor Plaintiff has provided any evidence linking the '392 Patent to the Cyclean system. In fact, Brad Caban, Defendant's corporate representative, testified that he did not discuss with ██████ the specifics of any patent. Decl. of Stephen K. Shahida in Supp. of Pl.'s Opp'n to Mot. to Exclude Steven Kushnick's Expert Opinion, Ex. 8 ("Caban Dep.") at 133:11-14, ECF No. 130-8. Instead, Mr. Kushnick simply assumes that the '392 Patent "teaches the operation of the Cyclean system." Kushnick Report ¶ 52.

In relying so heavily on the '392 Patent, Mr. Kushnick misses the focus of the infringement analysis

15

he is trying to perform. "[L]iteral infringement is determined by construing the claims [of the asserted patent] and comparing them to the accused device . . . ." Tate Access Floors v. Interface Architectural Res., 279 F.3d 1357, 1366 (Fed. Cir. 2002) (citation omitted). Instead of comparing the claims of the '860 Patent to the Cyclean system, Mr. Kushnick compares the '860 Patent to the '392 Patent, which may not even teach the operation of the Cyclean system.[7] Even more troubling is that Mr. Kushnick is not comparing the claims of the '860 Patent to the claims of the '392 Patent. Rather, Mr. Kushnick relies on the specification of the '392 Patent and the most preferable embodiment of the '392 Patent.[8] The claims

---

[7] Case law specifically prohibits infringement determinations on the basis of comparing the accused product to a patentee's commercial embodiment of the claimed invention. See Spectrum Int'l, Inc. v. Sterilite Corp., 164 F.3d 1372, 1381 (Fed. Cir. 1998). This same logic should apply here, as the '392 Patent, whether it teaches the operation of the Cyclean system or not, is not the accused product or even a product at all. See Forest Labs., Inc. v. Abbott Labs., 239 F.3d 1305, 1313 (Fed. Cir. 2001) ("[Defendant] needed to present adequate evidence with respect to the accused product, not the content of a patent application that may or may not describe the product."). Further, preferred rates and velocities in a specification of a patent that may not teach the operation of the Cyclean system do not speak to the rates and velocities practiced in the actual Cyclean system.

[8] For each number discussed in the specification of the '392 Patent, ranges are given, e.g., "[t]he pressure under which the cleaning medium is discharged at the nozzle opening preferably lies within the range of 20 to 100 bar, more preferably 30 to 80 bar, more preferably 50 to 70 bar." Apgar Decl. for Kushnick Mot., Ex. B ("'392 Patent") at 5:44-47, ECF No. 125-3. In his analysis, Mr. Kushnick goes directly to the last, and most

16

of the '392 Patent do not even contain pressure ranges, particle sizes, flow rates, or particle velocities. See '392 Patent 7:7-8:42. Therefore, even if the '392 Patent did teach the operation of the Cyclean system, there is no evidence that it practices the ranges disclosed in the specification. Because Mr. Kushnick has provided no evidence for his reliance on the '392 Patent, such reliance is unreliable and misleading to the jury. Accordingly, Defendant's Motion to Exclude Mr. Kushnick's opinion based on the '392 Patent is **GRANTED**.

b. ███████████████ *Nozzles*

Mr. Kushnick performed testing on three different nozzles included in the ████████████. Such testing, in combination with other evidence, led Mr. Kushnick to the opinion that the Cyclean system infringes on the '860 Patent.

Defendant contends that the Court should exclude this opinion because Mr. Kushnick's assumption that the Cyclean system uses a ██████████ nozzle is based on inadmissible hearsay. At Mr. Caban's deposition, he testified that ████████████████████ ███████████████████████████ ███████████████████████████ ██████████. Caban Dep. 134:1-17. Both Mr. Caban's statement at his deposition and ██████████ statement

---

narrow, range provided.

are hearsay.  However, because Defendant designated Mr. Caban as its corporate witness, his statements fall under the party admission exception.  Fed. R. Civ. P. 32(a)(3) ("[A]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's . . . designee under Rule 30(b)(6).").

The admissibility analysis does not end there. Because Mr. Caban testified to a statement ███████ made, there is another level of hearsay.  See Cooley v. Lincoln Elec. Co., 693 F. Supp. 2d 767, 791 (N.D. Ohio 2010) ("[A] 30(b)(6) designee cannot 'offer any testimony . . . at trial . . . to the extent that information was hearsay not falling within one of the authorized exceptions.'" (quoting Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 435 (5th Cir. 2006))). This statement, however, does not fit within any exception to the hearsay rule.[9]  Nonetheless, "experts are entitled to rely on hearsay in forming their opinions."  Carson Harbor Vill., Ltd. v. Unocal Corp., 270 F.3d 863, 873 (9th Cir. 2001).  "If [the underlying facts or data are] of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or

---

[9] Plaintiff argues that ██████'s statement also falls into the party admission exception because ██████ is an agent of Defendant.  However, Plaintiff has not provided any evidence of an agency relationship, and therefore, this argument holds no merit.

inference to be admitted." Fed. R. Evid. 703. ███

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████ is

"responsible for the entire program; so that's the

marketing of the Cyclean, the equipment, any

information, training information, things like that."

Caban Dep. 51:2-5. Because ████████ has such

specialized knowledge of the Cyclean system, it was

reasonable for Mr. Kushnick to rely on ████████'s

statement that the Cyclean system uses a ████████

nozzle. Therefore, the Court **DENIES** the Kushnick

Motion as to Mr. Kushnick's assumption that the Cyclean

system uses a ████████ nozzle.

    c. *Mr. Kushnick's Testing of the* ████████

     *Nozzles*

Finally, Defendant argues that Mr. Kushnick's

testing of the ████████ nozzles was unreliable and

should be excluded. Defendant's argument comes in two

parts. First, Defendant argues that Mr. Kushnick only

tested three nozzles in the ████████ series, but

there are seventy-five different nozzles in the ████████

██ series, and therefore, this limited sampling is

unreliable. Second, Defendant argues that the Cyclean

system's nozzles rotate during the wash program, which

Mr. Kushnick failed to take into account, and

therefore, his testing for particle velocity is not

representative of the Cyclean system.

19

Defendant's arguments go to the weight of Mr. Kushnick's opinions, not the admissibility. In assessing an expert's opinion, the Court is not responsible for "exclud[ing] opinions merely because they are impeachable." Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th Cir. 2013). The Court does not decide "whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." Id. at 969-70. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596 (1993).

If Defendant wants to attack Mr. Kushnick's process of choosing the three nozzles he tested, it can do so on cross-examination. The same goes for whether Mr. Kushnick needed to take into account rotational forces when calculating particle velocity. Defendant has not provided any authority holding that Mr. Kushnick's sampling resulted in unreliable testing.[10] Further, Mr.

---

[10] Defendant cites to In re Independent Service Organizations Antitrust Litigation, 114 F. Supp. 2d 1070 (D. Kan. 2000) for the proposition that a court can exclude an expert opinion based on a questionable sampling technique. However, in that case, the court excluded an expert's opinion on another expert's sampling size. In re Indep. Serv. Orgs. Antitrust Litig., 114 F. Supp. 2d at 1101 ("Dr. Garvin's opinion that five samples should be tested is nothing more than unsubstantiated personal opinion."). Therefore, the excluded opinion *concerned* the sample size; the opinion was not excluded *because* of the sample size.

Kushnick and Dr. Micklow disagree over the impact of the rotational forces. The Court is not the fact-finder; it will be up to the jury to decide how much weight to give Mr. Kushnick's opinions. See Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court."). Accordingly, the Court **DENIES** Defendant's Motion to Exclude Mr. Kushnick's opinion of infringement based on his testing of the ████████ nozzles.

   3.   '860 Motion

      a.   *Non-Infringement of the '860 Patent*

As noted, the '860 Patent provides parameters for four separate disclosures in its two claims: pressure, particle size, volumetric flow, and particle velocity. '860 Patent 4:7-18. Plaintiff must provide evidence that the Cyclean system infringes all four of these parameters. Plaintiff relies on the specification of the '392 Patent, the testing of the ████████ nozzles, and the Lufthansa Engineering Orders. As noted in the Court's analysis of the Kushnick Motion, Mr. Kushnick may not rely on the '392 Patent.

Mr. Kushnick's testing of the ████████ nozzles is used to show infringement of the particle size and velocity limitations set forth in the '860 Patent. In testing the ████████ nozzles, Mr. Kushnick was able to measure particle size and plot it on a graph.

Through his testing, Mr. Kushnick was able to determine, for example, that one of the nozzles tested had 15% of its particles in the range of 120 to 250 microns, the particle size disclosed in the '860 Patent. Kushnick Report App. A ¶ 12. Mr. Kushnick then used the Bernoulli equation and calculated particle velocity, concluding that the use of a ███ nozzle would meet this claim element. Id. ¶ 67. Mr. Kushnick's opinions therefore create a genuine issue of material fact as to whether the Cyclean system practices the particle size and velocity limitations contained in the claims of the '860 Patent.

While Plaintiff has offered evidence sufficient to raise a genuine issue of material fact as to whether the Cyclean system practices the particle size and velocity limitations, it must also create a genuine issue of material fact as to whether the Cyclean system practices the pressure and flow rate limitations of the '860 Patent. Biometrics, Inc. v. Identix, Inc., 149 F.3d 1335, 1349 (Fed. Cir. 1998) ("An accused device cannot infringe, as a matter of law, if even a single limitation is not satisfied."). Plaintiff relies on the Lufthansa Engineering Orders to establish that the Cyclean system practices the pressure and flow rate limitations set forth in the '860 Patent. Defendant argues that Plaintiff has failed to show a connection between the Engineering Orders and the Cyclean system because Defendant ███████████████████

.″ Apgar '860 Decl., Ex. 4

(Caban Dep.) at 101:2-3. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ ″ Id. at 69:18-22. Therefore,

Defendant does not deny that ██████████████████

████████████████████████████████

████████████████. Defendant argues that there is no

evidence showing the number of washes performed

pursuant to the Engineering Orders, but the number of

washes is irrelevant to the specific question of

whether the Cyclean system infringes the '860 Patent.

In his report, Mr. Kushnick plotted points on a

graph corresponding to the ████████████████████████

████████████████████████████████. Apgar '860

Decl., Ex. 21 (Kushnick Report) ¶ 62. Specifically,

Mr. Kushnick plotted points for █████████████████████

████████████████████[11]; every single plot point fell

within the parameters of the '860 Patent. Id. ¶¶ 61-

62. Because Defendant █████████████████████████████

████████████████████████████████████████████████

---

[11] Defendant argues that two of the ten Engineering Orders
are for █████████████ planes, see Apgar '860 Decl., Exs. 32-33,
and Defendant does not wash █████████████ planes, so those two
Engineering Orders cannot be evidence of infringement. However,
even if two of the Engineering Orders are not applicable to
washes Defendant performs, Defendant has not provided evidence
that the remaining eight Engineering Orders on which Plaintiff
relies are inapplicable to washes Defendant performs. Therefore,
a genuine issue of material fact remains.

███████████████, Mr. Kushnick was entitled to rely on such Orders in providing his opinion. At the very least, these Engineering Orders, ████████████ ████████████████████████████ ████, create a genuine issue of material fact as to infringement of the pressure and flow rate limitations of the '860 Patent.

Because Plaintiff has presented evidence that creates a genuine issue of material fact as to all four of the parameters disclosed in the '860 Patent, the Court **DENIES** Defendant's '860 Motion as to non-infringement of the '860 Patent.

   b. *Willfulness*

Defendant argues that if any infringement exists, it was not willful; thus, Plaintiff cannot be entitled to enhanced damages.

The Patent Act provides for enhanced damages of "up to three times the amount found or assessed," 35 U.S.C. § 284, "in a case of willful or bad-faith infringement," <u>Aro Mfg. Co. v. Convertible Top Replacement Co.</u>, 377 U.S. 476, 508 (1964). Typically, "[a]wards of enhanced damages . . . are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." <u>Halo Elecs., Inc. v. Pulse Elecs., Inc.</u>, 136 S. Ct. 1923, 1932 (2016). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages,

without regard to whether his infringement was objectively reckless." Id. at 1933.

"Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016). Plaintiff's primary evidence that Defendant knew of the '860 Patent prior to this Action is two letters Plaintiff sent to ███████████ ████████████████████████████████████████████. See Apgar Decl., Ex. 7. These letters were addressed to ████████████████████. Apgar '860 Decl., Ex. 9 ("Michael Scanlon Dep.") at 98:13-23. In these letters, dated September 18, 2013 and December 5, 2013, Plaintiff discusses patents, including the '860 Patent, that are available for licensing. Id., Ex. 7. However, Plaintiff has no evidence that anyone working for Defendant ever saw these letters prior to this Action. ███████████ stopped working for Defendant in 2011, two years prior to Plaintiff sending the letters. Decl. of Gregory Apgar in Supp. of Def.'s Reply to '860 Mot., Ex. 35 ("Lee Dep.") at 133:9-12, ECF No. 165-14. While ████████████████████ ███████, signed for the delivery of the September 18, 2013 letter, see Apgar '860 Decl., Ex. 7, there is no evidence that ███████████ himself, or anyone actually working for Defendant at the time, ever actually saw the letter. Neither ███████████ nor ███████ were deposed. None of Defendant's employees

who were deposed testified to seeing the letters prior to this Action. See Lee Dep. 134:20-135:9; Michael Scanlon Dep. 98:11-12.

Plaintiff's remaining attempts to provide evidence of Defendant's knowledge of the '860 Patent prior to this Action are tenuous at best. Simply because the inventor of the '392 Patent included reference to the '860 Patent in the '392 Patent does not mean that Defendant, which had no role in inventing the '392 Patent or developing the Cyclean system, knew of the '860 Patent. Further, while Defendant admits to meeting with one of Plaintiff's parent companies regarding the purchase of EcoPower equipment, such a meeting does not suggest knowledge of the '860 Patent on which the EcoPower equipment is based. Plaintiff has provided no evidence that Defendant discussed the patents related to the EcoPower system when it expressed interest in purchasing EcoPower equipment. Because Plaintiff has not provided any evidence showing Defendant's knowledge of the '860 Patent prior to this Action, it has failed to establish a prerequisite of willfulness. The Court therefore **GRANTS** Defendant's '860 Motion as to pre-suit willfulness of infringement.[12]

_____

[12] Plaintiff argues that Defendant has continued to infringe on the '860 Patent during the course of this Action. Defendant has clearly had notice of the '860 Patent since service of this Action, and despite Defendant's argument to the contrary, "there is 'no rigid rule' that a patentee must seek a preliminary

c. *Invalidity of the '860 Patent*

Defendant also seeks to invalidate the '860 Patent based on indefiniteness. Claim language must "be precise enough to afford clear notice of what is claimed." Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2129 (2014). The definiteness standard "require[s] a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." Id. A party challenging the validity of a patent must prove indefiniteness by clear and convincing evidence. Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP, 838 F.3d 1224, 1228 (Fed. Cir. 2016).

Defendant challenges the validity of the '860 Patent by arguing that the term "small quantities" is indefinite. In claim construction, Defendant made the same arguments regarding indefiniteness. The Court rejected Defendant's argument, stating, "[w]hile 'small quantities' could be defined in terms of volume only, Defendant has failed to prove by clear and convincing evidence, that the definition as used by Plaintiff rises to the level of indefiniteness." Order re: Claim Construction 10:1-5. The Court then noted that "a

---

injunction in order to seek enhanced damages." Mentor Graphics Corp. v. EVE-USA, Inc., 851 F.3d 1275, 1296 (Fed. Cir. 2017) (citation omitted). Therefore, the Court only **GRANTS** the '860 Motion as to pre-suit willfulness. The Court **DENIES** the '860 Motion as to willfulness following service of the Complaint.

person of ordinary skill in the art could with reasonable certainty define 'small quantities' as a flow rate." Id. at 10:11-13. The '860 Patent includes a total volumetric liquid flow of 2 to 60 liters per minute, '860 Patent 4:17-18, thus defeating an argument of indefiniteness.

Defendant argues that the Court should reconsider its claim construction of "small quantities" based on testimony of the inventor of the '860 Patent, Peter Asplund. In his deposition, which took place after the Court issued its Claim Construction Order, Mr. Asplund testified that "small quantities" refers to his goal of reducing the volume of liquid used in the wash. Apgar '860 Decl., Ex. 8 ("Asplund Dep.") at 140:16-22. Defendant's counsel then asked: "So the phrase 'small quantities of finely divided liquid' *is not referring* to the claimed total volumetric flow of .5 to 60 liters per minute. Is that right?" Id. at 140:23-25 (emphasis added). According to Defendant, Mr. Asplund then responded, "That's right." '860 Mot. 17:13-17 (citing Asplund Dep. at 140:10-141:4). However, in the pages of Mr. Asplund's deposition transcript Defendant provides, Mr. Asplund's answer is not included. Even if Defendant did provide evidence of Mr. Asplund's answer, Defendant has not provided testimony from Mr. Asplund affirmatively stating that "small quantities" *is referring* to a total volume of liquid used during the wash.

Importantly, "<u>Markman</u> requires us to give no deference to the testimony of the inventor about the meaning of the claims." <u>Hoechst Celanese Corp. v. BP Chems. Ltd.</u>, 78 F.3d 1575, 1580 (Fed. Cir. 1996). However, inventor testimony "may be pertinent as a form of expert testimony, for example, as to understanding the established meaning of particular terms in the relevant art." <u>Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.</u>, 540 F.3d 1337, 1347 n.5 (Fed. Cir. 2008). While Mr. Asplund could provide testimony as to what a person skilled in the art may understand "small quantities" to mean, Defendant does not provide such testimony. Therefore, what little new testimony Defendant offers does not change the fact that Defendant has failed to prove indefiniteness by clear and convincing evidence. <u>See</u> <u>id.</u> at 1346-47 ("[Inventor] testimony is still limited by the fact that an inventor understands the invention but may not understand the claims, which are typically drafted by the attorney prosecuting the patent application.").

Defendant notes that Plaintiff cites to cases where the courts dismissed inventor testimony based on the policy that inventor testimony is likely to be self-serving. However, the Federal Circuit has made clear that whether the testimony helps or hurts the inventor is irrelevant to the analysis. <u>Id.</u> at 1347 ("Wright's asserted approach, to rely on inventor testimony when it is contrary to interest, is unworkable. It would

require a case by case determination as to whether an inventor is testifying against his or her interest."). Therefore, the fact that Mr. Asplund's testimony may be helpful to a finding of invalidity, and thus contrary to his interests, does not make the testimony more probative.

Because Defendant has failed to prove indefiniteness by clear and convincing evidence, the Court **DENIES** Defendant's '860 Motion as to the invalidity of the '860 Patent.

### III. CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's '262 Motion; **GRANTS in part** Defendant's Kushnick Motion as to Mr. Kushnick's reliance on the '392 Patent and **DENIES in part** as to Mr. Kushnick's reliance on and testing of the ███████ nozzles; and **GRANTS in part** Defendant's '860 Motion as to pre-suit willfulness and **DENIES in part** as to non-infringement, post-service willfulness, and invalidity.

**IT IS SO ORDERED.**


DATED: May 29, 2018                s/ RONALD S.W. LEW
                                   **HONORABLE RONALD S.W. LEW**
                                   Senior U.S. District Judge