Ronald J. Pabis (pro hac vice)
rpabis@goodwinlaw.com
Stephen K. Shahida (pro hac vice)
sshahida@goodwinlaw.com
Patrick J McCarthy (pro hac vice)
pmccarthy@goodwinlaw.com
Myomi Tse Coad (pro hac vice)
mcoad@goodwinlaw.com
**GOODWIN PROCTER LLP**
901 New York Avenue NW
Washington, DC  20001
Tel.: +1 202 346 4000
Fax.: +1 202 346 4444

Natasha E. Daughtrey (SBN 319975)
ndaughtrey@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 S Figueroa Street
41st Floor
Los Angeles, California  90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

Attorneys for Plaintiff
ECOSERVICES, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| ECOSERVICES, LLC,<br><br>            Plaintiff,<br><br>      v.<br><br>CERTIFIED AVIATION SERVICES, LLC,<br><br>            Defendant. | Case No. 5:16-cv-01824-RSWL-SPx<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:      Hon. Ronald Sing Wai Lew<br><br>Complaint Filed: April 22, 2016<br>Trial Date:  June 26, 2018<br><br>Filed concurrently with:<br><br>1. Declaration of Myomi Coad<br>2. [Proposed] Order |

ACTIVE/96097366.5

# **PLAINTIFF ECOSERVICES, LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES**

Please take notice that Plaintiff EcoServices, LLC ("EcoServices") will and hereby does move the Court for an award of attorneys' fees pursuant to 35 U.S.C. § 285. Per the Court's Minute Order (ECF No. 253 at 2), the Court will notify the Parties if a hearing on the motion is required. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on July 18, 2018.

# **TABLE OF CONTENTS**

**Page**

I. BACKGROUND ...................................................................................................1

II. LEGAL STANDARDS ........................................................................................3

III. ATTORNEYS' FEES SHOULD BE AWARDED GIVEN CAS'S AND DR. MICKLOW'S LITIGATION CONDUCT ..........................................................5

    A. CAS Did Not Act Reasonably After Receiving Notice Of The Complaint. ...................................................................................................................5

    B. The Technical Analyses Advanced by CAS, through Dr. Micklow, was Demonstrably Wrong .....................................................................................7

    C. CAS's Invalidity Positions During the Case and At Trial Were Not Reasonable ......................................................................................................9

IV. THIS IS AN EXCEPTIONAL CASE, MAKING AN AWARD OF ATTORNEYS' FEES APPROPRIATE ...............................................................11

V. CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A&L Tech. v. Resound Corp.*,
  No. C-93-00107-CW, 1995 U.S. Dist. LEXIS 22513 (N.D. Cal. June 29, 1995) ................................................................................................................ 4

*In re: Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  No. 1:09-md-02050, 2017 U.S. Dist. LEXIS 108875 (S.D. Ohio Jan. 24, 2017) ........................................................................................................... 12

*Dexcom, Inc. v. AgaMatrix, Inc.*,
  No. 2:16-cv-05947 (C.D. Cal. May 30, 2018) ...................................................... 12

*Eltech Sys. Corp. v. PPG Indus., Inc.*,
  903 F.2d 805 (Fed. Cir. 1990) ......................................................................... 4, 15

*Genes Indus., Inc. v. Custom Blinds & Components, Inc.*,
  No. 8:15-cv-00476, 2018 U.S. Dist. LEXIS 21879 (C.D. Cal. Jan. 29, 2018) ................................................................................................................... 4

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
  112 F. Supp. 3d 888 (D. Minn. July 1, 2015) ....................................................... 13

*Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc.*,
  No. 2:08-cv-07587, 2009 U.S. Dist. LEXIS 132872 (C.D. Cal. Dec. 14, 2009) .............................................................................................................. 14

*Kinglite Holdings Inc. v. Micro-Star Int'l Co. Ltd.*,
  No. 2:14-cv-03009, 2016 U.S. Dist. LEXIS 113284 (C.D. Cal. June 23, 2016) ........................................................................................................... 4, 13

*MacLeod v. Emerson Elec. Co.*,
  No. CV-11-159 FMO, 2015 U.S. Dist. LEXIS 119399 (C.D. Cal. Sept. 8, 2015) ........................................................................................................ 13

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012) ............................................................................. 12

*Maxwell v. Angel-Etts of Cal.*,
  No. CV-99-10516, 2001 U.S. Dist. LEXIS 25418 (C.D. Cal. July 9, 2001) ............................................................................................................. 4, 11

Case 5:16-cv-01824-RSWL-SP   Document 272   Filed 07/25/18   Page 5 of 20   Page ID
#:16482

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) .................................................................................................... 3

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
   781 F.2d 198 (Fed. Cir. 1986) ........................................................................................ 3

*Spectralytics, Inc. v. Cordis Corp.*,
   649 F.3d 1336 (Fed. Cir. 2011) ...................................................................................... 4

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
   No. C-91-2191-WHO, 1996 U.S. Dist. LEXIS 22972 (N.D. Cal. May
   17, 1996) ......................................................................................................................... 4

*Tech. for Energy Corp. v. Hardy*,
   No. 3:16-cv-00091 (E.D. Tenn. Feb. 15, 2018) ........................................................... 12

*Tech. Props. Ltd. LLC v. Canon, Inc.*,
   No. 4:14-cv-03640, 2017 U.S. Dist. LEXIS 144204 (N.D. Cal. Jan.
   26, 2017) ....................................................................................................................... 12

*Wordtech Sys. v. Integrated Network Sols., Corp.*,
   No. 04-cv-1971-MCE-EFB, 2009 U.S. Dist. LEXIS 2806 (E.D. Cal.
   Jan. 14, 2009) ............................................................................................................... 11

**Federal Statutes**

35 U.S.C. § 285 ........................................................................................................... *passim*

35 USC § 103 .................................................................................................................. 2, 11

**Other Authorities**

Local Rule 54-10 ................................................................................................................ 15

# PLAINTIFF ECOSERVICES, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

On July 2, 2018, the jury entered a verdict in favor of EcoServices, LLC ("EcoServices") finding that Defendant Certified Aviation Services, LLC ("CAS") infringed all asserted claims of the '262 Patent and had willfully infringed the asserted claims of the '860 Patent. ECF No. 264. The evidence at trial demonstrated that CAS failed to meaningfully investigate EcoServices' infringement allegations. CAS admittedly chose to refrain from discovering the technical details of the accused system. Nor did CAS test the accused system to discover whether there was infringement. Instead, CAS opted to simply criticize EcoServices allegations and proofs, through its retained technical expert, Dr. Gerald Micklow, with positions that both he and CAS knew or should have known were demonstrably false. Consistent with the jury's finding of willful infringement of the '860 Patent and CAS's conduct during litigation and throughout trial, EcoServices respectfully requests that the Court find the case exceptional and award attorneys' fees under 35 U.S.C. § 285.

## I. BACKGROUND

After a five-day trial, and approximately three hours of deliberations, the jury unanimously found in favor of EcoServices on all counts, including that CAS infringed all asserted claims of the '262 Patent and willfully infringed the asserted claims of the '860 Patent. ECF No. 264. CAS failed to present any evidence in defense of the willful infringement claim. Indeed, the trial testimony of Messrs. Mark Lee and Brad Caban, CAS's corporate representatives, highlighted CAS's egregious behavior of inaction after service of the complaint. Instead of engaging in good faith efforts to investigate whether CAS's use of the Cyclean system infringed the asserted patents, CAS continued to perform Cyclean engine washes and concurrently subscribed to unreasonable and unsupported non-infringement and invalidity positions that were advanced by CAS's technical expert, Dr. Micklow. CAS's continued advancement of Dr. Micklow's insupportable positions continued through the close of

CAS's case at trial. The facts supporting an award of fees in this case, include the following:

- Despite purporting to be "shocked" at the filing of the complaint in this case, neither CAS's CEO (Mr. Lee) nor its President in charge of the Cyclean system (Mr. Caban) bothered to read the asserted EcoServices' patents. (*See, e.g.*, Ex. A, Trial Tr. (June 28, 2018), 78:12-18; 145:4-11);

- Despite purporting to be "shocked" at the filing of the complaint in this case, CAS failed to perform any reasonable investigation into whether it infringed the asserted EcoServices' patents. Ex. A, Trial Tr. (*See, e.g.*, June 28, 2018), 145:16-23);

- Despite having access to technical information about the Cyclean system through Lufthansa Technik ("Lufthansa") employees, including Mr. Oliver Winter and Mr. Mullen (who was present each day of trial except closing arguments)[1], CAS neglected to obtain (or even ask about) the relevant technical information about the Cyclean system, including, but not limited to, the identification of the exact nozzles used in the Cyclean system. (*See, e.g.*, Ex. A, Trial Tr. (June 28, 2018), 149:3-6);

- Throughout the litigation, CAS argued, through "analyses" performed by Dr. Micklow, that the asserted claims of the '860 Patent were invalid based on nine different prior art references arranged in 36 combinations spread across 41 pages in Dr. Micklow's expert report, only to drop its invalidity claim on the eve of trial. Ex. B (June 22, 2018 email from Steven Baskin, counsel for CAS, to counsel for EcoServices) ("We want to inform you that CAS is no longer intending to assert its defense of invalidity of the '860 Patent under 35 USC § 103."); and

- CAS, through Dr. Micklow, advanced positions and elicited trial testimony in rebuttal to EcoServices' claims of infringement based on variables that

---

[1] *See, e.g.*, Ex. A, Trial Tr. (June 28, 2019), at 86:22-87:4 (Mr. Lee testifying that Mr. Mullen, who works for Lufthansa, being present during trial).

were demonstrably false, including Dr. Micklow's fabricated hose length, his exaggerated "bends" in the hose and his use of a rotational velocity that he and CAS either knew or should have known to be false. (*See, e.g.*, Ex. C, Trial Tr. (June 29, 2018), 90:8-16; 28:25-29:11; 54:1-12; 110:4-16).

It became crystallized at trial that CAS's invalidity and non-infringement positions were untenable as counsel for CAS was unable to defend, and did not even try to rehabilitate, the overwhelming amount of technical flaws inherent in CAS's invalidity and non-infringement analyses that surfaced before the jury through Dr. Micklow's trial testimony. These positions advanced by CAS were simply not reasonable. CAS's decision to advance these untenable arguments at trial when it knew or should have known they were false render this case exceptional and warrant the award of attorneys' fees here.

## II. LEGAL STANDARDS

In patent cases, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Attorneys' fees may also be awarded pursuant to the Court's inherent authority where, as here, "the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 1758 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)). Awarding fees under Section 285 can fulfill the "'need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness,* 134 S. Ct. at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). A party must prove its entitlement to fees by a preponderance of the evidence. *Octane Fitness*, 134 S. Ct. at 1758.

"District courts have tended to award attorney fees when willful infringement has been proven, and th[e] [Federal Circuit] has uniformly upheld such awards." *S.C.*

*Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 200 (Fed. Cir. 1986); *see, e.g.*, *Maxwell v. Angel-Etts of Cal.*, No. CV-99-10516, 2001 U.S. Dist. LEXIS 25418, at *73 (C.D. Cal. July 9, 2001) ("An express finding of willful infringement is a sufficient and appropriate basis for classifying a case as exceptional and awarding attorney fees."); *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, No. C-91-2191-WHO, 1996 U.S. Dist. LEXIS 22972, at *54 (N.D. Cal. May 17, 1996) (finding "willful infringement alone is a sufficient basis for finding this case 'exceptional'"); *A&L Tech. v. Resound Corp.*, No. C-93-00107-CW, 1995 U.S. Dist. LEXIS 22513, at *12 (N.D. Cal. June 29, 1995) ("Willfulness of infringement and bad faith displayed in pre-trial proceedings both may render a case exceptional."). "Although an attorney fee award is not mandatory when willful infringement has been found, precedent establishes that the court should explain its decision not to award attorney fees." *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1349 (Fed. Cir. 2011) (citing *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1379 (Fed. Cir. 2002)) ("[T]he general rule [is] that the district court must normally explain why it decides that a case is not exceptional under 35 U.S.C. § 285 when a factual finding of willful infringement has been established and, if exceptional, why it decides not to award attorney fees.").

Moreover, where a defendant maintained defenses through the course of litigation only to fail to present any credible or reasonable evidence to support those defenses at trial, attorneys' fees were found appropriate. *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 808, 810 (Fed. Cir. 1990) (affirming award of attorneys' fees where patentee's expert performed no tests, yet concluded that defendant infringed); *Genes Indus., Inc. v. Custom Blinds & Components, Inc.*, No. 8:15-cv-00476, 2018 U.S. Dist. LEXIS 21879, at *11 (C.D. Cal. Jan. 29, 2018) (granting plaintiff attorneys' fees where defendant had maintained invalidity defenses through the course of litigation only to fail to present any evidence to support those defenses at trial); *Kinglite Holdings Inc. v. Micro-Star Int'l Co. Ltd.*, No. 2:14-cv-03009, 2016

U.S. Dist. LEXIS 113284, at *15-16 (C.D. Cal. June 23, 2016) (granting defendant attorneys' fees where "testing would have revealed" to plaintiff that defendant's product does not practice the asserted patent).

### III. ATTORNEYS' FEES SHOULD BE AWARDED GIVEN CAS'S AND DR. MICKLOW'S LITIGATION CONDUCT

#### A. CAS Did Not Act Reasonably After Receiving Notice Of The Complaint.

Both of CAS's corporate representatives testified during trial that upon learning about the lawsuit they did not read either of the asserted patents or investigate whether Cyclean infringes the asserted patents. For example, CAS's chairman, Mr. Mark Lee, testified that upon learning about the lawsuit he did not even look at the asserted patents:

> Q. You also mentioned that you -- upon learning about the lawsuit, you investigated; right?
> A. Yes.
> Q. Did you look at the patents?
> A. No.
> Q. Have you looked at the patents since?
> A. I have not independently looked at the patents, no.

Ex. A, (Trial Tr. (June 28, 2018), 78:12-18.)

In similar fashion, Brad Caban, the president of CAS from 2012-2017, testified that after he read the complaint he did not read either of the asserted patents:

> Q. And when you learned about the lawsuit and you were shook up, did you, uh, read the patents?
> A. Uh, no. I read the complaints that, uh, we had the 632, uh, Lechler spray nozzle and the other complaints.
> Q. Okay. But you didn't read the '860 patent; right?
> A. Not at the time.

1  Q. And you didn't read the '262 patent.

2  A. Not at that time.

3  Ex. A, (Trial Tr. (June 28, 2018), 145:4-11.)

4  CAS also failed to perform a reasonable investigation. For example, Mr. Caban testified that CAS did not perform any testing to determine whether Cyclean infringes the asserted patents. Mr. Caban specifically testified that CAS failed to test the identified Lechler nozzle to determine whether Cyclean infringes the '860 Patent:

8  Q. Thank you for the clarification. CAS continued to

9  perform Cyclean washes after you received the complaint;

10  right?

11  A. That is correct.

12  Q. And you didn't do any testing to determine whether or

13  not those Lechler nozzles that Mr. Winter told you about

14  might practice the claims of the patent; right?

15  A. That's correct.

16  Ex. A, (Trial Tr. (June 28, 2018), 145:16-23.)

17  Indeed, Mr. Caban testified that CAS did not perform *any* testing to determine whether Cyclean infringes either of the asserted patents:

19  Q. And you didn't do any testing to determine whether or

20  not CAS infringed either patent, did you?

21  A. That's correct.

22  Ex. A, (Trial Tr. (June 28, 2018), 145:24-146:1.)

23  CAS's retained expert, Dr. Micklow, also did not perform any testing of the accused Cyclean system, nor did he purchase any of the equipment used in the Cyclean system:

26  Q. At that time you hadn't done any testing on any nozzles

27  in the Cyclean system; right?

28  A. How do you define testing? Numerical or experimental?

1     Q. Experimental testing.

2     A. No, I had not done any experimental testing.

3     Ex. C (Trial Tr. (June 29, 2018), 60:20-24.)

4     …

5     Q. Okay. And you didn't go out and purchase a Lechler 652

6     nozzle, did you?

7     A. No, I did not.

8     Ex. C (Trial Tr. (June 29, 2018), 92:16-18.)

9 The testimony at trial demonstrated that CAS had easy access to technical information about the accused Cyclean system. Further, despite CAS having more than two years from receiving notice of the complaint to the trial, CAS never investigated whether Cyclean infringes the asserted patents and instead, continued to willfully perform Cyclean engine washes. Had CAS engaged in a good faith investigation to determine whether Cyclean infringes the asserted patents, CAS would have realized sooner the weaknesses in their non-infringement defenses and considered more reasonable settlement terms given the infringing nature of Cyclean. Rather than verify the nozzle testing that EcoServices commissioned, CAS prolonged the litigation over the course of more than two years and the parties participated in multiple failed settlement negotiations. CAS's failure to reasonably investigate EcoServices allegations or to perform any testing to determine whether Cyclean infringes the asserted patents caused EcoServices to expend considerable time and resources litigating CAS's unsupported defenses.

**B.     The Technical Analyses Advanced by CAS, through Dr. Micklow, was Demonstrably Wrong**

Dr. Micklow's technical analyses as to non-infringement of the asserted patents and criticisms of the analyses of Mr. Steven Kushnick, EcoServices' technical expert were fatally flawed and premised on "facts" and assumptions that were demonstrably false. Indeed, Dr. Micklow advanced the same incorrect and unsupported technical

analyses and criticisms throughout discovery and at trial. At trial, at least the following key technical flaws inherent in Dr. Micklow's non-infringement analyses surfaced before the jury under cross examination:

- CAS never informed its own expert, Dr. Micklow, what nozzles were used in the Cyclean system. Instead, CAS advanced the position, through Dr. Micklow, that it did not know what nozzles were used despite the information it had received from Lufthansa (*see, e.g.*, Ex. C, Trial Tr. (June 29, 2018), 91:17-18; 92:16-25; 60:25-61:2);

- CAS, through Dr. Micklow, advanced a non-infringement theory at trial that was based on an assumption that a 100 foot hose was used in the Cyclean system despite the fact that Dr. Micklow never measured the length of the hose in the Cyclean system and despite the fact that the only documentary evidence on that issue showed that Mr. Micklow's assumption was, in fact, incorrect. (*See, e.g.*, Ex. C, Trial Tr. (June 29, 2018), 90:8-16); JX117 (listing a "20m high pressure tube");

- CAS, through Dr. Micklow, advanced a non-infringement theory at trial that was based on testimony that the hose that is used in the Cyclean system had "50-60 bends in the hose" despite the fact that the videos and photographs admitted into evidence show that Dr. Micklow's testimony on that point was, in fact, false. (*See, e.g.*, Ex. C, Trial Tr. (June 29, 2018), 28:25-29:11); and

- CAS, through Dr. Micklow, advanced a non-infringement theory at trial that was based on Dr. Micklow's assumption that the rotational velocity of the engine fan, during a Cyclean wash, was 2550 revolutions per minute despite the fact that the videos admitted into evidence and Mr. Caban's testimony show that Mr. Micklow's testimony on that point was, also, demonstrably false. *See, e.g.*, Ex. C, Trial Tr. (June 29, 2018), 54:1-12). Indeed, Dr. Micklow never counted the number of rotations of the fan during a Cyclean

1  wash as part of his non-infringement analysis of the liquid particle velocity
2  limitation in the '860 Patent (*See, e.g.*, Ex. C, Trial Tr. (June 29, 2018),
3  110:4-16).

4  In sum, CAS had no reasonable basis for maintaining and advocating its non-
5  infringement theories.

### C. CAS's Invalidity Positions During the Case and At Trial Were Not Reasonable

Similar to CAS's non-infringement argument, CAS's invalidity positions, advanced through Dr. Micklow's analysis and opinions, were flawed, unsupported, and based on the wrong legal standards. Indeed, CAS abandoned many of their invalidity arguments that it had pushed for nearly two years apparently in light of their obvious lack of substance. But CAS still pushed other equally baseless arguments. At least the following key flaws inherent in Dr. Micklow's invalidity analyses illustrate bad faith litigation:

- Throughout the case, CAS, relying upon Dr. Micklow, argued that the asserted claims of the '860 Patent were invalid based upon nine different prior art references arranged in 36 combinations across 41 pages of Dr. Micklow's expert report, only to drop its invalidity claim on the eve of trial, but not before forcing EcoServices to expend significant resources defending against the allegations;

- CAS, through Dr. Micklow, advanced a written description argument at trial against the '262 Patent that used the wrong legal standard. For example, at trial, Dr. Micklow testified that the written description standard he applied was "[t]hat it needs to be explicitly defined." *See* Ex. C, Trial Tr. (June 29, 2018), 63:1-7. The "standard" that Dr. Micklow applied is wrong and directly contrary to the jury's final instructions:

> The full scope of a claim or any particular requirement in a claim ***need not be expressly disclosed*** in the original patent

        application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.

*See* ECF No. 255 at 31-32 (emphasis added). This is inexplicable from an expert witness in a patent case, for a party represented by capable counsel.

    Moreover, Dr. Micklow, CAS's expert providing sworn testimony on the written description requirement did not know that the USPTO, after an amendment by the patentee, had addressed the written description requirement during prosecution and found that the patent application satisfied the written description requirement. *See, e.g.*, Ex. C, Trial Tr. (June 29, 2018), 63:8-17; 66:1-16)[2];

- CAS dropped many of its prior art reference combinations for the '262 Patent, that were advanced by Dr. Micklow, less than two weeks before trial (*See* Ex. D, June 13, 2018 email from counsel for CAS, Steve Baskin, to counsel for EcoServices, Myomi Coad, dropping references for the '262 Patent); and

- Dr. Micklow did not provide any motivation to combine the references in his invalidity analysis of the '262 Patent—a legal requirement of an obviousness analysis (*see, e.g.*, Ex. C, Trial Tr. (June 29, 2018), 13:22-14:6).

Dr. Micklow's flawed invalidity analyses and incorrect standards that he applied in formulating his opinions were unreliable and unreasonable. And CAS had no credible basis to blindly advocate Dr. Micklow's arguments. Indeed, three days

---

[2] The fact that the written description finding by the PTO was related to a different claim term is irrelevant. It is entirely unreasonable for an expert to take a position on written description without even knowing whether the PTO analyzed the written description requirement during prosecution. Indeed, it appeared that Dr. Micklow was not even familiar with the prosecution history of the '262 Patent, identifying it as the applicant's Information Disclosure Statement. *See, e.g.*, Ex. C, Trial Tr. (June 29, 2018), 63:20-64:19 (Dr. Micklow testifying on cross-examination that the whole of Exhibit 419 is the "[i]nformation disclosure statement by applicant" when in fact, Exhibit 419 is the prosecution history for the '262 Patent, as pointed out by counsel for EcoServices, Mr. Pabis, during cross-examination.

before trial, CAS dropped its entire invalidity defense as to the '860 Patent. *See* Ex. B (June 22, 2018 email from Steven Baskin, counsel for CAS, to counsel for EcoServices) ("We want to inform you that CAS is no longer intending to assert its defense of invalidity of the '860 Patent under 35 USC § 103."). And less than two weeks before trial, CAS dropped its indefiniteness argument as to the '860 Patent. *See* ECF No. 221 at 6 n.3 ("On May 29, 2018 the Court denied CAS's motion for summary judgment that the '860 patent was invalid as indefinite based on the "small quantities" limitation. Given the Court's decision, this is not an issue that will be presented to the jury.").

This is far from dropping claims and defenses based upon revelations during discovery or typical streamlining of issues before trial. Here, fact discovery ended over 12 months (June 8, 2017) and expert discovery closed over three months (March 12, 2018) before the trial began. By continuing to push untenable positions, CAS simply ran up the fees of litigation. EcoServices had to expend considerable time and resources litigating CAS's unsupported invalidity defense that was backed by Dr. Micklow's untenable technical analyses. CAS litigated this case in bad faith.

## IV. THIS IS AN EXCEPTIONAL CASE, MAKING AN AWARD OF ATTORNEYS' FEES APPROPRIATE.

This is an exceptional case, rendering an award of attorneys' fees appropriate. Taken individually, the pieces of CAS's conduct might be excusable. The whole tale, however, leads to a different conclusion that justifies an award of attorneys' fees.

First, the jury's finding of willfulness on the '860 Patent is an appropriate basis to an award of attorneys' fees. *See Maxwell*, 2001 U.S. Dist. LEXIS 25418, at *73. Moreover, the jury unanimously found in favor of EcoServices on all counts, including willful infringement of the '860 Patent, after about three hours of deliberations, indicating that the evidence at trial "overwhelming favored a finding for Plaintiff." *Wordtech Sys. v. Integrated Network Sols., Corp.*, No. 04-cv-1971-MCE-

EFB, 2009 U.S. Dist. LEXIS 2806, at *5-6 (E.D. Cal. Jan. 14, 2009) (finding case exceptional where jury quickly came to unanimous willful infringement verdict).

Second, the basis of CAS's non-infringement position was not only weak, it was based on assumptions that CAS knew or should have known were wrong. *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 910 (Fed. Cir. 2012) (holding that action was rendered exceptional by patentee's litigation misconduct based in part on patentee having "introduced and relied on expert testimony that failed to meet even minimal standards of reliability, thereby prolonging the litigation and the expenses attendant thereto."); *Dexcom, Inc. v. AgaMatrix, Inc.*, No. 2:16-cv-05947, at 9-10 (C.D. Cal. May 30, 2018) (finding the case "exceptional" and granting defendant's motion for fees in part because plaintiffs "should have known" that its infringement theories "were indefensible" and "[p]laintiff had sufficient information to see the flaws in its arguments…"); *Tech. Props. Ltd. LLC v. Canon, Inc.*, No. 4:14-cv-03640, 2017 U.S. Dist. LEXIS 144204, at *4, 9 (N.D. Cal. Jan. 26, 2017) (finding case exceptional with respect to the objective unreasonableness and substantive weakness of plaintiffs' litigation position and awarding attorneys' fees where plaintiffs "should have known" that their infringement contention was meritless given the record evidence and previous orders); *Tech. for Energy Corp. v. Hardy*, No. 3:16-cv-00091, at 6-8 (E.D. Tenn. Feb. 15, 2018) (finding the case "exceptional" and awarding to defendants attorneys' fees where plaintiff "should have known" that its claim "lacked substantive and legal merit" and even with such awareness, "the plaintiff committed to seeing the claim through to the end, in defiance of the applicable law[,]" which required defendant to "develop their own expert testimony to address patent issues which should have never been present in this case."); *In re: Bill of Lading Transmission & Processing Sys. Patent Litig.*, No. 1:09-md-02050, 2017 U.S. Dist. LEXIS 108875, at *2 (S.D. Ohio Jan. 24, 2017) (finding case to be exceptional and awarding attorney fees where plaintiff "should have known, based on the opinion of its own expert" that the accused technology was not covered by the asserted patent);

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 112 F. Supp. 3d 888, 895 (D. Minn. July 1, 2015) (holding that action was an exceptional patent case that warranted an award of attorney fees where Icon's own expert testimony "posed major obstacles to Icon's success on the merits" and "Icon must have known that the odds of winning the lawsuit were very slim.").

Third, CAS raised numerous defenses throughout the litigation, such as an overwhelming number of purportedly invalidating obviousness combinations of prior art references for the '262 Patent and invalidity arguments for the '860 Patent that were repeatedly rejected by this Court.[3] CAS dropped many of its prior art reference combinations for the '262 Patent less than two weeks before trial (*see* Ex. D) and, *three days* before trial, CAS dropped its entire invalidity defense as to the '860 Patent, because of their substantive weaknesses. *See MacLeod v. Emerson Elec. Co.*, No. CV-11-159 FMO (PLAx), 2015 U.S. Dist. LEXIS 119399, at *32 (C.D. Cal. Sept. 8, 2015) at *33, 38 (awarding attorneys' fees under Section 285 where party "withdrew most of [its] asserted claims shortly before trial.").

Fourth, while EcoServices shouldered the expense of proving its case with evidence, testing, and supported analysis, CAS's main responses were to argue that EcoServices had not met its evidentiary burden because CAS is not the designer of the Cyclean system[4], CAS is a small company[5], and CAS was simply the operator of the Cyclean system by pressing buttons and turning nozzles on the Cyclean system.[6] CAS

---

[3] During motion *in limine* briefings, CAS finally agreed to drop its indefiniteness argument based on the "small quantities" limitation because the Court had twice rejected CAS's argument at *Markman* and summary judgment. The manner in which CAS litigated its case supports an award of attorneys' fees. *See Kinglite*, No. 2:14-cv-03009, at 14 (granting defendant attorneys' fees where plaintiff's expert report was inconsistent with the Court's construction of a disputed term, which was a factor that reflected "poorly on the manner in which [plaintiff] litigated its case.").

[4] *See, e.g.*, Ex. E, Trial Tr. (July 2, 2018), at 56:17-21 ("We're gonna get into a little bit, but they're complaining about information they don't have. Well, guess where it is? Lufthansa Technik has it. And they have the burden, they have the burden. Lufthansa Technik is the designer and developer.").

[5] *See, e.g.*, Ex. E, Trial Tr. (July 2, 2018), at 49:21-23 ("As I stated in my opening[,] Certified Aviation Services is a small company located in Ontario, California.").

[6] *See, e.g.*, Ex. A, Trial Tr. (June 28, 2018), at 113:23-114:10 (Mr. Caban testifying that with respect to the Cyclean system, he had "no idea about anything other than just how to turn the thing on and use it…").

failed to submit any semblance of a good faith, reasonable, and credible evidentiary defense to EcoServices' causes of action at trial.

Indeed, CAS's conduct evinces a lack of respect for EcoServices' patent rights and the litigation process. As highlighted above, CAS did nothing after learning about the complaint against it, and failed to test the nozzles used in Cyclean to verify the accuracy of EcoServices' own testing. CAS's defenses, advanced by Dr. Micklow's arguments, were deeply flawed and inadequate to support its invalidity and non-infringement defenses. In the absence of investigation or testing of the nozzle used in Cyclean, despite having knowledge of the type of nozzle used in Cyclean[7] and every opportunity to conduct its own testing to verify whether CAS infringes the '860 Patent, CAS continued to infringe the asserted patents and unreasonably multiplied the proceedings in this case. *See Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc.*, No. 2:08-cv-07587, 2009 U.S. Dist. LEXIS 132872, at *6 (C.D. Cal. Dec. 14, 2009) (granting motion for attorneys' fees where party failed to conduct additional testing or investigation to support its claim). Indeed, the entirety of CAS's non-infringement and invalidity defenses were solely based on opinions and analyses that CAS advanced through the testimony of its retained technical expert that were not only wrong but were based on assumptions that CAS should have known were wrong. During redirect of Dr. Micklow and closing argument at trial, CAS was unable to rehabilitate Dr. Micklow's testimony or reconcile the faults in Dr. Micklow's analyses. At best, CAS characterized Dr. Micklow as "far from a professional expert" Ex. E, (Trial Tr. (July 2, 2018), at 72:7-8) in what appeared to be an attempt at making excuses for its reliance upon Dr. Micklow's faulty and unsupported analyses and testimony; this despite the fact that Dr. Micklow has previously testified as an expert witness in other patent litigations and cases where he has rendered opinions on behalf

---

[7] *See,* Ex. A, Trial Tr. (June 28, 2018), at 144:14-16 (Mr. Caban testifying that Mr. Winter informed him that Cyclean uses the Lechler 652 nozzle); Ex. C, Trial Tr. (June 29, 2018), at 60:25-61:2 (Dr. Micklow testifying that he had not asked Mr. Caban what nozzles were used in the Cyclean system).

of patent owners and accused infringers. *See* Ex. C, Trial Tr. (June 29, 2018), 67:2-14.)

In sum, where, as here, CAS was unreasonable in continuing to put forth untenable positions to support its assertion of non-infringement and invalidity, "an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." *Eltech*, 903 F.3d at 811. Given the fatal technical flaws and unsupported positions presented in Dr. Micklow's analyses, that CAS knew or should have known were wrong, EcoServices has shown by a preponderance of the evidence that this case is exceptional under 35 U.S.C. § 285.

## V. CONCLUSION

Based on CAS's conduct during litigation and at trial, and the jury's unchallenged finding of willful infringement, attorneys' fees are appropriate. To date, EcoServices has incurred legal fees in excess of $1,000,000.00 Should the Court grant EcoServices' motion for attorneys' fees, EcoServices will provide an accounting of reasonable attorneys' fees, accompanied by all appropriate documentation substantiating the reasonableness of the requested fees pursuant to Local Rule 54-10.

Dated: July 25, 2018  Respectfully submitted,

By: /s/ Natasha E. Daughtrey
Ronald J. Pabis
*rpabis@goodwinlaw.com*
Stephen K. Shahida
*sshahida@goodwinlaw.com*
Patrick J McCarthy
*pmccarthy@goodwinlaw.com*
Myomi Tse Coad
*mcoad@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Natasha E. Daughtrey
*ndaughtrey@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Plaintiff:
ECOSERVICES, LLC