MAYER BROWN LLP

Dale J. Giali (SBN 150382)
dgiali@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Stephen E. Baskin (pro hac vice)
sbaskin@mayerbrown.com
Dara M. Kurlancheek (pro hac vice)
dkurlancheek@mayerbrown.com
Canek Acosta (SBN 301901)
cacosta@mayerbrown.com
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Gregory J. Apgar (pro hac vice)
gapgar@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

Attorneys for Defendant/Counter-Plaintiff
Certified Aviation Services, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| ECOSERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CERTIFIED AVIATION SERVICES, LLC,<br><br>Defendant. | Case No. 5:16-cv-01824-RSWL-SP<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT OF PATENT INELIGIBILITY OF THE '262 PATENT**<br><br>Trial Date: June 26, 2018 |

# TABLE OF CONTENTS

Argument ............................................................................................................. 1
    I.     CAS Has Not Waived The Patent Eligibility Issue. .............................. 1
    II.    CAS Did Not Misstate The Law Of Patent Eligibility. ........................ 4
    III.   The Claims Are Ineligible Because They Recite The Idea Of Using A Generic Computer And Keypad To Operate A Generic Washing Unit More Quickly And Accurately. ...................................... 6
          A.   *Alice* step one ........................................................................... 7
          B.   *Alice* step two ........................................................................... 8
Conclusion ........................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) .......................................................................... 11, 12

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016) ........................................................................ 8

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ................................................................... 3, 4

*BSG Tech LLC v. BuySeasons, Inc.*,
   No. 2017-1980, 2018 WL 3862646 (Fed. Cir. Aug. 15, 2018) ........................ 10

*Donovan v. Crisostomo*,
   689 F.2d 869 (9th Cir. 1982) ............................................................................ 1

*DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*,
   268 F.3d 829 (9th Cir. 2001) ............................................................................ 1

*Exergen Corp. v. Kaz USA, Inc.*,
   725 F. App'x 959 (Fed. Cir. 2018) (*see* Opp. ) .............................................. 12

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018) (Plager, J., concurring-in-part and
   dissenting-in-part) ............................................................................................ 4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) ......................................................................................... 12

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) .............................................................. 5, 6, 10

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ........................................................................ 6

*Pierce Cty. Hotel Emps. & Rest. Emps. Health Tr. v. Elks Lodge, B.P.O.E. No. 1450*,
   827 F.2d 1324 (9th Cir. 1987) .......................................................................... 1

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007) .................................................................................... 1

*United States v. Hougham*,
    364 U.S. 310 (1960) .................................................................................... 1

**Statutes**

35 U.S.C. § 101 ............................................................................................... 13

**Other Authorities**

Fed. R. Civ. P. 16 .............................................................................................. 1

# ARGUMENT

Defendant Certified Aviation Services, LLC ("CAS") has moved for judgment of patent ineligibility of U.S. Patent No. 9,162,262. Dkt. 271 ("Mot."). Plaintiff EcoServices, LLC's ("EcoServices") has opposed that motion. Dkt. 278 ("Opp."). CAS respectfully submits this reply to EcoServices's opposition.

## I. CAS Has Not Waived The Patent Eligibility Issue.

EcoServices's waiver argument is without merit. Mot. at 1-4. CAS raised the patent eligibility issue in its pleadings and the issue appeared again with specificity in the Court's final pretrial order. Dkt. 209 at 13-15, 31. EcoServices did not object or seek to amend that order, so the eligibility issue is live. Addressing the issue at this stage is also procedurally proper, and indeed, at least one Federal Circuit judge has explicitly endorsed that timing as optimal.

Federal Rule of Civil Procedure 16 provides that a pre-trial order "controls the subsequent course of the action." Thus, every issue in the final pretrial order is live for trial. *See Pierce Cty. Hotel Emps. & Rest. Emps. Health Tr. v. Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1329 (9th Cir. 1987) (pretrial orders "govern[] the issues in dispute"). The pre-trial order is so determinative that an issue appearing therein is live for trial, even if it was absent from the pleadings. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007); *United States v. Hougham*, 364 U.S. 310, 315-16 (1960); *Donovan v. Crisostomo*, 689 F.2d 869, 875 (9th Cir. 1982). Moreover, "a pretrial order should be liberally construed to permit any issues at trial that are embraced within its language." *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 841 (9th Cir. 2001).

Here, the eligibility issue is live because it appears both in CAS's pleadings (Dkt. 13 at 7, 14) *and* with specificity in the court's final pretrial order (Dkt. 209 at 15, 30-31). CAS originally raised the issue in its Answer as both an affirmative defense (Dkt. 13 at 7) and as a counterclaim (*id.* at 14). It raised the issue again to EcoServices in its preliminary invalidity contentions. Ex. 1 at 36-37. The parties

jointly identified the defense and counterclaim again, *with specificity*, in the proposed final pretrial order, which EcoServices signed and submitted to this Court on May 18, 2018. Dkt. 174-1 at 17 (identifying whether "[t]he claims of the '262 Patent are directed to unpatentable subject matter under 35 U.S.C. § 101" as a live issue); *see also id.* at 15-16, 33. And finally, the Court identified the defense and counterclaim in its final pretrial order, using the same specific language the parties had proposed jointly. *See* Dkt. 209 at 15 (identifying as a trial issue whether "[t]he claims of the '262 Patent are directed to unpatentable subject matter under 35 U.S.C. § 101"); *see also id.* at 30-31. EcoServices never objected or moved to amend that order. Consequently, the patent eligibility defense under Section 101 and counterclaim were both live for trial.

After the jury retired but *before* it returned its verdict, the Court asked CAS "what [it] would like to offer [the Court] with regard to the remainder of the case." Trial Tr. 7/2/2018 at 135:24-136:1. CAS responded that it "has two issues outstanding," including "the Section 101 invalidity of the '262 patent." *Id.* at 136:2-7. The Court confirmed that these issues would be tried "to the Court" because "it's a legal decision," and it advised that it "can do it by way of pleadings and argument." *Id.* at 136:12-14. The Court then advised the parties to "wait till the jury returns and you can determine a date for your pleadings to come in." *Id.* at 137:16-18. After the jury returned, the parties agreed to and proposed a briefing schedule that the Court thereafter adopted. CAS submitted its briefing on the patent eligibility issue according to that agreed schedule.

Nothing in this course of events suggests waiver. Had EcoServices believed that CAS waived the eligibility issue at any point, it should have said so at the appropriate time. It did not. If EcoServices thought CAS's expert reports were deficient (Opp. at 2), it should have moved for summary judgment on the patent eligibility counterclaim at the close of discovery. It did not. If it thought the issue was untimely for trial it should have objected to including the defense and

counterclaim in the Court's final pretrial order. It did not. To the contrary, it *signed* and *proposed* the language in the pre-trial order declaring eligibility of the '262 patent a live issue. Dkt. 174-1 at 15-16, 33. The parties understood unequivocally that patent ineligibility was a live issue to be tried to the Court.

EcoServices does not cite *any* legal rule, standard, or principle for the Court to apply to find waiver in these circumstances. There is none. EcoServices thus forwards no legal argument. That deficiency is alone sufficient to dismiss EcoServices's request for waiver.

Rather than a legal argument, EcoServices presents only its observation that CAS *could* have asked the Court to resolve the patent eligibility issue earlier. Opp. at 2-3. It complains that "[t]here is simply no reasonable explanation as to why" CAS did not move earlier. Opp. at 3. But it does not say why any explanation is necessary. Again, it cites no legal rule, standard, or principle suggesting CAS's timing is improper.

To the extent any explanations are needed, they abound. For example, because patent eligibility is a question of law that "may contain underlying issues of fact," moving for judgment pre-trial would have placed heavy procedural burdens on CAS with respect to all fact issues. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). EcoServices fails to explain why CAS should have been forced, on pain of waiver, to move under those disadvantageous standards.

Another reason to wait was simply that resolving the eligibility issue required the litigation to mature. The parties have disputed the meaning of "information detector" throughout this trial, and now that the jury has finally agreed with EcoServices that the term encompasses all interfaces (including a keypad), CAS can argue without reservation that the component is generic. *See* Trial Tr. 6/27/2018 at 155:6-17 (EcoServices's expert testifying that the "information detector" is a "keypad"). That determination critically supports the patent ineligibility argument CAS now presents.

3

Finally, EcoServices is wrong to suggest that it is somehow improper for a court to consider eligibility after the summary judgment stage. EcoServices cites no authority so holding, and we are aware of none.

To the contrary, at least one Federal Circuit judge has opined that courts *should* "defer addressing [patent eligibility] until first having the issues in §§ 102, 103, and 112 addressed" because doing so would help sharpen or obviate the eligibility dispute. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1355 (Fed. Cir. 2018) (Plager, J., concurring-in-part and dissenting-in-part). This makes eminent sense, particularly now that the Federal Circuit has declared patent eligibility a question of law with "underlying issues of fact." *Berkheimer*, 881 F.3d at 1365. Under that rubric, it is certainly appropriate for the Court's resolution of the judicial exceptions to be "delayed until determinations are made under the statutory standards." *Interval Licensing*, 896 F.3d at 1355-56. There is no more reason to decide eligibility at the pre-trial stage than there is to decide obviousness at that point.

In sum, the record and the law make clear that the '262 Patent's eligibility is a live trial issue ripe for the Court's consideration.

**II.  CAS Did Not Misstate The Law Of Patent Eligibility.**

The legal premise of CAS's position is that "[t]he abstract idea of automating a known process is not eligible for patent protection. Only particular methods or machines for accomplishing the automation are." Mot. at 4. EcoServices disputes that premise, but the premise is beyond dispute. Mot. at 12-14.

*First*, EcoServices argues that CAS "boldly asserts" this legal premise "[w]ithout citing any authority." Opp. at 12. That is false. CAS dedicated a full four-page section of its motion to supporting that legal premise. *See* Mot. at 5-9. The section cites *nineteen* different cases demonstrating that CAS's position is firmly supported by two centuries of case law. EcoServices's contention that CAS has not cited authority on this point is inexplicable.

*Second*, EcoServices could not be more wrong that *McRo* "rejected" CAS's legal premise. Opp. at 12. Just the opposite is true. *McRo* was one of the seminal post-*Alice* cases *establishing* that premise. And that is why CAS cited the opinion so extensively in its opening brief (*see* Mot. at 5, 7-8), along with *six* more Federal Circuit opinions saying exactly the same thing (*id.* at 8 n.2).

*McRo* involved claims to a new method of creating computer animations—a method that replaced the "subjective determinations" of human animators with a particular set of "mathematical rules." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). The Federal Circuit explained that "processes that automate tasks … are patent eligible *if properly claimed*," and they are "properly claimed" if they "focus on a specific means or method" of accomplishing the task rather than "merely invoke generic processes and machinery." *Id.* (emphasis added). In other words, claims drawn to automation are only eligible if they recite a new *way* of accomplishing the task, not merely the idea of automating it.

Looking to the specification and the remainder of the record, *McRo* found "no suggestion that animators were previously employing the type of rules required by claim 1." *Id.* It thus concluded that the claim recited a new *process*—*i.e.*, "the process previously used" was not "the same as the process required by the claims." *Id.* The court expressly distinguished the situation from those (like here) where "the claimed computer-automated process and the prior method were carried out in the same way." *Id.*

EcoServices is right that "*McRo* is directly on point." Opp. at 12. Indeed, the decision is dispositive. It fully support's CAS's legal premise that "[t]he abstract idea of automating a known process is not eligible for patent protection. Only particular methods or machines for accomplishing the automation are." Mot. at 4; *see also id.* at 10. And it confirms that the claims of the '262 Patent are ineligible because "the claimed computer-automated process and the prior method were

5

carried out in the same way"—*i.e.*, where a human operator would identify the type of wash and calibrate the washing unit accordingly, now a generic computer does exactly the same thing, only more quickly and accurately. *McRO*, 837 F.3d at 1314. That is not invention.

*Third*, EcoServices is argues that one of the nineteen cases supporting CAS's legal premise (*OIP Techs.*) is "inapposite" because the claims there did not "include[] specific hardware." Opp. at 13. But neither do the claims here. That is the entire point of CAS's motion. Mot. at 10-18. EcoServices does not say what "specific hardware" its claims include, and as CAS has argued in exhaustive detail, they include none. *Id*. Rather, the claims recite a generic computer and keypad that operates a generic "washing unit" exactly as human operators had in the past, but more quickly and more accurately. *OIP* holds that "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015). The opinion is thus directly on point. It confirms that the '262 Patent is ineligible.

In sum, there can be no question that CAS's legal premise is correct: "[t]he abstract idea of automating a known process is not eligible for patent protection. Only particular methods or machines for accomplishing the automation are." Mot. at 4. The '262 Patent does not claim a particular method or machine for washing engines, only the idea of using a computer to perform what used to be a manual task more quickly and accurately. That is ineligible.

### III. The Claims Are Ineligible Because They Recite The Idea Of Using A Generic Computer And Keypad To Operate A Generic Washing Unit More Quickly And Accurately.

The idea of using a generic computer and keypad to operate a "washing unit" more quickly or more accurately is not patent eligible. The claims here are "directed to" that idea and no more.

### A. *Alice* step one

EcoServices's step one rebuttal is completely unresponsive because it rebuts a position CAS has not taken and has no interest in taking. Opp. at 5-8.

EcoServices contends that CAS is trying to "reargue" claim construction by seeking a narrower construction of the term "information detector," based on the specification. Opp. at 6-8. That is backwards. CAS is arguing that the *broad* reading on which EcoServices obtained the infringement verdict renders the term generic for purposes of eligibility. EcoServices appears to misunderstand that argument.

At claim construction, CAS argued that the specification limits the "information detector" to a component that gathers engine type information *in a specific way—i.e.*, by reading the information from an "information unit." Mot. at 13-14. EcoServices opposed that position and obtained a *broader* (ordinary meaning) construction that did not limit the claims to that specific way of obtaining the engine type information. Opp. at 7. At trial, EcoServices argued that the "information detector" term is so broad that it captures *any* interface, including a keypad. *See* Trial Tr. 6/27/2018 at 155:6-17 (EcoServices's expert testifying that the "information detector" is a "keypad"). The jury accepted that argument through its infringement verdict.

The eligibility argument CAS now advances is that, if the "information detector" is indeed so broad that it captures *any* interface, even a keypad, then that component is necessarily generic—*i.e.*, it cannot and does not refer to any specific hardware for or method of detecting the engine type. Mot.13-15. In other words, CAS here *accepts* the broad construction of "information detector" required to support the infringement verdict, and it argues that this broad construction renders the claim element generic. All of EcoServices's contentions that CAS is trying to reargue claim construction are thus plainly wrong and irrelevant.

The only potentially relevant remarks EcoServices manages in its opposition

is its conclusory opinion that the claims are not directed to "automation" but "to the specific hardware configured as claimed." Opp. at 6. But EcoServices does not identify what "specific hardware" the claims require. Nor does it articulate how that hardware is "configured" in a non-generic way.

EcoServices does not make these arguments because it cannot. As CAS showed in its opening brief, the claims recite only generic components: (1) the "washing unit" is anything that "provides washing liquid" (Mot. at 12-13), (2) the "controller" is any computer that operates the washing unit (Mot. at 15-18), and (3) the "information detector" is any interface (*e.g.*, keypad), for telling the controller which engine to wash (Mot. at 13-15). These components are generic. Their arrangement is generic. Their functions are generic. The only idea in the claims is that of using a computer to operate a conventional washing unit more quickly and more accurately than did human operators. There is no *how*. The claims are therefore directed to no more than the abstract idea of automating the known washing process. EcoServices's step one opposition contains nothing that might call that conclusion into question.

### B. *Alice* step two

At step two, EcoServices offers only an aimless, conclusory, frequently irrelevant, and ultimately incoherent list of gripes. None demonstrate that the claims include an inventive concept.

EcoServices begins by arguing that the claims do not, as CAS has argued, "merely spell out the steps of [the] conventional process and say 'automate it'." Opp. at 9:4-5. But EcoServices does not explain why that is. In the next few sentences, it suggests the reason could be that the claims do not recite the term "automate it." *Id.* at 9:6-8. But that is obviously irrelevant: when the Federal Circuit held that claims cannot simply "point to conventional applications and say 'do it on a computer'," the claims it invalidated there also did not include the words "do it on a computer." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1243 (Fed. Cir.

8

2016). EcoServices later characterizes CAS's position as an "obvious misstatement" (though it does not say why), and it then accuses CAS of "ignoring the entirety of the claim" (though it does not say what portions of the claim CAS has ignored). Opp. at 9:9-18.

EcoServices then argues that CAS must be wrong because the '262 patent has a nine-year prosecution history. Opp. at 9:19-26. But years of prosecution do not correlate with patent eligibility. *Every* patent invalidated under Section 101 has been examined and issued by the Patent Office after years of prosecution. That the '262 Patent was similarly examined does not make it special or imply that it recites eligible subject matter.

EcoServices then types out claim 1 and chides CAS of addressing "*only*" every claimed component. *Id.* at 9:27-10:15. It then concludes summarily that it is "facially clear that CAS is wrong" because "the claim requires certain configurations of the sub-components." *Id.* But again, EcoServices fails to identify exactly which "configurations" or "sub-components" CAS ignored, let alone explain why those elements undermine CAS's conclusion.

CAS has not ignored any of the claim language. It has considered every limitation (both alone and in combination), and it has explained that none rises above the generic because

> [t]he claimed 'system' does not reveal an improved *method* of washing engines because it performs exactly the same method that had always been performed by human operators, and it does not reveal an improved *machine* for accomplishing the automation because it comprises an entirely generic combination of components.

Mot. at 19; *see also id.* at 10-18.

There is no new method because "the claimed computer-automated process

9

and the prior method were carried out in the same way": the operator identifies the engine and then operates the "washing unit" accordingly. *McRO*, 837 F.3d at 1313.

And there is no new machine because every recited element is generic, as is the combination. The first element requires using a "washing unit" to "provid[e] washing liquid." The second element requires any interface (even a keypad) to indicate the engine type. And the third element requires a generic computer to operate the washing unit according to that type—exactly as humans had, but more quickly and accurately. Thus, every claimed component, their functions, their combination, and their arrangement is all generic. EcoServices never once identifies which specific limitation it believes CAS has overlooked. Nor does it explain why that limitation provides an inventive concept.

Next, EcoServices argues that whether the claim "discloses a conventional washing process" is a factual dispute on which there was an "extensive" trial record, which CAS has "largely ignored." Opp. at 10:16-23. Again, EcoServices fails to follow its own advice and provides no citation to any parts of that "extensive" trial record. In any event, EcoServices is wrong that a factual dispute precludes judgment here because: (1) CAS's argument does not require a factual finding that engine-specific washing process described in the claims was conventional, and (2) the record is anyway stocked with clear and convincing evidence that it was.

*First*, CAS's argument does not require a factual finding that the claimed engine-specific washing process was conventional. The idea of customized washing is itself abstract. Every day, we all clean things using processes tailored to the thing being cleaned. Consequently, the idea of washing an engine using a process tailored to the engine being cleaned is an abstract idea, and an abstract idea cannot supply an inventive concept. *See BSG Tech LLC v. BuySeasons, Inc.*, No. 2017-1980, 2018 WL 3862646, at *7 (Fed. Cir. Aug. 15, 2018) ("a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept").

"[T]he relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea … on a generic computer. They do not." *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014).

*Second*, the specification provides clear and convincing evidence that engine-specific washes were conventional. *See* Mot. at 2. The patent admits that, conventionally, "[a] specific … washing configuration is prepared for each specific engine" ('262 Patent at 2:46-49), that because the configuration "is done manually[,] there is always a risk that the human factor jeopardizes the result" (*id.* at 3:56-58), and that the goal of the invention is "to provide a system and method that can … minimize the risk of wrongly operating the equipment" (*id.* at 4:11-14). Thus, there can be no question that the "invention" is the idea of using a generic computer to automate an error-prone part of an existing process.

EcoServices next argues that "to succeed in its motion, CAS needs to prove, by clear and convincing evidence, that [all] the claim elements at issue were well-understood, routine, and conventional." Opp 10:23-28. And it argues that such a finding "would also be inconsistent with the jury's findings" of no obviousness. Opp. at 10:28-11:3. Not so.

*First*, a finding that any particular component was routine and conventional is certainly consistent with the jury's obviousness verdict because the obviousness inquiry includes legal elements other than whether the elements were known in the prior art. For example, an obviousness verdict may rest on secondary considerations, a missing motivation to combine, or on any other deficiency apart from the novelty of any particular component. A verdict the defendant failed to prove a claim obvious therefore does not conflict with a determination that the claim is ineligible.

*Second*, there is no rule requiring proof that every claim element was routine

11

and conventional. EcoServices cites no legal authority announcing that rule.[1] To the contrary, many opinions, including *Alice*, have held claims ineligible without evidence that every component was routine and conventional. For example, a claim is ineligible where "each step does no more than require a generic computer to perform generic computer functions." *Alice*, 134 S. Ct. at 2359. And that is exactly what CAS has shown here: the claims simply call for a generic computer to operate a generic washing unit in a conventional or abstract way.

Finally, EcoServices returns to its conclusory refrain that the claims "recite specific configurations of components, using prescribed connections to achieve the ultimate goal." Opp. at 11:4-11. And it adds this time that "CAS never considers the claim as a whole." *Id.* at 11:16-12:4. But again, EcoServices does not say what elements CAS failed to consider or what about the claims "as a whole" is inventive.

As CAS has shown, the claims considered as a whole are entirely generic. Every machine that washes an engine according to engine type will infringe: every one will need a "washing unit" to provide washing liquid, every one will need an "interface" (such as a keypad) to determine the engine type, and every one will need a computer to operate the washing unit accordingly.

Rather than claim a new method or machine for performing the washes, the inventors simply claimed the idea of automating it using a computer. Such claims strip the "future inventor, in the onward march of science," of the incentive to discover new ways of achieving the same result more cheaply and efficiently than has the patentee. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 85 (2012) (citing *O'Reilly v. Morse*, 56 U.S. 62, 113 (1853). That is exactly what the judicial exceptions were designed to prevent. *Id.*

---

[1] The closest it comes is a general citation to the non-precedential decision in *Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959 (Fed. Cir. 2018) (*see* Opp. at 10). But that case, like many others, only holds the converse—that a conventional element cannot provide an inventive concept.

## CONCLUSION

CAS respectfully requests that the Court hold claims 1, 9, and 14 of the '262 Patent invalid under 35 U.S.C. § 101 for claiming ineligible subject matter.

Dated: August 29, 2018

MAYER BROWN LLP
By: /s/ *Stephen E. Baskin*
Stephen E. Baskin

Dale J. Giali (SBN 150382)
Elizabeth M. Burnside (SBN 258184)
Stephen E. Baskin (*pro hac vice*)
Dara M. Kurlancheek (*pro hac vice*)
Gregory J. Apgar (*pro hac vice*)
Canek Acosta (SBN 301901)
*Attorneys for Defendant/Counter-Plaintiff Certified Aviation Services, LLC*

**Certificate of Service**

I, Stephen E. Baskin, hereby certify that on August 29, 2018, I filed the within and foregoing Defendant's Reply Brief in Support of its Motion for Judgment of Patent Ineligibility of the '262 Patent with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing:

Natasha E. Daughtrey
ndaughtrey@goodwinlaw.com
GOODWIN PROCTER LLP
601 South Figueroa Street, 41st Floor
Los Angeles, CA 90017
Telephone: (213) 426-2500
Facsimile: (213) 623-1673

Ronald J. Pabis
rpabis@goodwinlaw.com
Stephen K. Shahida
sshahida@goodwinlaw.com
Patrick J. McCarthy
pmccarthy@goodwinlaw.com
Myomi T. Coad
mcoad@goodwinlaw.com
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444

*Attorneys for Plaintiff EcoServices, LLC*

Dated: August 29, 2018          MAYER BROWN LLP

                                By: */s/ Stephen E. Baskin*
                                    Stephen E. Baskin