1   Ronald J. Pabis (pro hac vice)
    *rpabis@goodwinlaw.com*
2   Stephen K. Shahida (pro hac vice)
    *sshahida@goodwinlaw.com*
3   Patrick J McCarthy (pro hac vice)
    *pmccarthy@goodwinlaw.com*
4   Myomi Tse Coad (pro hac vice)
    *mcoad@goodwinlaw.com*
5   **GOODWIN PROCTER LLP**
    901 New York Avenue NW
6   Washington, DC  20001
    Tel.: +1 202 346 4000
7   Fax.: +1 202 346 4444

8   Natasha E. Daughtrey (SBN 319975)
    *ndaughtrey@goodwinlaw.com*
9   **GOODWIN PROCTER LLP**
    601 S Figueroa Street
10  41st Floor
    Los Angeles, California  90017
11  Tel.: +1 213 426 2500
    Fax.: +1 213 623 1673

12
    Attorneys for Plaintiff
13  ECOSERVICES, LLC

14                 **UNITED STATES DISTRICT COURT**

15                **CENTRAL DISTRICT OF CALIFORNIA**

16                      **EASTERN DIVISION**

17

| | |
|---|---|
| 18  ECOSERVICES, LLC, | Case No. 5:16-cv-01824-RSWL-SPx |
| 19         Plaintiff, | **PLAINTIFF ECOSERVICES, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES** |
| 20      v. | |
| 21  CERTIFIED AVIATION SERVICES, LLC, | Judge: Hon. Ronald Sing Wai Lew |
| 22         Defendant. | Complaint Filed: April 22, 2016 Trial Date: June 26, 2018 |
| 23 | Filed concurrently with: |
| 24 | 1. Declaration of Myomi Coad |
| 25 | |

26

27

28

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................... 1

II.    ARGUMENT ............................................................................................ 2

       A.    THE TOTALITY OF THE CIRCUMSTANCES RENDERS THIS CASE EXCEPTIONAL ............................................................ 2

       B.    CAS PROFFERED MULTIPLE 'FACTS' THAT IT KNEW OR SHOULD HAVE KNOWN WERE WRONG ..................................... 3

             1.    CAS Concealed the Identity of the Nozzle Used in the Accused System ............................................................... 3

             2.    CAS Offered Incorrect Testimony Regarding the Hose Used in the Accused System ....................................... 7

             3.    CAS Offered Incorrect Testimony Regarding the Rotation of the Fan During the Cyclean Wash ......................................... 10

       C.    CAS'S WRITTEN DESCRIPTION TESTIMONY WAS BASED ON THE WRONG STANDARD ........................................... 13

       D.    CAS'S LAST MINUTE DROPPING OF DEFENSES WAS NOT TYPICAL STREAMLINING ..................................................... 16

       E.    CAS DID NOT PERFORM AN ADEQUATE INVESTIGATION ................................................................................ 16

       F.    THE JURY'S FINDING OF WILLFULNESS SUPPORTS A FINDING THAT THIS CASE IS EXCEPTIONAL ........................... 19

III.   CONCLUSION ....................................................................................... 20

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Federal Cases**

4

5

*Chung v. Vaporous Technologies, Inc.*,
    No. CV 16-08586-RSWL-PLA (C.D. Cal. Aug. 14, 2018) ..............................2, 3

6

7

*Dexcom, Inc. v. AgaMatrix, Inc.*,
    No. 2:16-cv-05947, at 9-10 (C.D. Cal. May 30, 2018) ......................................18

8

9

*MarcTec, LLC v. Johnson & Johnson*,
    664 F.3d 907 (Fed. Cir. 2012) ..............................................................................18

10

11

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ............................................................................................2

12

13

*Spectralytics, Inc. v. Cordis Corp.*,
    649 F.3d 1336 (Fed. Cir. 2011) ............................................................................19

14

15

*Tech. Props. Ltd. LLC v. Canon, Inc.*,
    No. 4:14-cv-03640, 2017 U.S. Dist. LEXIS 144204 (N.D. Cal. Jan.
    26, 2017) ................................................................................................................18

16

17

*Transclean Corp. v. Bridgewood Servs., Inc.*,
    290 F.3d 1364 (Fed. Cir. 2002) ............................................................................19

18

**Federal Statutes**

19

35 U.S.C. § 285.............................................................................................................19

20

21

**Other Authorities**

22

Fed. R. Civ. P. 1 ...........................................................................................................16

23

24

25

26

27

28

Plaintiff EcoServices, LLC ("EcoServices") respectfully responds to Defendant Certified Aviation Services, LLC's ("CAS") opposition to EcoServices' Motion for Attorneys' Fees.  For the reasons stated in EcoServices' Motion for Attorneys' Fees and herein, EcoServices respectfully requests that the Court grants the Motion in its entirety.

## I.   INTRODUCTION

CAS's Opposition to EcoServices' Request for Attorneys' Fees is an exercise in distraction and an attempt to rewrite history.  The record of this case shows that CAS presented the jury with assertions and assumptions regarding the accused Cyclean system that were unsupported by the record evidence and demonstrably false.  Lacking any justifiable excuse for its proffered 'evidence,' CAS's Opposition downplays the significance of the incorrect testimony it submitted to the jury by characterizing it as "inconsequential" and "hardly relevant to CAS's non-infringement positions."  ECF No. 281 at 9.  That revisionist history is expressly belied by what CAS told and showed to the jury during trial.

CAS's strategic decision to proffer multiple 'facts' and assumptions that it either knew or should have known were wrong to support its non-infringement positions makes this case exceptional.  If these were truly mere "technical flaws" that had happened once, the Court might conclude that the presentation to the jury was a simple mistake.  But CAS's repeated and calculated attacks on EcoServices' proofs were shown time and again to have no basis in fact.

The numerous baseless statements and assumptions proffered by CAS on the infringement issue should, in and of themselves, render this case exceptional.  They were demonstrably wrong, and CAS should have known as much.  So, when one takes CAS's strategic decision to present such testimony and combines it with the weakness of CAS's written description defense, its last-minute jettison of its voluminous yet weak invalidity defense on the '860 patent and the jury's finding of willful infringement, the totality of the circumstances in this case make it "stand

out from others with respect to the substantive strength" of CAS's position.  That is the standard for a finding of an "exceptional" case.  Attorneys' fees are, therefore, appropriate here.

## II.    ARGUMENT

### A.    THE TOTALITY OF THE CIRCUMSTANCES RENDERS THIS CASE EXCEPTIONAL

This Court recently set forth the standard for attorneys' fees in *Chung v. Vaporous Technologies, Inc.*, No. CV 16-08586-RSWL-PLA, (C.D. Cal. Aug. 14, 2018) as follows:

> '[A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.' *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). 'District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.' *Id.* Fees may be awarded where 'a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless' exceptional. *Id.* at 1757. '[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award.' *Id.* A party must prove its entitlement to fees by a preponderance of the evidence. *Id.* at 1758.

ACTIVE/96371099.6

2

1  *Chung* at 4.  The trial in this case demonstrated that, looking at the totality of the

2  circumstances, CAS's proffered positions were exceptionally meritless.

3  **B.    CAS PROFFERED MULTIPLE 'FACTS' THAT IT KNEW OR**

4  **SHOULD HAVE KNOWN WERE WRONG**

5  CAS does not (nor can it) dispute that several of the statements it told the

6  jury about the accused Cyclean system and several assumptions used by Dr.

7  Micklow regarding the accused system were, in fact, manufactured.  Thus, the only

8  hand CAS has to play is to try and downplay the significance of those false

9  statements.  CAS does precisely that by characterizing them as "inconsequential

10  quibbles" with regard to facts that were "hardly relevant to CAS's non-

11  infringement positions."  ECF No. 281 at 9.  If that were truly the case and these

12  assertions were indeed "inconsequential" as CAS now states, why did CAS proffer

13  them to the jury?  And why did CAS create demonstrative exhibits that were based

14  on those false assumptions?  The trial testimony shows that these statements and

15  assumptions were not inconsequential but were, by CAS's own words, "important"

16  to and an integral part of its non-infringement defense.

17  **1.    CAS Concealed the Identity of the Nozzle Used in the**

18  **Accused System**

19  In its opening brief, EcoServices pointed out that CAS never informed its

20  own expert, Dr. Micklow, of the identity of the nozzle that is used in the Cyclean

21  system despite the fact that CAS had received that information from Lufthansa.

22  Instead, CAS argued at trial, through Dr. Micklow, that it did not know what

23  nozzles were used.  ECF No. 272 at 8,12.  Rather than dispute the fact that CAS

24  had learned the identity of the relevant nozzle, CAS's Opposition astonishingly

25  asserts that EcoServices "fails to explain why that mattered" or "what opinion of

26  Dr. Micklow . . . would have required inspection of CAS's nozzles."  ECF No. 281

27  at 10.

28

1       The relevance of the nozzle used in the accused Cyclean system (*i.e.*, why it

2 "mattered") was not only self-evident from all of the trial testimony, it was the

3 primary basis for CAS's non-infringement defense as shown both in CAS's

4 opening statement and in Dr. Micklow's direct testimony.  The import of the

5 nozzle and its characteristics appears throughout the transcript, starting with CAS's

6 opening statement:

7             Importantly, something I want to emphasize and make

8             sure is clear the 453 nozzle, the 504 nozzle and the 364

9             nozzle ***Mr. Kushnick doesn't know if they're the actual***

10             ***nozzles that are used in the Cyclean system***. He tested

11             these three nozzles and there's no evidence that you're

12             gonna hear. CAS doesn't know. Like I said, the nozzles

13             come from Lufthansa Technik in these black adhesive

14             casing. Okay?

15 Ex. A, Trial Tr. (June 26, 2018) at 74:9-15 (CAS Opening Statement) (emphasis

16 added).  References to the identity of the nozzle continued throughout the defense

17 case, for instance in Dr. Micklow's direct testimony:

18

19             Next, the second requirement for Claim 1 of the '860

20             patent, particle size. The evidence presented indicates

21             that ***the nozzle is the evidence*** or supposed to be what is

22             relied on to show particle size. ***There is no evidence that***

23             ***has been submitted in this case about the actual nozzle***

24             ***used in the Cyclean system***. That's the first reason, Your

25             Honor.

26 Ex. B, Trial Tr. (June 28, 2018) at 152:8-13 (Micklow Direct) (emphasis added).

27 Dr. Micklow even presented the jury with a demonstrative on this point:

28



Micklow Demonstrative Slide 52.  CAS's suggestion that the identity of the nozzle is "hardly relevant" remains contrary to CAS's presentation at trial.  And, CAS's characterization of the fact that it did not provide the identity of the nozzle to its hired expert  was "inconsequential" is nothing more than a hindsight attempt to justify CAS's decision to keep relevant evidence from its expert, and ultimately from the jury.

CAS also incorrectly states that "there was no dispute at the trial that the accused system used a Lechler 652 series nozzle."  ECF No. 281 at 10, n.2.  If that were the case, why did CAS tell the jury the following?

> Now, Mr. Kushnick tests the Lechler 652 series nozzles.
> Point number one. ***Nobody knows if it's an actual nozzle that is used within the Cyclean system.*** The inspection that was done by both experts when the equipment comes from Lufthansa Technik, CAS gets it and the nozzle has this black cohesive protective tape on it. It's more than tape. It's a casing. It can't be removed.

Ex. A, Trial Tr. (June 26, 2018) at 73:1-7 (CAS Opening Statement).  And, if CAS wanted to make clear that there was no such dispute, why did it elicit the following testimony from its expert?

1
2
3
4
5
6
7

> Next, the second requirement for Claim 1 of the '860 patent, particle size. The evidence presented indicates that the nozzle is the evidence or supposed to be what is relied on to show particle size. ***There is no evidence that has been submitted in this case about the actual nozzle used in the Cyclean system***. That's the first reason, Your Honor.

8
9
10
11
12
13

Ex. B, Trial Tr. (June 28, 2018) at 152:8-13 (Micklow Direct) (emphasis added). In fact, contrary to what CAS represents to this Court now, Dr. Micklow continually referred to the nozzle in his testimony as the "hypothetical Lechler nozzle." *See, e.g.*, Ex. C, Trial Tr. (June 29, 2018) at 20:16-18 (Micklow Direct)( "So particle size and particle velocity are related to the hypothetical Lechler nozzles which are used hypothetically in the Cyclean system.")

14
15
16
17
18
19
20
21
22
23
24

The undisputed fact is that CAS was told by Lufthansa Technik ("Lufthansa") employees that the Cyclean system used the Lechler 652 series nozzles. (*See, e.g.*, Ex. B, Trial Tr. (June 28, 2018) at 149:3-12). Despite having access to this and other technical information about the Cyclean system through Lufthansa, CAS neglected to obtain additional information and failed to inform its own expert about that information. CAS did not provide its expert with any Lechler 652 series nozzles. Nor did CAS have its expert purchase or inspect any Lechler 652 series nozzles. Instead, CAS simply had its expert opine that he did not know what nozzle was used in the accused system and tell the jury he could not know because the nozzle was covered with a black adhesive tape. That type of "head-in-the-sand" position is objectively unreasonable and misleading.[1]

25
26
27
28

---

[1] The only evidence at trial was that when CAS asked Lufthansa for technical information, Lufthansa provided it. *See, e.g.*, Ex. B, Trial Tr. (June 28, 2018) at 142:20-24; 144:14-16 (Mr. Caban testifying that when he asked Mr. Winter, CAS's program manager at Lufthansa Technik for Cyclean, about the type of nozzle used in the Cyclean system, Mr. Winter informed Mr. Caban that the Cyclean system

## 2.  CAS Offered Incorrect Testimony Regarding the Hose Used in the Accused System

CAS also, through Dr. Micklow, advanced a non-infringement theory at trial that was based on an assumption that the Cyclean system uses a 100 foot hose.  It is undisputed that Dr. Micklow never measured the length of the hose despite the fact that the Cyclean system remains under CAS's possession, custody and control.  It is also undisputed that the only documentary evidence on that issue showed that Mr. Micklow's assumption was, in fact, false.  (*See, e.g.*, Ex. C, Trial Tr. (June 29, 2018) at 90:8-16); JX117 (listing a "20m high pressure tube").

In its Opposition, CAS now claims that the length of the hose was not important to the analysis.   But CAS elicited that exact testimony in direct examination of its non-infringement expert as shown below:

> Q.   And did the calculation that you performed, does it depend on the length of the hose?
>
> A.   Yes, it does.
>
> Q.   And when you observed the hose at the inspection, how long did it appear to be to you?
>
> A.   I would say within reasonable engineering certainty, about 100 feet.

---

uses the Lechler 652 nozzle); *see id.* at 100:24-101:8 (Mr. Caban testifying that in the event a Cyclean unit breaks "Lufthansa will send a person over from Germany" or in the case of a nozzle, Lufthansa will ship CAS "a new one"); *see also id.* at 125:12-15 (Mr. Caban testifying "yes" to the question on cross-examination that CAS has a partnership with Lufthansa Technik related to Cyclean); *id.* at 131:23-132:1; 134:4-6 (Mr. Caban testifying that Mr. Winter, CAS's program manager at Lufthansa Technik for Cyclean, provides operating manuals to CAS).  As the Court is aware, Lufthansa was present at the trial in this case, and as an obviously interested party, likely incentivized to assist CAS.  It stands to reason that Lufthansa would have willingly provided any requested technical data or parts, including sample nozzles,  to CAS (at least assuming the information was helpful).

1   Ex. C, Trial Tr. (June 29, 2018) at 28:13-19 (Micklow Direct).  CAS cannot, and

2   does not, explain why it would elicit testimony from its expert on technical details

3   that it now claims were not relevant to its non-infringement analysis.  Ignoring the

4   record, CAS's Opposition states that "Dr. Micklow's analysis was not 'based on'

5   the assumption that the hose would be 100 feet long."  ECF No. 281 at 11.  But

6   that statement squarely contradicts Dr. Micklow's direct testimony as shown

7   above.  Dr. Micklow's testimony under cross-examination also refutes CAS's new

8   argument:

9       Q.   And those calculations were based on certain

10           assumptions; right?

11      A.   Yes, they were.

12      Q.   And one of those assumptions was the length of

13           the hose.

14      A.   That's correct.

15      Q.   And you assumed a 100-foot hose; right?

16      A.   Well, I saw the hose at the inspection site so based

17           on my experience, I said it was probably 100 feet.

18      Q.   Okay. That wasn't my question.

19      A.   Okay.

20      Q.   One of the assumptions was the hose length and

21           you assumed in your assumption 100 feet; right?

22      A.   That's correct.

23  Ex. C, Trial Tr. (June 29, 2018) at 85:12-24 (Micklow Cross).  CAS also elicited

24  testimony from Dr. Micklow during direct examination that the reason he

25  concluded that the hose was 100 feet long was in part because he "looked at the

26  overall system and the washing unit is probably oh, 50 to as much 100 feet away

27  from the engine when it's being operated."  Ex. C, Trial Tr. (June 29, 2018) at

28

1    23:11-13 (Micklow Direct).  That testimony was also shown to be demonstrably

2    false because as shown below the washing unit and the engine are practically side

3    by side (EcoServices Closing Demonstrative Slide 36) [2]:



4

5

6

7

8

9

10

11

12

13       In addition, CAS's Opposition also misstates the trial evidence relating to

14   the number of bends in the hose.  CAS's Opposition states: "EcoServices next

15   complains that 'CAS, through Dr. Micklow, advanced a non-infringement theory at

16   trial that was based on . . . 50-60 bends in the hose.'  ECF No. 272 at 8.  It did not.

17   Indeed, the record contradicts this premise directly."  ECF No. 281 at 12-13.

18   Unfortunately for CAS, there is a transcript, which shows Dr. Micklow's testimony

19   on this point.

20       Q.   So what is *your opinion regarding the pressure*

21            *limitation of Claim 1* of the '860 patent?

22       A.   My opinion is *that it could be easily not satisfied*.

23       Q.   And are you aware of any evidence showing that it

24            is satisfied?

25

26   _____

27   [2]  The picture below (EcoServices Closing Demonstrative Slide 36), from the inspection, shows Dr. Micklow standing in front of the washing unit and the engine

28   with his back to the camera, filming the procedure.

A.  Well, once again, we don't have a pressure gauge
at the nozzles and so there's no engineering data
which could even begin to make any type of
determination of what the pressure is at the nozzle.
So I had to assume the straight hose. ***The hose I
saw that night probably had 50 or 60 or 70 bends
in it.*** The only way to easily determine it would be
to have a pressure gauge at the nozzle.

Ex. C, Trial Tr. (June 29, 2018) at 28:25-29:11.  (Micklow Direct).  That is clearly
a non-infringement position (the limitation "could be easily not satisfied") that is
based on the testimony that there were somewhere between 50-70 bends in the
hose during the Cyclean wash.   That testimony was clearly baseless as
demonstrated by the videos of the Cyclean inspection (EcoServices Closing
Demonstrative Slide 40).



3.  **CAS Offered Incorrect Testimony Regarding the Rotation
of the Fan During the Cyclean Wash**

CAS also seeks to distance itself from its demonstrably incorrect
representations at trial relating to a rotational velocity of the engine fan during a
Cyclean wash of 2550 revolutions per minute.  Faced with the undisputable fact

that CAS elicited this incorrect testimony, CAS attempts to brush it aside, calling it a "minor factual dispute" and a "non-issue with no bearing on the substantive strength of CAS's non-infringement position."  ECF No. 281 at 13-14.  But that is a much different story than CAS told the jury.   At trial, CAS deliberately advocated how important this issue was and affirmatively used this rotational velocity as a basis for its non-infringement defense, stating for example:

> So Dr. Micklow will explain that taking into consideration these real world conditions, when I say real world, I mean the engine wash of pressure, right, of friction from the nozzle, and then **the velocity due to the rotation**, all those come into play to **take it outside the range**. And that will be Dr. Micklow's testimony that you will hear.

Ex. A, Trial Tr. (June 26, 2018) at 78:20-25 (CAS Opening)(emphasis added).  In Dr. Micklow's direct testimony, CAS attempted to establish the "importance" of the rotation:

> Q.     And does the rotation that's present in the Cyclean system also affect particle size?
>
> A.     Yes. In fact the ***rotation is an important component*** of the Cyclean system.

Ex. C, Trial Tr. (June 29, 2018) at 41:21-23 (Micklow Direct).   CAS then used the false rotational speed of the fan to make the point that the particle velocities would be outside the claimed range and to present the following demonstrative to the jury on that point.

Micklow Demonstrative Slide 56.

On cross-examination, Mr. Micklow admitted that the 134-144 meters per second result shown in his demonstrative used a rotational velocity of 2550 meters per second:

> Q.   And in these -- in your equation, you came out with, um, a velocity of 134 to 144 meters per second; right?
>
> A.   That's correct, yes.
>
> Q.   And you did that to show that this right here is outside of the claim range; right?
>
> A.   I showed that the rotational velocity could have a significant effect, yes.
>
> Q.   And one of the inputs to that equation that you used to get to this result is the 2550 rpm of the fan; right?
>
> A.   That's correct

Ex. C, Trial Tr. (June 29, 2018) at 110:4-13 (Micklow Cross).  The notion that CAS's emphasis on the absurdly high  rotational velocity was a non-issue with "no bearing" on CAS's non-infringement argument is simply false and belied by

CAS's own opening statement and its experts' testimony.  What remains true is that CAS's own video evidence and the testimony of its own corporate witness, Mr. Caban, showed that CAS's assumptions and the figures it put in its demonstratives to show non-infringement were not only incorrect but also that CAS knew or should have known that the assumed facts were false.  Nevertheless, CAS elicited testimony based upon that assumption—one that CAS's own Mr. Caban found absurd and one that was shown to be false by CAS's own video documentation.[3]

### C.   CAS'S WRITTEN DESCRIPTION TESTIMONY WAS BASED ON THE WRONG STANDARD

CAS also presented an invalidity opinion from its technical expert that was based on the wrong legal standard.  In its Opposition, CAS states that Dr. Micklow "did not apply the wrong legal standard" and that EcoServices is merely "pounc[ing] on his statement during cross examination."  ECF No. 281 at 16.  In reality, CAS presented this incorrect standard to the jury in its own direct examination of Dr. Micklow:

> Q.    Dr. Micklow, yesterday you also mentioned that you had a second opinion on the validity of one of the '262 patent claims. Can you explain that opinion?

---

[3] CAS now incredibly seeks to blame EcoServices for CAS's decision to submit this incorrect evidence, arguing that EcoServices "never complained" about the basis for Dr. Micklow's opinions.  ECF No. 281 at 9.  But EcoServices could not anticipate that CAS would present such falsehoods to the jury.  For instance, at Dr. Micklow's deposition, EcoServices pointed out the fact that Dr. Micklow had never counted the rotational velocity of the engine fan during a Cyclean wash and was surprised that, despite pointing that fact out three months earlier, CAS went full-steam ahead at trial with testimony that was belied by simply observing the inspection video.

1          A.     Yes, I'll do my best. I'm not an attorney, but Claim 14 is a claim such that we have an information detector providing information identifying at least one type of washing unit and engine type. And so it's going to identify either a washing unit or engine type. And when I went through the patent, I couldn't find the description of what was the washing unit.

Q.     And why does that in your opinion render the Claim 14 invalid?

A.     Well, then we have to -- ***every term in the claim needs to be explicitly defined in the patent***. And as I stated just a few seconds ago, I didn't see anywhere in the patent that a washing unit was explicitly defined.

Ex. C, Trial Tr. (June 29, 2018) at 14:25-15:15 (Micklow Direct) (emphasis added). That testimony was on direct examination, not on cross examination as the Opposition states. That Dr. Micklow used that approach was simply confirmed in cross examination but Dr. Micklow raised it affirmatively as the standard he applied.

Q.     Can you tell me the standard you applied or the approach you applied for your written description analysis?

A.     That it needs to be explicitly defined.

Q.     Okay. So that is the approach you applied. That's how you came to your conclusion that there was no written description; right?

1           A.     That's correct.

2 Ex. C, Trial Tr. (June 29, 2018) at 63:1-7 (Micklow Cross).   The record also

3 remains clear that CAS tendered a witness to opine on written description without

4 knowing (or ignoring) what the patent office had said about the written description

5 requirement during prosecution.

6           Q.     All right. Could you explain to the jury, please,

7                    what the Patent Office said about written

8                    description during the prosecution of the '262

9                    patent?

10           A.     I cannot do that.

11           Q.     You don't remember what the Patent Office said

12                    about written description?

13           A.     Um, not at this time point in time, no.

14           Q.     Do you whether the Patent Office said anything

15                    about written description?

16           A.     I don't recall.

17 Ex. C, Trial Tr. (June 29, 2018) at 63:8-17 (Micklow Cross).  CAS's Opposition

18 astoundingly states that EcoServices motion was "false" on this point because the

19 trial testimony "says the exact opposite."  ECF No. 281 at 17.  What CAS neglects

20 to inform the Court is that this portion of the cross-examination was after counsel

21 for EcoServices showed Dr. Micklow the PTO's rejection.  The testimony shows

22 that CAS offered expert testimony at trial from nothing more than a mouthpiece

23 that did not understand (or purposely ignored) the legal standards that applied to

24 his testimony and the underlying evidence relevant to that testimony.[4]

25

26 _____

27 [4] CAS attempts to rely on Dr. Micklow's expert *report* to show that he used the correct legal standard.  But Dr. Micklow's expert report is not in evidence and it is

28 immaterial to the question before the Court.  The issue is what was presented to the

### D.    CAS'S LAST MINUTE DROPPING OF DEFENSES WAS NOT TYPICAL STREAMLINING

Three days before trial, CAS dropped its entire invalidity defense as to the '860 Patent.  *See* ECF No. 272-3 (June 22, 2018 email from Steven Baskin, counsel for CAS, to counsel for EcoServices).  CAS asserts, not surprisingly, that this is normal streamlining and "common practice."  ECF No. 281 at 15.  But this is not a scenario where a party drops one or two prior art references in favor of its strongest reference in order to make a case easier for the jury.

Up until the eve of trial, CAS and Dr. Micklow were maintaining that the asserted claims of the '860 Patent were invalid based upon nine different prior art references arranged in 36 different combinations.  By the time fact discovery ended 12 months earlier and certainly by the time expert discovery closed on March 12, 2018, CAS must have known that it was not going to go forward at trial with 36 different combinations of prior art references for the '860 Patent.  Nevertheless, it kept all 36 combinations and forced EcoServices to defend against all 36 combinations until just before the trial began.  That is not conduct aimed at "just, speedy, and inexpensive" resolution of the case. Fed. R. Civ. P. 1.

### E.    CAS DID NOT PERFORM AN ADEQUATE INVESTIGATION

The undisputed evidence at trial was that CAS, upon learning about the lawsuit, did very little, if any, investigation.  Neither Mr. Lee nor Mr. Caban read the patents (Ex. B, Trial Tr. (June 28, 2018) at 78:12-18, 145:4-11), and presumably did not make any effort to obtain information on the technical specifications of the accused system or perform *any* testing to determine whether Cyclean infringes either of the asserted patents (Ex. B, Trial Tr. (June 28, 2018) at

---

jury at trial.   And the trial transcripts demonstrate that what CAS presented, through Dr. Micklow, was the incorrect standard.

16

145:24-146:1)[5] despite the fact that CAS had easy access to technical information about the accused Cyclean system. The evidence also showed that CAS's retained expert did not perform any testing of the accused Cyclean system, did not obtain any of the nozzles or other equipment used in the Cyclean system (Ex. C, Trial Tr. (June 29, 2018) at 60:20-24, 92:16-18.)  CAS's failure to reasonably investigate EcoServices allegations or to perform any testing to determine whether Cyclean infringes the asserted patents further supports a finding that the case is exceptional.[6]

Yet, in its Opposition, CAS now claims it "did make an adequate investigation" and "simply reached the good-faith, contrary conclusion that there was no infringement and that the patents were likely invalid."  ECF No. 281 at 19-20.  That assertion is irreconcilable with CAS's position throughout trial that it just "pressed buttons" and "turned nobs" and that it does not know the technical details of the Cyclean system.  In fact, CAS told the jury:

> Now, Mr. Kushnick tests the Lechler 652 series nozzles.
> Point number one. Nobody knows if it's an actual nozzle
> that is used within the Cyclean system. The inspection
> that was done by both experts when the equipment comes

---

[5] Curiously, the direct testimony of CAS's two fact witnesses contained some stark similarities.  For example, Mr. Caban testified: "I mean, it was kinda like, uh, I was thinking, gosh, if we lease Ford vans, would Chevy sue us because we leased Ford vans?" (Ex. B, Trial Tr. (June 28, 2018) at 114:6-8) and Mr. Lee testified "I thought we're using a piece of equipment like a Ford truck, and it would have been like Chevy suing me for using a Ford truck…" (Ex. B, Trial Tr. (June 28, 2018) at 75:15-17.)

[6] Again, between Lufthansa's obvious interest in the outcome of the case, and CAS's possession, custody and control of the accused Cyclean system, it stands to reason that CAS would seek out the technical details relevant (*e.g.*, nozzle type, hose length, droplet size, etc.) to its non-infringement defense, and do so at the outset of litigation.  Either it did and kept the results a secret rather than opt to settle the case early, or it failed to perform the requisite due diligence.

> from Lufthansa Technik, CAS gets it and the nozzle has this black cohesive protective tape on it. It's more than tape. It's a casing. It can't be removed.

Ex. A, Trial Tr. (June 26, 2018) at 73:1-7 (CAS Opening) (emphasis added).  CAS now takes the position that it performed an investigation and determined it did not infringe.  This directly contradicts its representation to the jury throughout trial that it does not know how its system works.  So, rather than review information in its possession, custody and control (or at the very least available to it from its "partner" Lufthansa), CAS opted to question, though Dr. Micklow, the accuracy and integrity of EcoServices' technical analysis.

Finally, in its opening brief, EcoServices cited the Court to a number of cases found to be exceptional because a party introduced expert testimony that "failed to meet even minimal standards of reliability."  ECF No. 272 at 12.  *See, e.g.*, *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 910 (Fed. Cir. 2012) (holding that action was rendered exceptional by patentee's litigation misconduct based in part on patentee having "introduced and relied on expert testimony that failed to meet even minimal standards of reliability, thereby prolonging the litigation and the expenses attendant thereto."); *Dexcom, Inc. v. AgaMatrix, Inc.*, No. 2:16-cv-05947, at 9-10 (C.D. Cal. May 30, 2018) (finding the case "exceptional" and granting defendant's motion for fees in part because plaintiffs "should have known" that its infringement theories "were indefensible" and "[p]laintiff had sufficient information to see the flaws in its arguments…"); *Tech. Props. Ltd. LLC v. Canon, Inc.*, No. 4:14-cv-03640, 2017 U.S. Dist. LEXIS 144204, at *4, 9 (N.D. Cal. Jan. 26, 2017) (finding case exceptional with respect to the objective unreasonableness and substantive weakness of plaintiffs' litigation position and awarding attorneys' fees where plaintiffs "should have known" that their infringement contention was meritless given the record evidence and previous

1   orders).  This case is similar.  CAS failed to perform any analysis on its own, and

2   its attacks on EcoServices' analysis was based upon Dr. Micklow's baseless

3   assumptions.

4       **F.   THE JURY'S FINDING OF WILLFULNESS SUPPORTS A**

5             **FINDING THAT THIS CASE IS EXCEPTIONAL**

6       EcoServices' Motion for Fees was focused primarily on the arguments

7   above.  Nevertheless, CAS spends almost half of its Opposition on the issue of

8   willfulness and the argument that a finding of willfulness does not automatically

9   entitle EcoServices to an award of its attorneys' fees.  EcoServices does not

10  dispute that assertion.  Indeed, in its motion, EcoServices recognized that fees are

11  in the sound discretion of the Court and that they are "not mandatory when willful

12  infringement has been found"  ECF No. 272 at 4 (citing *Spectralytics, Inc. v.*

13  *Cordis Corp.*, 649 F.3d 1336, 1349 (Fed. Cir. 2011) (citing *Transclean Corp. v.*

14  *Bridgewood Servs., Inc.*, 290 F.3d 1364, 1379 (Fed. Cir. 2002)).  EcoServices

15  further recognized that if the Court does not award fees when a willfulness finding

16  is made, "the general rule [is] that the district court must normally explain why it

17  decides that a case is not exceptional under 35 U.S.C. § 285" and "why it decides

18  not to award attorney fees."  *Id.*

19      Here, the jury's finding of willfulness is simply additional support that this

20  case is exceptional.  The fact that the jury found that CAS's infringement was

21  willful shows that the jury found CAS's actions to be unreasonable.  The jury was

22  instructed that "willful infringement is reserved for only the most egregious

23  behavior such as where the infringement is malicious, deliberate, consciously

24  wrongful and done in bad faith."  Ex. D, Trial Tr. (July 2, 2018) at 113:3-6 (Jury

25  Charge).  The jury rejected CAS's defenses and found that its actions rose to this

26  level.  That finding, although not necessary for a finding that this case is

27  exceptional, further supports a finding that, looking at the totality of the

28

1   circumstances, this case stands out from others with respect to the substantive

2   strength of a party's litigating position.

3   **III.   CONCLUSION**

4        CAS's conduct during litigation and at trial sets this case apart from the run

5   of the mill patent infringement cases.  EcoServices respectfully request the Court

6   grant its Motion and award EcoServices its attorneys' fees.  Should the Court grant

7   the Motion, EcoServices will provide an accounting of reasonable attorneys' fees,

8   accompanied by all appropriate documentation substantiating the reasonableness of

9   the requested fees pursuant to Local Rule 54-10.

10

11

12   Dated:  August <u>29</u>, 2018                    Respectfully submitted,

13

14                                                        By:*/s/ Natasha E. Daughtrey*

15                                                        Ronald J. Pabis
                                                         *rpabis@goodwinlaw.com*

16                                                        Stephen K. Shahida

17                                                        *sshahida@goodwinlaw.com*
                                                         Patrick J McCarthy

18                                                        *pmccarthy@goodwinlaw.com*

19                                                        Myomi Tse Coad
                                                         *mcoad@goodwinlaw.com*

20                                                        **GOODWIN PROCTER LLP**

21                                                        901 New York Avenue NW
                                                         Washington, DC  20001

22                                                        Tel.: +1 202 346 4000

23                                                        Fax.: +1 202 346 4444

24                                                        Natasha E. Daughtrey

25                                                        *ndaughtrey@goodwinlaw.com*
                                                         **GOODWIN PROCTER LLP**

26                                                        601 S Figueroa Street

27                                                        41st Floor
                                                         Los Angeles, California  90017

28

ACTIVE/96371099.6                    20

1   Tel.: +1 213 426 2500
2   Fax.: +1 213 623 1673

3   Attorneys for Plaintiff:
4   ECOSERVICES, LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28