Ronald J. Pabis (pro hac vice)
*rpabis@goodwinlaw.com*
Stephen K. Shahida (pro hac vice)
*sshahida@goodwinlaw.com*
Patrick J McCarthy (pro hac vice)
*pmccarthy@goodwinlaw.com*
Myomi Tse Coad (pro hac vice)
*mcoad@goodwinlaw.com*
**GOODWIN PROCTER LLP**
901 New York Avenue NW
Washington, DC 20001
Tel.: +1 202 346 4000
Fax.: +1 202 346 4444

Natasha E. Daughtrey (SBN 319975)
*ndaughtrey@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S Figueroa Street
41st Floor
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

Attorneys for Plaintiff
ECOSERVICES, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| ECOSERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CERTIFIED AVIATION SERVICES, LLC,<br><br>Defendant. | Case No. 5:16-cv-01824-RSWL-SPx<br><br>**PLAINTIFF ECOSERVICES, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION OR IN THE ALTERNATIVE POST-JUDGMENT ROYALTIES**<br><br>Judge: Hon. Ronald Sing Wai Lew<br><br>Complaint Filed: April 22, 2016<br>Trial Date: June 26, 2018<br><br>Filed concurrently with:<br><br>1. Declaration of Myomi Coad |

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. A PERMANENT INJUNCTION IS PROPER ................................................... 1

    A. ECOSERVICES WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION ................................................................. 1

    B. MONETARY DAMAGES ARE NOT AN ADEQUATE REMEDY ....................................................................................................... 6

    C. THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST FACTORS WEIGH IN FAVOR OF AN INJUNCTION ...................... 7

    D. THERE WAS NO DISCOVERY "FAILURE" ON THE PART OF ECOSERVICES ................................................................................ 7

    E. AN ONGOING ROYALTY IS APPROPRIATE ABSENT A PERMANENT INJUNCTION ............................................................. 8

III. CONCLUSION ................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acumed LLC v. Stryker Corp.*,
    551 F.3d 1323 (Fed. Cir. 2008) .................................................................................5

*Apple Inc. v. Samsung Elecs. Co. (Apple III)*,
    735 F.3d 1352 (Fed. Cir. 2013) ........................................................................3, 4, 5

*Boston Scientific Corp. v. Cordis Corp.*,
    838 F. Supp. 2d 259 (D. Del. 2012) .........................................................................9

*Broadcom Corp. v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013) ................................................................................5

*Chamberlain Grp., Inc. v. Techtonic Inds. Co.*,
    16-c-6097, slip op. (N.D. Ill. July 31, 2018) .........................................................10

*Creative Internet Advert., Corp. v. Yahoo! Inc.*,
    674 F. Supp. 2d 847 (E.D. Tex. 2009) .....................................................................9

*Douglas Dynamics, LLC v. Buyer Products Co.*, 717 F.3d 1336 (Fed
    Circ. 2013) ...............................................................................................................3

*eBay, Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006) .............................................................................................1, 2

*EMC Corp. v. Zerto, Inc.*,
    No. 12-956(GMS), 2016 WL 1291757 (D. Del. Mar. 31, 2016) ............................3

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    No. C 03-1431 PJH, 2012 WL 761712 (N.D. Cal. Mar. 8, 2012),
    *vacated and remanded, Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013) .............................................................................11

*Mondis Tech. Ltd. v. Chimei InnoLux Corp.*,
    822 F. Supp. 2d 639 (E.D. Tex. 2011) .....................................................................9

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007) ........................................................................9, 11

*Paice LLC v. Toyota Motor Corp.*,
   609 F. Supp. 2d 620 (E.D. Tex. 2009) ................................................................... 8

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   702 F.3d 1351 (Fed. Cir. 2012) ........................................................................... 3

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011) ........................................................................... 5

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prods., LLC*,
   807 F.3d 1311 (Fed. Cir. 2015) *vacated in part on other grounds*,
   137 S.Ct. 954 (2017) ........................................................................................ 10

*TransPerfect Global, Inc. v. MotionPoint Corp.*,
   No. C 10–2590 CW, 2014 WL 6068384 (N.D. Cal. Nov. 13, 2014) ........... 6, 7, 11

Plaintiff EcoServices, LLC ("EcoServices") responds to Defendant Certified Aviation Services, LLC's ("CAS") opposition to EcoServices' Motion for Permanent Injunction or in the Alternative Post-Judgment Royalties. For the reasons stated in EcoServices' Motion for Permanent Injunction or in the Alternative Post-Judgment Royalties and herein, EcoServices respectfully requests that the Court permanently enjoins CAS from performing Cyclean washes in the U.S., or, alternatively, award an on-going royalty in the range of $400-$1200 per wash, for post judgment Cyclean washes performed by CAS for the remaining life of the '262 patent.

## I.  INTRODUCTION

CAS's positions on the issue of post-verdict relief are entirely inconsistent and demonstrate CAS's unreasonableness and why a permanent injunction in this case is proper. For instance, in its opposition to EcoServices' request for an injunction, CAS argues that an injunction should not issue because according to CAS "monetary damages are an adequate legal remedy." ECF No. 282 at 12. Nine pages later, however, CAS asserts that EcoServices is not entitled to an ongoing royalty. *Id.* at 21-25. CAS has given no indication that it intends to cease infringing, and therefore CAS should not be allowed to have it both ways and obtain a free pass to continue its infringing activity. CAS should either be enjoined from its continued infringement or it should be ordered to pay a royalty for its infringing Cyclean washes going forward.

## II.  A PERMANENT INJUNCTION IS PROPER

### A.  ECOSERVICES WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION

CAS's Opposition on the issue of a permanent injunction focuses primarily on the argument that EcoServices cannot show irreparable harm under the *eBay* test.[1] According to CAS, there is no causal nexus that relates the harm to the

---

[1] *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 390 (2006).

alleged infringement. ECF No. 282 at 5. But the record evidence shows that there is indeed a causal connection because CAS would not be able to use the Cyclean system in the United States *but for* its infringement of the '262 patent. CAS also actively markets the features of the '262 patent which allows CAS the ability to compete with EcoServices in the market.

Indeed, a central theme of CAS's defense in this case was the notion that it does not have to control the washing system and is merely "pressing buttons" and "turning dials." One of the primary reasons CAS is able to do that is because the inventions claimed in the '262 patent allow the operator to input an engine type and have the control unit perform the wash according to the parameters associated with that engine type, including wash time. CAS admitted as much at trial when it described its marketing video to the jury in its opening statement:

> You're gonna see a video in a little bit about what that means. There's gonna be a similar video that EcoServices' expert observed that you heard about, and you'll see what operators are doing. They're hitting buttons. They're turning nozzles. They're attaching a manifold, a contraption of sorts. You'll see what it looks like. A big, yellow contraption that fits on the engine with a nozzle attached to it.

Ex. A, Trial Tr. (June 26, 2018) at 60:9-16. CAS then described that the "hitting buttons" and "turning nozzles" that CAS markets is part of what is taught by the '262 patent.

> So let's move on to the '262 patent. The '262 patent is the other side, the other part, it's the control unit. It's the knobs, it's the buttons and the title of the patent you can see is automated detection and control system. The

|   |   |
|---|---|
| 1 | purpose of the '262 patent is just that automated |
| 2 | detection. And you heard from counsel, that's to reduce |
| 3 | the number of operators, operator error. That's what the |
| 4 | '262 patent is intended to do and intended to accomplish. |

Ex. A, Trial Tr. (June 26, 2018) at 80:2-9. CAS's marketing of these features supports a finding of the causal nexus. *EMC Corp. v. Zerto, Inc*., No. 12-956 (GMS), 2016 WL 1291757, at * 13 (D. Del. Mar. 31, 2016) (finding causal nexus where infringer "markets some of the patented features as advantages of its product.").

The inventions of the '262 patent allow CAS to perform the Cyclean wash as advertised and there is no evidence in the record that CAS could perform the Cyclean wash, using the Cyclean equipment without infringing. This makes the '262 patented features core to the case. CAS's 180 degree turn, now that the jury has found infringement, should be rejected. There is a causal nexus between CAS's infringement and the harm suffered by EcoServices in the form of lost sales and eroded prices for engine washes. *See* ECF No. 275-3 at 48:25-49:14 (Welch Direct on lost sales) and 212:11-213:24; 225:6-226:12 (Lettiere Direct on price erosion). *Douglas Dynamics*, *LLC v. Buyer Products Co.,* 717 F.3d 1336, 1345 (Fed. Cir. 2013); *see also Presidio Components, Inc. v. Am. Tech. Ceramics Corp*., 702 F.3d 1351, 1363 (Fed. Cir. 2012) ("Direct competition in the same market ... suggest[s] strongly the potential for irreparable harm without enforcement of the right to exclude.").

CAS attempts to analogize this case to consumer electronics cases such as *Apple Inc. v. Samsung*[2] where certain discrete features of the accused products were found to infringe. In that case, Samsung was found to infringe certain design patents relating to the shape and ornamental features of the accused smartphones as

---

[2] *Apple Inc. v. Samsung Elecs. Co. (Apple III)*, 735 F.3d 1352 (Fed. Cir. 2013).

1 well as three utility patents related to, among other things, the manner in which the
2 accused smartphones respond to different ways of touching the screen. The district
3 court found that, although Apple lost market share to Samsung, there was
4 insufficient evidence that Apple's loss of market share was the result of the
5 claimed patented features. On appeal, the Federal Circuit found that the district
6 court did not abuse its discretion in denying the permanent injunction on the design
7 patents but found that the district court did abuse its discretion in denying the
8 permanent injunction on the utility patents and remanded for further proceedings.
9 *Apple III,* 735 F.3d at 1375.

10 Importantly for this case, the Federal Circuit expressly distinguished those
11 types of "complex, multi-featured" cases from those, like the one here, where the
12 infringing feature is necessary to the core functionality of the accused product and,
13 therefore, impacts demand for the product. The claimed features of the '262 patent
14 are not small, discrete features that are decorative or minor but rather, are the
15 features that allow CAS to use the Cyclean system. There was no dispute at trial
16 that the ability of CAS to use the accused system is dependent on the claimed
17 features of the '262 patent. As CAS's counsel explained when describing CAS's
18 own marketing video:

19 The operator then reviews the information on the card
20 about the engine. So here you can't really see it very well
21 in the slide, but there's a list of engine types that are to be
22 washed. That are programmed in well before the van
23 shows up at the aircraft. It's programmed in by Lufthansa
24 Technik and that's what's delivered to Certified Aviation
25 Services to do the wash.

26 And you can see here what happens is the operator then
27 hits these up and down keys, these are up and down keys,
28

>goes to the right and left and to get to the engine type. So if we say A-320, he or she will scroll up and down and will choose the wash program and then press the button start. You'll see the manual right here. It moves up and down in the wash program list. That's what the operator's doing to get the engine type to be washed.

Ex. A, Trial Tr. (June 26, 2018) at 81:23-82:12. There is no evidence that CAS could use the Cyclean system in any other way, and therefore, no record evidence exists that CAS could compete with EcoServices in the market without infringing the '262 patent. That is sufficient to show a causal nexus, and sufficient to show irreparable harm. *See, e.g.*, *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1337 (Fed. Cir. 2013); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142 (Fed. Cir. 2011); *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323 (Fed. Cir. 2008). The evidence crystalized the fact that the harm EcoServices has suffered and continues to suffer has been a direct result of CAS's infringement.

CAS's suggestion that the claimed features of the '262 patent had to factor into the pricing of the Cyclean washes, and therefore the price erosion, (*See, e.g.*, ECF No. 282, at 6-7), mischaracterizes the causal nexus requirement. The causal nexus test is a flexible analysis and EcoServices need only show "*some* connection between the patented feature and demand for [the infringer's] products." *Apple III*, 735 F.3d at 1364. Because CAS is only able to operate the Cyclean system in the manner it is provided to CAS by Lufthansa (including the features of the '262 patent), there can be no credible dispute "that the inclusion of a patented feature makes a product significantly more desirable" or "that the absence of a patented feature would make a product significantly less desirable." *Id*. The '262 patented features are a central part of the Cyclean system and, therefore, necessarily drive at least *some* consumer demand for the infringing product. *See TransPerfect Global,*

ACTIVE/96371093.7                               5

*Inc. v. MotionPoint Corp.*, No. C 10–2590 CW, 2014 WL 6068384, at *6 (N.D. Cal. Nov. 13, 2014) (finding causal nexus where infringing features of defendant's system "were integral parts of the system" and that system would be "impossible to use if you didn't have implicit navigation," and acknowledging "context of head-to-head competitors in a crowded field" of language translation firms).

## B. MONETARY DAMAGES ARE NOT AN ADEQUATE REMEDY

Throughout CAS's post-trial briefing, it has given this Court no indication that it is willing to pay a cent for infringing EcoServices' patents. To the contrary, despite the jury's finding, CAS has disputed EcoServices right to any compensation for CAS's past infringing acts including typical relief such as pre-judgment interest, post-judgment interest and statutory costs. In other words, CAS has made it clear that it will drag out this litigation as long as possible and require EcoServices to litigate every possible purported dispute before it pays any royalty.

Indeed, CAS has indicated that it intends to further move for JMOL once the Court rules on the pending motions and enters judgment, delaying the resolution of this case and denying EcoServices any monetary relief until at least some time in 2019. During that time, CAS will continue to infringe the '262 patent, will likely continue to take market share away from EcoServices using EcoServices patented technology and will likely continue to erode the price of jet engine washes unless it is enjoined from doing so.

Inexplicably, CAS is also disputing EcoServices' entitlement to an ongoing royalty. EcoServices requested that this Court award an ongoing royalty in the event it rules against EcoServices on its request for permanent injunction. CAS has opposed that request, indicating its desire to continue to infringe EcoServices patent without paying a royalty. Without an ongoing royalty, there can be no adequate legal remedy and CAS's opposition to that alternative relief alone undermines CAS's position that monetary damages are sufficient.

## C. THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST FACTORS WEIGH IN FAVOR OF AN INJUNCTION

In its opening papers, EcoServices pointed out that the balance of hardships weighs in favor of an injunction in part because EcoPower engine washes are EcoServices' primary line of business, yet a mere ancillary part of CAS's business. *See* ECF No. 275 at 2 and citations therein. Thus, it would be more harmful to EcoServices to allow CAS to continue its infringement than for CAS to be required to stop this small part of its business or to switch to non-infringing technology. CAS has essentially ignored that argument which stands unrebutted.

With regard to the public interest factor, CAS's only rebuttal is the argument that the '262 patent "covers only a 'non-core' feature of the product." ECF No. 282 at 15. CAS cites no evidence for that point and, as shown above, it is contrary to the evidence and arguments made at trial. Although CAS states that the '262 patent "has nothing to do with water being sprayed in the engine" (*Id*.), it neglects to explain how it could use the infringing Cyclean system to deliver the wash without either using the '262 patent or redesigning the Cyclean system. Both factors, weigh in favor of an injunction.

## D. THERE WAS NO DISCOVERY "FAILURE" ON THE PART OF ECOSERVICES

Finally, CAS attacks EcoServices' request for an injunction by claiming that the request has been waived, ECF No. 282 at 17-21, and asks that the Court essentially sanction EcoServices by denying its request for an injunction due to what CAS calls a discovery "failure." But any discovery failure falls squarely on CAS. EcoServices presented the same evidence at trial relevant to the issue of injunction that it had previously disclosed during discovery. CAS fails to identify any discrepancy. Indeed, CAS has been on notice of EcoServices' request for an injunction since the filing of the complaint. And CAS had the ability to ask any of EcoServices witnesses any question about the facts relating to EcoServices'

request through discovery in the case. CAS never moved to compel any additional answers to EcoServices' interrogatories, did not object to any of the evidence EcoServices relies on for its motion during trial and cannot credibly complain that it was surprised by any fact that was presented at trial.[3]

### E. AN ONGOING ROYALTY IS APPROPRIATE ABSENT A PERMANENT INJUNCTION

In the absence of an injunction, EcoServices respectfully requests that the Court order CAS to pay an ongoing royalty that would adequately compensate EcoServices for the loss of its lawful right to exclude CAS from profiting from EcoServices' inventions. *See, e.g.*, *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 630 (E.D. Tex. 2009). CAS has made it clear that it intends to continue its infringement. But the law "must ensure that an adjudged infringer who voluntarily chooses to continue his infringing behavior must adequately compensate the patent holder for using the patent holder's property." *Id*. As the *Paice* Court recognized, "Anything less would be manifestly unjust and violate the spirit, if not the letter, of the U.S. Constitution and the Patent Act." *Id*.

CAS first attacks EcoServices request by asserting that EcoServices' request for an ongoing royalty of $400-$1200 per wash lacks evidentiary support. ECF No. 282 at 21. Not true. The jury awarded $400 per wash on all washes including the washes that were performed after expiration of the '860 patent. Mr. Lettiere testified that the $400 rate was the royalty rate that the parties would have agreed to during the hypothetical negotiation for the right to practice the technology

---

[3] CAS has argued that EcoServices request for injunctive relief is overly broad because it seeks to enjoin CAS's use of the Cyclean system in the United States. CAS has introduced no evidence that it or Lufthansa has redesigned or attempts to redesign Cyclean to avoid infringement of the '262 patent going forward or that there is a version of Cyclean that does not infringe. An injunction should apply to the Cyclean system that the jury found to infringe and any colorable variation of that system.

1  covered by the patents-in-suit and that the rate would apply to the entire time
2  period including after the expiration of the '860 patent when only the '262 patent
3  remained in effect. Indeed, a royalty for the time period that when both patents
4  were in force, would have been higher. The jury accepted that testimony and
5  applied the $400 per wash royalty. There is no basis for CAS to contend that a
6  wash that occurred in 2018 should carry a royalty less than a wash that occurred in
7  2017. The jury has determined that the $400 royalty applies to all washes.[4]

8  Thus, should the Court deny EcoServices request for an injunction, the $400
9  per wash is "significant as a starting point" for the ongoing royalty rate. *See Paice*
10 *LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007). That rate can,
11 and often is, however, multiplied by the Court to take into account that the
12 defendant is, after the jury verdict, a willful infringer. *Boston Scientific Corp. v.*
13 *Cordis Corp.*, 838 F. Supp. 2d 259, 276 (D. Del. 2012) (setting a 32% ongoing
14 royalty when the jury's verdict was based on a 2.95% royalty rate); *Mondis Tech.*
15 *Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 646 (E.D. Tex. 2011)
16 (awarding an ongoing royalty rate of 0.75% when the jury's verdict was 0.5% and
17 further enhancing it to 1.5%, since ongoing infringement would be willful);
18 *Creative Internet Advert., Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 861 (E.D.
19 Tex. 2009) (setting an ongoing royalty of 23% when the jury verdict was 20% to
20 account for the changed circumstances and infringer's decision to continue

---

[4] CAS asserts that "Mr. Lettiere made clear that his damages model attributes no monetary value to the '262 Patent. . . ." ECF No. 282 at 23. That is a misunderstanding of Mr. Lettiere's testimony and is inconsistent with the jury's verdict. EcoServices anticipated that CAS would make that incorrect argument and, therefore, pointed out in its opening brief that CAS's expert had opined that the value of the '262 patent was about half the value of Ms. Bennis's calculated royalty for the '860 patent. *See* ECF No. 275-4 at 22:13-17. Thus, EcoServices proposed a lower end royalty rate of $200 per engine wash should the Court find that more appropriate. CAS has rejected that more conservative number on the ground that the jury did not adopt it. ECF No. 282 at 24.

infringing).

EcoServices requested that the Court set this ongoing royalty at $400 per wash or, in its discretion, enhance that rate to up to three times the amount, equating to $1200 per wash. EcoServices is not asking the Court to just "pick a number." (ECF No. 282 at 21). The jury's award sets the starting point and the case law and this Court's discretion provide the authority to set the higher rate based on the Court's analysis of the case, including the strength of CAS's positions, the reasonableness of its defenses and CAS's refusal to cease its infringing activity.

The cases CAS cites do not support its arguments. In fact, in *Chamberlain*[5], the court granted the plaintiff supplemental damages and trebled them, as EcoServices requests here, and recognized "the Federal Circuit's recitation that 'absent egregious circumstances, when injunctive relief is inappropriate, the patentee remains entitled to an ongoing royalty.'" *Id.* at 4 (quoting *SCA Hygiene Prods. Aktiebolag SCA v. First Quality Baby Prods., LLC*, 807 F.3d 1311, 1332-33 (Fed. Cir. 2015), *vacated in part on other grounds*, 137 S.Ct. 954 (2017)).

In *Chamberlain*, however, unlike here, the patentee did not request a permanent injunction, only an ongoing royalty. Significantly, the court found it particularly relevant that the plaintiff did not move post-verdict for a permanent injunction and based in part on that fact, did not enhance the royalty post judgment (it did, however, treble the damages between verdict and judgment). The court concluded, based on the facts there, that an ongoing royalty should be set at the same rate as the jury found applied to pre-verdict sales. Here, that amount is $400 per engine wash.

Similarly, *TransPerfect* is inapplicable for the same reasons. There, the court *did* award post-verdict damages but also ordered a permanent injunction.

---

[5] *Chamberlain Grp., Inc. v. Techtonic Inds. Co.*, 16-c-6097, slip op. (N.D. Ill. July 31, 2018).

The court ruled that the royalty amount found by the jury was sufficient, but that ruling only applied from the date of "the verdict until a permanent injunction goes into effect and the infringement ceases." *Transperfect,* 2014 WL 6068384 at *5.

Likewise, *Fresenius*[6] does not support CAS's position. There, the court granted the patent holder's request for a permanent injunction but gave the defendant a nine-month period to transition to a different, non-infringing product. The issue before the court was what rate to apply for that transition period in light of numerous intervening factors. Notably, the court reiterated the rule that "the district court is also free to conclude that the amount awarded by the jury for past infringement was the appropriate amount." *Id.* at *16 (citing *Paice*, 504 F.3d at 1315).[7]

Here, EcoServices' request for post-judgment royalties is a request in lieu of an injunction should the Court not grant EcoServices' motion for a permanent injunction. Accordingly, EcoServices requests that the Court increase the ongoing royalty rate at $400 per wash (or up to $1200 per wash, as the Court deems appropriate, based on the willful nature of CAS's continuing infringement).

## III. CONCLUSION

EcoServices respectfully requests the Court enter an order permanently enjoining CAS from performing Cyclean washes in the U.S. Alternatively, EcoServices requests that the Court award an on-going royalty in the range of $400-$1200 per wash, for post judgment Cyclean washes performed by CAS for the remaining life of the '262 patent.

---

[6] *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 PJH, 2012 WL 761712 (N.D. Cal. Mar. 8, 2012), *vacated and remanded, Fresenius USA, Inc. v. Baxter Int'l, Inc.,* 721 F.3d 1330 (Fed. Cir. 2013).

[7] CAS suggests that *Paice* requires the Court to order the parties to try and negotiate an appropriate ongoing royalty before imposing one. Such a procedure here would be futile. In fact, as shown in all of its post-trial briefing, it is clear that CAS does not intend to pay any royalties unless and until it is ordered to do so by the Court. CAS's out-of-hand rejection of EcoServices' suggestion that the Court could, conservatively, require a $200 per wash royalty demonstrates any such negotiation would only serve to unduly delay resolution of this issue.

1
2  Dated:  August 29, 2018                    Respectfully submitted,
3
4                                             By:*/s/ Natasha E. Daughtrey*
                                                 Ronald J. Pabis
5                                                *rpabis@goodwinlaw.com*
                                                 Stephen K. Shahida
6                                                *sshahida@goodwinlaw.com*
                                                 Patrick J McCarthy
7                                                *pmccarthy@goodwinlaw.com*
                                                 Myomi Tse Coad
8                                                *mcoad@goodwinlaw.com*
                                                 **GOODWIN PROCTER LLP**
9                                                901 New York Avenue NW
10                                               Washington, DC  20001
                                                 Tel.: +1 202 346 4000
11                                               Fax.: +1 202 346 4444
12
13
                                                 Natasha E. Daughtrey
14                                               *ndaughtrey@goodwinlaw.com*
                                                 **GOODWIN PROCTER LLP**
15                                               601 S Figueroa Street
                                                 41st Floor
16                                               Los Angeles, California  90017
                                                 Tel.: +1 213 426 2500
17                                               Fax.: +1 213 623 1673
18
19
                                                 Attorneys for Plaintiff:
20                                               ECOSERVICES, LLC
21
22
23
24
25
26
27
28

ACTIVE/96371093.7                12