**MAYER BROWN LLP**

Dale J. Giali (SBN 150382)
dgiali@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Stephen E. Baskin (*pro hac vice*)
sbaskin@mayerbrown.com
Dara M. Kurlancheek (*pro hac vice*)
dkurlancheek@mayerbrown.com
Canek Acosta (SBN 301901)
cacosta@mayerbrown.com
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Gregory J. Apgar (*pro hac vice*)
gapgar@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

Attorneys for Defendant/Counter-Plaintiff
Certified Aviation Services, LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| EcoServices, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> Certified Aviation Services, LLC, <br><br> Defendant. | Case No. 5:16-cv-01824-RSWL-SP <br><br> **DEFENDANT CERTIFIED AVIATION SERVICES, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT OF INDEFINITENESS OF THE '860 PATENT** <br><br> Trial Date: June 26, 2018 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1
II. CAS HAS NOT WAIVED ITS INDEFINITENESS ARGUMENT..............2
    A. Indefiniteness Arguments Need Not Be Raised During Claim Construction ................................................................................................3
    B. CAS Has Not Otherwise Waived The Issue .........................................6
III. THE PARTICLE SIZE LIMITATION IS INDEFINITE ..............................8
IV. CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.K. Stamping Co. v. Instrument Specialties Co.*,
   106 F. Supp. 2d 627 (D.N.J. 2000) .......................................................................... 6

*Advanced Steel Recovery, LLC v. X-Body Equipment, Inc.*,
   No. 2:12-cv-1004, 2014 WL 3939356 (E.D. Cal. Aug. 11, 2014),
   *aff'd*, 808 F.3d 1313 (Fed. Cir. 2015) .................................................................... 4

*Apple, Inc. v. Samsung Elecs. Co.*,
   932 F. Supp. 2d 1076 (N.D. Cal. 2013) .................................................................. 3

*Bell Communications Research, Inc. v. Vitalink Communications Corp.*,
   55 F.3d 615 (Fed. Cir. 1995) ............................................................................ 9, 10

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ............................................................................ 14

*Broadcom Corp. v. Emulex Corp.*,
   732 F.3d 1325 (Fed. Cir. 2013) ........................................................................ 9, 10

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sol's, P.C.*,
   No. CV-00-2430, 2006 WL 4448613 (N.D. Ala. Jan 13, 2006) ............................ 4

*Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*,
   482 F.3d 1347 (Fed. Cir. 2007) .............................................................................. 4

*DataTern, Inc. v. MicroStrategy, Inc.*,
   Civ. No. 11-11970, 2017 WL 1147441 (D. Mass. Mar. 27, 2017) ........................ 4

*Ferguson Beauregard/Logic Controls, Division of Dover Resources, Inc. v. Mega Systems, LLC*,
   350 F.3d 1327 (Fed. Cir. 2003) ...................................................................... 10, 11

*Halliburton Energy Servs., Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008) ........................................................................ 5, 12

*Harrah's Entertainment, Inc. v. Station Casinos, Inc.*,
   321 F. Supp. 2d 1173 (D. Nev. 2004), *aff'd*, 154 F. App'x 928 (Fed.
   Cir. 2005) ................................................................................................. 5

*Havco Wood Products, LLC v. Industrial Hardwood Products, Inc.*,
   No. 10-cv-566, 2013 WL 1497429 (W.D. Wis. Apr. 11, 2013) ............... 5, 6, 8, 9

*Inova Diagnostics, Inc. v. Euro-Diagnostica AB*,
   No. 08-cv-0845, 2009 WL 2602608 (S.D. Cal. Aug. 24, 2009) ......................... 6

*Move, Inc. v. Real Estate All. Ltd.*,
   221 F. Supp. 3d 1149 (C.D. Cal. 2016), *aff'd*, 721 F. App'x 950
   (Fed. Cir. 2018) ........................................................................................... 6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014) .............................................................................. 3, 5

*Pierce Cty. Hotel Emps. & Rest. Emps. Health Tr. v. Elks Lodge,
B.P.O.E. No. 1450*,
   827 F.2d 1324 (9th Cir. 1987) ....................................................................... 8

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   No. 08cv335, 2008 WL 3925723 (S.D. Cal. Aug. 25, 2008) ........................... 6, 7

*UltimatePointer, L.L.C. v. Nintendo Co.*,
   816 F.3d 816 (Fed. Cir. 2016) ................................................................... 6, 10

*Versata Software, Inc. v. Zoho Corp.*,
   213 F. Supp. 3d 829 (W.D. Tex. 2016) ........................................................... 3

**Statutes**

35 U.S.C. § 112 ................................................................................................. 3

**Other Authorities**

Fed. R. Civ. P. 16(d) ......................................................................................... 7

## I. INTRODUCTION

The claims of the '860 patent recite a method of washing turbine compressors using "a liquid particle size in the range of 250-120 μm." CAS's Motion demonstrates that the '860 Patent places no objective boundary on the scope of that term. A person skilled in the art would not know what quantity of particles in the spray must be within the claimed range in order to practice the claim. The patent offers no answer, and the testimony at trial of those skilled in the art demonstrates the ambiguity in the claim.

EcoServices opposes CAS's motion on both procedural and substantive grounds. Neither has any merit.

Procedurally, EcoServices argues that CAS waived its indefiniteness argument. No waiver has occurred here. Courts routinely decide questions of indefiniteness after claim construction—including at trial. There is no requirement that invalidity defenses such as indefiniteness be raised during *Markman* proceedings. EcoServices also provides no authority for the proposition that a party must move for summary judgment to preserve an invalidity defense. That is because no such requirement exists.

In its pre-trial submissions, CAS repeatedly identified this issue as triable to the Court. EcoServices is well aware of this fact, and also that it never objected. During the jury trial, the parties and Court agreed—based on the pre-trial submissions—that the remaining issues would be briefed for the Court to decide. At no point did CAS waive its indefiniteness defense.

Substantively, EcoServices relies on irrelevant case law and attempts to rewrite Mr. Kushnick's trial testimony. EcoServices bases its opposition on case law addressing the requirements for proving infringement when a product operates in different ways at different times. Those cases are inapposite. CAS's argument is simply that the '860 Patent is invalid, as it does not convey to a person skilled in the

- 1 -

art how to determine whether a spray infringes if some but not all of its particles—for example, 1%, 10%, 49%, or 51%—are in the claimed range.

EcoServices also ignores the inconsistencies in Mr. Kushnick's trial testimony. Namely, his infringement opinion is that only one in-range particle would infringe. But he also admitted that such a wash "wouldn't be according to the patent." Trial Tr. 6/27/2018 at 186:7-16. EcoServices does not address that testimony. And although EcoServices argues that Mr. Kushnick provided some other theory of what constitues "enough" in-range particles, it does not provide a single citation showing where he supposedly did so. That is because he didn't. The discrepancy of one skilled in the art in and of itself demonstrates that the claims are indefinite.

## II. CAS HAS NOT WAIVED ITS INDEFINITENESS ARGUMENT

EcoServices's waiver argument lacks merit. Beginning with its first pleading in this case, and continuing through the Final PreTrial Conference Order, CAS has consistently asserted that the claims of the '860 Patent are indefinite:

- In its answer to the complaint, CAS raised both an affirmative defense and counterclaim that the claims of the '860 Patent are invalid under 35 U.S.C. § 112. D.I. 13 at 7-8, 15.
- CAS asserted in its preliminary invalidity contentions that the particle size limitation was indefinite. Ex. B at 43-44.
- CAS's expert Dr. Micklow opined in his invalidity report that the particle size limitation rendered the '860 Patent's claims indefinite. Ex. C at 172-75.
- CAS's Memoranda of Contentions of Fact and Law, filed on May 8, 2018, identified its '860 Patent indefiniteness defense as an issue of law triable to the Court. D.I. 164 at 15, 25-26.
- On May 18, 2018, EcoServices filed with the Court the parties' proposed Final PreTrial Conference Order. D.I. 174. CAS again raised its

counterclaim and affirmative defense that the "claims of the '860 Patent are . . . indefinite under 35 U.S.C. § 112," and the parties identified the issue as one that "remain[s] to be tried." D.I. 174-1 at 24, 36-37.

- On June 5, 2018, the Court entered its Final Pretrial Conference Order, which likewise identified indefiniteness of the '860 Patent as an issue for trial. D.I. 209 at 22, 34.

The indefiniteness issue is properly before the Court, and the Court should therefore resolve it.

### A.  Indefiniteness Arguments Need Not Be Raised During Claim Construction

Courts repeatedly hold that a defendant need not raise indefiniteness during *Markman*. EcoServices relies on inapposite cases to argue otherwise.

The issue of indefiniteness stems from the statutory requirement that a patent "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 ¶ 2. Indefiniteness is not simply a matter of claim construction. It is rather a question of validity: a claim that does not satisfy Section 112's requirements is invalid. *See, e.g.*, *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

Like any invalidity defense, there is no required juncture at which a district court must address indefiniteness. While courts can do so during claim construction, they regularly decide indefiniteness issues after *Markman* proceedings have concluded. In fact, several courts have ruled expressly that "failure to seek construction of a term during claim construction does not constitute waiver of an indefiniteness argument." *Apple, Inc. v. Samsung Elecs. Co.*, 932 F. Supp. 2d 1076, 1079 (N.D. Cal. 2013); *see Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829, 834 (W.D. Tex. 2016) (rejecting argument that defendant waived indefiniteness argument not raised during claim construction and stating that

"[n]othing in the law confines a party's indefiniteness argument to the claim construction stage of the litigation"); *DataTern, Inc. v. MicroStrategy, Inc.*, Civ. No. 11-11970, 2017 WL 1147441, at *3-5 (D. Mass. Mar. 27, 2017) (rejecting argument that "a party *per se* waives timely-filed indefiniteness contentions with respect to terms that it did not nominate for claim construction" and noting that it is unaware of "a single case that states such a *per se* rule").

EcoServices cites no authority to the contrary. Its cases only address waiver in the context of construing terms, not invalidity challenges. And they actually support CAS by addressing indefiniteness post-*Markman*. EcoServices cites *Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007), because the Federal Circuit affirmed a finding that a defendant waived its ability to seek a construction it did not raise during claim construction. But when it came to indefiniteness, the Court addressed the merits of the defense, notwithstanding that it was raised on summary judgment, after the district court had already issued a *Markman* order addressing other terms. *See id.* at 1357; *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sol's, P.C.*, No. CV-00-2430, 2006 WL 4448613, at *13, *16 (N.D. Ala. Jan 13, 2006) (district court summary judgment order). And in *Advanced Steel Recovery, LLC v. X-Body Equipment, Inc.*, No. 2:12-cv-1004, 2014 WL 3939356, at *3-4 (E.D. Cal. Aug. 11, 2014), *aff'd*, 808 F.3d 1313 (Fed. Cir. 2015) the plaintiff sought to construe the term "proximate end" to mean "back half." Indefiniteness was not at issue. EcoServices cites no case law supporting its position.

The facts here further compel a finding of no waiver. The parties completed claim construction briefing in April 2017, and the Court held a *Markman* hearing and issued its *Markman* order in May 2017. In arguing for waiver, EcoServices points to its disclosure of Mr. Kushnick's infringement report and test data. D.I. 279 at 2. But that did not occur until August 31, 2017—months after *Markman* proceedings concluded.

Finally, EcoServices wrongly asserts that the parties' agreement during claim construction that the particle size limitation does not require construction demonstrates waiver. A patent is indefinite if its claims "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124. A statement that no special definition applies to a term is not inconsistent with a position that the term does not adequately inform a person skilled in the art of its meaning. And even if the Court considers the parties' no-construction agreement to be a prior "construction," courts regularly consider whether previously construed terms are indefinite.

For example, in *Harrah's Entertainment, Inc. v. Station Casinos, Inc.*, 321 F. Supp. 2d 1173, 1175-76 (D. Nev. 2004), *aff'd*, 154 F. App'x 928 (Fed. Cir. 2005), the defendant sought summary judgment that a claim term, for which it previously proposed a construction during *Markman* proceedings, was indefinite. In granting the motion, the Court concluded that "the fact that Defendants submitted a proposed construction does not amount to an admission that the proposed construction was in fact definite." *Id.* at 1176. The court reasoned that it "must attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness." *Id.* (internal quotation omitted); *see Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008) ("Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.").

And in *Havco Wood Products, LLC v. Industrial Hardwood Products, Inc.*, No. 10-cv-566, 2013 WL 1497429, at *1-2 (W.D. Wis. Apr. 11, 2013), the defendant asserted indefiniteness in a post-trial motion, after the court previously construed the terms and held a jury trial (where infringement was found) governed by its constructions. The court rejected the plaintiff's argument that the defendant had waived its indefiniteness defense, stating that, like other equitable defenses or

issues of law, indefiniteness was "simply an issue for the court to determine as part of the trial." *Id.* at *4; *see also Inova Diagnostics, Inc. v. Euro-Diagnostica AB*, No. 08-cv-0845, 2009 WL 2602608, at *4 (S.D. Cal. Aug. 24, 2009) (construing term to have its "ordinary and customary meaning" and stating that the construction did not preclude a later indefiniteness challenge).

In sum, neither the facts nor the law support EcoServices's waiver argument.

### B. CAS Has Not Otherwise Waived The Issue

EcoServices also argues that CAS "missed opportunities" to raise its indefiniteness argument in a summary judgment motion, or in connection with the jury trial held on other issues. This argument likewise lacks merit. EcoServices does not even try to explain how choosing to try a legal issue to the Court, instead of raising it in a pre-trial motion, amounts to waiver.

EcoServices cites no authority for its position that a party can waive a defense simply by not moving for summary judgment. *Cf. Move, Inc. v. Real Estate All. Ltd.*, 221 F. Supp. 3d 1149, 1157 (C.D. Cal. 2016) ("[W]e are aware of no authority suggesting that Move was required to move for summary judgment on its § 101 argument in order to preserve this argument." (citing *Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 816 (6th Cir. 1996))), *aff'd*, 721 F. App'x 950 (Fed. Cir. 2018). And an indefiniteness determination, although ultimately an issue of law, can involve underlying questions of fact. *E.g.*, *UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 826 (Fed. Cir. 2016). Thus, courts routinely find that indefiniteness challenges are not appropriately resolved on summary judgment. *See, e.g.*, *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 08cv335, 2008 WL 3925723, at *3 (S.D. Cal. Aug. 25, 2008) ("As several district courts have observed, however, while the Federal Circuit has described the indefiniteness inquiry as a question of law, where evidence beyond the claims and written description may be reviewed, factual issues are likely to arise."); *A.K. Stamping Co. v. Instrument Specialties Co.*, 106 F. Supp. 2d 627, 644 (D.N.J. 2000) (denying

summary judgment based on testimony of plaintiff's experts comparing claims to the accused product).

Here, like in *Presidio*, CAS's Motion does not depend solely on the patent itself. Instead, it relies on the trial testimony of fact and expert witnesses. Such an argument need not be brought at summary judgment.

Likewise, CAS did not waive this issue at any time leading up to trial. CAS asserted indefiniteness in its answer, invalidity contentions, and expert reports.[1] EcoServices was thus on notice throughout fact and expert discovery that CAS contended that the particle size limitation was indefinite. EcoServices does not argue otherwise.

CAS also repeatedly raised the issue during the pre-trial phase of the case. Its May 8, 2018 Memoranda of Contentions of Fact and Law specifically identified it as an issue of law triable to the Court. D.I. 164 at 15, 25-26. Ten days later, the parties jointly submitted their proposed Final Pretrial Conference Order identifying it as an issue for trial. D.I. 174 at 24, 37. On June 5, 2018, the Court entered its Final Pretrial Conference Order, which did the same. D.I. 209 at 22, 34. At no point did EcoServices object to the inclusion of indefiniteness as an issue to be tried to the Court. In fact, EcoServices's own Memorandum of Contentions of Law lists several affirmative defenses that "CAS appears to have abandoned." D.I. 160 at 22. Indefiniteness is not on that list. *Id.*

Thus, the issue appears in both CAS's pleadings and in the Court's Final Pretrial Conference Order. At no point before or after the Court issued that Order did EcoServices object to the inclusion of indefiniteness as an issue for trial. The defense is therefore live for trial, and has not been waived. *See, e.g.*, Fed. R. Civ. P.

---

[1] EcoServices notes that Dr. Micklow's invalidity report raised slightly different arguments that the particle size term was indefinite, based on the common use of multiple differing ways to measure average particle size or the distribution of particle sizes. CAS does not rely on that evidence in this Motion, which is based on the trial record.

- 7 -

16(d) (providing that a pre-trial order "controls the course of the action"); *Pierce Cty. Hotel Emps. & Rest. Emps. Health Tr. v. Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1329 (9th Cir. 1987) (pretrial orders "govern[] the issues in dispute").

Finally, EcoServices points out that CAS didn't seek a jury instruction on the issue or address it in its Rule 50(a) motion. But doing so would not make sense: this is an issue for the Court, not the jury. During trial, the parties and Court agreed that the issues the parties identified as triable to the Court would be decided through post-trial briefing. Trial Tr. 7/2/2018 at 135:24-136:14; *id.* at 137:16-18; *id.* at 145:23-25. There was thus nothing related to indefiniteness to present to the jury.[2] *See Havco*, 2013 WL 1497429, at *3-4 (no waiver where defendant did not address indefiniteness in Rule 50(a) motion and first briefed the issue after trial, because it is a legal issue "entirely separate from the jury's determination of infringement" and "not unusual for the court to consider these issues independent of the jury and render an opinion after the jury verdict").

In sum, CAS continually disclosed that it was asserting indefiniteness of the particle size limitation, and identified it as a legal issue triable to the Court through post-trial briefing. CAS did not waive that defense by presenting it to the Court instead of to a jury tasked with deciding other issues.

**III. THE PARTICLE SIZE LIMITATION IS INDEFINITE**

Claim 1 of the '860 patent recites a method of washing turbine compressors that involves spraying finely-divided liquid "through at least one nozzle towards and through the turbine compressor . . . at a liquid particle size in the range of 250-120 μm . . . whereby the liquid is finely-divided to a degree at which the particles of liquid will follow the same routes through the turbine compressor as those previously taken by the air-borne contaminants." JX4, Cl. 1.

---

[2] Likewise, there was no need for CAS to seek a ruling on the issue shortly before the jury trial, as EcoServices suggests, since the issue had already been identified as one the Court would decide.

As CAS's Motion explains, an object of the '860 Patent is to provide a spray that overcomes the centrifugal effect such that the liquid particles, consistent with claim 1's whereby clause, follow the path of the contaminants through the compressor. JX4 at 1:23-50. According to the specification, prior art systems, which typically used "particle sizes of 150-950 μm," were unable to achieve this. *Id.* at 2:5-13. The '860 Patent explains that its "inventive method" is the use of the claimed particle size range of 120 to 250 μm, which is a "novel method . . . based on a totally new principle" of giving the particles "a size and velocity which together overcome the centrifugal effect." *Id.* at 1:66-2:16.

CAS's Motion demonstrates that the claims do not provide a person skilled in the art with an objective measure of the percentage of particles that need to be within the claimed range. Neither party contends that 100% of the particles need to be in the range. Nor can one particle be the boundary: EcoServices's expert Mr. Kushnick admitted that a spray having only one in-range particle "wouldn't be according to the patent." Trial Tr. 6/27/2018 at 186:7-16. And the patent provides no guidance on where between one particle and every particle the boundary lies.

EcoServices's opposition does not address this central point. Instead, it relies on inapplicable case law and attorney argument that mischaracterizes Mr. Kushnick's testimony at trial.

EcoServices's main argument is that, as long as there are some particles in the range, it does not matter how many, because "[i]t is well-settled law that an accused device that sometimes embodies a claimed invention nonetheless infringes." D.I. 279 at 2-3. That legal proposition, and EcoServices's case law, is irrelevant to CAS's argument. EcoServices relies primary on *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325 (Fed. Cir. 2013) and *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995). The Federal Circuit has recently explained that those cases "apply when an accused

system infringes in one manner of operation, but does not infringe in another." *UltimatePointer,* 816 F.3d at 825.[3]

That is different from the issue in CAS's motion. CAS is not arguing that it is unclear whether a washing system having multiple modes of operation infringes. This is an invalidity issue. Nor is CAS is contending that the claim is indefinite because the infringing nature of a spray having only some in-range particles would depend on whether any such particles are being sprayed at any given time. That is akin to the issues in *Broadcom* and *Bell*. But it is not CAS's argument.

Instead, CAS's Motion shows that a person skilled in the art would be uncertain of the boundaries of an infringing wash in the first instance. For example, if a wash system always produces a spray having one in a million particles within the range, does it infringe? One in a thousand? One in a hundred? One in ten? The patent makes clear that the particles in the spray are critical to infringement, but it never describes, even remotely, the percentage of in-range particles required.[4] On that point, EcoServices does not address CAS's arguments or evidence.

---

[3] In *Broadcom*, for example, the claim required the accused product to "reduce the frequency offset" between two signals. *Broadcom*, 732 F.3d at 1332. The evidence showed that the accused product did so some, but not all, of the time. *Id.* at 1333. Because it was undisputed that the product met the claim in some instances, the Federal Circuit affirmed the district court's finding of infringement. *See id.* And in *Bell*, the claimed method required data to be transmitted to its destination along a single path, or "spanning tree." 55 F.3d at 622. Thus, the Federal Circuit identified the relevant infringement issue as whether the product sometimes sends data over a single path, not whether it always does so. *See id.* at 622-23.

[4] EcoServices's other case, *Ferguson Beauregard/Logic Controls, Division of Dover Resources, Inc. v. Mega Systems, LLC*, 350 F.3d 1327 (Fed. Cir. 2003), actually supports CAS on this point. EcoServices cites it for the proposition that the accused product "must be capable of accomplishing the entire method of the claim." D.I. 279 at 12. But the Court held that the accused product ***must actually accomplish*** the entire method of the claim, not merely that it must be ***capable of*** accomplishing it. *Ferguson*, 350 F.3d at 1346. The accused product was therefore

- 10 -

Mr. Kushnick testified repeatedly at trial that his infringement theory was that a spray with even one particle in the range infringes. *See* Trial Tr. 6/27/18 at 185:21-186:6; *see also id.* at 135:23-136:15; *id.* at 138:14-17. But he also admitted that washing an engine using a spray having only one in-range particle "wouldn't be according to the patent." *Id.* at 186:7-16. EcoServices notably does not (and cannot) contend that a spray with only one particle in the range could overcome the centrifugal effect. That is an express "object of the present invention," and reflected in claim 1's requirement that "the particles of liquid will follow the same routes through the turbine compressor as those previously taken by the air-borne contaminants." JX4, 1:33-34 & 44-45; *id.* at claim 1.[5]

Instead, EcoServices tries to distance itself from Mr. Kushnick's one-particle testimony. It now argues that Mr. Kushnick testified that the claims require "**enough** of the liquid particles to fall within the claimed range 'to a degree at which the particles of liquid will follow'" the contaminant path, and that an "adequate percentage" of Cyclean's particles are in the range. D.I. 279 at 6, quoting JX4, claim 1. But Mr. Kushnick provided no such testimony. Again, he explicitly based his infringement opinion on whether there was *at least one particle* in the range—not some undefined "adequate percentage," and without regard to whether "enough" particles follow the contaminant path to overcome the centrifugal effect. He did not separately analyze what constitutes "enough" in-range particles so that the spray will actually follow the contaminant path. *See* Trial Tr. 6/27/2018 at 149:6-12; *id.* at 151:14-15.

But by suggesting that he did, EcoServices essentially makes CAS's point: the claim has to provide some objective boundary of what constitutes "enough"

---

non-infringing, because it only sometimes performed an action that the claim expressly required occur "on each successive cycle." *Id.*

[5] Both Mr. Kushnick and Dr. Micklow agree that particles smaller than 120 μm or larger than 250 μm do not follow the contaminant path. Trial Tr. 6/27/2018 at 183:7-23; Trial Tr. 6/29/2018 at 19:14-24.

- 11 -

particles between 120 μm and 250 μm. By its plain language—"at a liquid particle size in the range of 250-120 μm"—the claim could require all particles in the range, just one particle in the range, or something in between. Both experts agree that the claim does not require every particle to be in the range. And Mr. Kushnick admitted (and EcoServices does not address) that a wash performed with just one particle in the range "wouldn't be according to the patent." Trial Tr. 6/27/2018 at 186:7-16. The patent simply provides no guidance on what percentage of particles between those two extremes is required. Notably, despite trying to show that Mr. Kushnick's testimony identifies such a boundary, EcoServices does not cite a single line of his trial testimony, deposition testimony, or expert report addressing what that boundary is.

EcoServices also fails to meaningfully distinguish CAS's case law. In *Halliburton*, the Federal Circuit explained that a patent's differentiation of itself from prior art "is an important consideration in the definiteness inquiry because in attempting to define a claim term, a person of ordinary skill is likely to conclude that the definition does not encompass that which is expressly distinguished as prior art." 514 F.3d at 1252. The patentee in *Halliburton* distinguished its invention from the prior art by claiming "fragile gels," *Id.* at 1253, but did not "identify the degree of fragility of its invention," thus leaving ambiguous the degree of improvement over the prior art. *Id.* The claim was indefinite as a result. *Id.* at 1253-54.

EcoServices argues that *Halliburton* is inapposite because the court also noted that a hypothetical "claim that recites a specific numeric range for a physical property may be definite even though prior art products fell within that range." *Id.* That dicta does not lessen *Halliburton's* import. CAS does not contend, as EcoServices suggests, that *Halliburton* establishes "a hard and fast rule that a claim is indefinite when prior art products fall within the range." D.I. 279 at 10. But *Halliburton's* discussion of a theoretical range, which may or may not distinguish

the hypothetical claim from the prior art, does not take away from *Halliburton's* actual holding.

Again, the Federal Circuit held in *Halliburton* that a claim was indefinite when the patent left ambiguous the extent to which the claim limitation that allegedly distinguished the patent from the prior art actually did so. That is the situation here. The '860 Patent states that the "object of the invention" is achieved through the "totally new principle" of using a particle size range of 120 to 250 μm, and not the ineffective, but partially overlapping, prior art range of 150 to 950 μm. The patent does not explain, for example, if a system using that exact range—150 to 950 μm—infringes. If it does, there is no distinction between the patent and the prior art. If it doesn't, the patent does not meaningfully explain the difference between the two ranges. In either case, it gives a person skilled in the art no understanding of what improvements over the prior art the claims purport to preempt.[6]

EcoServices also fails to meaningfully distinguish *Berkheimer*. It attempts to do so by noting that in *Berkheimer* the defendant submitted a declaration from its expert, and the specification used inconsistent terminology in describing the claim term "minimal redundancy." Those are not relevant distinctions. In reaching its conclusion of indefiniteness, the Federal Circuit reasoned that "[i]n light of the lack of objective boundary or specific examples of what constitutes 'minimal' in the claims, specification, and prosecution history, the district court properly considered

---

[6] EcoServices also distinguishes the procedural posture of *Halliburton*, which was decided on summary judgment. But that procedural posture does not affect the substantive holding of the case. EcoServices also notes that *Halliburton's* "fragile gel" term appeared in the claim's preamble, and the patentee admitted the claim was limited to "fragile gels." It then states that no such concession was made here. This attempted distinction is puzzling. A claim's preamble is not always limiting; thus the patentee's concession in *Halliburton* turned "fragile gel" into a relevant claim limitation. Here, the particle size term is unquestionably a claim limitation—there is no similar "concession" for EcoServices to make.

and relied on extrinsic evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1364 (Fed. Cir. 2018). Here, CAS's Motion shows that the '860 Patent provides no boundary for the quantity of particles that need to be within the claimed range of 120 to 250 μm, and additionally relies on extrinsic evidence in the form of trial testimony—including Mr. Kushnick's inconsistent testimony regarding his "one particle" interpretation—to show that the claim is indefinite as a result. That is fully consistent with the defendant's showing in *Berkheimer*.[7]

## IV.  CONCLUSION

For the foregoing reasons, Defendant CAS respectfully requests that the Court enter judgment that the claims of the '860 Patent are invalid for indefiniteness.

Dated:  August 29, 2018

MAYER BROWN LLP

By: */s/ Stephen E. Baskin*
    Stephen E. Baskin

Dale J. Giali (SBN 150382)
Elizabeth M. Burnside (SBN 258184)
Stephen E. Baskin (*pro hac vice*)
Dara M. Kurlancheek (*pro hac vice*)
Gregory J. Apgar (*pro hac vice*)
Canek Acosta (SBN 301901)

*Attorneys for Defendant/Counter-Plaintiff*
*Certified Aviation Services, LLC*

---

[7] EcoServices also procedurally distinguishes *Berkheimer*, which was decided during claim construction. But that is again irrelevant; indefiniteness challenges are not confined to *Markman* proceedings.

- 14 -

**Certificate of Service**

I, Stephen E. Baskin, hereby certify that on August 29, 2018, I filed the within and foregoing Defendant Certified Aviation Services, LLC's Reply in Support of its Motion for Judgment of Indefiniteness of the '860 Patent with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing:

Natasha E. Daughtrey
ndaughtrey@goodwinlaw.com
GOODWIN PROCTER LLP
601 South Figueroa Street, 41st Floor
Los Angeles, CA 90017
Telephone: (213) 426-2500
Facsimile: (213) 623-1673

Ronald J. Pabis
rpabis@goodwinlaw.com
Stephen K. Shahida
sshahida@goodwinlaw.com
Patrick J. McCarthy
pmccarthy@goodwinlaw.com
Myomi T. Coad
mcoad@goodwinlaw.com
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444

*Attorneys for Plaintiff EcoServices, LLC*

Dated:     August 29, 2018              MAYER BROWN LLP

                                        By: */s/ Stephen E. Baskin*
                                              Stephen E. Baskin