1

**MAYER BROWN LLP**

2
Dale J. Giali (SBN 150382)
dgiali@mayerbrown.com
3
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
4
Telephone:   (213) 229-9500
Facsimile:    (213) 625-0248

5

6
Stephen E. Baskin (*pro hac vice*)
sbaskin@mayerbrown.com
Dara M. Kurlancheek (*pro hac vice*)
7
dkurlancheek@mayerbrown.com
Jonathan Weinberg (SBN 300452)
8
jweinberg@mayerbrown.com
1999 K Street, N.W.
9
Washington, DC 20006
Telephone:   (202) 263-3000
10
Facsimile:    (202) 263-3300

11
Gregory J. Apgar (*pro hac vice*)
gapgar@mayerbrown.com
12
1221 Avenue of the Americas
New York, NY 10020
13
Telephone:   (212) 506-2500
Facsimile:    (212) 262-1910

14

15
Attorneys for Defendant/Counter-Plaintiff
Certified Aviation Services, LLC

16

17
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
18
**EASTERN DIVISION**

19

20
EcoServices, LLC,

21
                    Plaintiff,

22
          vs.

23
Certified Aviation Services, LLC,

24
                    Defendant.

25

Case No. 5:16-cv-01824-RSWL-SP

**DEFENDANT CERTIFIED AVIATION SERVICES, LLC'S MOTION FOR POST-JUDGMENT RELIEF PURSUANT TO RULES 50(B), 52(B), AND 59.**

Trial Date: June 26, 2018

26

27

28

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on March 26, 2019 at 10:00 am before the
Honorable Ronald S.W. Lew of the United States District Court for the Central
District of California, Courtroom TBD, First Street Courthouse, 350 W. First Street,
Suitet 4311, Los Angeles, CA 90012, Defendant Certified Aviation Services, LLC,
will and hereby does move for post-judgment relief pursuant to Federal Rules of
Civil Procedure 50(b), 52(b), and 59.

    This motion is made on the grounds that the record evidence does not support
the Jury's verdict or the Court's judgment. This motion is based on this written
notice, the attached Memorandum of Points and Authorities, and all the records,
documents, pleadings, and papers on file or to be filed in this action, arguments of
counsel, and any other matters that properly may come before the Court of its
consideration.

    This motion is made following the conference of counsel purusant to L.R. 7 –
3, which took place on January 28, 2019.

Dated:      February 13, 2019      Respectfully submitted,

                        MAYER BROWN LLP

                        By: */s/ Stephen E. Baskin*
                           Stephen E. Baskin

                        *Attorney for Defendant/Counter-*
                        *Plaintiff*
                        Certified Aviation Services, LLC

# **TABLE OF CONTENTS**

Page(s)

INTRODUCTION ................................................................................. 1

LEGAL STANDARDS ......................................................................... 1

ARGUMENT ........................................................................................ 2

I.    The Asserted Claims Of The '262 Patent Are Ineligible. ................... 2

    A.   The claims are not eligible based on the "determine a washing program" limitation. ....................................................... 2

    B.   The claims are not eligible based on the "regulate the washing unit" limitation. .............................................................. 4

II.   The Asserted Claims Of The '262 Patent Are Not Infringed. ............. 5

    A.   The accused system does not "regulate the washing unit," as the Court construed that term in its eligibility determination. .................................................................................... 6

    B.   The accused system lacks an "information detector." ............... 7

III.  The Asserted Claims Of The '262 Patent Are Invalid. ........................ 8

    A.   Claims 1, 9, and 14 are invalid as obvious. .............................. 8

    B.   Claim 14 lacks written description. ......................................... 11

IV.   CAS Does Not Infringe The Asserted Claims Of The '860 Patent. .................................................................................................. 11

    A.   The evidence does not prove that the accused device satisfies the recited pressure limitation. ................................... 12

    B.   The evidence does not prove that the accused device satisfies the recited particle size limitation. .............................. 13

V.    CAS Did Not Willfully Infringe The '860 Patent. ............................. 16

    A.   CAS had no pre-suit knowledge of the asserted patent. ......... 16

    B.   CAS responded to the suit reasonably. ................................... 18

VI.   The Asserted Claims Of The '860 Patent Are Invalid As Indefinite. ......................................................................................... 18

VII.  The Jury's Damages Verdict Is Unsupported And Based On Unreliable Expert Testimony. .......................................................... 19

    A.   Mr. Lettiere failed to apportion damages based on the infringing features. ................................................................. 19

    B.   Mr. Lettiere relied on irrelevant agreements. ......................... 22

VIII. The Post-Trial Running Royalty Fails to Account for the Expiration of the '860 Patent. ......................................................... 23

CONCLUSION .................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adidas Am., Inc.* v. *Skechers USA, Inc.*,
No. 3:16-cv-1400-SI, 2017 WL 2543811 (D. Or. June 12, 2017) ...................... 17

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ...................................................................................5

*Alpex Computer Corp. v. Nintendo Co.*,
102 F.3d 1214 (Fed. Cir. 1996) ...................................................... 1, 13

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (2010) (en banc) ............................................................ 11

*Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*,
356 U.S. 525 (1958) .................................................................................. 1

*Consolidated Edison Co. v. Nat'l Labor Relations Bd.*,
305 U.S. 197 (1938) .................................................................................. 1

*Cooper Lighting, LLC* v. *Cordelia Lighting, Inc.*,
No. 1:16-CV-2669, 2017 WL 3469535 (N.D. Ga. Apr. 6, 2017) ...................... 17

*Dorman Prods., Inc. v. Paccar, Inc.*,
201 F. Supp. 3d 663 (E.D. Pa. 2016).................................................... 17

*Ericsson, Inc. v. D–Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ....................................... 19, 20, 21, 22

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) .......................................... 20, 21, 22

*Fontenot v. Mesa Petroleum Co.*,
791 F.2d 1207 (5th Cir. 1986) .............................................................. 2

*Garretson v. Clark*,
111 U.S. 120 (1884) .............................................................................. 20

*Gasperini v. Center for Humanities, Inc.*,
518 U.S. 415 (1996) ................................................................................ 1

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
    438 F.3d 1354 (Fed. Cir. 2006) ............................................................... 2

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
    496 F.3d 1334 (Fed. Cir. 2007) ............................................................... 1

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    711 F. App'x 1012 (Fed. Cir. 2017) ....................................................... 4

*Intellectual Ventures I LLC* v. *Symantec Corp.*
    234 F. Supp. 3d 601 (D. Del. 2017) ..................................................... 18

*Koito Mfg. Co. v. Turn-Key-Tech*,
    LLC, 381 F.3d 1142 (Fed. Cir. 2004) ..................................................... 8

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) .............................................................................. 10

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ............................................................... 23

*LML Holdings, Inc. v. Pac. Coast Distributing, Inc.*,
    No. 11cv06173, 2012 WL 1965878 (N.D. Cal. May 30, 2012) ........... 17

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ............................................................. 3

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    851 F.3d 1275 (Fed. Cir. 2017) ........................................................... 16

*Murphy v. City of Long Beach*,
    914 F.2d 183 (9th Cir. 1990) ................................................................. 1

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) ......................................................................... 19

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) ............................................................. 4

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
    778 F.3d 1021 (Fed. Cir. 2015) ........................................................... 15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    904 F.3d 965 (Fed. Cir. 2018) ............................................................. 19

*Regents of Univ. of Minn. v. AGA Med. Corp.*,
   717 F.3d 929 (Fed. Cir. 2013) .............................................................. 8

*Rembrandt Soc. Media, LP v. Facebook, Inc.*,
   950 F. Supp. 2d 876 (E.D. Va. 2013) .......................................... 16, 17

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) .................................................... 22, 23

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007) ........................................................ 16

*Sitrick v. Dreamworks, LLC*,
   516 F.3d 993 (Fed. Cir. 2008) .......................................................... 8

*Versata Software, Inc. v. SAP Am., Inc.*,
   717 F.3d 1255 (Fed. Cir. 2013) ........................................................ 21

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014) .................................................. 19, 21

*Wis. Alumni Research Found. v. Apple Inc.*,
   905 F.3d 1341 (Fed. Cir. 2018) .................................................. 13, 16

*Yoon Ja Kim v. ConAgra Foods, Inc.*,
   465 F.3d 1312 (Fed. Cir. 2006) ............................................ 1, 12, 13

**Statutes**

35 U.S.C. § 112 .............................................................................. 11

**Other Authorities**

Wright & Miller, 9C Fed. Prac. & Proc. Civ. § 2571 (3d ed.) .............................. 2, 3

Fed. R. Civ. P. 50(a) ........................................................................ 1

Fed. R. Civ. P. 52(b) ........................................................................ 2

Fed. R. Civ. P. 59(a)(1) ..................................................................... 1

**INTRODUCTION**

Defendant Certified Aviation Services, LLC ("CAS") respectfully submits this Motion For Post-Judgment Relief Pursuant to Rules 50(b), 52(b), and 59.

**LEGAL STANDARDS**

Following a jury trial, a court must grant judgment as a matter of law if the jury lacked a "sufficient evidentiary basis" for its verdict. Fed. R. Civ. P. 50(a). Courts universally interpret this rule to require "substantial evidence" supporting the verdict. *E.g.*, *Integra Lifesciences I, Ltd. v. Merck KGaA*, 496 F.3d 1334, 1347 (Fed. Cir. 2007). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion." *Consolidated Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229-30 (1938). It requires "more than a mere scintilla" of evidence. *Id.* It is well established that conclusory expert testimony is not substantial evidence. *See Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006) (affirming JMOL of noninfringement where "conclusory [expert] testimony" was the basis for infringement); *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1222–23 (Fed. Cir. 1996) (holding that conclusory expert testimony did not support a finding of infringement).

The court may also grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). The Supreme Court has long affirmed that a district court "'has . . . discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence.'" *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433 (1996) (quoting *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 540 (1958)) (alterations in original). In exercising this discretion, the district court may grant a new trial even where substantial evidence supports the jury's verdict. *See, e.g.*, *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) ("It is clear that the district judge had the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial

1  evidence, where, in his conscientious opinion, the verdict is contrary to the clear

2  weight of the evidence . . . ." (internal quotations omitted)).

3        Finally, after entering judgment on an issue tried without a jury, "the court

4  may amend its findings—or make additional findings—and may amend the

5  judgment accordingly." Fed. R. Civ. P. 52(b). Such amendments are properly made

6  "to correct manifest errors of law or fact." *Fontenot v. Mesa Petroleum Co.*, 791

7  F.2d 1207, 1219 (5th Cir. 1986). The court may amend its findings even if doing so

8  would "in effect reverse the judgment." *Golden Blount, Inc. v. Robert H. Peterson*

9  *Co.*, 438 F.3d 1354, 1358 (Fed. Cir. 2006) ("If the trial court has entered an

10  erroneous judgment, it should correct it." (quoting *Fontenot,* 791 F.2d at 1219)).

11                                    **ARGUMENT**

12  **I.    The Asserted Claims Of The '262 Patent Are Ineligible.**

13        On July 25, 2018, CAS moved for judgment under Fed. R. Civ. P. 52 that the

14  asserted claims of the '262 Patent are ineligible because they recite only the abstract

15  idea of using a computer to automate certain aspects of the traditional process for

16  washing jet engines. *See* Dkt. 271. The Court denied that motion on the basis that

17  the claims recite "a distinct process from that previously performed by humans."

18  Dkt. 293 at 16. Specifically, the Court held that the claimed "control unit" (1)

19  "determine[s] a washing program" and (2) "regulate[s] the washing unit"

20  differently than had human operators. *Id.* at 18-21.

21        CAS respectfully submits that the Court should amend its eligibility

22  determination, under Rule 52(b), because it, as explained below, is based on certain

23  factual and legal inaccuracies requiring clarification. *See* Wright & Miller, 9C Fed.

24  Prac. & Proc. Civ. § 2571 (3d ed.) (the "purpose" of Rule 52(b) is "to give the

25  district court an opportunity to correct manifest errors of law or fact at trial").

26        **A.    The claims are not eligible based on the "determine a washing**

27        **program" limitation.**

28        The Court held that one way in which the claimed system performs "a

- 2 -

1   distinct process from that previously performed by humans" is by "determin[ing] a
2   washing program" using a "control unit," "[r]ather than the [human] operators
3   making the determination." Dkt. 293 at 19. The Court reasoned that the idea of
4   determining a wash program using a computerized "control unit" is inventive
5   because it "removes human subjectivity and error." *Id.* (citing *McRO, Inc. v. Bandai*
6   *Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).

7       The Court should revise this holding because it is premised on the incorrect
8   factual finding that human operators had traditionally determined a washing
9   program using subjective judgment. Dkt. 293 at 19. To the contrary, the record
10  shows that human operators traditionally did so *objectively*, "as a function of …
11  engine type," just as the claims require: "[a] specific … washing configuration
12  [was] prepared for each specific engine" ('262 Patent at 2:46-49 (Ex. 1)), the
13  "operator [was] provided with information regarding the engine type" (*id.* at 3:38-
14  52), and "[t]he operator [would] then manually set[] the valves to the manifold
15  nozzles in order to obtain the appropriate pressure and flow and keep[] track of the
16  washing time," as the "washing configuration" required (*id.* at 3:52-55). Thus, the
17  traditional method, like the claimed one, involved no subjective judgment.

18      To be sure, the human operator was more prone to making mistakes than is
19  the claimed "control unit" ('262 Patent at 3:56-58), but that does not render the
20  human operator's process *subjective*. The traditional human operator and the
21  claimed "control unit" attempt to execute exactly the same method, based on
22  exactly the same objective rules: both simply make the predefined correlation
23  between engine type and corresponding wash program parameters. The claims here
24  thus differ from those in *McRo*, where the claimed use of a computer was
25  innovative because it replaced the "subjective determinations" of human artists with
26  the "specific, limited mathematical rules" recited in the claims. *McRO*, 837 F.3d at
27  1314. Here, both the traditional human operator and the claimed "control unit" use
28  the same objective rules to correlate the engine type with the corresponding wash

1    program. While the claimed "control unit" may make the correlation more quickly

2    and accurately, that is not inventive because "relying on a computer to perform

3    routine tasks more quickly or more accurately is insufficient to render a claim

4    patent eligible." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed.

5    Cir. 2015); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 711 F. App'x 1012,

6    1017 (Fed. Cir. 2017) ("[S]peed and accuracy increases stemming from the

7    ordinary capabilities of a general-purpose computer do not materially alter the

8    patent eligibility" analysis. (internal quotation marks omitted)).

9         Thus, the Court's eligibility judgment is based on the erroneous factual

10   finding that human operators had traditionally determined the washing program

11   subjectively. The Court should amend that finding, and consequently the judgment

12   of ineligibility, under Rule 52(b).

13        **B.    The claims are not eligible based on the "regulate the washing**

14            **unit" limitation.**

15        The only other reason the Court provided for holding that the claims are

16   eligible was that the claimed control unit "regulate[s] the washing unit" differently

17   than had traditional human operators. Dkt. 293 at 18-19. The Court reasoned that,

18   ""in certain embodiments,"" the "regulate" function *could* include certain

19   monitoring functions that humans had not traditionally performed, including (1)

20   "respon[ding] to characteristics of the used washing liquid" and (2) "process[ing]

21   temperature data." *Id.* at 18-19 (citing '262 Patent at 6:5-15, 7:29-33). The Court

22   concluded that the claims are eligible because "Defendant has not shown evidence

23   that human operators could achieve the same." *Id.* at 19.

24        The Court should amend this determination because the findings are directly

25   contrary to the Court's *Markman* decision. *See* Dkt. 80 at 12-14. In that decision,

26   the Court was explicit that the phrase "regulate the washing unit" does *not* require

27   the sorts of monitoring functions that the Court later relied on to find eligibility. *See*

28   *id.* During claim construction, EcoServices argued at length (Dkt. 74 at 10-12), and

the Court agreed explicitly (Dkt. 80 at 12-14), that "regulate the washing unit" does not require unclaimed features from preferred embodiments—like "analyz[ing] the removed fouling material." ('262 Patent at 4:32-41; discussed at Dkt. 74 at 11). Yet the two features the Court relied upon in its eligibility holding are precisely those unclaimed features it rejected at *Markman*. *See* '262 Patent at 6:5-15 (describing the feature of "respon[ding] to characteristics of the used washing liquid" as limited to "certain embodiments"); *id.* at 7:26-36 (describing the feature of "process[ing] temperature data" as limited to a "preferred embodiment"). The phrase "regulate the washing unit" therefore does not require the monitoring functions on which the Court's eligibility determination rests.

As a matter of law, optional features absent from the claims cannot confer eligibility. "[T]he concern that drives" the abstract idea exception is "one of pre-emption." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). That concern is not mitigated in the least by observing that—like every other ineligible claim—the claims here *could* become eligible if additional limitations were inserted. Every claim encompasses eligible embodiments. But the claim is not eligible unless it is limited to those embodiments.

The Court concluded at *Markman* that the claimed "regulating relates to calibrating the washing recipe, but not to monitoring." Dkt. 74 at 11. It follows that the claimed "regulat[ing]" encompasses exactly what the Court's eligibility order describes as the process traditionally performed by humans: "manually set[ting] the valves to the manifold nozzles in order to obtain the appropriate pressure and flow and keep[ing] track of washing time." Dkt. 293 at 17. Thus, the claimed "regulat[ing]" does *not* define "a *distinct* process from that previously performed by humans." *Id.* at 16. An appropriate correction under Rule 52(b) is required.

## II. The Asserted Claims Of The '262 Patent Are Not Infringed.

The Court should grant judgment, under Rule 50(b), that CAS does not infringe the '262 Patent because the record lacks substantial evidence that the

accused system either (1) "regulate[s] the washing unit" in the manner the Court's eligibility holding requires or (2) includes an "information detector." Alternatively, the Court should grant a new trial on this issue, under Rule 59, because the verdict is against the clear weight of the evidence.

### A. The accused system does not "regulate the washing unit," as the Court construed that term in its eligibility determination.

If the Court maintains its eligibility holding based on its reading of the "regulate" limitation, then the accused Cyclean system does not "regulate the washing unit" in the manner the eligibility holding requires. The Court's eligibility holding requires that the claimed system can (1) "respon[d] to characteristics of the used washing liquid" or (2) "process temperature data … to delay initiating a washing procedure." Dkt. 293 at 18-19. But nothing in the record indicates that the accused Cyclean system is capable of such functions, or of any other "regulate" functions that could confer eligibility.

There is no record evidence that Cyclean can perform either of the two specific functions the Court identified in its eligibility holding (*i.e.*, "respon[d] to characteristics of the used washing liquid" or "process temperature data … to delay initiating a washing procedure"). In fact, the evidence establishes just the opposite. The record contains testimony that Cyclean does not monitor the wash or otherwise verify that any parameters set by the operator are correct. *See* Trial Tr. 6/28/2018 at 108:11-17 (Ex. 4). And rather than using an automated "control unit" to monitor the washing fluid's temperature and to delay the washing procedure accordingly, the Cyclean system requires human operators to manually set and monitor the temperature. *See id.* at 104:19-105:2. Thus, if the claims are eligible on the basis that they require a "control unit" that "respon[ds] to characteristics of the used washing liquid" and/or "process[es] temperature data … to delay initiating a washing procedure," then the record lacks substantial evidence that the Cyclean system infringes. The Cyclean system requires only manual operation. Accordingly,

- 6 -

1    if the Court maintains that the claims are eligible based on the "regulate" limitation,

2    it should grant RJMOL of non-infringement, under Rule 50(b).

3        CAS observes that no reading of the "regulate" limitation can establish

4    eligibility without also nullifying the infringement verdict. That is because the only

5    difference between how Cyclean "regulate[s] the washing unit" and how human

6    operators had traditionally done so is that Cyclean uses a computer (rather than a

7    human operator) to correlate engine type and wash time. *See* Trial Tr. 6/28/2018 at

8    102:8-110:21 (Ex. 4). But, as explained above, that feature cannot confer eligibility.

9        **B.    The accused system lacks an "information detector."**

10       Irrespective of the eligibility determination, judgment of non-infringement

11   under Rule 50(b) is further warranted because the record lacks substantial evidence

12   that the accused Cyclean system includes the claimed "information detector."

13       At *Markman*, the Court construed the phrase "information detector" as

14   having its plain and ordinary meaning. Dkt. 80 at 10-12. CAS subsequently moved

15   for summary judgment of non-infringement on the basis that neither the '262 Patent

16   nor EcoServices's expert (Mr. Kushnick) provides any "support for the conclusion

17   that a person skilled in the art would interpret the claimed 'information detector' to

18   include a keypad," which was the corresponding component EcoServices identified

19   in the accused system. Dkt. 146 at 10; *see also id.* at 8-12. The Court denied that

20   motion on the basis that "Mr. Kushnick's opinion and deposition testimony, when

21   considered with the other evidence, raise a genuine issue of material fact as to

22   whether the Cyclean keypad can be considered an information detector." Dkt. 177

23   at 10. At trial, however, Mr. Kushnick did not explain why an ordinary artisan

24   would have understood the phrase "information detector" to include Cyclean's

25   keypad. Indeed, Mr. Kushnick provided nothing beyond his conclusory assertions

26   that the Cyclean keypad is an "information detector" because it "detected which

27   button the operator was pushing." Trial Tr. 6/27/2018 at 154:3-4 (Ex. 3); *see also*

28   *id.* at 155:6-25 ("the *key pad* has a detection function and it detects what's been

- 7 -

1  pressed and then has gathered the information about the engine type").

2  Mr. Kushnick's testimony cannot supply the substantial evidence to support a

3  jury verdict of infringement because "[g]eneral and conclusory testimony … does

4  not suffice as substantial evidence." *Koito Mfg. Co. v. Turn-Key-Tech*, LLC, 381

5  F.3d 1142, 1152 (Fed. Cir. 2004). Indeed, "'conclusory expert assertions cannot

6  raise triable issues of material fact.'" *Regents of Univ. of Minn. v. AGA Med. Corp.*,

7  717 F.3d 929, 941 (Fed. Cir. 2013) (quoting *Sitrick v. Dreamworks, LLC*, 516 F.3d

8  993, 1001 (Fed. Cir. 2008)). Accordingly, the jury lacked substantial evidence on

9  which to base a verdict of infringement.

10  The only expert testimony before the jury on how a skilled artisan would

11  understand the term "information detector" in the context of the patent came from

12  CAS's expert, Dr. Micklow. *See* Trial Tr. 6/28/2018 at 180:5-191:16 (Ex. 4). And

13  Dr. Micklow explained in exhaustive detail how (1) the plain language of the

14  claims, (2) the specification itself, and (3) dictionary definitions would all lead an

15  ordinary artisan to understand that the Cyclean's keypad is not an "information

16  detector configured to gather information related to engine type." *Id.*

17  Because the record did not contain substantial evidence from which the jury

18  could have concluded that an ordinary artisan would have understood the term

19  "information detector" to include Cyclean's keypad, RJMOL of non-infringement

20  under Rule 50(b) is proper.

21  **III.   The Asserted Claims Of The '262 Patent Are Invalid.**

22  The Court should grant judgment, under Rule 50(b), that the asserted claims

23  of the '262 Patent are invalid as obvious or for lacking written description.

24  Alternatively, the Court should grant a new invalidity trial, under Rule 59, because

25  the verdict is against the clear weight of the evidence.

26  **A.     Claims 1, 9, and 14 are invalid as obvious.**

27  The asserted claims '262 Patent are invalid as obvious in view of the

28  combination of Leusden (JX205) and Hansen (JX941). Dr. Micklow provided

- 8 -

detailed and unrebutted testimony explaining how that combination discloses the claimed washing unit, information detector, and control unit. *See, e.g.*, Trial Tr. 6/28/2018 at 198:4-199:9, *id.* at 201:16-202:12, *id.* at 203:24-205:25 (Ex. 4); *see also* JX205 at 764-65 (Ex. 6); JX941 ¶¶ [0436], [0439] (Ex 7). Mr. Kushnick agreed that Leusden discloses a turbine washing system (a washing unit) that uses a programmable logic controller (a control unit) to automate aspects of the process and regulate the wash. Trial Tr. 6/29/2018 at 172:6-18 (Ex. 5). And he likewise agreed that Hansen discloses a car wash that uses an RFID-based information detector to identify the car being washed, and determines wash parameters according to the detected vehicle type. *Id.* at 173:14-22 & 174:5-15.

Dr. Micklow also provided ample testimony regarding why and how a skilled artisan would combine Hansen with Leusden. He testified that a skilled artisan would be a "controls engineer" having a B.S. in mechanical or electrical engineering, and two years of experience working with automation and control systems. Trial Tr. 6/28/2018 at 202:13-25 (Ex. 4). He testified that a skilled artisan viewing Leusden—which teaches a control unit that controls all parameters other than starting point—would be motivated to find means for automating the system completely. *Id.* at 200:16-201:1. And he testified that the artisan would have recognized those means in Hansen because it teaches the exact functionality missing from Leusden—*i.e.*, an RFID that detects an object being washed and controls wash parameters accordingly. *Id.* at 203:24-204:10 & 205:19-206:12.

Dr. Micklow explained that, even though Hansen deals primarily with washing cars rather than jet engines, Hansen's RFID technology is compatible with Leusden's wash system, and a person skilled in the art would know how to perform the minimal modifications necessary apply Hansen's idea to Leusden. Trial Tr. 6/28/18 at 204:11-205:18 (Ex. 4); Trial Tr. 6/29/2018 at 13:22-14:20 (Ex. 5). In fact, as Mr. Kushnick admitted, Hansen itself teaches that its RFID technology can be applied to aircraft engine parts. Trial Tr. 6/29/2018 at 175:19-176:23 (Ex. 5).

1  The only rebuttal testimony was Mr. Kushnick's conclusory opinion that a
2  skilled artisan would not have thought to make the combination because (1) the
3  references themselves do not state a "teaching suggestion or motivation … that tells
4  one of skill in the art to combine the two" (Trial Tr. 6/29/2018 at 166:10-13 (Ex.
5  5)); and (2) Hansen's "car wash is not … in the same field of endeavor" as jet
6  engine washing (*id.* at 165:23-166:9). But Mr. Kushnick's conclusory statements do
7  not support his conclusion. The Supreme Court long ago made clear that (1) the
8  references need not themselves supply an explicit motivation to combine, and (2)
9  "[w]hen a work is available in one field of endeavor, design incentives and other
10  market forces can prompt variations of it, either in the same field or a different
11  one." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417-419 (2007).

12  Mr. Kushnick's statements are also unsupported. He provided no support for
13  his conclusory opinion that skilled artisans would look only to systems "for
14  washing turbine engine compressors" for functionality, such as detecting objects,
15  that applies directly to many different fields (Trial Tr. 6/29/2018 at 166:4-5 (Ex. 5)
16  or any explanation for why Hansen—which discloses an information detector to
17  detect an object being washed—is not at least pertinent to problems faced in the
18  field of washing jet engines. To the contrary, he admitted that a skilled artisan
19  would have knowledge of pre-existing control systems, RFID, and other detectors
20  in many different industries. *Id.* at 169:1-4 & 169:18-171:24. Thus, Mr. Kushnick's
21  conclusory statements—that the references did not provide the motivation explicitly
22  or that Hansen deals with washing cars rather than planes (which, as stated above,
23  is factually incorrect as it applies to aircraft parts)—are legally insufficient to
24  dislodge Dr. Micklow's showing that the references rendered the claims obvious.

25  In sum, the only evidence to rebut the obviousness of claims 1, 9, and 14 is
26  Mr. Kushnick's conclusory opinion that a skilled artisan would not have been
27  motivated to combine those references. But Mr. Kushnick's opinion is unsupported
28  and insufficient to support the jury's verdict.

### B. Claim 14 lacks written description.

Claim 14 is invalid because the '262 Patent specification lacks sufficient written description to demonstrate that the inventors had possession of all features of the claim. A patent's specification must "contain a written description of the invention." 35 U.S.C. § 112 ¶ 1. The specification satisfies that requirement if it "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date."*Ariad Pharm., Inc. v. Eli Lilly & Co*., 598 F.3d 1336, 1351 (2010) (en banc).

Claim 14 recites "an information detector for providing information identifying at least one of washing unit and engine type." '262 Patent at 10:17-18 (Ex. 1). Thus, claim 14 covers embodiments where the information detector identifies a washing unit. But the specification does not disclose such embodiments.

Dr. Micklow testified to this fact in detail. Trial Tr. 6/29/2018 at 14:25-17:4 (Ex. 5). And the only rebuttal Mr. Kushnick provided was the specification's description of a washing unit. *Id.* at 163:11-164:5 (citing '262 Patent at 4:18-27). As Mr. Kushnick admitted, that excerpt only discloses a washing unit, not an information detector that identifies a washing unit. Trial Tr. 6/29/2018 at 178:16-179:1 & 179:18-180:7 (Ex. 5). Consequently, the record contains no evidence that the specification describes an information detector for providing information identifying a washing unit. Claim 14 is thus invalid for lacking written description.

### IV. CAS Does Not Infringe The Asserted Claims Of The '860 Patent.

The Court should grant judgment, under Rule 50(b), that CAS does not infringe the '860 Patent because the record lacks substantial evidence that the accused system satisfies either the (1) pressure or (2) particle size ranges recited in the claims. Alternatively, the Court should grant a new trial, under Rule 59, regarding infringement of the '860 Patent because the infringement verdict is against the clear weight of the evidence.

**A.** **The evidence does not prove that the accused device satisfies the recited pressure limitation.**

Claim 1 of the '860 Patent recites "spraying the finely-divided liquid quantities through at least one nozzle … at an overpressure within the range of 50-80 bars." '860 Patent at 4:5-8 (Ex. 2). There is no dispute that the claimed overpressure refers to the pressure of the liquid *at the nozzle*. *See* Trial Tr. 6/29/18 at 17:20-18:1 (Ex. 5).

The record lacks any *direct* evidence of the pressure at the accused system's nozzles. No such measurement was ever taken. Rather, the record contains only *indirect* evidence of that pressure—*i.e.*, the pressure setting *at the washing unit* (Trial Tr. 6/27/18 at 123:6-13; *id.* at 179:2-9, 180:20-181:18 (Ex. 3)) and Mr. Kushnick's speculation that the pressure setting at the washing unit would be similar to the pressure at the nozzles (*id.* at 179:5-22).

Both experts agreed that the pressure at the nozzles will be *lower* than the pressure at the unit. But the exact loss cannot be predicted, as it would vary with distance to the aircraft, the length of the hose, the number of bends in the hose, or a variety of other factors. Trial Tr. 6/27/2018 at 178:21-179:1 (Mr. Kushnick) (Ex. 3); Trial Tr. 6/29/2018 at 23:25-26:2 (Dr. Micklow) (Ex. 5). Mr. Kushnick testified that the loss in pressure "could be big" (Trial Tr. 6/27/2018 at 178:21-179:1 (Ex. 3)) but that this uncertainty was "inconsequential" (*id.* at 197:22-198:2).

Because Mr. Kushnick's opinion (that the pressure loss would not affect infringement) was unsupported and conclusory, it was improper for the jury to infer from it that the pressure at the accused system's nozzles is more likely than not to be within the claimed range. The Federal Circuit has held repeatedly that a jury may not infer infringement based on conclusory expert testimony. For example, in *Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006), the experts disagreed over whether additional ingredients in the accused product would materially affect infringement. The district court granted JMOL of non-

infringement (and the Federal Circuit affirmed) because the patentee's expert "offered conclusory testimony" and "did not support [her] determination with any examinations or tests of the actual accused products." *Id.* Here too, Mr. Kushnick opined that an additional variable (pressure loss in the hose) would not affect infringement, but he "did not support this determination with any examinations or test of the actual accused products." *Id.* And it was his burden to do so.

The Federal Circuit's jurisprudence is replete with similar decisions rejecting inferences of infringement based on conclusory expert testimony. *See*, *e.g.*, *Wis. Alumni Research Found. v. Apple Inc.*, 905 F.3d 1341, 1350 (Fed. Cir. 2018) (reversing denial of JMOL of non-infringement due to conclusory expert testimony); *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1222-23 (Fed. Cir. 1996) (same). It was likewise improper here for the jury to infer its way past the deficiencies in Mr. Kushnick's conclusory testimony.

## B. The evidence does not prove that the accused device satisfies the recited particle size limitation.

For two independent reasons, no substantial evidence supports a verdict that the accused system satisfies the particle size limitation: (1) Mr. Kushnick did not demonstrate that he tested the actual nozzle used in the accused system, and (2) his infringement opinion was based on an incorrect reading of the claims that required the washing system to spray only a *single particle* within the recited range.

### 1. Mr. Kushnick's testing is not sufficiently tied to the facts of this case.

To begin with, EcoServices never presented any evidence as to the actual nozzle used in the accused system. Instead, Mr. Kushnik relied on a hearsay statement that a Lechler 652 series nozzle was used. That's not substantial evidence from which a jury could rely to find infringement.

Even if that were true, that would only narrow the universe of possible nozzles used in the accused Cyclean system to nearly seventy-five, of which Mr.

1  Kushnick only tested three, and he conceded that one of the three could not be used

2  in Cyclean. *See* Trial Tr. 6/27/2018 at 132:20-21 (Ex. 3); *id.* at 193:16-20; *see also*

3  *id.* at 192:21-193:4. And he presented no evidence suggesting that Cyclean uses one

4  of the remaining two nozzles out of the seventy-five. *Id.* at 193:21-194:3.

5  Mr. Kushnick purported to test one nozzle that produces a flow rate above

6  Cyclean's and another that produces a flow rate below. *See id.* at 132:22-133:17.

7  Mr. Kushnick suggested that, because both purportedly satisfy the particle size

8  limitation, whatever of the two (out of seventy-five) nozzles the Cyclean system

9  uses must also. *See id.* at 133:18-24 But Mr. Kushnick's analysis is not tied to the

10  facts of this case.

11  *First*, Kushnick's technical premise, that particle size would be a function of

12  flow rate, is unsound. The evidence establishes that the seventy-five Lechler

13  nozzles have different *spray angles*, and that those differences would have a

14  "marked effect" on particle size. *See* Trial Tr. 6/29/2018 at 33:7-35:21 (Ex. 5). The

15  record contains no evidence about what spray angle Cyclean uses. *See id.* at 36:7-9.

16  *Second*, Mr. Kushnick's data is deficient because he did *not* test a nozzle

17  with a flow rate above Cyclean's. While Cyclean operates with flow rates up to 34

18  liters per minute (Trial Tr. 6/27/2018 at 140:2-8 (Ex. 3)), Mr. Kushnick did not test

19  any nozzle with a flow rate above 21 liters per minute (*see* JX314 (Ex. 8); Trial Tr.

20  6/29/2018 at 37:15-38:23 (Ex. 5)). Consequently, even if his technical theory were

21  correct, the data he presented is plainly not sufficiently tied to the facts of this case.

22  **2.    Mr. Kushnick's infringement opinion relies on an incorrect**

23  **understanding of the particle size limitation.**

24  Even if Mr. Kushnick's testing were accepted, it would still not show that

25  Cyclean satisfies the particle-size limitation. In Mr. Kushnick's test data, only 15%

26  of the particles were within the claimed range of 120-250 µm. Trial Tr. 6/27/2018

27  at 137:14-138:13 (Ex. 3). No reasonable jury could conclude that 15% suffices.

28  The trial record shows that Cyclean can require 130 liters of water to wash

- 14 -

one engine. Trial Tr. 6/27/2018 at 140:19-24 (Ex. 3). Nonetheless, Mr. Kushnick testified that the claim requires *just one particle* of water to be within the claimed range of 120-250 µm. *See id.* at 185:21–186:6 (Ex. 3). That cannot be correct.

An express object of the '860 Patent is to provide a spray that overcomes the centrifugal effect such that the liquid particles follow the path of the contaminants through the compressor. '860 Patent at 1:23-50 (Ex. 2); *see also id.* at 2:14-18. It is the use of the claimed particle size that allows the spray to do so; it is undisputed that particles smaller than 120 µm or larger than 250 µm do not overcome the centrifugal effect. *See id.* at 2:14-18; Trial Tr. 6/27/2018 at 183:7-23 (Mr. Kushnick) (Ex. 3); Trial Tr. 6/29/2018 at 19:14-24 (Dr. Micklow) (Ex. 5).

The particle size limitation must accomplish the patent's express object of overcoming the centrifugal effect. *See, e.g.*, *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1025 (Fed. Cir. 2015) (concluding that the claimed "repetitive motion pacing system" must be interpreted to accomplish the 'objects of the present invention' where the specification stated that objects were accomplished by the pacing system). The patent itself makes clear the importance of the claimed range: it *disparages* the prior art's use of the partially overlapping range of 150 – 950 µm, while identifying the claimed range of 120 – 250 µm as "totally new" and leading to significant performance benefits. '860 Patent at 1:66-2:32 (Ex. 2). Mr. Kushnick admitted that washing an engine using a spray having only one in-range particle "wouldn't be according to the patent." Trial Tr. 6/27/2018 at 186:7-16 (Ex. 3).

Yet Mr. Kushnick testified repeatedly that he considered only whether there was at least one in-range particle. *See* Trial Tr. 6/27/2018 at 185:21–186:6 (Ex. 3); *id.* at 135:23-136:15; *id.* at 138:4-17. He did not separately address whether a spray with only 15% of its particles in the range was capable of accomplishing the invention's express object of overcoming the centrifugal effect.

As a result, Mr. Kushnick's test data showing only 15% of in-range particles is not any evidence, let alone substantial evidence that Cyclean satisfies the particle

size limitation. Mr. Kushnick based his opinion on unsupported testimony that the claim requires only one in-range particle (out of 130 *liters* of water)—an interpretation that he admitted would encompass washes not according to the patent. That conclusory testimony is not substantial evidence. *See, e.g.*, *Wis. Alumni Research*, 905 F.3d at 1350.

## V.    CAS Did Not Willfully Infringe The '860 Patent.

The Court should also grant judgment, under Rule 50(b), that CAS's alleged infringement of the '860 Patent was not willful. The Court has already held that CAS did not willfully infringe the '860 Patent before the suit because CAS had no pre-suit notice of that patent. Dkt. 177 at 24-26. The Court should now hold further that no substantial evidence supports a jury verdict that CAS infringed willfully over the one month period from the Complaint (April 22, 2018) to the '860 Patent's expiration (May 31, 2016) because (1) CAS had no pre-suit knowledge of the patent and (2) it acted reasonably after the suit, during the one month remaining in the life of the patent.[1]

### A.    CAS had no pre-suit knowledge of the asserted patent.

EcoServices' willful infringement claim fails as a matter of law because it is grounded solely on CAS's post-suit conduct during the one month left in the life of the '860 Patent.

"'[I]n ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct.'" *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017) (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007)); *see also Rembrandt Soc. Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876, 884 (E.D. Va. 2013) ("Federal Circuit authority makes clear that an allegation of willful infringement must depend upon pre-suit knowledge of the patent in issue.").

---

[1] EcoServices did not seek a determination of willful infringement of the '262 Patent.

> To conclude otherwise would lead to the anomalous
> result that every lawsuit alleging infringement could
> include a willful infringement claim based on simply
> the filing or the serving of the complaint.

*Rembrandt*, 950 F. Supp. at 884; *see also Cooper Lighting, LLC* v. *Cordelia Lighting, Inc.,* No. 1:16-CV-2669, 2017 WL 3469535, at *3 (N.D. Ga. Apr. 6, 2017) (similar).

Accordingly, "[i]f the defendant does not learn of the patent's existence until the plaintiff files a complaint for infringement, there is no basis upon which the [jury can find] that the defendant's infringement was willful." *Adidas Am., Inc.* v. *Skechers USA, Inc.,* No. 3:16-cv-1400-SI, 2017 WL 2543811, at *4 (D. Or. June 12, 2017); *see also LML Holdings, Inc. v. Pac. Coast Distributing, Inc.,* No. 11cv06173, 2012 WL 1965878, *5 (N.D. Cal. May 30, 2012) (noting plaintiff could not "cite a single case in which the fact that a suit was filed was grounds for a finding that an infringer's post-filing conduct ... [was] willful[ ]").

Here, the Court has held explicitly that CAS lacked any pre-suit knowledge of the '860 Patent:

> Because Plaintiff has not provided any evidence
> showing Defendant's knowledge of the `860 Patent
> prior to this Action, it has failed to establish a
> prerequisite of willfulness. The Court therefore
> GRANTS Defendant's `860 Motion as to pre-suit
> willfulness of infringement.

Dkt. 177 at 26; *see* Trial Tr. 6/28/2018 at 74:25-75:9 (CAS owner Mr. Lee testifying he first learned of the patent upon receiving notice of the suit) (Ex. 4).

Where the court has already found no willful infringement before the complaint, EcoServices "may not base [its] claim for willful infringement solely on [CAS's] post-filing conduct." *Dorman Prods., Inc. v. Paccar, Inc.,*

201 F. Supp. 3d 663, 681 (E.D. Pa. 2016). Therefore, CAS is entitled to judgment as a matter of law of no willful infringement.

### B.    CAS responded to the suit reasonably.

A finding of willfulness is also unsupported for the independent reason that CAS acted reasonably after receiving the Complaint. Upon receiving the Complaint on April 22, 2016, CAS's president (Brad Caban) reviewed the allegations and hired counsel to investigate and answer. Trial Tr. 6/28/2018 at 113:18-22 (Ex. 4). The '860 Patent expired on May 31, 2016, well before CAS could even answer the allegations, on June 20, 2016. As this Court found in its October 26, 2018 Order, "Mr. Caban … acted reasonably responding to the Complaint by hiring counsel to read the patents and provide an opinion." Dkt. 293 at 51.

EcoServices presented no evidence that CAS did anything but continue its normal business operations for the one month before the '860 Patent expired. As other courts have held, "[n]o reasonable jury could find willful infringement" in such circumstances, because there is "no evidence of behavior beyond typical infringement" during that period. *Intellectual Ventures I LLC* v. *Symantec Corp.* 234 F. Supp. 3d 601, 612 (D. Del. 2017).

## VI.    The Asserted Claims Of The '860 Patent Are Invalid As Indefinite.

CAS respectfully requests that, pursuant to Rule 52(b), the Court amend the Judgment to declare the '860 Patent is invalid for being indefinite. CAS previously moved for judgment on this issue, under Rule 52(a). *See* Dkt. 273. The Court denied that motion because "[t]he fact that Mr. Kushnick was able to come to a determination that Cyclean infringes the '860 Patent demonstrates that he was able to understand its objective boundaries." Dkt. 293 at 28.

But that is incorrect. As detailed above, Mr. Kushnick explicitly based his infringement opinion on an unsupported and wrong understanding of the claims' boundaries—one that requires infringing devices to spray only a single particle within the claimed size range. That interpretation cannot be correct. Thus, Mr.

- 18 -

Kushnick was *unable* to identify a plausible objective boundary for the claims. And, for the reasons stated in CAS's Motion (Dkt. 273), no evidence suggests that one exists. The claims of the '860 patent thus "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). An amended judgment is appropriate because neither Mr. Kushnick nor the jury could identify an objective measure for determining what percentage of spray droplets must be "at a liquid particle size in the range of 250-120 µm." '860 Patent at 4:8-9 (Ex. 2).

## VII.   The Jury's Damages Verdict Is Unsupported And Based On Unreliable Expert Testimony.

CAS moves to vacate the damages verdict as unsupported, under Rule 50(b). In the alternative, CAS moves for a new trial on damages, under Rule 59, because the jury verdict was both against the weight of the evidence and based on the unreliable opinion of EcoServices's expert, Mr. Lettiere.

### A.   Mr. Lettiere failed to apportion damages based on the infringing features.

Mr. Lettiere's testimony cannot support the damages verdict because it fails to apportion the damages to the value added by the infringing features. Such a damages opinion is both insufficient and inadmissible.

"A patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). Thus, a patent damages award "must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("a patentee must take care to seek only those damages attributable to the infringing features").

"The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end

product." *Ericsson*, 773 F.3d at 1226. Thus, an admissible damages opinion must be based on "'evidence tending to separate or apportion the [infringer]'s profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310 (Fed. Cir. 2018) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)).

Here, Mr. Lettiere failed to perform the required apportionment. He arrived at his damages opinion by choosing a royalty based on (1) a first royalty range derived from an "income approach," and (2) a second royalty range derived from a "market approach." His opinion *under either* approach failed to take into consideration important unpatented features and apportion the damages to only the infringing features, or "the value added by such features," as the law requires. *Ericsson*, 773 F.3d at 1226.

Instead, the analysis begins with CAS's *total profits* from each wash ($386). Trial Tr. 6/28/18 at 22:19-23:11 (Ex. 4). And rather than apportioning those down to the value added by the patented features, the analysis actually *increases* the royalty (to $400) based on Mr. Lettiere's unsupported speculation that CAS could hypothetically have eeked out even more profit if it only took a harder line with the owner of the system. *See id.* at 23:21-25:5; *id.* at 51:25-52:7. Such an approach to calculating a reasonable royalty is legally impermissible because it fails to "apportion [CAS's] profits and [EcoServices's] damages." *Finjan*, 879 F.3d at 1310 (internal quotation omitted).

Mr. Lettiere's reliance on the sums supposedly paid in the "Pratt & Whitney Agreement," an ostensibly comparable license, suffers from similar deficiencies. *See* Trial Tr. 6/27/18 at 214:16-24 & 215:17-23 (Ex. 3). That agreement was a worldwide license for over 100 U.S. patents and applications, out of which the asserted patents were only two. *Id.* at 54:8-23. It thus reflects a broad license to an entire patent portfolio, not only licenses to the two patents asserted here.

Mr. Lettiere reduced the royalty paid under the Pratt & Whitney agreement by only $50, and never explained the basis for that reduction. He only opined that the asserted patents were more "important" than the rest. But, of course, this does not provide the "reliable and tangible, and not conjectural or speculative" evidence the law requires. *Finjan*, 879 F.3d at 1310 (internal quotation omitted).

The Court denied CAS's previous motion to exclude Mr. Lettiere's opinion as mere "nitpicking" over matters that go only to the weight of Mr. Lettiere's opinion. *See* Dkt. 212 at 10. That is not so. A failure to apportion is a clear legal basis for vacating the damages verdict, and if appropriate, ordering a new damages trial under Rule 59. *See*, *e.g.*, *Finjan* 879 F.3d at 1312 (vacating damages verdict because damages expert failed to apportion damages); *Ericsson*, 773 F.3d at 1225 (vacating damages verdict because the damages expert's opinion did not apportion damages, but was instead based on "licenses which were themselves tied to the entire value of the licensed products, even though the technology being licensed related to only a component of those products").

The law is clear that, "[w]hen the accused infringing products have both patented and unpatented features, measuring [damages] requires a determination of the value added by such features." *Ericsson*, 773 F.3d at 1226; *see also Finjan*, 879 F.3d at 1309–10 ("When the accused technology does not make up the whole of the accused product, apportionment is required."). "A patentee may assess damages based on the entire market value of the accused product only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *Virnetx*, 767 F.3d at 1326 (citing *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013)).

But here, the accused system includes many features beyond those claimed in the '860 and '262 Patents. For example, it includes features that eliminate the need for a post wash run-up of the engine, thus reducing noise and fuel consumption, eliminating the need for a pilot to be present, and enabling washes to occur late at

night, after noise restrictions were in place at the airports. Trial Tr. 6/28/2018 at 108:18-109:23 (Ex. 4). Cyclean also includes the unclaimed feature of spraying water directly into the engine core, between the propeller blades, which reduces the maintenance time for mechanics because they do not have to open the fan valves and disconnect the pressure station probes. *Id.* at 112:5-113:17. Further, Cyclean reduces spray which enables washing at the gate, and is more environmentally friendly. *Id.* These features were valued by CAS's customers. Trial Tr. 6/27/18 at 60:4-62:5 (Caban) (Ex. 3).  Yet none of them are claimed in the asserted patents.

Because Mr. Lettiere did nothing to "apportion [CAS's] profits and [EcoServices's] damages between the patented feature and the unpatented features" (*Finjan*, 879 F.3d at 1310), his estimated royalty goes far beyond "the value attributable to the infringing features of the product" (*Ericsson*, 773 F.3d at 1226). The opinion is therefore insufficient to support the damages verdict, which should be vacated under Rule 50(b). Alternatively, the award should be vacated and a new trial on damages ordered under Rule 59 because the verdict was against the weight of the evidence or because Mr. Lettiere's opinion should have been excluded.

### B.     Mr. Lettiere relied on irrelevant agreements.

Mr. Lettiere's opinion is further insufficient and unreliable because the "comparable" agreements on which he relied were not analogous and Mr. Lettiere failed to explain how the differences between the scope of the patents and the scope of the agreements affected his opinion.

*First*, as mentioned above, Mr. Lettiere relied on the Pratt & Whitney agreement. But nearly all of the patents in that agreement—over 100—were unrelated to the two patents at issue in this case. The Federal Circuit has not hesitated to exclude damages opinions based on licenses that included patents beyond those asserted. *See*, *e.g.*, *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010) (holding that reliance on a license to seven patents was improper because only two of the patents were asserted in the case). Courts "must

1  consider licenses that are commensurate with what the defendant has appropriated."

2  *ResQNet.com*, 594 F.3d at 872. The Pratt & Whitney license encompasses a

3  multitude of other patents and factors, and Mr. Lettiere failed to provide a basis for

4  the only $50 reduction of the value of that license to account for those differences.

5      *Second*, the only other agreement on which Mr. Lettiere relied to formulate

6  his opinion was the "LHT Agreement." Trial Tr. 6/27/18 at 222:10-25 (Mr. Lettiere

7  discussing JX117, § 17.2) (Ex. 3). That tack rendered his opinion yet further

8  irrelevant, insufficient, and unreliable because the LHT agreement is not a plain

9  license, but instead is a multi-faceted agreement to both license patents, set up a

10  lease agreement for LHT washing equipment, and set up an arrangement for the

11  performance and payment of washes. *See id*. Mr. Lettiere nevertheless alleged that

12  this agreement was comparable to a plain license for the asserted patents, without

13  explanation for the difference in value of the additional Cyclean features or the

14  business arrangements between those two companies. That was legally improper.

15  "When relying on licenses to prove a reasonable royalty, alleging a loose or vague

16  comparability between different technologies or licenses does not suffice."

17  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012).

18      Because Mr. Lettiere's opinion relies on two agreements that vary from the

19  hypothetical negotiation, without providing a basis for his adoption and adjustments

20  of the rates in those agreements, his opinion is cannot support the damages verdict.

21  **VIII.  The Post-Trial Running Royalty Fails to Account for the Expiration of**

22  **the '860 Patent.**

23      The ongoing royalty rate is incorrect because it fails to account for the

24  expiration of the '860 Patent—which accounted for nearly all of the pre-trial

25  royalty. The Court awarded an ongoing royalty of $400 per wash (Dkt. 296), the

26  same as the pre-trial rate awarded by the Jury. The Court reasoned that the $400

27  pre-trial rate should continue post-trial because it was calculated to "include[] the

28  washes performed after the expiration of the '860 Patent." Dkt. 293 at 59.

Respectfully, that is not so. The $400 calculation was limited expressly to *pre-trial* washes and based primarily on the '860 Patent, which has since expired. Specifically, Mr. Lettiere opined that the appropriate royalty for the '860 Patent alone is $500. Trial Tr. 6/28/2018 at 20:16-21:1 (Lettiere) (Ex. 4). He also calculated the damages based on a finite damages period where the '860 Patent was "alive" for 77% of the damages period. *Id.* To calculate a total damages figure ($1,949,600) he multiplied that figure by the number of washes that occurred during the life of the '860 Patent (3,845 x $500) and then added only a nominal amount for the 1,029 pre-trial washes that occurred after the '860 Patent expired (*i.e.*, only under the '262 Patent). As Mr. Lettiere explained:

> you multiply … 3,845 washes times the '860 only royalty at 500, and you will end up with a damages amount that's very close to my 1,949,600 because I have primarily focused on the value of the '860 and not really given much credit to '262.

Trial Tr. 6/28/2018 at 27:6-20 (Lettiere) (Ex. 4). Thus, as Mr. Lettiere acknowledged, the primary driver of the calculation was the $500 royalty for the '860 Patent. *Id.* at 21:23-22:1 ("the driver of the negotiation in 2010 would be the issued '860 patent"); *see also id* at 30:14-16.

To determine how much the damages were *per pre-trial wash*, Mr. Lettiere simply divided the total damages figure ($1,949,600) by the number of pre-trial washes (3,845 before the '860 expiration and 1,029 after). Thus, he opined that the damages *per pre-trial wash* was $400—a weighted average of the $500 per-wash royalty for the '860 patent for 77% of the damages period and the nominal per-wash royalty for the '262 Patent. Trial Tr. 6/28/2018 at 20:16-21:17 & 27:6-12 (Ex. 4). The '262 Patent had not even issued at the time of Mr. Lettiere's hypothetical negotiation in June 2010, and did not issue until October 20, 2015. Although he provided no opinion as to an ongoing royalty for post-trial washes, such a royalty

would presumably be negligible, given that Mr. Lettiere placed such a low value on the '262 Patent that he failed to calculate an individual royalty.

Because the '860 Patent has expired, there is no basis for awarding a post-trial ongoing royalty of $400 per wash—a number based principally on the $500 per wash Mr. Lettiere ascribed to the now expired '860 Patent. As the Court has recognized, "changed circumstances" can render a jury's royalty award inapplicable to an ongoing royalty calculation. Dkt. 293 at 43 ("A post-verdict royalty is fundamentally different from a pre-verdict royalty."). The expiration of the '860 Patent is just such a circumstance.

Since the '860 Patent expired before trial, the post-trial royalty only relates to the '262 Patent. Based on Mr. Lettiere's testimony, it is clear the '262 Patent has only a minimal value to EcoServices, and as counsel admitted, EcoServices does not practice it. Trial Tr. 6/28/2018 at 166:15-19 (Ex. 4). As the Court noted, "there is no evidence of demand of the '262 Patent." D.I. 293 at 35. "Plaintiff provides no evidence that the Cyclean is impossible to use without the '262 features. Nor has Plaintiff shown any consumer demand for the '262 features." *Id.* at 36. Otherwise, there would have been a value and damages apportioned directly to the '262 Patent.

As with the post-trial royalty, the supplemental royalty awarded by the Court should also account for only the '262 Patent. The court awarded supplemental damages from the time of January 2018 to July, 2, 2018 at a $400 per wash rate for 314 washes. Dkt. 297 at 3. But by that time the '860 Patent had already expired.

CAS therefore respectfully requests that the Court amend its Judgment, under Fed. R. Civ. P. 52(b), to remove the award of supplemental damages and an ongoing royalty. Alternatively, CAS requests that the Court grant a new trial under Fed. R. Civ. P. 59(a)(2) to determine the supplemental and ongoing rate.

## CONCLUSION

For the foregoing reasons, CAS respectfully requests that the Court grant the relief requested herein.

1   Dated:        February 13, 2019              MAYER BROWN LLP

2
                                                By: */s/ Stephen E. Baskin*
3                                                      Stephen E. Baskin

4

5                                               Dale J. Giali (SBN 150382)
                                                Elizabeth M. Burnside (SBN 258184)
6                                               Stephen E. Baskin (*pro hac vice*)
                                                Dara M. Kurlancheek (*pro hac vice*)
7                                               Gregory J. Apgar (*pro hac vice*)
                                                Jonathan Weinberg (SBN 300452)
8
                                                *Attorneys for Defendant/Counter-*
9                                               *Plaintiff*
10                                              *Certified Aviation Services, LLC*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Certificate of Service

I, Stephen E. Baskin, hereby certify that on February 13, 2019, I filed the within and foregoing Defendant Certified Aviation Services, LLC's Motion for Post-Judgment Relief Pursuant to Rules 50(B), 52(B), and 59 with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing:

Natasha E. Daughtrey
ndaughtrey@goodwinlaw.com
GOODWIN PROCTER LLP
601 South Figueroa Street, 41st Floor
Los Angeles, CA 90017
Telephone:   (213) 426-2500
Facsimile:    (213) 623-1673

Ronald J. Pabis
rpabis@goodwinlaw.com
Stephen K. Shahida
sshahida@goodwinlaw.com
Patrick J. McCarthy
pmccarthy@goodwinlaw.com
Myomi T. Coad
mcoad@goodwinlaw.com
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001
Telephone:   (202) 346-4000
Facsimile:    (202) 346-4444

*Attorneys for Plaintiff EcoServices, LLC*

Dated:         February 13, 2019          MAYER BROWN LLP

By: */s/ Stephen E. Baskin*
         Stephen E. Baskin