1  Ronald J. Pabis (pro hac vice)
   *rpabis@goodwinlaw.com*
2  Stephen K. Shahida (pro hac vice)
   *sshahida@goodwinlaw.com*
3  Patrick J McCarthy (pro hac vice)
   *pmccarthy@goodwinlaw.com*
4  Myomi Tse Coad (pro hac vice)
   *mcoad@goodwinlaw.com*
5  **GOODWIN PROCTER LLP**
   901 New York Avenue NW
6  Washington, DC 20001
   Tel.: +1 202 346 4000
7  Fax.: +1 202 346 4444

8  Natasha E. Daughtrey (SBN 319975)
   *ndaughtrey@goodwinlaw.com*
9  **GOODWIN PROCTER LLP**
   601 S Figueroa Street
10 41st Floor
   Los Angeles, California 90017
11 Tel.: +1 213 426 2500
   Fax.: +1 213 623 1673
12
   Attorneys for Plaintiff
13 ECOSERVICES, LLC

14               **UNITED STATES DISTRICT COURT**

15               **CENTRAL DISTRICT OF CALIFORNIA**

16                      **EASTERN DIVISION**

17
   ECOSERVICES, LLC,                    | Case No. 5:16-cv-01824-RSWL-SPx
18
               Plaintiff,               | **PLAINTIFF ECOSERVICES, LLC'S**
19                                      | **OPPOSITION TO DEFENDANT**
          v.                            | **CERTIFIED AVIATION SERVICES,**
20                                      | **LLC'S MOTION FOR POST-**
   CERTIFIED AVIATION SERVICES,         | **JUDGMENT RELIEF PURSUANT**
21 LLC,                                 | **TO RULES 50(b), 52(b), AND 59**

22             Defendant.               | Judge: Hon. Ronald Sing Wai Lew
23
24
25
26
27
28

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    BACKGROUND ......................................................................................... 1

III.   LEGAL STANDARDS ............................................................................... 1

       A.   Judgment As A Matter Of Law ...................................................... 1

       B.   Motion For New Trial ..................................................................... 2

       C.   Motion To Amend Findings And Judgment ................................... 3

IV.    CAS REPEATS REJECTED INVALIDITY ARGUMENTS AND IGNORES THE RECORD ......................................................................... 4

       A.   CAS's Motion Is Improper Re-argument ....................................... 4

       B.   CAS Continues To Ignore The Record ........................................... 5

       C.   CAS Impermissibly Reargues The Meaning Of The Claims ......... 5

V.     THE JURY'S INFRINGEMENT VERDICT IS SUPPORTED BY TRIAL EVIDENCE ................................................................................... 6

       A.   Under The Plain And Ordinary Meaning, Cyclean "Regulate[s] The Washing Unit" ........................................................................... 6

       B.   Cyclean Includes The Claimed "Information Detector" ................. 7

VI.    THE '262 PATENT IS VALID .................................................................. 10

       A.   CAS Failed To Prove By Clear And Convincing Evidence That There Was Motivation To Combine Leusden With Hansen ............ 10

       B.   The Jury Correctly Rejected CAS's Written Description Challenge To Claim 14 ................................................................... 12

VII.   THE PREPONDERANCE OF THE EVIDENCE CONVINCED THE JURY THAT CYCLEAN INFRINGES THE '860 PATENT ................... 13

       A.   The '860 Patent Is Valid ............................................................... 16

       B.   The Jury's Willful Infringement Verdict Should Not Be Disturbed ...................................................................................... 17

i

VIII.   SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S DAMAGES VERDICT..................................................................................18

IX.     THE COURT WAS CORRECT IN SETTING THE ONGOING ROYALTY OF $400 PER WASH..........................................................24

X.      CONCLUSION .................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
    738 F.3d 960 (9th Cir. 2013) ..................................................... 3

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286 ........................................................................ 19

*Ashraf-Hassan v. Embassy of France*,
    185 F. Supp. 3d 94, 108 (D.D.C. May 6, 2016) ............................... 4, 5

*ATS Prods. Inc. v. Ghiorso*,
    Case No. 10-4880 BZ, 2012 WL 1067547 (N.D. Cal. Mar. 28, 2012) .... 3, 4, 5, 17

*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*,
    55 F.3d 615 (Fed. Cir. 1995) ..................................................... 15

*Broadcom Corp. v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013) ................................................... 15

*Costa v. Desert Palace*,
    299 F.3d 838 (9th Cir. 2002) ................................................... 2, 8

*E.E.O.C. v. Go Daddy Software, Inc.*,
    581 F.3d 951 (9th Cir. 2009) ................................................... 1, 20

*Enovsys LLC v. Nextel Commc'ns, Inc.*,
    614 F.3d 1333 (Fed. Cir. 2010) ..................................................... 9

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) ................................................... 19, 23

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) ................................................... 23, 24

*In re First All. Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ..................................................... 3

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (Fed. Cir. 1970) ............................................... 23

*Gilbrook v. City of Westminster*,
    177 F.3d 839 (9th Cir. 1999) ........................................................................... 1, 20

*Godinez v. Alta-Dena Certified Dairy, LLC*,
    No. CV-15-01652-RSWL(SSx), ECF No. 120, at *6 (C.D. Cal.
    Aug. 15, 2016) ....................................................................................................... 3

*Golden Bridge Tech., Inc. v. Apple, Inc.*,
    No. 5:12-cv-04882-PSG, 2015 U.S. Dist. LEXIS 58324 (N.D. Cal.
    May 1, 2015) ................................................................................................ 8, 11, 13

*Guy v. City of San Diego*,
    608 F.3d 582 (9th Cir. 2010) ..................................................................... 3, 13

*Hanson v. Shell Oil*,
    541 F.2d 1352 (9th Cir. 1976) ....................................................................... 13

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    645 F.3d 1336 (Fed. Cir. 2011) ..................................................................... 12

*Innogenetics, N.V. v. Abbott Labs.*,
    512 F.3d 1363 (Fed. Cir. 2008) ..................................................................... 11

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
    688 F.3d 1342 (Fed. Cir. 2012) ................................................. 7, 8, 10, 11

*Kode v. Carlson*,
    596 F.3d 608 (9th Cir. 2010) ........................................................................... 2

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
    791 F.2d 1356 (9th Cir. 1986) ....................................................................... 3

*Lam v. City of San Jose*,
    869 F.3d 1077 (9th Cir. 2017) ....................................................................... 2

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 888 (Fed. Cir. 2004) ....................................................................... 6

*Markman v. Westview Instruments*,
    52 F.3d 967 (Fed. Cir. 1995) ................................................................. *passim*

*Matkovich v. Costco Wholesale Corp.*,
    No. LA-CV-15-2057-JCG, 2017 U.S. Dist. LEXIS 221810 (C.D.
    Cal. Aug. 24, 2017) ............................................................................. 3, 4, 25

iv

*McGinley v. Franklin Sports, Inc.*,
   262, F.3d 1339, 1355 (Fed. Cir. 2001) ................................................... 8

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
   No. C-08-04990-JW, 2012 U.S. Dist. LEXIS 88567 (N.D. Cal. June
   7, 2012) ................................................................................................. 23

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011) .................................................................................. 2

*Molski v. M.J. Cable, Inc.*,
   481 F.3d 724 (9th Cir. 2007) .................................................................. 2

*Montgomery Ward & Co. v. Duncan*,
   311 U.S. 243 (1940) ................................................................................ 2

*Morris v. Atchity*,
   No. CV-08-5321-RSWL(JCx), 2011 U.S. Dist. LEXIS 106417
   (C.D. Cal. Sept. 20, 2011) ................................................................. 1, 7

*Nautilus, Inc. v. Biosig Instr., Inc.*,
   134 S. Ct. 2120 (2014) .......................................................................... 17

*Pavao v. Pagay*,
   307 F.3d 915 (9th Cir. 2002) .................................................................. 3

*Perkin-Elmer Corp. v. Computervision Corp.*,
   732 F.2d 888 (Fed. Cir. 1984) ........................................................... 2, 10

*PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*,
   No. 02-1774-PJH, 2007 WL 1864780 (N.D. Cal. June 28, 2007),
   *aff'd*, 291 F. App'x 40 (9th Cir. 2008) .............................................. 3, 4

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
   655 F.3d 1364 (Fed. Cir. 2011) .............................................................. 8

*Stragent, LLC v. Intel Corp.*,
   No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 106167 (E.D. Tex. Mar. 6,
   2014) ....................................................................................................... 23

*Streber v. Hunter*,
   221 F.3d 701 (5th Cir. 2000) .................................................................. 7

*Winato v. Toshiba Elecs. Components, Inc.,*
  274 F.3d 1276 (9th Cir. 2001) .................................................................. 1

**Statutes**

35 U.S.C. § 101 .............................................................................................. 5

35 U.S.C. § 112 ............................................................................................ 17

35 U.S.C. § 282 ........................................................................................ 2, 10

**Other Authorities**

Fed. R. Civ. P. 50 ................................................................................*passim*

Fed. R. Civ. P. 52(b) ........................................................................ 3, 4, 5, 17

Fed. R. Civ. P. 59(a)(1) ...................................................................... 2, 6, 10

# I.    INTRODUCTION

EcoServices respectfully submits its opposition to CAS's Motion (ECF No. 303.)

# II.    BACKGROUND

Following the jury's unanimous verdict in favor of EcoServices (ECF No. 264) and award of $1,949,600 to compensate EcoServices for CAS's infringement of the valid and asserted claims, CAS filed two motions for judgement:  (1) patent eligibility of the '262 Patent (ECF No. 271); and (2) indefiniteness of the '860 Patent (ECF No. 273).  EcoServices opposed CAS's motions (ECF Nos. 278 and 279) and the Court denied them.  (ECF No. 293.)  The Court entered judgment on January 18, 2019.  (ECF No. 297.)  On February 13, 2019, CAS filed this Motion and its notice of appeal to the Federal Circuit Court of Appeals on February 15, 2019.  (ECF No. 305.)

# III.    LEGAL STANDARDS

## A.    JUDGMENT AS A MATTER OF LAW

Because a post-verdict Rule 50(b) motion is "a renewed motion," it is "limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  In the Ninth Circuit, a jury's verdict "must be affirmed if there is substantial evidence to support the verdict."  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (citation omitted).

"Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it possible to draw two inconsistent conclusions from the evidence."  *Id.*   Indeed, "[t]he standard for overturning a jury verdict is substantial" and the moving party must show that "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-movant] on that issue."  *Morris v. Atchity*, No. CV-08-5321-RSWL(JCx), 2011 U.S. Dist. LEXIS 106417, at *3 (C.D. Cal. Sept. 20, 2011) (quoting *Winato v. Toshiba*

1

*Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001)); *see also Costa v. Desert Palace*, 299 F.3d 838, 859 (9th Cir. 2002) (stating that a party seeking judgment as a matter of law has a "very high" standard to meet).

When reviewing post-verdict motions, courts must not lose sight of the presumption of patent validity. *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984). Additionally, when the jury has returned a verdict of validity, "the question is not whether the patentee had introduced sufficiently substantial evidence to support the verdict, but whether the challenger's evidence so met the burden imposed by 35 U.S.C. § 282 ('The burden of establishing invalidity of a patent or any claim shall rest on the party asserting such invalidity') that reasonable jurors could not have concluded that the challenger failed to overcome that burden." *Id.* (citation omitted). In other words, the question is whether a reasonable jury could conclude that the challenger failed to meet its burden of producing clear and convincing evidence of invalidity. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011) (reaffirming the clear and convincing evidentiary standard applies in all cases involving arguments of invalidity).

## B. MOTION FOR NEW TRIAL

The Ninth Circuit "review[s] a district court's denial of a motion for a new trial under [Rule 59(a)(1)] for an abuse of discretion." *Lam v. City of San Jose*, 869 F.3d 1077, 1084 (9th Cir. 2017) (quoting *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 728 (9th Cir. 2007)). This review permits the Ninth Circuit "to reverse the district court only if it 'reaches a result that is illogical, implausible, or without support in the inferences that may be drawn from the record.'" *Lam*, 869 F.3d at 1984 (quoting *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010)). "Historically recognized grounds [in granting a new trial] include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski*, 481 F.3d at 729 (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

2

1    "Thus, if the jury's verdict is not against the clear weight of the evidence, the Ninth

2    Circuit may find that a district court abused its discretion in granting a new trial."

3    *Godinez v. Alta-Dena Certified Dairy, LLC*, No. CV-15-01652-RSWL(SSx), ECF

4    No. 120, at *6 (C.D. Cal. Aug. 15, 2016).

5        A court "must uphold a jury verdict if it is supported by substantial evidence."

6    *Guy v. City of San Diego*, 608 F.3d 582, 585–86 (9th Cir. 2010).   Evidence is

7    sufficiently "substantial" to support a jury's finding when it is "'adequate to support

8    the jury's conclusion, even if it is also possible to draw a contrary conclusion.'

9    Specifically, [courts] must uphold a jury's damages award unless the amount is

10   'clearly not supported by the evidence, or only based on speculation or guesswork.'"

11   *Id.* (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).   The Ninth Circuit

12   affords "great deference" to a jury's damages award.   *In re First All. Mortg. Co.*,

13   471 F.3d 977, 1001 (9th Cir. 2006) (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l

14   *Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986)).   A district court's decision

15   to admit expert testimony is reviewed for an abuse of discretion.   *See Alaska Rent-*

16   *A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 970 (9th Cir. 2013).

17       **C.    MOTION TO AMEND FINDINGS AND JUDGMENT**

18       A motion under Rule 52(b) is not "a vehicle for a rehearing" nor as a way to

19   "re-litigate facts and legal theories that have previously been rejected by the court."

20   *ATS Prods. Inc. v. Ghiorso*, Case No. 10-4880 BZ, 2012 WL 1067547, at *1 (N.D.

21   Cal. Mar. 28, 2012) (citations omitted).   Motions under Rule 52(b) are "not [to] be

22   granted if [they are] based on arguments that either were, or could have been, raised

23   at any point prior to the entry of judgment."   *PMI Mortg. Ins. Co. v. Am. Int'l*

24   *Specialty Lines Ins. Co.*, No. 02-1774-PJH, 2007 WL 1864780, at *2 (N.D. Cal.

25   June 28, 2007), *aff'd*, 291 F. App'x 40 (9th Cir. 2008).   Furthermore,  "[t]he

26   decision to alter or amend findings is committed to the sound discretion of the trial

27   judge."   *Matkovich v. Costco Wholesale Corp.*, No. LA-CV-15-2057-JCG, 2017

28   U.S. Dist. LEXIS 221810, at *5 (C.D. Cal. Aug. 24, 2017) (citations omitted).

3

Therefore, "the party bringing a Rule 52 motion bears a heavy burden in seeking to demonstrate a clear error of manifest injustice necessitating amendment of the judgement." *Id.* (quoting *Ashraf-Hassan v. Embassy of France*, 185 F. Supp. 3d 94, 108 (D.D.C. May 6, 2016) (citations and quotation marks omitted)).

## IV.   CAS REPEATS REJECTED INVALIDITY ARGUMENTS AND IGNORES THE RECORD

### A.   CAS's Motion Is Improper Re-argument

CAS moves under Rule 52(b) for the Court to reverse its finding that the asserted claims of the '262 Patent are not invalid.  Rule 52(b), however, is not meant to provide an avenue for relitigating issues that have previously been rejected by the court.  *ATS*, 2012 WL 1067547, at *1.  CAS offers nothing new, continues to ignore the record, presents recycled ineligibility arguments, and attempts to revisit claim construction.  As such, CAS's Motion constitutes nothing more than an improper "attempt at a second bite at the apple" and thus, should be denied.  *PMI*, 2007 WL 1864780, at *7.  For instance, CAS's argument that the Court should have concluded that human operators determine a washing program "objectively" (ECF No. 303, at 3-4.) is nothing more than CAS repackaging its prior argument that "[t]he claims are directed to the abstract idea of automating a known engine washing process" (ECF No. 271).  Such repackaging is an impermissible use of a Rule 52(b) motion.  *ATS*, 2012 WL 1067547, at *1.

Unhappy with the Court's decision, CAS reargues that what is being claimed in the '262 Patent is not new and does not improve upon the prior art.  But the Court has already rejected the argument that the claimed "control unit" and the correlation between the engine type and wash program (which reduces wash time and human error) is not inventive.  *Compare* ECF No. 271, at 7, 9-10 *with* ECF No. 303, at 3-4.  CAS is simply requesting that the Court repeat the same analysis the Court performed in denying CAS's previous motion on this very issue which is an impermissible use of Rule 52(b).  *See PMI*, 2007 WL 1864780, at *6 (denying

4

1   defendant's Rule 52(b) motion where "the analysis is the same, particularly since
2   [defendant] has, once again, failed to present any new evidence or argument before
3   the court."). That CAS does not agree with the Court's conclusions or finds certain
4   evidence "to be inconsistent or implausible" fails to rise "to the level of manifest
5   error." *Ashraf-Hassan*, 185 F. Supp. 3d at 110. Accordingly, CAS's Rule 52(b)
6   motion should be denied.

7            **B.    CAS CONTINUES TO IGNORE THE RECORD**

8        In rearguing, CAS also ignores unrebutted trial testimony that prior art
9   washing methods involve subjective judgment of the human operator. The Court
10  squarely addressed this issue of the invention eliminating subjectivity in its Order.
11  (ECF No. 293, at 19); *see also* Ex. A, at 82:9-13 (direct testimony of Mr. Nordlund).
12  Indeed, CAS's own expert, Dr. Micklow, provided corroborating testimony that
13  human operators use subjective judgment while carrying out an engine wash. *See*
14  Ex. B, at 184:7-20 ("…since many engine washing operations are performed during
15  nighttime, … *The operators may not be fully alert*."). In sum, CAS is again
16  ignoring the trial testimony about the state of the prior art and the problems the
17  inventors set out to solve, which included eliminating human subjectivity when
18  selecting a wash program. Post-trial attorney argument cannot erase the unrebutted
19  trial testimony.

20          **C.    CAS IMPERMISSIBLY REARGUES THE MEANING OF THE CLAIMS**

21       CAS also argues that the Court's eligibility ruling is contrary to its claim
22  construction (*Markman*) Order (ECF No. 303, at 4). In that Order, the Court
23  rejected CAS's argument that the claimed "regulating" step also requires
24  "monitoring." (ECF No. 80, at 12-14.) Nevertheless, CAS reargues that the
25  "regulating" step must require "monitoring" in order for the claims to satisfy 35
26  U.S.C. § 101. This impermissible attempt to reargue claim construction cannot
27  support a motion under Rule 52(b). *ATS*, 2012 WL 1067547, at *1.

28

                                        5

1    CAS is again improperly reading an embodiment from the specification into

2    the claims.  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 888, 913 (Fed. Cir.

3    2004) ("[I]t is improper to read limitation from a preferred embodiment described in

4    the specification…into the claims absent a clear indication in the intrinsic record

5    that the patentee intended the claims to be so limited.").  CAS ignores the fact that

6    the claims say nothing about, nor include terminology requiring, "monitoring." As

7    the Court correctly reasoned in its *Markman* Order, if EcoServices intended to

8    restrict the term "regulating" to additionally include "monitoring," it could have

9    included "monitoring" in the claims, but EcoServices did not do so.  (ECF No. 80, at

10   13-14.).  And CAS never previously requested a reconsideration of the *Markman*

11   Order.  CAS has presented no new reason or argument for improperly reading

12   limitations from the specification into the claims, and there is no reason to do so

13   now.  In sum, the Court's previous ruling on this issue remains consistent with the

14   Court's *Markman* Order.  Accordingly, CAS's motion should be denied.

15   **V.     THE JURY'S INFRINGEMENT VERDICT IS SUPPORTED BY**

16   **TRIAL EVIDENCE**

17       Under Rule 50(b), or alternatively Rule 59(a)(1), CAS urges the Court to

18   overturn the jury's verdict of infringement of the '262 Patent.  CAS argues that

19   under the Court's reading of the "regulate" term, Cyclean cannot infringe because

20   the trial evidence showed that it "does not monitor the wash or otherwise verify that

21   any parameters set by the operator are correct."  (ECF No. 303, at 6.)  CAS also

22   argues that Cyclean does not have the claimed "information detector." CAS's

23   Motion provides zero basis for relief under Rules 50(b) or 59.

24       **A.     UNDER THE PLAIN AND ORDINARY MEANING, CYCLEAN**

25   **"REGULATE[S] THE WASHING UNIT"**

26       Using a wrong construction of the term "regulating"—one that the Court

27   rejected in its *Markman* Order—CAS advances a non-infringement argument that

28   Cyclean does not perform "monitoring" functions.  But the Court never construed

6

1    "regulate" to include "monitoring."    CAS's arguments, based on the wrong

2    construction, should therefore be denied.   CAS's burden on its Motion remains a

3    requisite showing that there is no legally sufficient evidentiary basis for a reasonable

4    jury to find for EcoServices on this issue.  *Morris*, 2011 U.S. Dist. LEXIS 106417,

5    at *3.   And the trial record contains substantial evidence supporting the jury's

6    infringement verdict, which was informed by the legal principles in the Court's

7    instructions—instructions that CAS never objected to—on the plain and ordinary

8    meaning of the claims.  *See, e.g.*, Ex. A, at 152:11-154:9; 157:24-158:21 (Mr.

9    Kushnick testifying about how Cyclean meets the limitation of "regulating the

10   washing unit.").

11              **B.     CYCLEAN INCLUDES THE CLAIMED "INFORMATION DETECTOR"**

12        CAS also argues that there is insufficient evidence to support the jury's

13   conclusion that Cyclean has the claimed "information detector."   The thrust of

14   CAS's argument is that the trial testimony of Dr. Micklow is the only testimony that

15   the jury should have credited as to how a person of ordinary skill in the art

16   ("POSITA") would have understood the term "information detector."  (ECF No.

17   303, at 8.)

18        Although it is true that the two experts disagreed as to whether a POSITA

19   would understand Cyclean's keypad to be the claimed "information detector," this

20   case presents a classic example of a patent jury crediting one expert's opinion over

21   another, something that juries are perfectly entitled to do.  *See Kinetic Concepts,*

22   *Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1362 (Fed. Cir. 2012) ("Because of

23   this conflicting expert testimony, the jury was free to 'make credibility

24   determinations and believe the witness it considers more trustworthy.'") (quoting

25   *Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000)).   Indeed, this was the entire

26   point of the Court denying CAS's motion for summary judgment of non-

27   infringement on this issue and asking a jury to sort out the conflicting evidence.

28   That the jury picked Mr. Kushnick over Dr. Micklow does not, as CAS suggests,

7

1  render Mr. Kushnick's testimony "conclusory."[1]  *Id.*; *see Star Scientific, Inc. v. R.J.*

2  *Reynolds Tobacco Co.*, 655 F.3d 1364, 1378 (Fed. Cir. 2011) (affirming district

3  court's denial of plaintiff's motion for JMOL, stating that "[t]he jury is entitled to

4  credit or discredit testimony before it.").

5  In the end, when experts' testimonies conflict and the jury finds for the

6  patentee, the court "must infer that the jury found" the patentee's "experts to be

7  credible and persuasive," which provides substantial evidence supporting the jury's

8  factual finding.  *See Kinetic*, 688 F.3d at 1362 (affirming denial of infringer's

9  JMOL).   Indeed, "[w]hen the jury is supplied with sufficient valid factual

10  information to support the verdict it reaches, that is the end of the matter.  In such an

11  instance, the jury's factual conclusion may not be set aside by a JMOL order."

12  *McGinley v. Franklin Sports, Inc.*, 262, F.3d 1339, 1355 (Fed. Cir. 2001).  The mere

13  disagreement between the experts falls well short of the "very high" standard to

14  overturn the jury's verdict.  *Costa*, 299 F.3d at 859.

15  Hedging its bet, CAS also attempts to reargue the meaning of "information

16  detector" to require "automation."  But that issue was previously litigated and the

17  Court rejected CAS's argument in the *Markman* Order.   CAS never requested

18  reconsideration of the *Markman* order and has never challenged the Court's

19  instructions to the jury, including the meaning of the claim terms.  (ECF No. 255, at

20  17 (Court's Instruction No. 16.))   As CAS failed to argue that any of the jury

21  instructions were improper, the Court need not consider whether the jury applied the

22  wrong law.  *See Golden Bridge Tech., Inc. v. Apple, Inc.*, No. 5:12-cv-04882-PSG,

23  2015 U.S. Dist. LEXIS 58324, at *10, n.35 (N.D. Cal. May 1, 2015) ("Because

24  Apple does not contend that any of the five jury instructions regarding validity were

25  improper, the court does not consider whether the jury applied the wrong law.")

26

27  _____

28  [1] The trial record provides numerous examples of Dr. Micklow's credibility getting challenged.

8

Regardless, CAS continues to ignore the language of the asserted claims—none of which require "automation."  For example, Dr. Micklow attempted to narrow the claims by testifying at trial that the claimed "information detector" must be automated, despite failing to identify any requirement for automation in the claim language.  *See, e.g.*, Ex. B, at 183:7-12 (testifying that the "…information detector right from the title in the patent has to be automated."); *id.* at 183-24:184:3 ("the information detector must be automated"); *id.* at 185:9-15:

> **Q.** Are there any portions of the patent that lead to your opinion that Cyclean's key pad cannot be an information detector? **A.** Yes, there is. Within the patent they talk about the typical automated detection sensors.  They talk about an RFID.  They talk about bar codes, things like that to where it's gonna automatically detect the engine type.

As the Court concluded in its *Markman* Order, however, limitations from the specification cannot be imported into the claim language.  (ECF No. 80, at 11-12.)  As the inventors testified during trial, the automated examples of the claimed "information detector" from the specification are just that: examples.  *See* Ex. A, at 84:11-18; *see also id.* at 198:7-25.

Further,  Mr. Kushnick's trial testimony is in line with the clear weight of the evidence.  *Enovsys LLC v. Nextel Commc'ns, Inc.*, 614 F.3d 1333, 1344 (Fed. Cir. 2010).  For example, Mr. Kushnick testified that Cyclean's keypad satisfies the "information detector" limitation because "the key pad has a detection function and it detects what's been pressed and then has gathered the information about the engine type."  (Ex. A, at 155:6-17.)  Mr. Kushnick's trial testimony is consistent with the plain and ordinary meaning of "information detector" and preferred embodiment disclosed in the specification.  The preferred embodiment describes "the information detector" as "obtain[ing] particular information identifying the

9

1    engine." (JX 2, '262 Patent, at 6:37-38.)  Cyclean's keypad obtains information on

2    engine type.[2]  CAS has not provided evidence to the contrary.

3    ## VI.    THE '262 PATENT IS VALID

4    CAS tells the Court that under Rule 50(b), or alternatively Rule 59(a)(1), the

5    asserted claims of the '262 Patent are invalid as obvious in view of the combination

6    of Leusden with Hansen, arguing that *Mr. Kushnick* only provided "conclusory" and

7    "unsupported" opinions to support the jury's verdict.  But proving invalidity by

8    clear and convincing evidence is the accused infringer's burden.  *Perkin-Elmer,* 732

9    F.2d at 893.  There is no burden on EcoServices, or its expert, to prove validity

10   (which remains a statutory presumption under 35 U.S.C. § 282).  With that said,

11   "the jury's factual findings receive substantial deference on motion for JMOL."

12   *Markman v. Westview Instruments*, 52 F.3d 967, 975 (Fed. Cir. 1995).  The question

13   is not whether EcoServices had introduced substantial evidence to support the

14   verdict, but whether CAS's evidence met its burden of producing clear and

15   convincing evidence of invalidity.  *Perkin-Elmer,* 732 F.2d at 893.  Here, the jury

16   correctly concluded that CAS failed to prove by clear and convincing evidence that

17   the '262 Patent is invalid.

18   ### A.    CAS FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE

19   ### THAT THERE WAS MOTIVATION TO COMBINE LEUSDEN WITH HANSEN

20   Again, that the jury picked Mr. Kushnick over Dr. Micklow does not render

21   Mr. Kushnick's testimony "conclusory."  *Kinetic*, 688 F.3d at 1362.  The experts'

22   disagreement focused largely on the motivation or suggestion to combine Leusden

23   _____

24   [2]  CAS ignores Dr. Micklow's testimony on this point where he admits that
     Cyclean's keyboard sends signals to the control unit by selection of the human
     operator, which is consistent with Mr. Kushnick's understanding of the plain and
25   ordinary meaning of the "information detector."  *See* Ex. C, at 81:5-9:

26   **Q.** Yes. The information that is sent when the operator
     presses the enter button, that signal represents ones and
27   zeros that tell the control unit to initiate the program for
     the wash; right? **A.** Based on the user selection, yes.

28   *See also id.* at 79:24-81:1.

10

with Hansen to arrive at the claimed "information detector configured to gather information related to engine type." Mr. Kushnick's trial testimony supplied substantial evidence to support the jury's verdict and was consistent with the clear weight of the evidence. Indeed, the question left to the jury was whether CAS had proven by clear and convincing evidence that there was motivation to combine Leusden with Hansen to arrive at the claimed invention. "Significantly, where there is a reason to combine prior art references is a question of fact." *Kinetic*, 688 F.3d at 1367 (citations omitted). In light of its verdict, the jury answered that question in the negative, and substantial evidence supports this finding.

CAS leans hard on Dr. Micklow's trial testimony that the combination of Leusden with Hansen was possible and even easy with the proper engineering background and allegedly compatible technology. (ECF No. 303, at 9.) But possibility and ease do not automatically transform into motivation, as CAS suggests. *Golden Bridge*, 2015 U.S. Dist. LEXIS 58324, at *27. Indeed, although RFID technology was not new technology at the time of the '262 Patent as Mr. Kushnick testified (Ex. C, at 169:24-170:6), CAS still needed to proffer evidence that a POSITA, at the time of the invention, would combine Hansen's RFID reader with Leusden's wash system "to arrive at the claimed invention." *See Kinetic*, 688 F.3d at 1366-67 (citing *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 (Fed. Cir. 2008) (holding that post-*KSR*, "some kind of motivation must be shown from some source, so that the jury can understand why a [POSITA] would have thought of either combining two or more references or modifying one to achieve the patented [invention].") (citation omitted)). Given the jury's verdict, the Court must assume that the jury determined there was no reason to combine Leusden with Hansen, and defer to this factual finding because it is supported by substantial evidence. *Kinetic*, 688 F.3d at 1367.

Further, the jury had the benefit of substantial testimony from Mr. Kushnick that a POSITA would *not* have been motivated to combine Leusden with Hansen.

(Ex. C, at 165:24-166:19.)  Mr. Kushnick confirmed that Leusden does not provide any teaching, suggestion, or motivation to add an "information detector."  (Ex. C, at 165:1-14.)  Mr. Kushnick further testified that the combination of Leusden with Hansen does not render obvious the '262 Patent and Dr. Micklow impermissibly relied on hindsight to reach the claimed invention.  *See* Ex. C, at 165:24-166:19; ECF No. 255, at 28-29 (Court's Instruction No. 26) (instructing against hindsight reconstruction of references to reach the claimed invention).  Additionally, Mr. Kushnick testified about a significant distinction between the claimed invention and the combination of Leusden with Hansen: none of these references, alone or in combination, disclose, teach, or suggest an "information detector *configured to gather information related to engine type*."  (Ex. C, at 180:14-181:10.)  In sum, CAS offers no basis to overturn the jury's determination.

### B.    THE JURY CORRECTLY REJECTED CAS'S WRITTEN DESCRIPTION CHALLENGE TO CLAIM 14

CAS also failed to satisfy its clear and convincing evidentiary burden to prove claim 14 lacked written description.  *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1351 (Fed. Cir. 2011).  Indeed, CAS continues to ignore that the USPTO had determined, during prosecution, that the '262 Patent satisfies the written description requirement.  (Ex. C, at 66:7-16.)  The record also shows that Dr. Micklow (whom CAS relies upon again here) applied the wrong standard in determining whether claim 14 satisfied the written description requirement.  The Court instructed the jury that to satisfy the written description requirement, the full scope of the claim or any particular requirement in the claim need *not be expressly disclosed*."  (ECF No. 255, at 31-32 (Court's Instruction No. 28) (emphasis added)).  But Dr. Micklow testified that the standard he applied in opining that claim 14 is invalid requires "every term in the claim needs to be explicitly defined in the patent."  (Ex. C, at 15:10-15.)  Not only did Dr. Micklow apply the wrong standard, he applied the complete opposite standard.

The jury heard substantial evidence from Mr. Kushnick why claim 14 does not lack written description.  (*See* Ex. C, at 163:16-164:5.)  CAS only offers attorney argument in rebuttal and has not provided clear and convincing evidence of invalidity.  Although Dr. Micklow offered contrary evidence, albeit insufficient, nothing more is required to defer to the jury's finding of validity.  *See Golden Bridge*, 2015 U.S. Dist. LEXIS 58324, at *23-24 ("While Acampora offered contrary evidence, nothing more is required to defer to the jury's implicit finding."); *Markman*, 52 F.3d at 975 ("[T]he jury's factual findings receive substantial deference on motion for JMOL.").  CAS has not shown that any aspect of the jury's verdict on validity was against the "clear weight of the evidence," such that a new trial is warranted.  *Hanson v. Shell Oil*, 541 F.2d 1352, 1359 (9th Cir. 1976).

## VII. THE PREPONDERANCE OF THE EVIDENCE CONVINCED THE JURY THAT CYCLEAN INFRINGES THE '860 PATENT

Courts "must uphold a jury verdict if it is supported by substantial evidence." *Guy*, 608 F.3d at 585-86.  The unanimous jury verdict in this case is well-grounded in the trial evidence.  Yet CAS seeks to disturb the verdict.  Although CAS masks its argument as one of breadth of the evidence, at bottom, CAS disagrees with jury's *conclusion* based on the evidence.  Such a disagreement is not a proper basis for disturbing the jury's conclusions through a motion under Rules 50(b) or 59.

Specifically, CAS takes issue with evidence relating to the claimed pressure and particle size limitations in the '860 Patent.  CAS argues that because there was no "direct" measurement of the liquid exiting the nozzle in Cyclean, or testing of the "actual" nozzle used in Cyclean, the exact liquid pressure at the nozzle or the particle sizes produced by the nozzle could not be measured.  (ECF No. 303, at 12-13.)  It is important to note, however, that the asserted claim teaches a pressure range of "50-80 bars" and particle sizes within the range of "120-250 μm."  The evidence, including an inspection of Cyclean during normal operation, the extensive testing and calculations performed by Mr. Kushnick, testimony of CAS's own

witnesses, and CAS's own documents showing the details of Cyclean, provided the jury with substantial evidence that Cyclean produces a pressure and particle sizes within the claimed range.   Much of that evidence is conspicuously absent from CAS's Motion.

Importantly, the Court has already addressed aspects of CAS's argument.  For example, CAS again attacks Mr. Kushnick's conclusion that Cyclean uses a Lechler 652 nozzle and his testing of that nozzle as faulty and based on hearsay.  But the Court has squarely rejected that argument, stating "it was reasonable for Mr. Kushnick to rely on [CAS's corporate witness testimony] that the Cyclean system uses a Lechler 652 nozzle."  (ECF No. 189, at 19.)  It stands to reason that if Cyclean did not use that particular nozzle, it would have been very easy and a lot more efficient for CAS to produce the "right" nozzle in rebuttal.  CAS never did. Indeed, as the Court recalls, neither CAS nor Dr. Micklow  produced, purchased, or tested any nozzles.[3]  (Ex. C, at 60:20-24; 92:16-18.)  As detailed during trial, Mr. Kushnick purchased three nozzles within the Lechler 652 series and under his direction, extensive testing was performed on them.  The procedure followed, the testing protocol Mr. Kushnick established, and his calculations and analyses of the results were painstakingly presented to the jury. (Ex. A, at 129:5-135:17.)  As the Court noted "Mr. Kushnick performed 84 tests using Defendant's Cyclean system." (ECF No. 293, at 28.)   Yet CAS now raises new attacks on Mr. Kushnick's methodology, calculations and testing.  But Mr. Kushnick's opinions and the bases therefore were subjected to a rejected *Daubert* challenge and rigorous cross examination during trial.   And CAS challenges Mr. Kushnick's analysis only by presenting its own expert's unsupported testimony.

Mr. Kushnick's conclusions based on the testing were also corroborated by the Engineering Orders that CAS had identified in sworn interrogatory responses as

---

[3] Even the name and model number on the nozzle observed by Mr. Kushnick during his inspection of Cyclean was covered by black tape.  (Ex. A, at 125:3-9.)

documents describing Cyclean.   (JX 431.)   Specifically, in response to an interrogatory asking for the details of how Cyclean works, CAS identified and produced Engineering Orders that in great detail "tell[] a Cyclean operator step-by-step how to use the system." (Ex. A, at 115:9-116:24; Ex. B, at 84:1-86:4.)  One of those details is the required pressure setting during operation. (Ex. A, at 118:9-17.) Thus, documents detailing how Cyclean works independently corroborated Mr. Kushnick's calculations based on his independent testing.  In the end, Mr. Kushnick personally inspected a Cyclean wash and observed the pressure setting consistent with what the Engineering Orders instruct the operators, and in line with his own testing.  *Id*. at 122:16-123:5.

Finally, it remains undisputed that all of the nozzles tested under the direction of Mr. Kushnick produced enough liquid particles in the 120-250 μm range to follow the gas path through the turbine compressor.  CAS itself produced evidence of Cyclean achieving the claimed result.   *See, e.g.*, JX 401 ("Contrary to conventional washing methods, a fine and evenly distributed water mist follows the gas path.").  Indeed, CAS conceded that in all 84 nozzle tests, at least 35% of the liquid particles were inside the claimed range.  (ECF No. 273, at 4.)  Under Federal Circuit precedent, an accused device that "sometimes, but not always, embodies a claimed method nonetheless infringes." *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) (quoting *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995)).   Absent evidence challenging the nozzle testing results that showed at least 15%-35% of the liquid particles tested fall within the claimed range, the jury's conclusion that CAS directly infringes the '860 Patent cannot be challenged.

Now, ignoring all of that trial record, CAS provides, at best, an incomplete picture of the evidence presented to the jury, focusing only on the irrelevant fact that Mr. Kushnick did not directly measure the pressure at the exit point of the nozzle during operation and the truism that there will be some small pressure loss

associated with the liquid traveling the length of the hose.  But CAS tried (and failed) to exploit those irrelevancies at trial.  Indeed, CAS, through Dr. Micklow, advanced positions and elicited trial testimony based on variables that were demonstrably false, including Dr. Micklow's non-infringement theory based on an assumption that a 100 foot hose is used in Cyclean despite never having measured the length of the hose, his exaggerated "50-60 bends in the hose," and his use of a rotational velocity based on 2550 revolutions per minute that he and CAS should have known to be false.  (*See, e.g.*, Ex. C, at 90:8-16; 28:25-29:11; 54:1-12; 110:4-16.)   In reality, CAS never informed Dr. Micklow what nozzles were used in Cyclean, maintaining that CAS did not know what nozzles were used despite the information it had received from Lufthansa (*see, e.g.*, Ex. C, at 91:17-18; 92:16-25; 60:25-61:2).  Dr. Micklow's technical analyses as to non-infringement of the '860 Patent and criticisms of the analyses of Mr. Kushnick, which CAS is now repeating, were and remain flawed.

By contrast, EcoServices presented detailed evidence during trial, including **(1)** the expert testimony of Mr. Kushnick, **(2)** CAS's documentary evidence, **(3)** photographs and videos of an inspection of the operation of Cyclean, **(4)** Engineering Orders providing details of Cyclean's operation, and **(5)** extensive testing data of nozzles that CAS's corporate representative testified are used in Cyclean.  Far from a lack of sufficient evidence, it was the contrast between the detailed analysis performed by one expert and near total speculation by the other expert that led to the jury's conclusion.  Accordingly, the unanimous jury verdict should not be disturbed.

### A.    THE '860 PATENT IS VALID

The Court has already rejected CAS's allegations of indefiniteness, holding that CAS "failed to prove indefiniteness by clear and convincing evidence."  (ECF No. 293, at 29.)  In asking the Court to amend the judgment and declare that the '860 Patent is invalid as indefinite, CAS ignores the bulk of this Court's reasoned

and detailed opinion, and simply repeats its original argument.  This head in the sand approach falls short of the standard for granting a Rule 52(b) motion.  *ATS*, Case No. 10-4880 BZ, 2012 WL 1067547, at *1 (stating such motions may only be granted to "correct manifest errors of law or fact or to address newly discovered evidence or controlling case law.").

In its previous ruling on the issue, the Court analyzed the indefiniteness jurisprudence, the '860 Patent, its prosecution history and extensive evidence adduced at trial.  (ECF No. 293, at 24-29.)  In the end, the Court concluded that CAS "has not put forth any expert testimony or evidence, let alone clear and convincing evidence, that one skilled in the art would not know the boundaries of the claim."  *Id*. at 29.  CAS's Motion repeats its rejected argument—one that misstates the definiteness test.

The Supreme Court's *Nautilus* opinion sets forth the legal test of validity under 35 U.S.C. § 112, ¶ 2.  *Nautilus, Inc. v. Biosig Instr., Inc*., 134 S. Ct. 2120 (2014).  As EcoServices fully briefed the issue during summary judgment and post-trial, and as the Court already ruled, the disclosures in the '860 Patent "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129–30.  And this Court's previous analysis and judgment remains well-grounded in trial evidence and Supreme Court precedent.  As such, CAS's Motion should be denied.

## B.   THE JURY'S WILLFUL INFRINGEMENT VERDICT SHOULD NOT BE DISTURBED

The jury unanimously found in favor of EcoServices on all counts, including that CAS willfully infringed the asserted claims of the '860 Patent.  (ECF No. 264.)  CAS failed to present any evidence in defense of the willful infringement claim.  Indeed, the trial testimony of CAS's corporate representatives highlighted CAS's pattern of inaction after service of the complaint.  Instead of engaging in good faith efforts to investigate whether CAS's use of Cyclean infringed the Asserted Patents,

17

CAS continued to perform Cyclean washes and concurrently subscribed to unreasonable and unsupported non-infringement and invalidity positions that were advanced by Dr. Micklow. CAS's continued advancement of Dr. Micklow's insupportable positions continued through the close of CAS's case at trial. The jury heard evidence that neither CAS's CEO nor its President in charge of the Cyclean system bothered to read the asserted patents, or perform any reasonable investigation into whether or not it infringed the asserted EcoServices' patents. (*See, e.g.*, Ex. B, at 78:12-18; 145:4-11; 145:16-23.) Despite having access to technical information about Cyclean through Lufthansa Technik ("LHT") employees, including Mr. Mullen (who was present each day of trial except closing arguments)[4], CAS neglected to obtain (or even ask about) the relevant technical information about Cyclean, including, but not limited to, the identification of the exact nozzles used in Cyclean. (*See, e.g.*, Ex. B, at 149:3-6.)

Accordingly, it was reasonable for the jury to conclude the infringement was willful based on the totality of the evidence showing CAS's conduct once it learned about the '860 Patent.

## VIII. SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S DAMAGES VERDICT

CAS's Motion asks this Court to vacate the jury's damages award, erroneously claiming that "Mr. Lettiere failed to apportion damages based on the infringing features." (ECF No. 303, at 19.) This argument fails both procedurally and substantively. The argument fails procedurally because CAS never raised this "apportionment" argument in its Rule 50(a) motion. CAS also did not cross examine Mr. Lettiere on this point and did not even request a jury instruction on apportionment. CAS's argument has, therefore, been waived. The argument fails substantively because Mr. Lettiere, who relied on real-world comparable license

---

[4] *See, e.g.*, Ex. B, at 86:22-87:4 (Mr. Lee testifying that Mr. Mullen, who works for Lufthansa, being present during trial).

agreements[5] to arrive at his per wash royalty, did, in fact, adjust the royalty to account for the intellectual property that was not asserted and clearly testified as such at least three times during trial.

First, the Court should reject CAS's new argument because CAS did not raise the "apportionment" issue at trial and did not raise it in its Rule 50(a) motion. The full extent of CAS's Rule 50(a) motion as it relates to damages was as follows:

> Lastly, damages. There were several deficiencies we submit with EcoServices' damages expert testimony. In particular the damages expert relied on the EcoServices joint venture agreement and specifically, in order to come up with reasonable royalty, relied on a monthly payment of a little over $300,000. The record indicates and the evidence is that that amount was never in play. It was never in effect. What in actuality happened was there was $137,000, I believe is the right number, and that's what EcoServices had paid. So the analysis with respect to reasonable royalty for that reason is insufficient and not something that the jury can rely on.
>
> One of the other deficiencies is that EcoServices' damages expert is seeking damages beyond the expiration date of the '860 patent. His opinion is, he forms his opinion based on that. He also forms his opinion based on the time period before the '262 patent issued in 2015. And so for that reason as well, the jury cannot rely on the evidence. It's legally insufficient and therefore, we submit that

---

[5] Further, the question whether allegedly comparable licenses are reliable generally goes to the weight of the evidence, not its admissibility. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) (citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1326) (Fed. Cir. 2014)).

1    damages has not been established as well.

2    (Ex. B, at 157:10-158:5.)  The argument made above and at trial is not the new issue

3    CAS raises in Section VII of its Motion now.  CAS never cross-examined Mr.

4    Lettiere regarding the apportionment of other non-patented features, never raised

5    apportionment in closing argument and failed to request a jury instruction on

6    apportionment.  Because a post-verdict Rule 50(b) motion is "a renewed motion," it

7    is "limited to the grounds asserted in the pre-deliberation Rule 50(a) motion."

8    *E.E.O.C.*, 581 F.3d at 961.  Thus, CAS has waived this argument.

9        Second, Mr. Lettiere did, in fact, adjust his calculation (apportioned it) to

10   account for any unasserted intellectual property.  Thus, there is substantial evidence

11   to support Mr. Lettiere's royalty opinion and the jury accepted that evidence when it

12   rendered its verdict.  *See Gilbrook*, 177 F.3d at 856 (A jury's verdict "must be

13   affirmed if there is substantial evidence to support the verdict.").  As he testified at

14   trial, Mr. Lettiere used two comparable agreements to arrive at his per wash

15   reasonable royalty calculation:  (1) the 2010 Lease Agreement between Lufthansa

16   Technik AG and CAS (the "LHT-CAS Lease Agreement") (JX 117); and (2) the

17   2012 License Agreement between Pratt and Whitney and Vision Technologies

18   Aerospace, Inc. (the "EcoServices' License Agreement") (JX 167).

19       Mr. Lettiere explained that the EcoServices' License Agreement was

20   particularly relevant because it was a license to the Asserted Patents.   The

21   EcoServices License Agreement granted EcoServices exclusive rights to an

22   intellectual property portfolio associated with the EcoPower technology, which

23   included the Asserted Patents.  (Ex. A, at 203:2-10.)  Pursuant to the EcoServices

24   License Agreement, there was an agreed-to royalty of $157,738 for the initial nine

25   months initial and $309,000 per month thereafter.  *Id.* at 203:15-23.  Mr. Lettiere

26   calculated that the comparable real-world royalty under this agreement to be $450

27   per wash (*Id.* at 205:3-9) and then made a downward adjustment to account for the

28

20

unasserted intellectual property as well as a upward adjustment to account for the relationship of the parties to this agreement. (Ex. B, at 16:1-17:13.)

Mr. Lettiere also testified that he considered the LHT-CAS Lease Agreement under which CAS agreed to rent the Cyclean system and, along with it, the intellectual property required to use Cyclean.  Under this agreement, CAS paid a rental fee of $100 per wash and, in addition, a royalty of $550 per wash.  (Ex. A, at 206:15-25.)  Pursuant to this agreement, CAS paid LHT a royalty fee of $550 per wash for each wash performed for customers directly contracted by CAS.  *Id.*; *see also* JX 117, at CAS000184.  Accordingly, Mr. Lettiere opined that the $550 per wash royalty paid by CAS to LHT is indicative of a royalty paid for access to technology enabling the exclusive use of an engine washing system between parties who are not competitors.  (JX 117, at § 10.1.2.)

On at least three separate occasions, Mr. Lettiere specifically explained that he adjusted his opinion to account for the un-asserted intellectual property rights that were included in the EcoServices License Agreement.  (Ex. A, at 204:15-23; Ex. B, at 16:1-17:13; 50:3-7.)  Mr. Lettiere also accounted for the fact that these two agreements were reached between business partners who wanted each other to succeed.  (Ex. A, at 201:21-202:3)  The hypothetical license is the very opposite because EcoServices and CAS are competitors.  So, Mr. Lettiere explained at trial that the $450 per wash rate from the EcoServices License Agreement and the $550 per wash royalty from the LHT-CAS Lease Agreement were low compared to the rates that would have been agreed to by competitors.  (Ex. A, at 201:21-202:9.)  Mr. Lettiere testified that the rate that would result from a hypothetical negotiation between competitors would have been much higher that the royalties agreed to by joint venture partners.

Mr. Lettiere made clear his method of apportionment in determining a royalty of $400 per each wash.  For example, Mr. Lettiere explained that he made a downward adjustment in his calculation because the EcoServices' License

Agreement included all of the intellectual property associated with the EcoPower wash system.  (Ex. A, at 204:15-23; Ex. B, at 16:1-17:13; 50:3-7.)  Mr. Lettiere testified that a *significant portion* of the effective per-wash royalty of $450 indicated by the EcoServices' License Agreement was attributable to the Asserted Patents.  *Id.* Support for Mr. Lettiere's opinion is provided from the testimony of Mr. Welch, who testified that the '860 Patent (referred to as the "atomization patent") was a "core" patent that EcoServices had acquired through the EcoServices' License Agreement.  (Ex. A, at 51:11-17.)

Moreover, as further support for Mr. Lettiere's opinion that a significant portion of the effective per-wash royalty of $450 is attributable to the Asserted Patents, Mr. Lettiere also relied on Mr. Kushnick, who described the '860 Patent as a "game changer."  (Ex. B, at 20:21-21:2.)  In sum, Mr. Lettiere understood that the Asserted Patents have the most value of those in the EcoServices' License Agreement.  Thus, there is substantial evidence in the record to demonstrate that Mr. Lettiere performed an apportionment in his analysis.  To the extent CAS believed that Mr. Lettiere did not conduct a proper apportionment or he should have performed his apportionment differently, CAS could have appropriately explored those issues on cross-examination.  It chose not to do so.

CAS's apportionment argument also contradicts the opinions of its own expert, Ms. Bennis.  Ms. Bennis, like Mr. Lettiere, relied upon the LHT-CAS Lease Agreement in determining her proposed reasonable royalty.  (Ex. C, at 139:1-9, 143:24-144:10.)  In fact, rather than relying on the $550 royalty fee in that agreement, she relied on the $100 rental fee.  (Ex. C, at 139:5-17.)  Nowhere, however, does Ms. Bennis factor from the $100 lease fee the "unrelated features" that CAS argues in its Motion was required.

CAS next erroneously asserts that the two agreements relied on by Mr. Lettiere are "irrelevant."  (ECF No. 303, at 22.)  The EcoServices' License Agreement, however, is the only record evidence that includes a license to the

22

Asserted Patents, which makes the EcoServices' License Agreement a substantially comparable license in determining a reasonable royalty.  *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*,  318 F. Supp. 1116, 1120 (Fed. Cir. 1970) (declaring the first factor relevant to damages calculations to be "[t]he royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty".); *see also Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 106167, at *11 (E.D. Tex. Mar. 6, 2014) (denying exclusion of plaintiff's expert testimony as to settlement licenses where "these licenses are the *only* licenses in the record and cover the patents-in-suit") (emphasis in original).

Moreover, CAS's argument that the agreements are irrelevant is belied by the fact that Ms. Bennis also relied upon the same LHT-CAS Lease Agreement to support her damages calculation.  (Ex. C, at 139:1-9, 143:24-144:10.); *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. C-08-04990-JW, 2012 U.S. Dist. LEXIS 88567, at *14-15 (N.D. Cal. June 7, 2012).  Accordingly, Mr. Lettiere's reliance on the EcoServices License Agreement and the LHT-CAS Lease Agreement was proper.

Finally, the case law CAS relies on does not support its Motion.  For instance in *Ericsson*, the Federal Circuit held that the district court did not abuse its discretion in admitting license agreements that related to a royalty on the end product (laptops) when the patent claims were directed to components within those laptops (Wi-Fi chips). 773 F.3d at 1226.  Contrary to CAS's arguments, the *Ericsson* court held that real-world licenses are relevant and that exclusion of such comparable licenses would "make it impossible for a patentee to resort to license-based evidence." *Id.* at 1228.  Although the *Ericsson* court found that district courts may, in some instances, need to give a cautionary jury instruction on "apportionment", no such instruction was even sought by CAS here.  Likewise, in *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299 (Fed. Cir. 2018), which was also a multi-component case, there was no comparable license or comparable

23

royalty agreement presented, like in the case here.  In fact, in finding that the verdict was not supported by substantial evidence, the court specifically found that, "[t]here is no evidence that Finjan ever actually used or proposed an $8-per-user fee in any comparable license or negotiation."  *Id*. at 1311.  Rather, the court found that there was no evidence, other than unsupported testimony, to support the plaintiff's proposed rate.  The authorities relied on by CAS, do not support the relief it seeks.

## IX.   THE COURT WAS CORRECT IN SETTING THE ONGOING ROYALTY OF $400 PER WASH

Finally, CAS attacks the ongoing royalty rate that was agreed to by the parties and ordered by the Court.  CAS's attack on that amount should be rejected because it is based on the false premise that the $400 per wash royalty did not include washes performed after the expiration of the '860 Patent.  (ECF No. 303, at 23:26-24:1.)  But CAS is wrong and the Court was correct in this holding.  In support of its argument, CAS's Motion confuses "pre-trial" washes with washes that occurred prior to the expiration of the '860 Patent.  But the '860 Patent expired on May 31, 2016 and the "pre-trial" royalty rate ran to December 2017, well after the '860 Patent expired.

This conclusion is supported by Mr. Lettiere's trial testimony.  Mr. Lettiere testified that the $400 royalty rate that would have been agreed to during the hypothetical negotiation was for the right to practice the technology covered by the Asserted Patents and it would apply to the entire time period.  (*See* Ex. B, at 34:11-13 ("The '860 exists during that period of time.  It expires, and then the '262 exists.  My royalty considers the economic life of both of those patents.")).  Indeed, a royalty for the time period when both Asserted Patents remained in force, would have been higher.  The jury accepted that testimony and applied the $400 per wash royalty.  The jury even asked for clarification on when the '860 Patent expired before it rendered its verdict on the $400 per wash.  (ECF No. 258.)  Thus, the jury clearly found that the $400 per wash royalty applied to washes that occurred both

before and after expiration of the '860 Patent.  There is absolutely no basis for CAS to argue that a wash that occurred in 2018 should carry a royalty less than a wash that occurred in 2017.[6]  The jury has determined that the $400 royalty rate applies to all washes.  CAS has not satisfied its "heavy burden []to demonstrate a clear error of manifest injustice necessitating amendment of the judgement"  (*Matkovich*, U.S. Dist. LEXIS 221810, at *5) and its request should, therefore, be denied.

## X.    CONCLUSION

For the foregoing reasons, EcoServices respectfully requests that the Court deny all relief requested by CAS in its Motion.

Dated:  February 25, 2019                    Respectfully submitted,

By:*/s/ Natasha E. Daughtrey*
Ronald J. Pabis
*rpabis@goodwinlaw.com*
Stephen K. Shahida
*sshahida@goodwinlaw.com*
Patrick J McCarthy
*pmccarthy@goodwinlaw.com*
Myomi Tse Coad
*mcoad@goodwinlaw.com*
**GOODWIN PROCTER LLP**
901 New York Avenue NW
Washington, DC  20001

---

[6] Although CAS spends significant time discussing the calculation Mr. Lettiere conducted (ECF No. 303, at 24-25), this calculation was a check on the reasonableness of a $400 per wash royalty.  He also checked this number by comparison to the estimated combined profits of CAS and LHT. (Ex. B, at 22:24-27:5.)  But the $400 per wash royalty was based primarily on the royalties agreed to in the two comparable license agreements, not on the check calculation CAS now relies on.  As Mr. Lettiere explained, the hypothetical negotiation would have occurred in 2010 as to both patents and "considers the economic life of both patents."  (Ex. B, at 34:11-13.)  The jury accepted his testimony and correctly applied the $400 royalty to the entire period (including after the expiration of the '860 Patent) and there was substantial evidence to do so.

Tel.: +1 202 346 4000
Fax.: +1 202 346 4444

Natasha E. Daughtrey
*ndaughtrey@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S Figueroa Street
41st Floor
Los Angeles, California  90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

Attorneys for Plaintiff:
ECOSERVICES, LLC

1

## **CERTIFICATE OF SERVICE**

2    I, Natasha E. Daughtrey, an attorney, hereby certify that on February 25,

3 2019, I caused a complete and accurate copy of the foregoing to be served via this

4 Court's ECM/ECF notification system, which will serve electronically to all

5 participants in the case.

6

7                                   */s/ Natasha E. Daughtrey*

8                                   Natasha E. Daughtrey

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28