**MAYER BROWN LLP**

Dale J. Giali (SBN 150382)
dgiali@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone:  (213) 229-9500
Facsimile:   (213) 625-0248

Stephen E. Baskin (*pro hac vice*)
sbaskin@mayerbrown.com
Dara M. Kurlancheek (*pro hac vice*)
dkurlancheek@mayerbrown.com
Jonathan Weinberg (SBN 300452)
jweinberg@mayerbrown.com
1999 K Street, N.W.
Washington, DC 20006
Telephone:  (202) 263-3000
Facsimile:   (202) 263-3300

Gregory J. Apgar (*pro hac vice*)
gapgar@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 506-2500
Facsimile:   (212) 262-1910

Attorneys for Defendant/Counter-Plaintiff
Certified Aviation Services, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| EcoServices, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>Certified Aviation Services, LLC,<br><br>Defendant. | Case No. 5:16-cv-01824-RSWL-SP<br><br>**CAS'S REPLY TO ECOSERVICES'S OPPOSITION TO CAS'S MOTION FOR POST-JUDGMENT RELIEF PURSUANT TO RULES 50(B), 52(B), AND 59.**<br><br>Hearing Date: March 26, 2019 |

# <u>TABLE OF CONTENTS</u>

Page(s)

ARGUMENT.............................................................................................. 1

I.    The Asserted Claims Of The '262 Patent Are Ineligible..................... 1

    A.    The Court may correct the eligibility order under Rules 59 or 52. ........................................................................................ 1

    B.    The eligibility order cannot stand on the alternative basis that the idea of computerizing a manual task is patent eligible. ..................................................................................... 3

II.   The '262 Patent is not infringed based on the "regulate" or "information detector" limitations. ........................................... 5

    A.    The infringement verdict is incompatible with the interpretation of "regulate" employed in the eligibility order. ....................................................................................... 5

    B.    No substantial evidence proves that the accused system includes an "information detector." ..................................... 6

III.  The Asserted Claims Of The '262 Patent Are Invalid........................ 8

    A.    CAS proved a motivation to combine Leusden and Hansen. .................................................................................... 8

    B.    The "information detector" limitation lacks written description. ............................................................................ 10

IV.   The '860 Patent Is Not Infringed. ................................................... 11

    A.    No substantial evidence proves that the water pressure at Cyclean's nozzles falls within the claimed range.................... 11

    B.    No substantial evidence supports the jury's finding that Cyclean satisfies the particle size limitation. ..................... 12

V.    CAS Did Not Willfully Infringe The '860 Patent. ........................... 14

VI.   The Particle Size Limitation Renders The '860 Patent Indefinite...... 15

VII.  The Jury's Damages Verdict Is Unsupported And Based On Unreliable Expert Testimony............................................................ 16

    A.    CAS did not forfeit its arguments regarding apportionment. ........................................................................ 16

    B.    Mr. Lettiere failed to apportion damages. ............................ 17

    C.    Mr. Lettiere's opinion is based on incomparable agreements. .......................................................................... 18

VIII. A $400 Post-Trial Running Royalty Is Unsupported. ....................... 19

CONCLUSION ..................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABT Systems, LLC v. Emerson Elec. Co.*,
    797 F.3d 1350 (Fed. Cir. 2015) ................................................................... 9

*Agrizap, Inc. v. Woodstream Corp.*,
    520 F.3d 1337 (Fed. Cir. 2008) ................................................................. 10

*Asyst Techs., Inc. v. Emtrak, Inc.*,
    544 F.3d 1310 (Fed. Cir. 2008) ................................................................... 8

*Brown v. Wright*,
    588 F.2d 708 (9th Cir. 1978) ....................................................................... 3

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*,
    803 F.3d 620 (Fed. Cir. 2015) ................................................................... 15

*Fontenot v. Mesa Petroleum Co.*,
    791 F.2d 1207 (5th Cir. 1986) ..................................................................... 2

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
    438 F.3d 1354 (Fed. Cir. 2006) ......................................................... 2, 4, 15

*Golden Bridge Technology, Inc. v. Apple, Inc.*,
    No. 5:12-cv-04882, 2015 WL 2064525 (N.D. Cal. May 1, 2015) ...................... 9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016) ............................................................................. 15

*Homeland Housewares, LLC v. Sorensen Research and Dev. Trust*,
    581 F. App'x 869 (Fed. Cir. 2014) ............................................................. 12

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    711 F. App'x 1012 (Fed. Cir. 2017) ............................................................. 5

*Koito Mfg. Co. v. Turn-Key-Tech*,
    LLC, 381 F.3d 1142 (Fed. Cir. 2004) ........................................................... 7

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ................................................................................... 9

*Laborers' Pension Fund v. A & C Envtl., Inc.*,
  301 F.3d 768 (7th Cir. 2002) ........................................................................ 16

*Lies v. Farrell Lines, Inc.*,
  641 F.2d 765 (9th Cir. 1981) ....................................................................... 7, 8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ...................................................................... 4

*MobileMedia Ideas LLC v. Apple Inc.*,
  780 F.3d 1159 (Fed. Cir. 2015) ................................................................... 8, 9

*Nat'l Metal Finishing Co. v. BarclaysAmerican*
  */ Commercial, Inc.*, 899 F.2d 119 (1st Cir. 1990) ......................................... 2

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) ...................................................................... 5

*Reeves v. Teuscher*,
  881 F.2d 1495 (9th Cir. 1989) ...................................................................... 17

*Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*,
  824 F.3d 999 (Fed. Cir. 2016) ................................................................... 6, 14

*Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*,
  5 F.3d 1255 (9th Cir. 1993) ............................................................................ 2

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
  No. 2018-1284, 2019 WL 921859 (Fed. Cir. Feb. 26, 2019) ........................... 5

*Western Union Co. v. MoneyGram Payment Sys., Inc.*,
  626 F.3d 1361 (Fed. Cir. 2010) .................................................................... 10

*Yoon Ja Kim v. ConAgra Foods, Inc.*,
  465 F.3d 1312 (Fed. Cir. 2006) .................................................................... 11

**Other Authorities**

Fed. R. Civ. P. 50(b) .............................................................................. *passim*

Fed. R. Civ. P. 52(b) .............................................................................. *passim*

Fed. R. Civ. P. 59 .................................................................................... 6, 16

Fed. R. Civ. P. 59(a)(2) .................................................................................. 3

Fed. R. Civ. P. 59(e) ........................................................................................*passim*

## ARGUMENT

### I.  The Asserted Claims Of The '262 Patent Are Ineligible.

EcoServices is wrong to characterize CAS's arguments regarding the eligibility order as re-argument (Dkt. 306 or "Opp" at 4-5) or as a request to re-construe the claims (Opp. at 5-6). Instead, CAS is asking the Court to reconcile its eligibility order with its *Markman* order:

- At *Markman*, the Court construed "regulate the washing unit" to *not* require "monitoring" activity, such as analyzing used washing liquid. *See* Dkt. 74 at 11. That holding was necessary for infringement at trial.

- But at the eligibility stage, the Court held that the '262 claims are eligible on the basis that "regulate the washing unit" *does* require "monitoring" activity, such as "respon[ding] to characteristics of the used washing liquid." Dkt. 293 at 18-19 (citing '262 Patent at 6:5-15, 7:29-33).

Thus, the two are in conflict and an appropriate correction is required.

In its Opposition, EcoServices does not dispute that the two orders conflict. *See* Opp. at 4-6. Rather, EcoServices argues that the *Markman* order is correct (*id.* at 5-6) and that the eligibility order should stand nonetheless because: (1) correcting the eligibility order now would be procedurally improper (*id.* at 4-5), and (2) the eligibility order could be justified on the alternative theory that performing a method by computer rather than by hand confers eligibility (*id.* at 5). Both arguments are wrong.

### A.  The Court may correct the eligibility order under Rules 59 or 52.

EcoServices's lead argument is that correcting the conflict between the eligibility and *Markman* orders would be procedurally improper because it would supposedly give CAS a "second bite at the apple." *Id.* at 4-5. But CAS is not seeking a "second bite at the apple." Rather, it is asking the Court to resolve a conflict that arose for the first time in the eligibility order itself—a conflict that CAS had no opportunity to address earlier.

- 1 -

In briefing the eligibility issue, both parties relied on the Court's *Markman* order, which provided that the claims do *not* require "monitoring." Thus, neither party did (or could have) addressed whether the claims are eligible based on the "monitoring" requirement the Court ultimately found dispositive. The Court had already rejected that requirement at *Markman*.

Even now, EcoServices is adamant that—contrary to the eligibility holding— the claims do *not* require "monitoring." *See* Opp. at 5-6. The eligibility holding's assumption that the claims do require "monitoring" is therefore a clear error that even EcoServices is unwilling to defend.

The Court may correct this late-arising conflict under Federal Rules of Civil Procedure 59(e) (amend a judgment) and/or 52(b) (amend factual findings). "If the trial court has entered an erroneous judgment, it should correct it." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1358 (Fed. Cir. 2006) (citation omitted). Under Rule 59(e), "[r]econsideration [of a final judgment] is appropriate if the district court … committed clear error." *See Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  And for issues tried to the Court—as the eligibility issue was here—Rule 52(b) "provides the district court discretion to amend any of its own findings," and to "reverse any or all of [those] findings," even if doing so would "reverse the judgment." *Golden Blount*, 438 F.3d at 1358. Thus, the purpose of Rules 59(e) and 52(b) is to permit the Court "to correct manifest errors of law or fact," *after* it has already entered judgment. *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986); *accord Nat'l Metal Finishing Co. v. BarclaysAmerican / Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990).

The late-arising conflict between the eligibility and *Markman* orders is exactly the type of issue that Rules 59 and 52 grant the Court discretion to correct. In raising that issue, CAS is not simply recapitulating the cases and arguments considered and rejected in the Court's original eligibility decision. Rather, it is

identifying a new inconsistency that arose in the eligibility order itself, and which CAS had no previous opportunity to address. It is thus procedurally proper for the Court to exercise its discretion and correct the eligibility order under Rules 59(e) and/or 52(b).

If the Court does not reverse the eligibility holding at this stage, it should at least vacate that holding and order a new bench trial on eligibility, under Rule 59(a)(2). "There are three grounds for granting new trials in court-tried actions under Rule 59(a)(2): (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence." *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978) (citing 6A Moore's Federal Practice § 59.07 at 59-94). Here, a new trial under Rule 59(a)(2) is appropriate because the conflict between the eligibility and *Markman* orders is a manifest error of law.

### B. The eligibility order cannot stand on the alternative basis that the idea of computerizing a manual task is patent eligible.

EcoServices's Opposition offers no defense of the eligibility order's "monitoring" requirement. Instead, it argues that, despite that erroneous requirement, the eligibility order should stand nevertheless based on the *alternative* eligibility theory articulated by the Court—*i.e.*, that the claimed control unit "determine[s] a washing program" differently than had human operators by doing so objectively rather than subjectively. Opp. at 5.

The Court should strike this alternative theory (1) under Rule 52(b), because the theory is based on the clearly incorrect factual finding that humans traditionally "determine[d] a washing program" subjectively, or (2) under Rule 59(e), because the theory is based on the clearly incorrect legal conclusion that the claims require determining the washing program objectively.

*First*, contrary to the Court's factual finding on this issue, no record evidence establishes that human operators "determine[d] a washing program" subjectively. The record establishes only that human operators tried to determine a washing

1  program objectively (based on engine type) but that they sometimes made mistakes.

2  (Dkt. 303 or "CAS Br." at 3-4). EcoServices confirms this fact in its Opposition by

3  citing testimony that human operators made mistakes because they were "tired and

4  maybe not paying attention" or because they were not "fully alert." Opp. at 5 (citing

5  trial testimony). Of course, mistakes due to fatigue or inattention do not suggest

6  that these fatigued or inattentive human operators were trying to exercise subjective

7  judgment. And indeed, the evidence establishes that they were not. *See* CAS Br. at

8  2-4. Instead, they were trying to execute objective rules (the same rules as the

9  claimed control unit), but sometimes made mistakes (just as a computer might). *Id.*

10        The Court's finding that human operators traditionally "determine[d] a

11  washing program" subjectively is therefore a clearly erroneous factual finding. It is

12  therefore appropriate for the Court to amend that erroneous factual finding and

13  reverse the judgment of eligibility, under Rule 52(b). *See Golden Blount*, 438 F.3d

14  at 1358 (Rule 52(b) "provides the district court discretion to amend any of its own

15  findings" and to "reverse the judgment").

16        *Second*, it would *also* be appropriate for the Court to strike this eligibility

17  theory under Rule 59(e) because the theory is based on the clearly erroneous legal

18  conclusion that the claims require "determin[ing] a washing program" objectively.

19  The claims recite only that the "control unit" "determine a washing program … as a

20  function of … engine type." '262 Patent at 8:43-44. The record establishes that

21  human operators did exactly that. *See* CAS Br. at 3. The claims recite no objective

22  rules by which the "determining" must be accomplished, and they are therefore

23  unlike those in *McRo*, which recited "specific rules" for achieving the goal. *See*

24  *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir.

25  2016). Accordingly, if human operators traditionally "determine[d] a washing

26  program … as a function of … engine type" *subjectively*, there is no basis for

27  concluding that the claim language here requires doing so *objectively*. It only

28  requires doing so with a computer, which cannot render a claim eligible.

In sum, the '262 Patent is ineligible because it simply tries to reduce human error by having a computer "determine a washing program … as a function of … engine type" rather than a human. The idea of using a computer to reduce error is ineligible because "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015); *see also Intellectual Ventures I LLC v. Erie Indem. Co.*, 711 F. App'x 1012, 1017 (Fed. Cir. 2017) ("[S]peed and accuracy increases stemming from the ordinary capabilities of a general-purpose computer do not materially alter the patent eligibility" analysis. (internal quotation marks omitted)).

> On its face, the … patent seeks to automate "pen and paper methodologies" to … minimize errors. This is a quintessential "do it on a computer" patent: it acknowledges that [the claimed process was traditionally performed] manually and it simply proposes doing so with a computer.

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, No. 2018-1284, 2019 WL 921859, at *4 (Fed. Cir. Feb. 26, 2019). Accordingly, the claims are ineligible, and the Court should amend its eligibility holding under Rules 52(b) and/or 59(e).

**II.   The '262 Patent is not infringed based on the "regulate" or "information detector" limitations.**

**A.   The infringement verdict is incompatible with the interpretation of "regulate" employed in the eligibility order.**

As described above, the infringement verdict is incompatible with the eligibility determination because the two orders rely on conflicting interpretations of the claimed "regulate" step. *See supra* § I.A. EcoServices argues that the interpretation in the *Markman* order should control. *See* Opp. at 6-7. If so, the proper course is for the Court to reevaluate its eligibility order in light of the

*Markman* order. If it does so, it should hold the '262 Patent claims ineligible. *See supra* § I.A.

If, however, the Court does not reverse the eligibility order, then it must order a new trial on infringement under Rule 59 (or decide that issue for CAS as a matter of law) based on the interpretation of "regulate" applied in the eligibility decision—*i.e.*, that it requires "monitoring" activity, such as "respon[ding] to characteristics of the used washing liquid" (Dkt. 293 at 18-19).

### B.   No substantial evidence proves that the accused system includes an "information detector."

Separately from the conflicting eligibility and *Markman* orders, judgment of non-infringement is also appropriate under Rule 50(b) because the accused system lacks an "information detector." CAS Br. at 7-8. Instead, it has only a keypad, and no substantial evidence proves that an ordinary artisan—*in light of the intrinsic record*—would have understood a keypad to be an "information detector."

EcoServices's Opposition on this issue begins with procedure: it objects that CAS is trying to "reargue the meaning of 'information detector' to require 'automation'," and that such an argument is waived because CAS never moved for reconsideration of the *Markman* order or challenged the Court's instructions to the jury. Opp. at 8. EcoServices misunderstands the issue.

CAS's 50(b) motion does not seek a new claim construction. The Court construed "information detector" to have its "plain and ordinary meaning" (Dkt. 80 at 10-12)—*i.e.*, the meaning the phrase would have had to an ordinary artisan, at the time of invention, in light of the specification, the prosecution history, and the prior art. *See Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*, 824 F.3d 999, 1002 (Fed. Cir. 2016). CAS's 50(b) argument is that the trial record lacks substantial evidence from which a reasonable jury could have concluded that such an artisan, in light of these sources, would have understood the term "information detector" to include a keypad. CAS Br. at 7-8. This is a fact issue, appropriate for consideration

- 6 -

under Rule 50(b). It is entirely separate from the legal issue of whether the Court's "plain-and-ordinary" claim construction was correct and sufficient. That legal issue is preserved for appeal. But the fact issue remains before the Court for resolution under Rule 50(b).

On the merits, EcoServices argues that CAS's 50(b) motion should be denied because the testimony of its expert (Mr. Kushnick) constitutes substantial evidence that an ordinary artisan, looking at the intrinsic record (*i.e.*, the patent's specification and prosecution history), would have understood "information detector" to include a keypad. Opp. at 7-9. EcoServices observes that "[w]hen the jury is supplied with sufficient valid factual information to support the verdict it reaches, that is the end of the matter." Opp. at 8 (*citing McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1355 (Fed. Cir. 2001).)

We agree with that rule of law, but we do not agree that Mr. Kushnick's conclusory testimony—which never once referenced the intrinsic record—could constitute substantial evidence of how an ordinary artisan would have understood the term "information detector," *in light of that intrinsic record*. At no point did Mr. Kushnick opine on how the specification would have affected an ordinary artisan's understanding of the term "information detector." His opinion that such an artisan would have understood the term to include a keypad is entirely conclusory and cannot, as a matter of law, supply the substantial evidence necessary to support the jury's infringement verdict. *See Koito Mfg. Co. v. Turn-Key-Tech*, LLC, 381 F.3d 1142, 1152 (Fed. Cir. 2004) ("General and conclusory testimony… does not suffice as substantial evidence.").

Contrary to EcoServices's argument (Opp. 7), the Court's earlier denial of summary judgment on this issue does not prevent the Court from granting RJMOL now. "[D]enial of summary judgment does not preclude a subsequent directed verdict in the same case." *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 772 (9th Cir. 1981). While the two motions present similar legal questions, the fact that the

RJMOL motion comes after the trial means that the Court can evaluate that motion against the evidence that was actually presented at trial rather than that which potentially *could be* presented. For this reason, "the court is freer to direct a verdict than to grant summary judgment." *Id.*

Here, *at trial*, Mr. Kushnick provided no analysis of the intrinsic record or any opinion regarding how a skilled artisan would have understood the term "information detector" in light of that record. The evidence that actually entered the record is therefore deficient to prove infringement. An RJMOL under Rule 50(b) is therefore appropriate.

## III.   The Asserted Claims Of The '262 Patent Are Invalid.

### A.   CAS proved a motivation to combine Leusden and Hansen.

EcoServices's only counterargument on the invalidity of the '262 Patent is that CAS failed to prove a motivation to combine Leusden and Hansen. But Dr. Micklow provided extensive testimony explaining why an ordinary artisan would have inserted Hansen's RFID technology into Leusden's system to arrive at the claimed invention. *See* CAS Br. at 9. Although EcoServices now argues that Dr. Micklow's testimony goes only to the ease of the combination, rather than a motivation for it, the Court has already acknowledged that "Dr. Micklow testified that an ordinary artisan would have been motivated to combine the prior art." Dkt. 293 at 49.

Where, as here, the defendant shows motivation, and the patentee fails to rebut that showing with substantial evidence, the Federal Circuit has required JMOL of invalidity. *See, e.g.*, *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1315 (Fed. Cir. 2008) (affirming grant of JMOL of invalidity where no substantial evidence rebutted defendant's showing of motivation to combine); *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1177 (Fed. Cir. 2015) (same where patentee's expert "offered only conclusory testimony" in rebuttal). Mr. Kushnick's unsupported and conclusory testimony is not substantial evidence because it fails to

- 8 -

address the references directly or rebut Dr. Micklow's testimony and reasoning on the issue of motivation. *See* CAS Br. at 9; *MobileMedia*, 780 F.3d at 1172 (holding that "[c]onclusory statements by an expert," such as the testimony of the patentee's expert that "I don't see evidence for" obviousness, "are insufficient to sustain a jury's verdict").[1]

Mr. Kushnick's testimony that the references do not explicitly provide a motivation is also legally insufficient rebuttal to support the verdict. It is well-established that the references need not expressly provide a motivation. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415 (2007).  In fact, as this Court has already noted, "a motivation to combine is not always required for an obviousness analysis." Dkt. 293 at 49 n.17 (citing *KSR*, 550 U.S. at 419-20); *see also KSR*, 550 U.S. at 417 (2007) ("[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."), 421 ("When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.").

Because Mr. Kushnick, at most, considered, in conclusory fashion, only whether the references themselves supplied explicit motivation, his testimony is not substantial evidence rebutting Dr. Micklow's showing of motivation. Accordingly, a judgment of invalidity as a matter of law is warranted. *See, e.g.*, *ABT Systems,*

---

[1] Mr. Kushnick's testimony is entirely different in nature from that in *Golden Bridge Technology, Inc. v. Apple, Inc.*, No. 5:12-cv-04882, 2015 WL 2064525 (N.D. Cal. May 1, 2015), on which EcoServices relies. There, the patentee's expert identified *specific reasons* why a person of ordinary skill would choose not to add the claimed processor to the prior art, such as "the expense of a processor, their relative scarcity at the time and the overkill of using a processor to perform demultiplexing or interleaving that a much simpler circuit could perform." *Id.* at *9. Mr. Kushnick gave no such details.

*LLC v. Emerson Elec. Co.*, 797 F.3d 1350, 1362 (Fed. Cir. 2015) (reversing denial of JMOL where motivation supplied by "the nature of the problem addressed, if not directly from the disclosures of the references themselves"); *Western Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1369-70 (Fed. Cir. 2010) (same where motivation shown by "the common sense of those skilled in the art"); *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1344 (Fed. Cir. 2008) (same where "the asserted claims involve a combination of familiar elements according to known methods that does no more than yield predictable results").

EcoServices's only other counterargument is that the references fail to disclose an information detector that gathers information about engine type. Opp. 12. That is plainly incorrect. Mr. Kushnick admitted that Hansen discloses *detecting aircraft engine parts*. Trial Tr. 6/29/2018 at 175:19-176:23 (Dkt. 303-6, Ex. 5).

In sum, Dr. Micklow testified in detail that a person skilled in the art would be motivated to combine the references. *See* CAS Br. at 9. EcoServices did not rebut that testimony with substantial evidence. The Court should therefore enter judgment that the asserted claims of the '262 patent are invalid as obvious.

**B.   The "information detector" limitation lacks written description.**

There is no dispute that Claim 14 covers an information detector that identifies a washing unit. EcoServices does not contend that the specification discloses such an information detector. Nor does it discuss the testimony of Mr. Kushnick, who admitted that he based his opinion solely on the specification's disclosure of the washing unit itself, not an information detector that identifies a washing unit. Trial Tr. 6/29/2018 at 178:16-179:1 & 179:18-180:7 (Dkt. 303-6, Ex. 5).

Instead, EcoServices spends the bulk of its opposition repeating its argument that Dr. Micklow applied the wrong legal standard in opining that claim 14 lacks written description. The Court already rejected this contention. *See* Dkt. No. 293 at 48 (the Court concluding that Dr. Micklow did not rely on an incorrect standard in

1 | forming his opinion).

2 | EcoServices also accuses CAS of "ignoring" that the USPTO determined
3 | during prosecution that the claims satisfy the written description requirement. But,
4 | as EcoServices is fully aware, that involved an entirely different invalidity
5 | question—specifically, whether there was a written description of an "information
6 | node." *See* JX419.444, Jan. 21, 2015 Office Action, p.3 (Ex. 9). The Examiner
7 | never addressed whether there is sufficient description for an information detector
8 | that identifies a washing unit. As explained in CAS's Motion, there is not, thus
9 | rendering the claim invalid.

10 | **IV.   The '860 Patent Is Not Infringed.**

11 | EcoServices does not squarely address the shortcomings of its evidence on
12 | this issue. As explained in CAS's Motion, the record lacks substantial evidence that
13 | Cyclean operates within the claimed ranges of pressure and particle size.

14 | **A.     No substantial evidence proves that the water pressure at**
15 | **Cyclean's nozzles falls within the claimed range.**

16 | EcoServices has the burden (not CAS) to show that Cyclean operates within
17 | the pressure range claimed in the '860 Patent. EcoServices does not dispute that this
18 | requires substantial evidence that Cyclean's washing liquid has a pressure within
19 | 50-80 bar *at the nozzle*. There is no record evidence of that pressure in this case.

20 | EcoServices disagrees because the pressure settings are listed in a few
21 | Engineering Orders. Opp. at 14-15. But those documents recite the pressure *at the*
22 | *wash van only, not the nozzle as the patent requires*. *See, e.g.*, Trial Tr. 6/27/2018 at
23 | 180:20-181:5 (Dkt. 303-4, Ex. 3). Mr. Kushnick conceded that the liquid will lose
24 | pressure as it travels through the hose to the nozzles, and that the magnitude of the
25 | loss "could be big." *Id.* at 178:21-179:1. But he never measured or calculated the
26 | loss. *Id.* at 181:3-9. Nor did he measure the pressure at the nozzle. A factfinder
27 | cannot rely on such a conclusory "opinion" to find infringement. *See, e.g.*, *Yoon Ja*
28 | *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006) (affirming

- 11 -

JMOL of non-infringement because the patentee's expert "offered conclusory testimony" and "did not support [her] determination with any examinations or tests of the accused products").

Rather than address these evidentiary deficiencies, EcoServices instead tries to place the burden on CAS to prove no infringement, and again mischaracterizes Dr. Micklow's testimony.[2] But it is EcoServices's burden to prove infringement, and it must do so by providing more than mere conclusory expert speculation.

## B. No substantial evidence supports the jury's finding that Cyclean satisfies the particle size limitation.

### 1. Mr. Kushnick's testing is not sufficiently tied to the facts of this case.

There is no evidence of the particle size generated during a real-world Cyclean engine wash. Instead, EcoServices's evidence is Mr. Kushnick's laboratory tests. Those tests do not constitute substantial evidence because they did not involve the Cyclean system or its parts, and they are therefore not sufficiently tied to Cyclean's operating conditions, as the law requires. *See Homeland Housewares, LLC v. Sorensen Research and Dev. Trust*, 581 F. App'x 869, 876 (Fed. Cir. 2014) (holding that party seeking to prove infringement with experimental models must show why the evidence "made under different conditions nonetheless proved that the accused processes infringed").

EcoServices pretends in its Opposition that the evidence is tied to the exact nozzle Cyclean uses. Far from it. There is hearsay in the record that Cyclean uses a nozzle within the Lechler 652 series—an assertion that EcoServices never bothered to corroborate through third party discovery. Even if accepted, that hearsay only narrows down the list of possible nozzles *to seventy-five* possibilities. *E.g.*, Trial Tr. 6/27/2018 at 132:20-21; *id.* at 192:21-193:2 (Dkt. 303-4, Ex. 3). EcoServices agrees

---

[2] The Court has already observed that EcoServices, in making these criticisms, "mischaracterizes excerpts of Dr. Micklow's testimony from trial." Dkt. 293 at 47.

that all seventy-five nozzles produce different spray properties, yet it presented no evidence showing which one Cyclean uses.[3]

Of the seventy-five nozzles, Mr. Kushnick tested only three. Although EcoServices touts that this testing procedure involved eighty-four tests, as well as "calculations and analyses," the record does not establish that any of these tests, "calculations," or "analyses" involved the accused device's nozzle. Mr. Kushnick told the jury explicitly that he did not know what nozzle was actually used. It was EcoServices's burden to *prove* which nozzle was used and that the nozzle caused infringement. EcoServices did not meet that burden.

EcoServices also provides no counterargument that Mr. Kushnick's methodology is internally consistent. Mr. Kushnick testified that he obtained "reasonable engineering certainty" that Cyclean operates within the claimed particle-size range by testing nozzles with flow rates both below and above Cyclean's. Trial Tr. 6/27/2018 at 133:12-24 (Dkt. 303-4, Ex. 3). But he did *not* test a nozzle with a flow rate above Cyclean's. *See* CAS Br. at 14. And EcoServices does not defend this failure in its Opposition. For that reason alone, no substantial evidence supports the jury's verdict.[4]

### 2. Mr. Kushnick's infringement opinion relies on an incorrect understanding of the particle size limitation.

EcoServices provided no substantial evidence that the Cyclean system satisfies the particle size limitation. It instead asserted (without explanation) that a

---

[3] EcoServices insinuates that the Cyclean system's nozzles were improperly covered with black tape during the in-person inspection. *See* Opp. at 14 n.3. But as EcoServices knows, the nozzles are coated with black rubber, to protect against damage, before CAS ever receives them. *See* Trial Tr. 6/28/2018 at 99:8-100:7 (Ex 10).

[4] Additionally, Dr. Micklow provided unrebutted testimony that the differences in spray angles across the Lechler 652 series would materially affect particle size. *See* CAS Br. 14. Mr. Kushnick did not account for those differences in any way. His testing protocol is thus unsound for this reason as well.

spray with 15% of its particles within the claimed range necessarily satisfies that limitation.

The Court construed the claims of the '860 Patent to have their plain and ordinary meaning, *i.e.*, how a person of ordinary skill in the art would understand the claims in light of the specification and prosecution history. *See Ruckus Wireless*, 824 F.3d at 1002. EcoServices presented no evidence that an ordinary artisan would have understood the particle size limitation to include a spray having only 15% of its particles within the claimed range. And Mr. Kushnick's only opinion on this matter is his conclusory and plainly erroneous opinion that any spray with even a single particle within the claimed range satisfies the limitation. *See* Trial Tr. 6/27/2018 at 185:21–186:6 (Dkt. 303-4, Ex. 3). Thus, there is no substantial evidence that Cyclean operates "at a liquid particle size in the range of 250-120 μm," and JMOL is appropriate.

## V.     CAS Did Not Willfully Infringe The '860 Patent.

EcoServices's willfulness claim is limited to the first month of this lawsuit: from April 28, 2016 (when CAS was served with the Complaint) to May 31, 2016 (when the '860 Patent expired). The '860 Patent expired three weeks before CAS even answered the Complaint. EcoServivces ignores this fact, likely because it is fatal to its argument. Indeed, the Court already noted that CAS acted reasonably during that time by hiring counsel to investigate EcoServices's claims. Dkt. 293 at 51 ("Mr. Lee and Mr. Caban are not patent attorneys, and acted reasonably responding to the Complaint by hiring counsel to read the patents and provide an opinion.").

EcoServices instead complains of irrelevant events that took place *after* the '860 Patent expired: fact discovery of the Cyclean system and allegedly "insupportable" opinions that Dr. Micklow provided in his expert reports and at trial. Opp. at 18. But CAS was not infringing the '860 Patent during fact discovery, expert discovery, or trial—the patent had already expired. It is therefore axiomatic

that, whatever took place at those times cannot serve as the basis of a claim of willful infringement.

EcoServices points to no authority suggesting that one month's worth of normal business operations could constitute the "egregious misconduct" needed to support a willfulness verdict. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016). And the Court has already stated that CAS acted reasonably. Dkt. 293 at 51. CAS is therefore entitled to judgment as a matter of law of no willful infringement.

## VI. The Particle Size Limitation Renders The '860 Patent Indefinite.

To be valid, each claim must "provide *objective boundaries* for those of skill in the art." *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620, 630 (Fed. Cir. 2015) (emphasis added) (citation omitted). EcoServices's opposition does not identify any supposed boundary for the particle size limitation in the claims of the '860 Patent. Instead, it argues that CAS's Motion does not satisfy Rule 52(b) because it repeats arguments made in CAS's trial briefs.

EcoServices objects that the Court should not revisit this issue under Rule 52(b). CAS's Motion is proper under that Rule because the Motion focuses on the Court's incorrect factual finding that "Mr. Kushnick was able to come to a determination that Cyclean infringes the '860 Patent," and that this fact "demonstrates that he was able to understand its objective boundaries." Dkt. 293 at 28. Because it focuses on an incorrect factual finding, CAS's Motion fits squarely within the framework of Rule 52(b), the purpose of which is to request that the Court reconsider and amend erroneous factual findings and the judgment depending on those findings, after the judgment is entered. *See, e.g.*, *Golden Blount*, 438 F.3d at 1358.[5]

On the merits, rather than proving the claim definite, Mr. Kushnick's

---

[5] Relief would also be appropriate under Rule 59(e) to amend the Court's legal conclusion of no indefiniteness.

testimony confirms that the claim is *indefinite*. To interpret the claim limitation, Mr. Kushnick resorted to the absurd opinion that the limitation requires just one particle within the claimed range. Trial Tr. 6/27/2018 at 186:2-6 (Dkt. 303-4, Ex. 3). And he admitted simultaneously that a wash with one in-range particle "wouldn't be according to the patent." *Id.* at 186:7-16. The record thus shows that Mr. Kushnick was *not* able to understand the objective boundaries of the claim. The Court should therefore amend its finding that a skilled artisan would have understood the objective boundaries of the claim.

## VII.   The Jury's Damages Verdict Is Unsupported And Based On Unreliable Expert Testimony.

### A.   CAS did not forfeit its arguments regarding apportionment.

EcoServices claims CAS has forfeited its right to RJMOL on the issue of apportionment, under Rule 50(b), by failing to raise the issue more articulately in the oral motion it made under Rule 50(a). Opp. at 19-20.

To begin with, that forfeiture argument is inapplicable to CAS's request for a new damages trial *under Rule 59*. *See* CAS Br. at 19, 22. CAS's request for relief under Rule 59 is not based on an earlier 50(a) motion, but on the weight of Mr. Lettiere's trial testimony and on the arguments CAS advanced at the *Daubert* stage for excluding Mr. Lettiere's testimony. *See* Dkt. 127 at 15-16. The Court should reconsider those arguments now, under Rule 59, in light of Mr. Lettiere's actual trial testimony. The content of CAS's oral Rule 50(a) motion is irrelevant to the Court's ability to provide this relief.

The Court may also grant relief under Rule 50(b). CAS's oral 50(a) motion was sufficient to put EcoServices and the Court on notice that CAS was challenging the sufficiency of Mr. Lettiere's opinion, including on the grounds articulated in CAS's *Daubert* motion. *See* Dkt. 127. No more was required. *See Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 778 (7th Cir. 2002) (rejecting argument that a Rule 50(a) motion was insufficiently specific when the "opposing

party and the district court were well aware of the grounds supporting the motion"). The Ninth Circuit has held that a Rule 50(a) motion need not be thoroughly argued to preserve a party's right to move under Rule 50(b). *See Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir. 1989) (holding requirements of Rule 50 "may be satisfied by an ambiguous or inartfully made motion for a directed verdict."). The Court therefore has the authority to consider CAS's arguments on the same issue, under Rule 50(b).

### B.    Mr. Lettiere failed to apportion damages.

On the merits, EcoServices argues that Mr. Lettiere *did* apportion his damages figure—for example because he "made a downward adjustment" to the royalty paid in the Pratt & Whitney agreement to account for the fact that the agreement covered *hundreds* of patents beyond the two asserted ones. Opp. at 20-21, 21-22; *see* Trial Tr. of 6/27/2018 at 54:13-19 (Dkt. 303-4, Ex. 3) (the P&W Agreement is a worldwide license to "hundreds" of patents).

The problem is that this miniscule "downward adjustment" is laughable, and Mr. Lettiere provided no justification for it beyond noting EcoServices's own testimony that the '860 patent was "important." *See*, *e.g.*, Trial Tr. 6/28/2018 at 68:22, 17:2-7 (Ex. 10). Mr. Lettiere refused to say that the '860 Patent was "the most valuable" patent licensed in the Pratt & Whitney Agreement. *Id.* at 29:23-30:3. Yet he calculated that a reasonable royalty for that patent *alone* would be $500 per wash—*i.e.*, $50 more than the royalty for the *entire portfolio*. *See* Trial Tr. 6/28/2018 at 20:16-21:1 (Dkt. 303-5, Ex. 4) ("the '860 patent royalty is $500 per wash"), 27:13-20 (Ex. 10) ("the '860 only royalty at 500"), 21:12-17 (Dkt. 303-5, Ex. 4) ("my royalty at $500"). Such counterintuitive opinions require justification, and Mr. Lettiere provided none. *See* Trial Tr. 6/28/2018  at 50:9-10 (Ex. 10) ("if you're looking for a numerical calculation, you will not find one in -- in my report"). Mr. Lettiere therefore failed to satisfy his obligation to apportion the damages to only the infringing features.

- 17 -

Mr. Lettiere's analysis of the LHT-CAS Lease Agreement is even more deficient in this respect because that agreement covers intellectual property well beyond that associated with an engine wash system. And, critically, the agreement does *not* include the asserted patents. That agreement therefore provides no baseline from which Mr. Lettiere could have apportioned the damages due only to the asserted patents.

EcoServices complains that "[t]o the extent CAS believed that Mr. Lettiere did not conduct a proper apportionment … CAS should have appropriately explored those issues on cross-examination" and that "[i]t chose not to do so." Opp. at 22. But that is not true. On cross-examination, CAS specifically asked Mr. Lettiere about how he calculated his "adjustment in view of the fact that the exclusive [P&W] license included over 200 patents," and Mr. Lettiere replied that "if you're looking for a numerical calculation, you will not find one in – in my report." Trial Tr. 06/28/2018 at 50:3-14 (Ex. 10). That testimony confirms that Mr. Lettiere did not apportion the damages due for the asserted patents, as the law requires.

In sum, Mr. Lettiere fails to apportion the revenues from each of the licenses in a manner that informs what the parties would have agreed to in the hypothetical negotiation. This is entirely unsurprising: apportioning from the two agreements would be virtually impossible because the two agreements are legally incomparable to the license sought at the hypothetical negotiation. *See* CAS Br. at 22-25.

### C.    Mr. Lettiere's opinion is based on incomparable agreements.

EcoServices provides almost no response to CAS's contention that the two agreements are not comparable to a license for the asserted patents *Id.* That is because they are not.

Regarding the Pratt & Whitney Agreement, EcoServices asserts that the Agreement is a "substantially comparable license" because it "is the only record evidence that includes a license to the Asserted Patents." Opp. at 22-23. But the

- 18 -

lack of other probative evidence does not render the agreement relevant. The Pratt & Whitney agreement is an *exclusive* license to *hundreds* of patents. *See* Trial Tr. 06/28/2018 at 38:14-15 (Ex. 10) (exclusive license); Trial Tr. 06/27/2018 at 54:13-19 (Dkt. 303-4, Ex. 3) (hundreds of patents). EcoServices fails utterly to explain how that could be comparable to a non-exclusive license for two of the patents or to square that view with the Federal Circuit's opinion in *ResQNet*, which excluded damages testimony because a license for seven patents (let alone hundreds) was not commensurate to a license for two of those seven patents. *See* CAS Br. at 22 (citing *ResQNet.com , Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010).

Regarding the LHT-CAS Lease Agreement, EcoServices asserts that the Agreement is relevant because CAS's damages expert (Ms. Bennis) also looked at it. Opp. at 23. But as EcoServices acknowledges, Ms. Bennis considered the license only for its $100 rental fee, which was evidence of how much CAS would be willing to pay for using the allegedly infringing system. Opp. at 22. She did not, as Mr. Lettiere did, rely on the Agreement for the $550 "royalty" fee, which necessarily does not include any of the patent rights at issue in this case.

**VIII.  A $400 Post-Trial Running Royalty Is Unsupported.**

EcoServices continues to muddy the waters on damages, evidently hoping to discourage the Court from looking too closely at Mr. Lettiere's opinion. But a close look reveals that the $400 royalty he calculated for the pre-trial period simply has no relevance to the appropriate royalty for the *post-trial* period.

Mr. Lettiere's opinion is that the parties would have agreed to a $400 royalty if they had negotiated a license *for the pre-trial period only*. *See* Trial Tr. 6/28/2018 at 20:18-19 (Dkt. 303-5, Ex. 4) ("The entire license period, my hypothetical license period is from April 2010 through December 31st, 2017."). Accordingly, EcoServices's insinuation that Mr. Lettiere calculated that rate for the full "economic life of both of those patents" (Opp. at 24) is outright false. There is no good faith basis for that assertion.

- 19 -

1   The thrust of EcoServices's opposition (Opp. at 24) and of the Court's

2   previous opinion on this issue (Dkt. 293 at 59) is that, because that pre-trial period

3   included some washes performed after the expiration of the '860 Patent (23% to be

4   exact), the $400 royalty calculated for that period must also be appropriate for the

5   *post-trial* period, during which *all* of the washes will be performed after the

6   expiration of that patent. That is wrong. The $400 pre-trial figure was calculated

7   specifically to amortize the full economic value of the '860 Patent—through

8   expiration—over the pre-trial period only. Had the rate been intended to amortize

9   the full value of that patent over the far longer period stretching to the end of the

10  post-trial period, the rate would have been far lower.

11  A close look at Mr. Lettiere's opinion is necessary. Mr. Lettiere opined that,

12  if the parties had negotiated a royalty *for the pre-trial period only*, they would have

13  settled on $400 per wash because that is the amount necessary for CAS to have paid

14  out the full economic value of the '860 Patent by the end of that period:

15  - The parties would have agreed that "the '860 patent royalty is $500 per

16    wash." Trial Tr. 6/28/2018 at 20:16-21:1 (Dkt. 303-5, Ex. 4); *see also*

17    Trial Tr. 6/28/2018 at 27:13-20 (Ex. 10) ("the '860 only royalty at 500");

18    Trial Tr. 6/28/2018 at 21:12-17 (Dkt. 303-5, Ex. 4) ("my royalty at

19    $500").

20  - Recognizing that the '860 Patent would expire 77% of the way through

21    the royalty period (*i.e.*, the pre-trial period), the parties would have

22    amortized that $500 royalty over that longer period at a 77% rate:

23    The entire license period, my hypothetical license

24    period is from April 2010 through December 31st,

25    2017. Over that period, the '860 patent is alive at 77

26    percent of the period. It expires as you can see in May

27    2016. So what I have done is accounted for the loss in

28    the value of the '860 patent by reducing my royalty

- 20 -

1        [by 23%]. If the '860 patent was alive for the entirety

2        [of the rate period] … [t]hen the '860 patent royalty is

3        $500.

4    •   And finally, recognizing that the '262 Patent was merely a

5        provisional application at the time of the hypothetical

6        negotiation, the parties would have agreed that, for "[t]he

7        '262, there is no effective[] royalty." Trial Tr. 6/28/2018 at

8        34:1-2 (Ex. 10); *see also id.* at 27:13-20 ("I have primarily

9        focused on the value of the '860 Patent and not really given

10       much credit to the '262.").

11   •   Accordingly, the final royalty Mr. Lettiere calculated was

12       $400, only a touch above the amortized royalty of the '860

13       Patent alone.

14   Trial Tr. 6/28/2018 at 20:18-25 (Dkt. 303-5, Ex. 4).

15       Mr. Lettiere's testimony thus makes clear that the pre-trial rate has no

16   applicability to the appropriate post-trial rate. CAS's pre-trial payments fully

17   compensate EcoServices for the entire economic value of the '860 Patent by the

18   close of the pre-trial period. *Id.* Accordingly, the post-trial payments should

19   compensate EcoServices only for the remaining economic value of the '262 Patent.

20   But the $400 figure in no way reflects the rate necessary to do so. It reflects (almost

21   exclusively) the rate necessary to amortize the value of the '860 patent over the pre-

22   trial period. That rate has no relationship to the rate necessary to amortize the value

23   of the '262 patent over the post-trial period. Those two figures are almost entirely

24   unrelated.

25       EcoServices is simply trying to have it both ways—demanding that CAS pay

26   the full value of the '860 Patent through its pre-trial royalty payments, and then

27   demanding that it do so again as an ongoing royalty. The only ongoing royalty

28   owed is for the '262 Patent. Mr. Lettiere did not provide any opinion on what

would be the appropriate amount for such a royalty. Accordingly, the Court should vacate the ongoing royalty award and order a hearing or new trial to determine an appropriate ongoing royalty for the '262 Patent alone.

**CONCLUSION**

For the foregoing reasons, CAS respectfully requests that the Court grant the relief requested in CAS's Motion.

Dated:        March 12, 2019                    MAYER BROWN LLP

                                                By: */s/ Stephen E. Baskin*
                                                    Stephen E. Baskin


                                                Dale J. Giali (SBN 150382)
                                                Elizabeth M. Burnside (SBN 258184)
                                                Stephen E. Baskin (*pro hac vice*)
                                                Dara M. Kurlancheek (*pro hac vice*)
                                                Gregory J. Apgar (*pro hac vice*)
                                                Jonathan Weinberg (SBN 300452)

                                                *Attorneys for Defendant/Counter-*
                                                *Plaintiff*
                                                *Certified Aviation Services, LLC*

- 22 -

## Certificate of Service

I, Stephen E. Baskin, hereby certify that on March 12, 2019, I filed the within and foregoing CAS's Reply To EcoServices's Opposition To CAS's Motion For Post-Judgment Relief Pursuant to Rules 50(b), 52(b), and 59 with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing:

Natasha E. Daughtrey
ndaughtrey@goodwinlaw.com
GOODWIN PROCTER LLP
601 South Figueroa Street, 41st Floor
Los Angeles, CA 90017
Telephone:   (213) 426-2500
Facsimile:    (213) 623-1673

Ronald J. Pabis
rpabis@goodwinlaw.com
Stephen K. Shahida
sshahida@goodwinlaw.com
Patrick J. McCarthy
pmccarthy@goodwinlaw.com
Myomi T. Coad
mcoad@goodwinlaw.com
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC 20001
Telephone:   (202) 346-4000
Facsimile:    (202) 346-4444

*Attorneys for Plaintiff EcoServices, LLC*

Dated:        March 12, 2019              MAYER BROWN LLP

                                         By: */s/ Stephen E. Baskin*
                                              Stephen E. Baskin